UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.                                       19-CR-227 (JLS) (MJR)

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

          Defendants.
_____

UNITED STATES OF AMERICA,

      v.                                       23-CR-37 (JLS) (MJR)

PETER GERACE, JR.,

          Defendant.
_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO REOPEN THE DETENTION HEARING AND FOR PRE-TRIAL RELEASE

LIPPES MATHIAS LLP

s/Eric M. Soehnlein
Eric M. Soehnlein, Esq.
*Attorneys for Defendant*
*Peter Gerace, Jr.*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
esoehnlein@lippes.com

TIVERON LAW

s/Steven M. Cohen
*Attorneys for Defendant*
*Peter Gerace, Jr.*
2410 N. Forest Road
Suite 301
Getzville, New York 14068
(716) 636-7600
scohen@tiveronlaw.com

Peter Gerace, Jr. respectfully submits this memorandum in support of his motion to reopen the detention hearing and for pre-trial release in this case.

## I.    INTRODUCTION

For several reasons, Mr. Gerace should not be incarcerated while his case proceeds to trial:

- Terms and conditions exist that will safeguard the community and ensure Mr. Gerace's return to Court. Namely: home detention, computer and cell phone monitoring, and GPS monitoring;

- The allegations at the heart of the Government's prior proffer regarding detention occurred in 2019, years before Mr. Gerace was indicted. There is no substantiated allegation he tampered with or threatened witnesses (or any other individual) at any time since being placed on supervised release;

- Other critical allegations in the Government's proffer came from a witness with dubious credibility and whose reliability is further undercut by ███████████████████████████████████;

- The District Court previously held that Mr. Gerace had rebutted any presumption in favor of incarceration, and that presumption continues to be rebutted at this time;

- The volume of evidence in this case, combined with the unique status of discovery in this matter, make local incarceration an unfair hurdle to the preparation of Mr. Gerace's defense;

- Mr. Gerace's trial has been delayed through no fault of Mr. Gerace or his counsel and over counsel's objection;

- Mr. Gerace is the custodial parent of his son Nicholas, who is a student at St. Joseph's High School; and

- United States Probation recommends that Mr. Gerace be released and that his conditions of release be continued.

Terms and conditions exist that will safeguard the community, protect against risk of flight, and ensure Mr. Gerace's return to Court. Specifically, defense counsel

asks (and it is counsel's understanding that Probation supports) releasing Mr. Gerace on the following conditions:

> 1. Home detention, where Mr. Gerace can leave his house only to meet with his attorneys and medical appointments/emergencies;
>
> 2. GPS location monitoring.
>
> 3. Regular drug testing or other treatment as recommended by Probation;
>
> 4. Computer monitoring, which will enable Probation to monitor Mr. Gerace's phone calls and internet usage; and
>
> 5. A signature bond signed by Mr. Gerace's parents.

## II.    RELEVANT BACKGROUND

### a.    Procedural Background

On March 1, 2021, Mr. Gerace was arrested in the Southern District of Florida while on vacation in connection with case 19-CR-227 in the Western District of New York.  Traveling with family, the record is clear he intended to return to the Western District of New York at the conclusion of his vacation.  Mr. Gerace appeared before U.S. Magistrate Judge Alicia O. Valle in the Southern District of Florida.  He was released on a personal surety bond with global positioning satellite system via home detention.

Mr. Gerace returned home to the Western District of New York on Friday, March 3, 2021.  On March 4, 2021, Mr. Gerace was arraigned on a second superseding indictment charging him with Conspiracy to Defraud the United States, Bribery, Maintaining a Drug Involved Premises, Conspiracy to Possess with Intent to

Distribute Controlled Substance, and Conspiracy to Commit Sex Trafficking. United States Probation and Pre-trial Services for the Western District of New York recommended that Mr. Gerace: surrender any passport to the Clerk of the Court; not obtain a new passport or other international travel documents; restrict travel to the Western District of New York; avoid all contact with co-defendants and defendants in related cases; avoid all contact with any persons who are or may become a potential victim or witness; not possess a firearm or destructive device; refrain from using alcohol; refrain from the use or possession of a narcotic drug; submit to drug testing by pre-trial services; refrain from obstructing or attempting to obstruct with the efficiency or accuracy of any prohibited substance testing; abide by the conditions of location monitoring; refrain from obstructing or attempting to obstruct any GPS monitoring; report any contact with law enforcement within 72 hours; and not visiting his nightclub, Pharaoh's Gentlemen's Club at 999 Aero Drive, Cheektowaga, New York.

Mr. Gerace abided by those conditions. Upon motion of his counsel, and after a demonstrated history of compliance, on April 14, 2021, the conditions of his release were modified. The District Court allowed Mr. Gerace to go to his business from 7:30 a.m. to 10:30 a.m. on a daily basis.

