IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.                                           19-CR-227-JLS

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

               Defendants.
_____

UNITED STATES OF AMERICA,

        v.                                           23-CR-37-JLS-MJR

PETER GERACE, JR.,

               Defendant
_____

## GOVERNMENT'S REDACTED RESPONSE IN OPPOSITION TO DEFENDANT GERACE'S MOTION TO SEVER COUNTS

      **THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, Corey R. Amundson, Chief, United States Department of Justice, Public Integrity Section, and Jordan Dickson, Trial Attorney, United States Department of Justice, Public Integrity Section, of counsel, hereby files its response in opposition to defendant Peter Gerace's motion to sever counts. ECF No. 704.

## I.    INTRODUCTION

Mr. Gerace seeks to sever Counts 7 and 9 of the Second Superseding Indictment filed in case number 1:19-CR-227.  *See* Mot. to Sever Counts, ECF No. 704, (filed Dec. 27, 2023) (hereinafter the "Motion to Sever Counts").  Respectively, those counts charge that Mr. Gerace maintained a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 and conspired to commit sex trafficking in violation of 18 U.S.C. § 1594(c).  *See* Sec. Super. Indict. at 30, 32, ECF No. 89, (dated Feb. 25, 2021).  In Mr. Gerace's view, Counts 7 and 9 are factually distinct from the other charges at issue in the Second Superseding Indictment, namely that he conspired with co-defendant Joseph Bongiovanni to defraud the United States (Count 2), paid a bribe to a public official (Count 6), and conspired to distribute controlled substances (Count 8).  *See id.* at 17–26, 29–30, 31.  Elsewhere, Mr. Gerace floats unspecified constitutional speedy trial concerns stemming from the government's pending motion to disqualify Attorney Soehnlein favor severance of counts.


Neither argument carries Mr. Gerace's burden to show that the continued joinder of Counts 2, 6, 7, 8, and 9 will substantially prejudice him at trial.    First, as is facially apparent from the Second Superseding Indictment, the evidence bearing upon Counts 7 and 9 is inextricably tied to the evidence at issue in Counts 2, 6, and 8.  Such "substantial overlap in facts" weighs strongly <u>against</u> severing the counts, even if the defendants are severed.  *United States v. Saad*, 380 F.Supp.2d 286, 288 (S.D.N.Y. 2005) (Rakoff, J).  In that regard, severing counts would not—indeed, could not—promote judicial economy, which appears to be the principal basis for Mr. Gerace's motion, because the evidence is admissible across the counts.  Second, Mr. Gerace's speedy trial suggestion is equal parts undeveloped and premature—and

thus far too thin a reed to bear the heavy substantial prejudice burden.  Accordingly, Mr. Gerace's motion for severance of counts should be denied.

## II.    RELEVANT BACKGROUND

To illustrate the factual overlap amongst the counts, the government first outlines the charges at issue in the Second Superseding Indictment.  Then, the government maps some of the relevant procedural history bearing on the adjournments of this case's trial dates.

### 1.  The Second Superseding Indictment

Mr. Gerace is charged via Second Superseding Indictment with violations of Title 18, United States Code, Section 371 (Conspiracy to Defraud the United States, Count 2); Title 18, United States Code, Sections 201(b)(1)(A) and 201(b)(1)(C) (Paying a Bribe to a Public Official, Count 6) (as the individual paying the bribes alleged in Count 5); Title 21, United States Code, Section 856(a)(1) (Maintaining a Drug-Involved Premises, Count 7); Title 21, United States Code, Section 846 (Conspiracy to Distribute Controlled Substances, Count 8); and, Title 18, United States Code, Section 1594(c) (Conspiracy to Commit Sex Trafficking; Count 9).

Also via the Second Superseding Indictment, Mr. Bongiovanni is charged with violations of Title 18, United States Code, Section 371 (Conspiracy to Defraud the United States; Counts 1–2), Title 21, United States Code, Section 846 (Conspiracy to Distribute Controlled Substances, Count 3), Title 18, United States Code, Section 201(b)(2)(C) (Public Official Accepting a Bribe, Counts 4–5), Title 21, United States Code, Section 846

(Conspiracy to Distribute Controlled Substances, Count 8), Title 18, United States Code, Section 1519 (Obstruction of Justice, Counts 10–16); and, Title 18, United States Code, Section 1001(a)(2) (False Statements, Counts 17–18).

These inter-related charges stem from Mr. Bongiovanni's receipt of bribes and protection of individuals involved in narcotics offenses, including Mr. Gerace.   Mr. Bongiovanni is charged with Mr. Gerace in Counts 2 and 8, and is named but not charged in Count 6, which charges Mr. Gerace with bribing Mr. Bongiovanni.   Similarly, Mr. Gerace is named but not charged in Count 5, which charges Mr. Bongiovanni with accepting bribes from Mr. Gerace.