On January 19, 2023 the District Court further modified the conditions of release from home detention to curfew monitored by electronic monitoring. Probation set curfew from 8 p.m. to 6 a.m. daily.

On March 21, 2023 counsel to Mr. Gerace moved the District Court to modify the protective order in case 19-CR-227. In counsel's view, discovery provided by the Government with respect to witness KG revealed clear and material falsehoods presented to the grand jury in that case. Counsel wished to review the materials with Mr. Gerace so that counsel could determine the best course to proceed in light of the new information disclosed by the Government.

Three days later, on March 24, 2023, Mr. Gerace was arrested on a new indictment in case 23-CR-37[1]. The new indictment encompassed conduct from 2019 that the Government had known about for several years. In pertinent part, the new indictment charged Mr. Gerace with three counts of Witness Tampering stemming from a Facebook Messenger message allegedly sent to a potential witness on Mr. Gerace's behalf from a third party. The indictment also charged Mr. Gerace with a narcotics related offense stemming from the recreational use of cocaine at the same time in 2019.

### b.    The Detention Hearing

As this Court is aware, the Detention Hearing spanned two days – March 24 and March 27, 2023. Throughout the Detention Hearing, Probation maintained that Mr. Gerace should be released on the same terms and conditions he abided by for the last several years in case 19-CR-227.

At the hearing, the Government moved for detention. The Government's proffer made the following arguments:

• That the charge in the new indictment included a threat made by a third party against the potential witness after the witness had

allegedly been in contact with federal investigators in 2019, two years before Mr. Gerace was charged in the other federal case;

• That Mr. Gerace has "many contacts in law enforcement," and that he has police officers, detectives and state court judges as friends;

• That in July 2019, months before the witness spoke with law enforcement and long before Mr. Gerace was aware of any federal investigation, an "associate" of Mr. Gerace had been involved in a physical altercation with the witness;

• That based on the grand jury testimony of KG, a former state court judge had received sex from prostitutes at Mr. Gerace's business at some time in the past;

• That there is testimony in the grand jury in the 19-CR-227 case that some employees of Mr. Gerace's business use narcotic drugs and engage in sex for money;

• That Mr. Gerace had previously pled guilty in a federal criminal case involving a telemarketing company he had in 2005;

• That Mr. Gerace had allegedly had his son's name changed in a one-day, ex-parte hearing before a state supreme court judge who was his friend;

• That in 2010 there was an unsubstantiated tip that Mr. Gerace was traveling with narcotics in New York City. A drug dog sniffed Mr. Gerace and his luggage and did not pick up the scent of illicit drugs;

• That Mr. Gerace had a domestic incident with a significant other in 2012; and

• That Mr. Gerace allegedly committed fraud in connection with obtaining federal COVID-era EIDL loans.

c.    **Mr. Gerace's Response**

As a threshold matter, most of the Government's proffer included information that was known to the Government and the Court at times previous when the Court made a determination about detention. That includes allegations about the Facebook

messages sent to the potential witness, Mr. Gerace's relationship with individuals in law enforcement, testimony about the former state court judge, testimony in the grand jury about narcotics and prostitution at Mr. Gerace's business, and Mr. Gerace's criminal history. The Government did not offer any new facts in that regard. More critically, those allegations – all of which occurred long before Mr. Gerace was charged and put on supervised release – have no relation to the determination of detention. Mr. Gerace's two and half years on supervised release, during which time there had been no allegation from Probation that he failed to comply with any term or condition, demonstrate that the allegations have no relation to the factors to be considered under the Bail Reform Act.

With regard to allegations regarding Mr. Gerace's conduct involving the mother of his son, the defense proved that the Government's allegations were untrue. Mr. Gerace's son's mother came to Court on March 27 and made it clear that she was consulted about the name-change of her son, she had been involved in the process, the process took months to complete, and that she was there to support Mr. Gerace at the Detention Hearing asking for his release from custody.

The only new allegation made by the Government in support of detention was its allegation – made for the first time on March 24 – that Mr. Gerace had engaged in illegal activity to receive EIDL loans for his business during COVID. Upon learning of the allegation, counsel reviewed Mr. Gerace's application. Counsel learned that Mr. Gerace had worked with his accountant and representatives from the financial institutions he received the loans from in filing the necessary forms to

get the EIDL loans.  Relying on the advice of experts, he believes he followed all applicable rules with respect to the loan applications.  What is more, the record is clear that he spent the money on appropriate expenditures and that he is repaying the money – with interest – in accord to the rules of the EIDL program.[1]

More critically, in the event Mr. Gerace did do anything improper in connection with the loan application, we do not believe it counsels in favor of detention.  Applying for the loans in reliance of experts and repaying the loans in accord with the program guidelines evidence a desire to comply with applicable rules and laws.  Indeed, probation feels similarly to defense counsel, continuing to recommend Mr. Gerace's release despite the Government's new allegations.