With respect to Counts 2 and 5, the Second Superseding Indictment alleges that Mr. Bongiovanni was bribed by Mr. Gerace to, among other things:

- omit to enforce the drug laws of the United States against Peter Gerace Jr., and against Pharaoh's Gentlemen's Club (PGC) located at 999 Aero Drive, Cheektowaga, New York;

- to falsely advise a Federal Bureau of Investigation (FBI) Special Agent (SA) that Peter Gerace Jr. was a DEA confidential source, thereby inducing the FBI SA to abandon narcotics investigation into Peter Gerace Jr. and PGC;

- to provide advice and information to Peter Gerace Jr.;

- to help Peter Gerace Jr. and PGC avoid federal narcotics investigations;

- to make statements to Bongiovanni's co-worker, a fellow DEA SA, to dissuade and discourage the fellow DEA SA from investigating Peter Gerace Jr., and PGC;

- to make false and misleading statements to other members of law enforcement;

- to provide information about law enforcement methods and techniques; and,

- to help such drug trafficking activities continue.

Count 8, which also incorporates the Introduction, charges both defendants with conspiracy to possess with intent to distribute, and to distribute, controlled substances including cocaine, cocaine base, methamphetamine, amphetamine, marijuana, and heroin; and, to maintain PGC for the purpose of knowingly, intentionally, and unlawfully manufacturing, distributing, and using the aforementioned controlled substances.

Moreover, Count 8 alleges, in part, that both defendants conspired to maintain PGC as a drug-involved premises. By protecting PGC and Mr. Gerace, Mr. Bongiovanni enabled these federal crimes to continue unabated. As a result, the allegations set forth in Count 8 overlap, and are integrally intertwined, with Count 7 charging Mr. Gerace with maintaining PGC as a drug-involved premises.

The Second Superseding Indictment further alleges, and the trial evidence will show, that Mr. Bongiovanni used his position as a DEA SA to protect Mr. Gerace and his business, PGC, from federal narcotics investigations and to enable the criminal activity involving Mr. Gerace, and occurring at PGC, to continue. This criminal activity includes the sex trafficking conspiracy charged in Count 9. In particular, Count 9 alleges that Mr. Gerace conspired to commit sex trafficking through force, fraud, and coercion, which, among other ways, was achieved by preying upon women who were addicted to drugs or became addicted while at PGC, and inducing them through force, fraud, and coercion to engage in commercial sex acts

at PGC with Mr. Gerace, his friends, associates, and customers.   Again, through Mr.
Bongiovanni's paid protection (*see* Counts 2, 5, and 6), the drug and sex trafficking activity
(*see* Counts 7, 8, and 9) occurring at PGC, and controlled and permitted by Mr. Gerace, was
able to occur and continue undetected and uncharged for a lengthy period of time.[1]

### 2.   The Adjournments

Mr. Gerace claims that severance of counts "would also partially alleviate implications
to [his] constitutional Speedy Trial rights that were impacted by the Government's motion to
disqualify [his] counsel approximately six weeks before trial."   Mot. to Sever Counts at 16 ¶
79.   The following procedural review puts into focus the causes for the adjournments to date
and elucidates to whom they may fairly be attributed:

- The Second Superseding Indictment charged Mr. Gerace on February 25, 2021.

- On November 30, 2022, following extensive pre-trial litigation prompted by the defendants, U.S. District Judge John Sinatra set trial to commence on June 21, 2023.   *See* Minute Entry, ECF No. 324, (dated Nov. 30, 2022).

- On May 16, 2023, Attorney James Harrington, moved to withdraw as counsel for Mr. Bongiovanni.   *See* Mot. to Withdraw, ECF No. 476, (dated May 16, 2023).

- Consequently—and over the government and Mr. Gerace's objection—the Court continued the trial to August 14, 2023.   *See* Minute Entry, ECF No. 484, (dated May 17, 2023).

- On June 20, 2023, Mr. Gerace filed a witness list containing witnesses who required Judge Sinatra to recuse himself pursuant to 28 U.S.C. § 455(b)(5)(iv).

---

[1]   Furthermore, several counts of Obstruction of Justice (Counts 12–15) and False Statements (Counts 17–18) directly relate to Mr. Bongiovanni's efforts to impede, obstruct, and influence investigation into Mr. Bongiovanni and Mr. Gerace, and to obstruct investigation into their criminal conduct and the extent and nature of their relationship.

*See* Mot. to Seal Witness List, ECF No. 525, (dated June 20, 2023); Minute Entry, ECF No. 535, (dated June 21, 2023)  The case was then transferred to this Court on June 21, 2023.  *See* Minute Entry, ECF No. 536, (dated June 21, 2023); Text Order, ECF No. 538, (dated June 21, 2023).

- Five days later, Attorney Eric Soehnlein moved to withdraw as counsel.  *See* Mot. to Withdraw, ECF No. 541, (dated June 26, 2023).

- The recusal and subsequent transfer to this Court resulted in another adjournment.  Citing its own trial schedule, this Court initially suggested that the trial be continued to September.  *See* Tran. Status Conf., at 11, (dated June 30, 2023).  However, Mr. Gerace, citing Attorney Soehnlein's motion to withdraw and Attorney Steve Cohen's vacation, sought a longer continuance.  *See id.* at 14, 15.  Accordingly, this Court moved the trial from August 14, 2023, to October 23, 2023.  *See* Minute Entry, ECF No. 558, (dated June 30, 2023).