### d.    The District Court's March 27 Decision

At the conclusion of the Detention Hearing on March 27, the District Court rendered a decision.  The District Court found that the presumption against release had been sufficiently rebutted by Mr. Gerace's history of compliance with the terms and conditions of supervised release.  The Court ordered him detained, however, citing Mr. Gerace's alleged use of a third-party to refer to a potential witness as a snitch, Mr. Gerace's contacts with law enforcement, the allegations of cocaine use and prostitution at his business in the underlying indictment, and the Government's new allegations regarding his conduct relating to the EIDL loan application.

---

[1] At the hearing, the Government proffered that new charges against Mr. Gerace would be forthcoming.  Several weeks later, no new charges have been filed.

### III.    NEW FACTS THAT SHOULD COUNSEL THE COURT TO REOPEN THE DETENTION HEARING AND RELEASE MR. GERACE

A court has the authority to reopen a detention hearing to take additional evidence at the request of counsel, provided the moving party produces new material evidence or information that was not known to the defendant at the time of the hearing. 18 U.S.C. § 3142(f); *United States v. Gallo*, F. Supp. 320, 327 (E.D.N.Y. 1986); *United States v. Rodriguez*, 2015 WL 6503861, at *1 (S.D.N.Y. Oct. 26, 2015). The Second Circuit has held that new information is considered "material" if – had it been presented – it provides a reasonable probability that the result of the initial proceeding would have been different. *United States v. Schwamborn*, 2007 WL 9653331, at *9 (E.D.N.Y. June 29, 2007) (*following United States v. Avellino*, 136 F.3d. 249, 256 (2d Cir. 1998)).

Per the Bail Reform Act, when determining whether there are conditions of release that will reasonably assure the appearance of the person as required and safety of other individuals and the public at large, a court shall consider: "(1) 'the nature and circumstances of the offense charged,' (2) 'the weight of the evidence against the person,' (3) 'the history and characteristics of the person,' and (4) 'the nature and seriousness of the danger to any person or the community that would be posed by the person's release.'" *United States v. Zhang*, 55 F.4th 141, 149 (2d Cir. 2022); 18 U.S.C. § 3142(g).

a. 







## IV.  THE LAW COUNSELS TOWARD PRE-TRIAL RELEASE DUE TO THE WELL-KNOWN CONDITIONS OF LOCAL JAILS WHEN A TRIAL HAS BEEN ADJOURNED

The Second Circuit has relied on the well-established fact that "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" are factors weighing against lengthy pretrial detention. *United States v. Tigano*, 880 F.3d 602, 612 (2d Cir. 2018) (*following Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In *Barker*, the Supreme Court provided:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still

14

disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Barker*, at 532-33.

Here, Mr. Gerace's detention is at odds with all four *Barker* factors. First, a two-month delay of trial equates to two months of "dead time" for Mr. Gerace. *Id.*, at 532. Relatedly, speaking to the second factor, the delay is not attributable to Mr. Gerace, but to the need to replace his codefendant's counsel. Third, we have raised the issue of Mr. Gerace's speedy trial rights in opposing the delay. Fourth, Mr. Gerace will be highly prejudiced by any further delay. *Id.*, at 533. Continued pretrial detention will continue to wreak havoc on Mr. Gerace's physical health. He has lost approximately thirty-one (31) pounds since being detained on March 24, 2023. His ability to meet with counsel is heavily restricted. He is the custodial parent of his son, who is experiencing depression and anxiety as he struggles to complete high school.

It is respectfully submitted that further pretrial detention will prejudice Mr. Gerace in terms of his physical health, ability to care for his son, and ability to formulate a defense and should be released to home detention pending trial.

## V.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in the accompany attorney declaration, Mr. Gerace respectfully reopen his detention hearing to properly evaluate the weight of evidence against him in the context of bail.

Dated:      Buffalo, New York
              May 22, 2023

Respectfully submitted,

**LIPPES MATHIAS LLP**

<u>s/Eric M. Soehnlein</u>
Eric M. Soehnlein, Esq.
*Attorneys for Defendant*
*Peter Gerace, Jr.*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
esoehnlein@lippes.com

**TIVERON LAW**

<u>s/Steven M. Cohen</u>
*Attorneys for Defendant*
*Peter Gerace, Jr.*
2410 N. Forest Road
Suite 301
Getzville, New York 14068
(716) 636-7600
scohen@tiveronlaw.com