- On July 17, 2023, Attorney Cohen notified the Court via letter that Mr. Gerace had terminated him as counsel.  *See* Letter, ECF No. 567, (dated July 15, 2023).  Noting that Mr. Gerace was continuing to retain Attorney Cohen in other cases, and raising the specter that the termination could be orchestrated to delay the trial, *see* Tran. Status Conf., at 4–3, (dated July 19, 2023), the government opposed any adjournment of the trial date.  In fact, during a <u>July 19th status conference</u>, and owing to ongoing witness safety concerns, the government observed that each of the "set-in-stone trial dates ha[d] been moved relating to various defense issues. . . . While that happens, our *Jencks* material is out there, our *witness* list is in their possession.  And so the longer that delays things, the more you may find tactics play into the case."  *Id.* at 6 (emphases added).

- On August 4, 2023, this Court indicated its willingness to modestly adjourn the trial to allow any future attorney for Mr. Gerace time to adequately prepare.  *See* Tran. Oral Arg., at 13 (dated Aug. 4, 2023) ("And if there is a lawyer who is interested in taking the case but says that October 23rd is too soon, I want to know exactly when that lawyer thinks that lawyer can begin the case and I will weigh that in the process.  I can tell you if the lawyers says 2025, the answer is going to be no.  I can tell you if the lawyer says it's October 30th, the answer would likely be yes.").

- In September 2023, Attorney Soehnlein re-entered this case as counsel for Mr. Gerace, joined by Attorney Mark Foti.  During a September 6th status conference, Attorney Foti represented that he and Attorney Soehnlein "believe[d] they could be in a position to be fully brought up to speed and capable of . . . proceeding to trial in February or March of 2024."  Tran. Status Conf., at 7 (dated Sept. 6, 2023)  Ultimately, this Court adjourned the October 23, 2023, trial date to January 8, 2024.  *See id.* at 22–23.

- On November 21, 2023, the government filed, as it was duty-bound to do, a

motion to disqualify Attorney Soehnlein once a *per se* conflict was identified. *See* Notice of Gov't's *Ex Parte* and Sealed Mot. to Disqualify, ECF No. 666, (Nov. 21, 2023).

- The Court formally adjourned the trial on December 14, 2023, to accommodate Mr. Gerace's desire to respond to the government's disqualification motion, and excluded time under the Speedy Trial Act. *See* Minute Entry, ECF No. 698, (dated Dec. 14, 2023).

### III.   ARGUMENT

#### 1. Legal Standard

Joinder of offenses "is proper where the same evidence may be used to prove each count." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011). Nevertheless, even where, as here, offenses are properly joined under Federal Rule of Criminal Procedure 8, courts may grant severance if a party would suffer prejudice from a trial at which offenses or defendants are tried together. *See* FED. R. CRIM. P 14(a); *Page*, 657 F.3d at 129; *United States v. Kemp*, No. 21-1684-CR, 2023 WL 405763, at *6 (2d Cir. Jan. 26, 2023).

Rule 14 provides: "If the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a). To establish that severance is warranted under Rule 14(a), "the defendant must show not simply some prejudice but *substantial* prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (internal quotation marks and citation omitted). This is a "heavy burden," *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994), because "less drastic measures than severance, such as limiting instructions, often will suffice to cure any risk of prejudice and permit joinder," *Page*, 657 F.3d at 129 (alteration

adopted) (internal quotation marks and citation omitted).

In this context, a demonstration of "substantial prejudice" equates to showing a miscarriage of justice if severance were denied. *Potamitis*, 739 F.2d at 790. Thus, the moving party must show more than "simply . . . a better chance of acquittal" if severance were granted, *id.*, or that "a separate trial would have benefitted the defendant" in some way, *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990). Prejudice that may justify severance exists "only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008) (Sotomayor, J.) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

In determining severance, courts consider "to what extent the evidence presented at the joint trial would have been admitted at a single-defendant trial because of the alleged conspiratorial nature of the illegal activity." *United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir. 1990). Courts also consider "whether the jury was instructed to assess the evidence against each defendant separately from the proof against the other defendants." *Id.* That evidence may be admissible against one defendant but not the other, however, does not automatically require severance. *See Rittweger*, 524 F.3d at 179. In such situations, courts also consider whether "the evidence with respect to each of the defendants [is] sufficiently straightforward that the jury [can] consider it without any significant spillover effect." *Id.*

The Supreme Court "has recognized [that] limiting instructions are often sufficient to

9

cure any risk of prejudice." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (citing *Zafiro*, 506 U.S. at 539).  For example, careful use of limiting instructions "throughout the trial explaining when evidence could not be considered against a particular defendant," and a final jury charge that "carefully explain[s] that the jurors must consider the case against each defendant separately," can mitigate any prejudice resulting from joinder.  *Rittweger*, 524 F.3d at 179.

Other relevant factors courts may consider in the Rule 14 analysis include; (1) "the number of defendants and the number of counts;" (2) "the complexity of the indictment;" (3) "the estimated length of the trial;" (4) "disparities in the amount or type of proof offered against the defendants;" (5) "disparities in the degrees of involvement by defendants in the overall scheme;" (6) "possible conflict between various defense theories or trial strategies;" and (7) "prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant."  *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1986). No single factor is dispositive; rather, "the ultimate question is whether the jury can keep the evidence relevant to each defendant separate and render a fair and impartial verdict as to each defendant." *United States v. Locascio*, 357 F. Supp. 2d 536, 543 (E.D.N.Y. 2004).

### 2.  Application

Mr. Gerace's arguments fail to demonstrate substantial prejudice necessary to justify severance of counts under Federal Rule of Criminal Procedure 14 as a matter of party-presentation and on the merits.  First, Mr. Gerace failed to cite the applicable rule of criminal

procedure, identify any caselaw (authoritative or otherwise), or develop an actual argument explaining why continued joinder would prejudice him. This Court should therefore conclude that Mr. Gerace waived any argument that the continued joinder of his charges in case number 1:19-CR-227 would substantially prejudice him and deny his motion on that basis alone.

But even if the Court were to overlook Mr. Gerace's briefing inadequacies, it should nevertheless find his motion meritless. Retaining the joinder of Counts 2, 6, 7, 8, and 9 for Mr. Gerace could not substantially prejudice him where, as here, the evidence going to each count is relevant and admissible to other counts. For that reason, Mr. Gerace's invocation of judicial economy principles is inapposite. Third, to the extent Mr. Gerace argues that severance of counts will abate prejudicial spillover stemming from the introduction of IOC evidence in a second, Gerace-specific trial, the argument is misplaced as such evidence is integral to the conspiracy charged in Count 2, is relevant to the coercive atmosphere surrounding the sex trafficking conspiracy, and has been rejected by the Court previously in in the context of prior severance motions and defense arguments seeking to preclude IOC evidence. To that end, the government incorporates by reference the arguments it previously made in opposition to Mr. Gerace's prior efforts to exclude IOC evidence. *See generally* Gov't's Consol. Resp. in Opp. to Defs.' Mots. in Limine to Preclude IOC Evid., ECF No. 533, (dated June 20, 2023). All told, owing to the strong factual, evidentiary, and legal nexus between the maintaining-a-drug-involved premises, sex trafficking, bribery, and drug conspiracy charges, keeping Counts 7 and 9 joined with Counts 2, 6, and 8 would not substantially prejudice Mr. Gerace as the evidence and charges are integrally related and

would be presented at both trials.  And to the extent he argues as much, Mr. Gerace's vague, unspecified, and undeveloped speedy trial arguments are premature, and thus cannot presently serve as a basis for severance.

Ultimately, as has already been explained in this case, its Mr. Gerace's burden to demonstrate that the existing joinder of offenses creates "'substantial prejudice,' which entails showing that a miscarriage of justice would occur if severance were denied."  Decision & Order, at 8, ECF No. 442, (dated Apr. 28, 2023) (quoting *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984)); *United States v. Bongiovanni*, No. 1:19-CR-227-JLS-MJR, 2023 WL 3143894, at *3 (W.D.N.Y. Apr. 28, 2023).  Mr. Gerace has not—and cannot—meet that burden.

### A.    Mr. Gerace Waived Any Argument that the Continued Joinder of Counts Would Substantially Prejudice Him

In failing to cite the applicable rule, case law, or concept, Mr. Gerace waived any argument that the continued joinder of Counts 2, 6, 7, 8, and 9 would substantially prejudice him.  To the extent he argues that severance of counts will prejudice him at all, he does so in cursory fashion, devoting only two-and-a-half sentences to the concept.  This is hardly sufficient to trigger meaningful judicial review, let alone carry the "heavy burden" justifying severance pursuant to Rule 14, and is by itself reason to deny Mr. Gerace's motion.  *Amato*, 15 F.3d at 237.

Nor is this the first time Mr. Gerace has failed to adequately develop an argument in his bid for severance relief.  Previously, a Court in this case admonished the parties—albeit

proceeding with different counsel—for failing to identify the proper legal standards governing severance. *See Bongiovanni*, 2023 WL 3143894, at *1 n.4. Despite this, Mr. Gerace fails to identify *any* of the rules or cases, or even the pertinent principles governing severance, in his Motion. *See generally* Mot. to Sever Counts.

In a view shared by multiple trial courts within this circuit, the Second Circuit advises that perfunctorily raised issues are "no substitute for 'stat[ing] reasoned arguments based on cited authority setting out grounds for" relief. *Corsini v. Nast*, 613 F. App'x 1, 3 (2d Cir. 2015) (unpublished) (quoting *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999)); *cf. United States v. Lake*, No. 14-CR-0264(JS), 2023 WL 8810620, at *4 (E.D.N.Y. Dec. 20, 2023) (applying the inadequate briefing doctrine to criminal matters in district court); *see Lyn v. Incorporated Village of Hempstead*, No. 03 CV 5041, 2007 WL 1876502, at *16 n.13 (E.D.N.Y. June 28, 2007) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . ." (alteration in original) (internal quotation marks omitted)); *In re Weatherford Int'l Sec. Litig.*, No. 11CIV1646LAKJCF, 2013 WL 12185082, at *2 (S.D.N.Y. Nov. 19, 2013) (deeming an argument consisting of "two paragraphs comprising five sentences" raised in a reply brief waived). Yet, in raising conclusory, passing references to mere "prejudice"—which, notably, is not the standard under Rule 14—that is a substitution Mr. Gerace would have this Court make. Mot. to Sever Counts at 16 ¶ 78.

While Mr. Gerace might discount them, issues of party-presentation and waiver speak to the underpinnings of neutrality and passivity that characterize the American judicial

system.  In that vein, Mr. Gerace's briefing omissions are significant because they suggest that he intends for this Court to "form an argument for him, by looking into the record to . . . examin[e] various combinations of the[] facts in light of the legal doctrines he [fails to] mention." *Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002).  "But that is simply not [the Court's] job, at least in a counseled case." *Id.*  Rather, "[i]n our adversarial system of adjudication, [courts] follow the principle of party presentation," which counsels that Mr. Gerace—not the government, and certainly not the Court—is "responsible for advancing the facts and argument entitling [Mr. Gerace] to relief."  *United States v. Sineng-Smith*, 590 U.S. ----, 140 S.Ct. 1575, 1579 (2020) (Ginsburg, J.); *see Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1251 (7th Cir. 2022) (noting that it is not the court's "job to do the legal research that a party fails to do" (internal quotations omitted)); *see also* Judith Resnik, *Managerial Judges*, 96 HARV. L. REV. 374, 448 n.23 (1982) ("In an adversarial system, the parties control the pace and shape of the litigation. They investigate, prepare, and present evidence and arguments. Some proceduralists identify 'party-presentation' and 'party-prosecution' as the two fundamental elements of adversarialism."); Note, *Identifying and Remedying Ineffective Assistance of Criminal Defense Counsel: A New Look After United States v. Decoster*, 93 HARV. L. REV. 752, 781 (1980) ("The adversary system is based on two fundamental principles: the principle of party-presentation and the principle of party-prosecution." (internal quotations omitted)).

Application of this principle weighs heavily in favor of deeming any "substantial prejudice" argument waived.  Neither the words nor the concept of substantial prejudice appear in Mr. Gerace's Motion to Sever Counts.  Indeed, no part of Mr. Gerace's argument—

which rests principally on misplaced notions of judicial economy—can be construed to advance the contention that continued joinder will substantially prejudice him.  Accordingly, the Court should deny Mr. Gerace's Motion to Sever Counts on this basis alone.

### B.    Mr. Gerace's Prejudice Arguments Fail on the Merits

Even if the Court were to consider Mr. Gerace's arguments on the merits, those arguments fail.  Mr. Gerace argues, first and foremost, that severing counts would advance judicial economy and "mitigat[e] against concerns regarding spillover prejudice from allegations contained in the separate counts."  Mot. to Sever Counts at ¶ 78.  Separately, in his response to Mr. Bongiovanni's current motion to sever, Mr. Gerace argues that severing counts as opposed to defendants would "narrow the scope of evidence that would be presented at the second trial," and specifically preclude any reference of Italian Organized Crime in a second Gerace trial.  *See* Response to Mot. to Sever Def. by Co-Def. Joseph Bongiovanni, ECF No. 703, (dated Dec. 27, 2023).   Finally, he suggests in passing that severance of counts would "alleviate implications Gerace's constitutional Speedy Trial rights that were impacted by the Government's motion to disqualify Gerace's counsel approximately six weeks before trial."  Mot. to Sever Counts at ¶ 79.  None of these arguments amount to "substantial prejudice."

### i.    No Prejudice Can Incur Where the Evidence is Admissible Across the Joined Counts

First, Mr. Gerace cannot show substantial prejudice—or meaningful efficiency gains—where, as here, the evidence would be "admissible on all counts."  *United States v. Khandakar*, 955 F.Supp.2d 268, 271 (S.D.N.Y. 2013); *Amato*, 15 F.3d at 236 (noting that

"[j]oinder is proper where the same evidence may be used to prove each count"); *United States v. Handlin*, 366 F.3d 584, 591 (7th Cir. 2004) (noting that it is "clear that 'prejudice requiring severance is not shown if evidence on the severed counts would be admissible in the trial of the remaining counts'" (quoting *United States v. Rollins*, 301 F.3d 511, 519 (7th Cir. 2002))).

In that regard, Mr. Gerace's spillover argument misapprehends the factual, evidentiary, and legal relationship between the charges alleged in the Second Superseding Indictment. Mr. Gerace appears to labor under the misconception that because Counts 7 and 9 do not charge Mr. Bongiovanni or facially reference the bribes Mr. Gerace paid to him, they are categorically distinct from the Counts 2, 6, and 8. *See* Mot. to Sever Counts at 16 ¶ 78 (referencing "separate counts"). But there is substantial evidentiary overlap between all the charges Mr. Gerace faces in the Second Superseding Indictment, just as there was when the parties litigated severance earlier this year.

On that score, as the government previously argued in opposition to prior severance motions:

> [E]ach of *the non-conspiracy charges pending against* Mr. Bongiovanni and *Mr. Gerace* are *integrally related to the conspiracy charges*. Furthermore, each of the charges against Mr. Bongiovanni and Mr. Gerace involve criminal acts that "are unified by some substantial identity of facts or participants or arise out of a common plan or scheme." *Rittweger*, 524 F.3d at 177. Indeed, Bongiovanni and Gerace conspired to defraud the United States (see Count 2), and to distribute controlled substances (see Count 8), by Bongiovanni's agreement to help Gerace to conceal and continue his criminal activity, as opportunities arose and in exchange for bribes (see Counts 5–6). *All other conduct involving Bongiovanni and Gerace, including Gerace's sex trafficking conspiracy (Count 9), flowed from and is integrally intertwined with the charged conspiracies.*

Gov't's Updated Resp. at 7–8 (emphases added).

A prior Court in this case agreed.  In the context of denying Mr. Bongiovanni's prior motion for severance, the Court (earlier this year) recognized that one of the counts Mr. Gerace now seeks to sever—Count 9—is factually related to Count 2, which he seeks to have tried in a joint trial with Mr. Bongiovanni.   Specifically, the Court advised:

> Count 9 charges Gerace only with conspiring with others to commit sex trafficking—specifically, conspiring to "recruit, entice, harbor, transport, provide. obtain, and maintain by any means, in and affecting interstate and foreign commerce, persons," to "benefit, financially and by receiving anything of value, from participation in a venture which has engaged in such acts," with knowledge and reckless disregard for "the fact that means of force, threats of force, fraud, and coercion, and a combination of such means, would be used to cause such persons to engage in a commercial sex act." Dkt. 89, at 32.

> *Although Bongiovanni is not charged in Count 9, evidence related to Count 9 would be admissible in a trial of Bongiovanni only, in light of the conspiracy charge in Count 2.*   As discussed above, Count 2 charges Bongiovanni and Gerace with conspiracy to defraud the United States, through Bongiovanni's alleged use of his position as a DEA special agent to protect Gerace and Pharaoh's from federal investigation and criminal charges. . . .   Count 2 contains specific allegations related to overdoses at Pharaoh's by dancers employed by Pharaoh's—including Bongiovanni's direct association with such events—as well as Pharoah's being maintained to facilitate prostitution. . . .   Bongiovanni is not charged with conspiracy to commit sex trafficking, but *his alleged conduct in conspiring with Gerace to defraud the United States is interconnected with Gerace's alleged conduct in Count 9—essentially, enabling the conduct charged in Count 9.*

> The Government provides specific example of evidence it would seek to admit in a joint trial as well as a trial of Bongiovanni only, including testimony from Pharaoh's dancers, Pharaoh's employees, and other witnesses about overdoses and the role drugs played in the alleged sex-trafficking conspiracy. . . . In particular, the Government argues it would offer evidence that Pharaoh's dancers were provided drugs to coerce them to engage in commercial sex acts, and that fear of withdrawal symptoms also played a coercive role.

*Bongiovanni*, 2023 WL 3143894, at *6 (emphases added).

The logic previously adopted by the Court extends to Mr. Gerace's charges in Count 2 (paying a bribe to a public official), Count 7 (maintaining a drug involved premises), and Count 8 (conspiracy to distribute controlled substances).   As previously argued, the conspiracy to defraud the United States and the narcotics conspiracy "are intertwined with the bribery, sex trafficking conspiracy, [and] maintaining of PGC as a drug premises." Gov't's Updated Resp. at 9.   More specifically:

As an example of the interconnectivity amongst the charges and the corresponding proof at trial, a sole trial of Bongiovanni, or a joint trial of Bongiovanni and Gerace, would include testimony from ███████████████████████████████████████████████████████████████████████

. . . .

Additionally, Bongiovanni's relationship with Gerace; the efforts Bongiovanni made to protect and shield Gerace and PGC from investigation; the background, formation, and contours of the narcotics conspiracy and conspiracy to defraud the United States; the drug possession, use, and drug distribution by Gerace and others at PGC

> (*which included distribution to dancers who committed commercial sex acts in exchange for drugs and/or currency*), *are all relevant and admissible* at either a single-defendant trial of Bongiovanni, *or a joint trial with both defendants.* Evidence related to the background of the conspiracy, illegal relationship between the participants, or to explain mutual trust that existed between the co-conspirators is admissible at trial.

*Id.* at 9–10 (footnotes omitted) (emphases added).

Because the narcotics conspiracy, sex trafficking conspiracy, and maintaining-a-premises charges are factually bundled with the other counts Mr. Gerace faces, and the evidence is cross-admissible, continued joinder does not substantially prejudice Mr. Gerace. *Cf. United States v. Andrews*, 166 F. App'x 571, 573 (2d Cir. 2006) (unpublished) (concluding that there was "no possible prejudice" where "the same evidence submitted on the substantive bribery charge was also properly admissible on the conspiracy to bribe charge"). The government's current conditional consent to severing defendants does not suspend that reality. After all, the Second Superseding Indictment has withstood multiple attempts to sever both the defendants and the counts precisely because of the close factual, evidentiary, and legal nexus between the charges and the defendants' repeated inability to demonstrate substantial prejudice.

For these reasons, the continued joinder of counts does not offend principles of judicial economy. In the context of this case, joinder of defendants is the central vehicle to maximize judicial efficiency. But once the defendants are severed, severance of counts will generate negligible gains. Once more, that is because large swaths of evidence are admissible and relevant across Mr. Gerace's charges in case number 1:19-CR-227. By carving the Second Superseding Indictment up by counts, as he does in his Response to Mr. Bongiovanni's

Motion to Sever, Mr. Gerace elevates form over substance, rendering the case against him into pure abstractions. The evidence, however, tells a different, fuller, and interconnected story, and severance cannot be used to preclude the "jury [from] be[ing] informed of the full *nature* . . . of the charged crime[s]." *United States v. Fennell*, 53 F.3d 1296, 1302 (D.C. Cir. 1995) (emphasis added); *accord Old Chief v. United States*, 519 U.S. 172, 188 (1997) ("[T]he prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.").

Finally, to the extent there may be some evidence that is relevant to only specific charges, limiting instructions directing the jury to consider evidence pertaining to each count separately can cure any prejudice. *Cf. Bongiovanni*, 2023 WL 3143894, at *7 ("[A] joint trial will not result in the substantial prejudice required to grant severance under Rule 14, especially in light of the availability of limiting instructions to mitigate any prejudice."). For these reasons, the inclusion of Counts 7 and 9 in a joint, Gerace-specific trial with Counts 2, 6, and 8 does not require severance.

### ii.    Mr. Gerace's Prejudicial Spillover Argument Related to IOC Evidence is Misplaced

In his response to Mr. Bongiovanni's motion to sever, Mr. Gerace argues that severance of counts will preclude the government from "present[ing] IOC evidence" in connection with Counts 7 and 9. Resp. to Mot. to Sever, at 5. While the government does not impute any bad faith onto Mr. Gerace's presentation, it notes that, ordinarily, it lacks the

opportunity to reply to a brief responsive to another party's motion. It is the government's position that arguments Mr. Gerace raised outside of the four corners of his own Motion to Sever Counts should be deemed improperly presented, and thus waived. *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2021 WL 5154110, at *5 (S.D.N.Y. Nov. 5, 2021) (Nathan, J.) ("Because this argument is raised for the first time on reply, it is waived."); *Fisher v. Kanas*, 487 F. Supp. 2d 270, 275 (E.D.N.Y. 2007) (holding that party waived argument by failing to raise it in an opening brief). However, in an abundance of caution, the government addresses this argument on the merits, too.

Putting aside that Mr. Gerace's concern regarding the presentation of IOC evidence overlooks the substantial factual overlap in the Counts, it is a far cry from the bases for severance cognizable under Rule 14—namely, bases relating to the substantial prejudice a defendant will face in the event of continued joinder. This Court has already held that the "term 'Italian Organized Crime,' because it's used in the Indictment, can be used at trial without limitation." Tran. Oral Arg., at 56–57, (dated Oct. 31, 2023). More fundamentally, Mr. Gerace appears to suggest that continued joinder would prejudice him because allegations related to or referenced IOC pertain only to the Bongiovanni-related offenses. That is incorrect.

As the government previously argued, "the proof at trial will establish that Gerace . . . held himself out as being associated with IOC—or, at least was aware that others believed he was." Gov't Mem. in Opp. to Def. Gerace's Mot. to Sever., at 9, ECF No. 328, (dated Dec. 09, 2022); *see generally id.* at 10–11; Gov't Consol. Resp. in Opp. to Defs.' Mots. in

Limine to Preclude IOC Evid., ECF No. 533, (dated June 20, 2023).  The government intends

to use this and other evidence at trial to establish that Mr. Gerace held himself out as, or

allowed others to believe that he was, associated with IOC to obtain benefits for himself and,

critically, to exert influence or control over others.  "This is directly relevant to the charges

*involving drug distribution*, *sex trafficking* (through force, fraud, and coercion), bribery, and

others."  *Id.* at 11–12 (emphasis added).

The government's prosecutorial theory is consistent with both the holding and the

logic previously adopted by this Court in largely denying the defendants' motion to limit IOC

evidence.  Just as the government is not "precluded from prosecuting someone for giving folks

favorable treatment because they're involved in organized crime," Tran. Oral Arg., at 55,

(dated Oct. 31, 2023), the government should not be limited in its presentation of evidence

that Mr. Gerace used his purported connection to IOC—or his reputation for being associated

with IOC—to commit sex trafficking.   Finally, the potential for spillover evidence be

contained through limiting instructions.  *See Bongiovanni*, 2023 WL 3143894, at *7.

In sum, now, just as before, Mr. Gerace "cannot plausibly claim that reference to IOC

in the charges only [related] only [to] Bongiovanni will prejudice him such that severance

under Rule 14 is warranted."  Gov't Mem. in Opp. to Def. Gerace's Mot. to Sever., at 12.[2]

---

[2]        Mr. Gerace knows that the government intends to use IOC-related evidence to
prove the narcotics and sex-trafficking-related offenses.  In his response to Mr. Bongiovanni's
motion, Mr. Gerace quoted the government's memorandum of law in opposition to Mr.
Gerace's prior motion for severance.  *See* Resp. to Mot. to Sever at 5 ("The Government has
previously stated that 'assuming *arguendo* that reference to IOC at trial only pertains to
Bongiovanni, any spillover effect on Gerace may be easily mitigated by a curative
instruction.'" (quoting Gov't Mem. in Opp. to Def. Gerace's Mot. to Sever., at 12)).  On the

### iii.   Mr. Gerace's Undeveloped Constitutional Speedy Trial Argument is Meritless

In passing, Mr. Gerace argues that "[s]everance of the Counts would also partially alleviate implications to Gerace's constitutional Speedy Trial rights that were impacted by the Government's motion to disqualify Gerace's counsel approximately six weeks before trial." Mot. to Sever Counts at 16 ¶ 19.  For the reasons set forth above, this argument is undeveloped and should, therefore, be deemed waived.  Moreover, it is belied by the record and unripe.

Prior to the government's motion to disqualify Attorney Soehnlein, the three trial dates set forth by Courts in this district were adjourned due to the defendants and/or their attorneys' conduct.  As the Second Circuit acknowledge in *United States v. Tigano*, 880 F.3d 602 (2d Cir. 2018), "[i]t will be an exceptional case where . . . a delay caused by a defense attorney counts against the government under the *Barker* analysis."  *Id.* at 616.  Indeed, "[u]nless the record shows otherwise, [courts] normally presume that a defense attorney is carrying out his or her client's chosen trial strategy and that any delays resulting from that strategy count against the defendant."  *Id.* at 616–17.  In view of this principle, delays resulting from Mr. Bongiovanni's attorney's withdrawal, Mr. Gerace's witness list, Attorney Soehnlein's withdrawal, Mr. Cohen's vacation, and, later, Mr. Cohen's purported termination, do not count against the government.

Finally, the government rejects the argument that delay stemming from the

---

very page Mr. Gerace quotes from, the government explained how IOC-related evidence bore on counts unrelated to Mr. Bongiovanni, including the sex trafficking offense.  Plainly, the Court should reject his contention that "there is no legitimate argument for the inclusion of [IOC-related] evidence at [a] second trial" on severed counts.  *Id.*

government's motion to disqualify Attorney Soehnlein counts against the government under the *Barker* factors, and at a minimum it is premature. In considering the interplay between motions to disqualify and constitutional speedy trial rights, courts look to whether attorneys were properly disqualified. *See, e.g.*, *United States v. Cain*, 671 F.3d 271, 296–97 (2d Cir. 2012); *United States v. Williams*, 439 F. App'x 254, 257 (4th Cir. 2011) (unpublished). If disqualification is proper, the government cannot be credited for the delay resulting from the disqualification motion's resolution. *See Cain*, 671 F.3d at 296–97 (("[A]s Cain himself acknowledges, a significant factor contributing to the delay was the need to determine whether it would be necessary to disqualify his lawyer, Musitano, due to a conflict of interest. While Cain disparages the move to disqualify Musitano as a 'deliberate delay tactic' that should be counted against the government in the speedy trial calculus, given that we have concluded that the disqualification was proper, it follows a fortiori that the resulting delay was justified."); *Williams*, 439 F. App'x at 257 ("[The appellant] asserts that, because the Government's motion to disqualify [his attorney] was made in bad faith, the continuance period following the disqualification should not have been excluded from the speedy trial calculation. . . . For the reasons explained *supra*, the disqualification was properly granted and thus we conclude that this claim fails."). And even in if the Court denies the motion to disqualify, appellate courts have been reluctant to attribute delays prompted by disqualification motions to the government. *Cf., e.g.*, *United States v. Knight*, 61 F. App'x 710, 711 (D.C. Cir. 2003) (per curiam) ("The [disqualification and withdrawal] motions in question here involved potential conflicts of interest in defense counsel's representation of Knight. The issues were not routine, were factually complex, and had serious implications for Knight's Sixth Amendment rights. Because Knight has given us no reason to conclude

that the time required to prepare those motions should have been excluded from the Speedy

Trial Act computation, we affirm the judgment of the district court.").  At this juncture,

however, the Court need not—and should not—base its determination of Mr. Gerace's

Motion to Sever Counts on unripe, undeveloped constitutional speedy trial concerns.

## IV.   CONCLUSION

For the reasons stated above, the government respectfully requests that the Court

deny Mr. Gerace's Motion to Sever Counts (ECF No. 704).

DATED:  Buffalo, New York, December 29, 2023.

COREY R. AMUNDSON                    TRINI E. ROSS
Chief                                United States Attorney


BY:   s/JORDAN DICKSON          BY:   s/JOSEPH M. TRIPI
      Trial Attorney                  Assistant United States Attorney
      Public Integrity Section        Western District of New York
      U.S. Department of Justice      138 Delaware Avenue
      Criminal Division               Buffalo, New York 14202
      1301 New York Ave. NW, Suite 1000   716/843/5839
      Washington, D.C. 20530         Joseph.Tripi@usdoj.gov
      202-597-0508
      Jordan.Dickson@usdoj.gov   BY:   s/ NICHOLAS T. COOPER
                                       Assistant United States Attorney
                                       United States Attorney's Office
                                       Western District of New York
                                       138 Delaware Avenue
                                       Buffalo, New York  14202
                                       716/843-5830
                                       Nicholas.Cooper@usdoj.gov


                                 BY:   s/CASEY L. CHALBECK
                                       Assistant United States Attorney
                                       United States Attorney's Office
                                       Western District of New York
                                       138 Delaware Avenue

Buffalo, New York  14202
716/843-5881
Casey.Chalbeck@usdoj.gov