

**U.S. Department of Justice**

*United States Attorney's Office*
*Western District of New York*

---

*Federal Center*
*138 Delaware Avenue*
*Buffalo, New York 14202*

April 22, 2024

Hon. Lawrence J. Vilardo
United States District Judge
Western District of New York
2 Niagara Square
Buffalo, New York 14202

**Re:** *United States v. Gerace*, **1:19-CR-227; 1:23-CR-37**

Dear Judge Vilardo:

The government offers the following letter in response to the oral argument held on March 15, 2024, concerning the government's motion to disqualify. Specifically, this letter addresses the Court's suggestion that § 1515(c) prohibits inquiry into an attorney's state of mind; clarifies that there is no circuit split regarding whether §1515(c) is an element or a statutory defense; responds to assertions raised by Attorney Soehnlein's counsel for the first time at oral argument; and unequivocally rejects the Court's assertion that the government brought its motion to disqualify in bad faith and intentionally failed to cite § 1515(c).

    **1.**    **Section 1515(c) Does Not Prohibit Inquiry Into an Attorney's State of Mind**

During the oral argument on March 15, 2024, the Court stated that the "safe harbor" provision identified in 18 U.S.C. § 1515(c) prohibits the government from "getting into the head of defense counsel when defense counsel is making a decision that is related to representing his or her client." Oral Arg. Mot. to Disqualify Trans. at 18, (dated Mar. 15, 2024) ("Trans."). However, the government's research demonstrates that no court that has cited § 1515(c) has embraced that reading.

To the contrary, as the Ninth Circuit explained when interpreting § 1515(c), "[i]t is *well settled* that in the prosecution of a lawyer for conduct stemming from his or her representation of a client," the government may use evidence—including expert testimony on the lawyer's ethical obligations—"to establish the lawyer's *intent and state of mind*." *United States v. Kellington*, 217 F.3d 1084, 1098 (9th Cir. 2000) (emphases added); *accord United States v. Lonich*, 23 F. 4th 881, 906–07 (9th Cir. 2022) (concluding that attorney who instructed client

to lie to a grand jury was not providing bona fide legal services under § 1515(c) even though attorney insisted that, in his view, his instructions were consistent with the truth).

Consistent with this approach, a panel of the Second Circuit explained in *United States v. St. John*, that § 1515(c) confers no protection where a jury "find[s] that the defendants *knowingly* conspired to pursue *an* unlawful purpose," which "by definition, excludes the possibility of bona fide legal advice." 267 F. App'x 17, 22 (2d Cir. 2008) (emphases added). The Court's reading of § 1515(c) is also at odds with the Second Circuit's holding in *United States v. Simels*, 654 F.3d 161 (2d Cir. 2011). There, after considering evidence of the defendant-attorney's "intent," the Second Circuit found the § 1515(c) "defense" inapposite where a jury could find that the defendant-attorney was not "providing . . . lawful, bona fide, legal representation services" when he attempted to improperly influence witness testimony. *Id.* at 174. And, consistent with these decisions, the United States Supreme Court has recognized that § 1503 may be used to "deter[] and punish[] litigation-related misconduct." *Hubbard v. United States*, 514 U.S. 695, 714 (1995).

The government's position in this case accords with this precedent. Specifically, the government has argued that a reasonable possibility exists that Mr. Gerace's counsel was not providing lawful legal services when they misrepresented the materiality of Judge Sinatra's relatives to Judge Sinatra pursuant to 28 U.S.C. § 455(b)(5)(iv). Thus, the issue is **not** whether Mr. Gerace *could* place Judge Sinatra's relatives on his witness list owing to their identification in discovery; the issue is whether Mr. Gerace and/or his attorneys *lied* to Judge Sinatra to *force* his Honor's recusal and delay proceedings.[1]

Considering that background—and combined with the recording laying out the scheme to orchestrate Judge Sinatra's recusal—it is equal parts significant and troubling that both witnesses, when interviewed by the FBI, denied the connection or relationship with Mr. Gerace that his attorneys proffered to Judge Sinatra. The issue of the actual materiality of the witnesses to Mr. Gerace's defense exists independent of whether Mr. Gerace and his attorneys had a "legitimate reason"—i.e., presence in the discovery—"to put the person on the witness list."[2] Trans. at 45; *cf. United States v. McCabe*, 323 F. App'x 580, 581 (9th Cir.

---

[1] Assuming *arguendo* that counsel did not knowingly participate in such a scheme, Mr. Gerace's provision of false information to force Judge Sinatra's recusal subjects him to an obstruction of justice enhancement upon conviction. *Cf. United States v. Morrison*, 153 F.3d 34, 52 (2d Cir. 1998) (affirming an obstruction of justice sentencing enhancement where defendant "deliberately lied about material issues in an attempt to affect the outcome of the trial"). In *Morrison*, the defendant identified one of Judge Wood's close friends and her husband as a potential defense witness at trial, embellishing details as to their materiality. *See* Br. United States of Am., at 74, *United States v. Morrison*, No. 97-1370, 1997 WL 33621975, (dated Dec. 9, 1997). After finding that the defendant "attempted to obstruct justice by fabricating a story about having had business dealings with [the Judge's] husband," *id.* at 123, to "force her recusal," *id.* at 126, the Court imposed a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. *Id.* at 123.

[2] During oral argument, the Court seemed to suggest that the mere fact that the witnesses' names were identified (in some form) in discovery ends the inquiry into whether or not the ultimate recusal of Judge Sinatra based on those names on the witness list was improperly

2

2009) (unpublished) ("'Making misrepresentations to the fact finder is inherently obstructive because it frustrates the rational search for truth. It may also delay the proceedings.'" (quoting *United States v. Thoreen*, 653 F.2d 1332, 1340–41 (9th Cir. 1981))).

In any event, considering *St. John* and *Simels*, and the persuasive weight of other circuit courts, *see infra*, this Court should adopt the same, or similar rationale when deciding this issue.

### 2. There is No Circuit Split Regarding Whether § 1515(c) is an Element or a Statutory Defense.

There is no circuit split on the issue of whether § 1515(c) is an element or a statutory defense.

The circuit courts substantively addressing § 1515(c) have characterized it as a statutory defense. *See, e.g., United States v. Kloess*, 251 F.3d 941 (11th Cir. 2001) (concluding that § 1515(c) is an affirmative defense); *Kellington*, 217 F.3d at 1098 (characterizing § 1515(c) as a "complete defense to obstruction of justice"); *United States v. Ken Liang*, 727 F. App'x 927, 930 (9th Cir. 2018) (unpublished) (characterizing § 1515(c) as a "statutory defense[]"); *United States v. Crawford*, 60 F. App'x 520, 531–32 (6th Cir. 2003) (unpublished) (characterizing § 1515(c) as a "defense").

While the Second Circuit has not directly decided the issue, *dicta* from the *Simels* and *St. John* cases echoes the Circuit decisions that have concluded it is a defense. *See Simels*, 654 F.3d at 174 (characterizing § 1515(c) as a "defense"); *St. John*, 267 F. App'x at 22 (declining to consider whether § 1515(c) is an affirmative or complete defense where district court's

---

manufactured. *See* Trans. at 46. However, whether the witness names were found in the discovery materials is of no consequence. The issue is whether the identified witnesses were actually material to Mr. Gerace's defense. It was the purported materiality of these witnesses to Mr. Gerace's defense that was critical to Judge Sinatra's decision as to whether 28 U.S.C. § 455(b) required his recusal. *See* Tran. Status Conf. at 4, (dated June 21, 2023) ("As to [witnesses] 240 and 171, the statute, which is 28 United States Code 455(b)(5)(iv), I–V, four, mandates a non-waivable recusal by me if any one of those two—if either one of those two is likely to be called as a material witness at trial. Mr. Cohen, why did you list 171 and 240 as witnesses and do you have any proffer that you would like to make, other than what's on the witness list?").

In response to Judge Sinatra's inquiry, counsel for Mr. Gerace affirmatively represented, in sum and substance, that both witnesses' testimony, based on their alleged relationships with Mr. Gerace, would be material to his defense. Based on such representations, Judge Sinatra concluded that he was required, under § 455(b), to recuse himself from the case. However, such assertions by counsel were directly contradicted by the witnesses' own words when they were thereafter interviewed by the FBI. Thus, the recusal was based on the false assertions by defense counsel as to the materiality of the witnesses' anticipated testimony. The fact that the witnesses further reported that they had never been contacted or interviewed by anyone associated with Mr. Gerace's defense only highlights the intentional nature of the misrepresentations made to Judge Sinatra as to the materiality of those witnesses' testimony to Mr. Gerace's defense.

instruction that jury had to find defendant-attorney "conspired to pursue an unlawful purpose" "by definition" excluded the possibility that defendant-attorney provided "bona fide legal advice").

Similarly, the Ninth, Seventh, and Third Circuits have addressed § 1515(c) in *dicta* in ways consistent with the government's theory of the case. *See, e.g.*, *Lonich*, 23 F.4th at 907 ("Lonich also argues that he was Houseco's lawyer and that, under 18 U.S.C. § 1515(c), the prohibition on obstructing an official proceeding 'does not prohibit or punish the providing of lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding.' This argument is unavailing. Lawyers of course have some latitude in helping clients frame their anticipated testimony in a light most favorable to them, *consistent with the truth*." (emphasis added)); *cf. United States v. Davis*, 183 F.3d 231, 248–49 (3d Cir. 1999) (rejecting government's theory of witness tampering offense against attorney where "there [was] no allegation that [attorney] used *misleading conduct*, intimidation, physical force, or threats" (emphasis added)); *United States v. Lewis*, 411 F.3d 838, 845 (7th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Aug. 11, 2005) ("Section 1515(c), however, is primarily concerned with protecting defendants from protective orders that would constrain investigation and preparation for their defense in criminal cases or other "official" proceedings. There is nothing 'official' about Lewis's action [suing victim of his crime], and thus it does not qualify for the exemption recognized by § 1515(c).").

The Fifth Circuit, proceeding under plain error review—declined to answer whether § 1515(c) is a statutory defense or something else. *See United States v. Lorza Ramirez*, No. 22-40726, 2023 WL 5696105, at *1 (5th Cir. Sept. 5, 2023); *United States v. Fisch*, 851 F.3d 402, 408 (5th Cir. 2017).

Thus, every circuit that has meaningfully considered § 1515(c) agrees that it confers no protection to attorneys who <u>do not</u> provide bona fide legal services. In that regard, it is uncontested that orchestrating the recusal of a federal judge under false pretenses is both unlawful and unethical, and therefore does not constitute a bona fide legal service.[3] *See* Govt.'s Rev'd & Super. Mot. to Disqualify at 65. Thus, whether § 1515(c) confers protection to Attorney Soehnlein is a question of fact ill-suited for resolution at the motion to disqualify stage.[4]

---

[3] Indeed, it is difficult to fathom how, on the one hand, embellishing the materiality of witnesses to force a judge's recusal could subject a defendant to an obstruction enhancement at sentencing, while, on the other, an attorney's false representations of materiality to force the same recusal could reflect bona fide legal services. That construction would immunize the attorney for the same conduct for which his client—the less legally sophisticated actor—is punished. *Cf. See* Br. United States of Am., at 74, *United States v. Morrison*, No. 97-1370, 1997 WL 33621975, (dated Dec. 9, 1997).

[4] As to the fourteen <u>District Court</u> opinions that have cited § 1515(c), only one court in the Eastern District of North Carolina has held that § 1515(c) represents an element of the offense. *See United States v. Jackson*, 926 F. Supp. 2d 691, 717 (E.D.N.C. 2013). Even then, that court concluded that "the government need only plead the inapplicability of § 1515(c) in cases such as that . . . involving the alleged actions [of] attorneys." *Id.*

4

### 3. Assuming Attorney Soehnlein Lacked "Corrupt Intent," He is Nevertheless a Witness to his Client's Crime and Should Therefore Be Disqualified From Representing Mr. Gerace.

The issue before the Court is not whether, by proof beyond a reasonable doubt, Attorney Soehnlein has committed a federal criminal offense. The only issue before the Court is whether the circumstances surrounding the recusal of Judge Sinatra require Mr. Soehnlein's disqualification as a matter of law. As set forth in the government's motion, *Fulton* and its progeny require such disqualification because no rational defendant would seek an attorney's representation where the attorney is a target, subject, or witness to the defendant's crimes—and caselaw demonstrates that the recusal Mr. Gerace orchestrated here may amount to obstruction. Therefore, disqualification is required.

During the June 21, 2023, hearing before Judge Sinatra concerning the placement of one of his Honor's relatives on Mr. Gerace's defense witness list, Attorney Soehnlein represented that Mr. Gerace and the relative had a "particularly close" relationship. In a subsequent interview with the FBI, that relative unequivocally denied having any relationship with Mr. Gerace, let alone the "particularly close" one Attorney Soehnlein represented to Judge Sinatra. In addressing whether Attorney Soehnlein had corrupt intent when relaying

---

The other thirteen cases, none of which are in the Second Circuit, are as follows:

*United States v. Fitzsimons*, 605 F. Supp. 3d 132, 137 (D.D.C. 2022);
*United States v. Fisch*, No. H-11-722-1, 2021 WL 2396435, at *2 (S.D. Tex. Mar. 12, 2021);
*United States v. Fisch*, No. CR H-11-722, 2018 WL 2335743, at *3 (S.D. Tex. May 23, 2018);
*United States v. Laroque*, No. 4:12-CR-88-1H, 2015 WL 306977, at *2 (E.D.N.C. Jan. 21, 2015);
*United States v. Reece*, No. CRIM. 12-00146, 2013 WL 5234227, at *7 (W.D. La. Sept. 13, 2013);
*United States v. Woodson*, No. CR 09-117-LPS, 2013 WL 4717705, at *5 (D. Del. Sept. 3, 2013) (denying defendant's motion for an affirmative defense instruction pursuant to § 1515(c) because "Defendant is alleged to have fabricated false documents and corruptly persuaded witnesses, neither of which are within the scope of 'bona fide, legal representation services'" (quoting § 1515(c));
*United States v. Lyons*, No. CRIM. 10-10159-PBS, 2012 WL 1593175, at *3 (D. Mass. May 4, 2012);
*United States v. Flynn*, 709 F. Supp. 2d 737, 742–43 (D.S.D. 2010); *U*
*United States v. Holloway*, No. CR-F-08-224 OWW, 2009 WL 4048748, at *5 (E.D. Cal. Nov. 20, 2009), *rev'd sub nom. United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013), *as amended* (Aug. 28, 2013);
*United States v. Fumo*, No. CRIM.A.06-319, 2009 WL 1688482, at *54 (E.D. Pa. June 17, 2009);
*Crawford v. United States*, No. CIV. 04-CV-71543, 2008 WL 2948055, at *4 (E.D. Mich. July 31, 2008) ("Here, as at least implicitly recognized by the Court of Appeals when it found that Crawford's § 1515(c) claim could not succeed, Crawford was not engaged in "bona fide legal representation services" when he conspired with his client, co-defendant Erie Adams, and others in locating and killing a government witness, Brian McClendon." (quoting § 1515(c)));
*United States v. Brown*, No. CRIM.07 75 CKK, 2007 WL 2007513, at *8 (D.D.C. July 9, 2007);
*United States v. Kloess*, 97 F. Supp. 2d 1084, 1090 (M.D. Ala. 2000), *rev'd and remanded*, 251 F.3d 941 (11th Cir. 2001).

5

these inaccurate representations to Judge Sinatra, counsel for Attorney Soehnlein represented that his client "absolutely, unqualifiedly, it's not even close, did not have a corrupt intent." Trans. at 19.

Assuming *arguendo* that Attorney Soehnlein did not knowingly misrepresent facts to Judge Sinatra, he would nevertheless be a witness to his client's fraud. *Cf.* N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 3.7(a). That is, if Attorney Soehnlein did not affirmatively misrepresent the witness's "particularly close" relationship with Mr. Gerace, he unwittingly relayed false information provided by his client which resulted in the recusal of Judge Sinatra. Because Attorney Soehnlein's role in conveying false information from his client to the Court renders him a witness to his client's misconduct, no "rational defendant would knowingly and intelligently be represented" by him. *Fulton*, 5 F.3d at 613. Mr. Gerace cannot rationally choose an attorney to represent him who can be called by the government to testify against him. Disqualification is required.

In any event, during oral argument, the Court discussed the implications of denying the disqualification motion, namely that, if Attorney Soehnlein continues to represent Mr. Gerace and Mr. Gerace is convicted at trial, the conviction may be reversed on appeal based on the existence of the per se conflict, a result which *Fulton* makes very clear. *See* Trans. at 45 ("[T]he problem . . . with denying the motion [to disqualify counsel] is that we end up maybe trying the Gerace case twice."). However, the Second Circuit instructs that, "in the disqualification situation, any doubt is to be resolved in favor of disqualification," *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). The reason for this is important—because the defendant's constitutional interest in effective assistance of counsel, the government's interest in the finality of any conviction, the Court's independent responsibility to "maintain public trust in the integrity of the Bar," *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 237 (2d Cir. 1977), society's interest in the efficient expenditure of judicial resources, and the general interests of justice are too important to risk.

> 4. **The Government Unequivocally Rejects the Court's Suggestion that the Government Brought its Motion to Disqualify in Bad Faith and Intentionally Failed to Cite § 1515(c).**

Despite receiving evidence that Mr. Gerace's current and prior counsel, at a minimum, served as conduits for their client's false representations to Judge Sinatra, the Court has repeatedly accused the government of manufacturing a conflict of interest "to get . . . Mr. Soehnlein off the case." Trans. at 36. Moreover, the Court accused the government of either committing a crime or breaching an ethical obligation by intentionally failing to cite § 1515(c). *See* Trans. at 6–7. The government unequivocally rejects both accusations.

> a. **The government brought its motion and initiated a criminal investigation in good faith.**

The government moved to disqualify Eric Soehnlein because it was *required* to do so under Second Circuit law, not because it *wanted* to. For years, the government has repeatedly sought to bring this case to trial. Part of what motivated the government's efforts was the

need to protect the victims and witnesses in the case, a motivation that has become even stronger after the investigation into the death of Crystal Quinn, a former friend and associate of Mr. Gerace who was cooperating with the government, resulted in a new indictment charging Mr. Gerace, and others, with her murder.

Against that backdrop, there is no legitimacy to the assertion that the government brought the motion to disqualify Attorney Soehnlein to delay the trial or for some other bad faith purpose. As the government has repeatedly argued to the Court, it was <u>required</u> under *United States v. Fulton*, 5 F.3d 605 (2d Cir. 1993) to bring the motion to disqualify once it learned of the existence of a potential per se, i.e., unwaivable, conflict. That *per se* conflict materialized—irrespective of any investigation—once the government learned of the recording detailing the scheme to orchestrate Judge Sinatra's recusal. Consistent with *Fulton's* imperative, the government "inform[ed] the court of the existence [of a *per se* conflict]" soon after coming into possession of the recording. *Id*. at 613. In doing so, the government was also mindful of the Second Circuit's direct criticism of this District's failure to apprise defendants of the existence of conflicts of interest in *United States v. Williams*, 372 F.3d 96, 109 (2d Cir. 2004). Notably, the *Williams* Court directed its criticism both to the U.S. Attorney's Office and the District Court. *See id*. ("We have significant concerns in this case whether, in fact, the government and the court notified Williams [of the potential conflict] in a timely fashion.").

The government has repeatedly demonstrated to this Court that its *only* motivation in moving to disqualify Attorney Soehnlein is its desire to ensure that a conflict of interest does not abridge Mr. Gerace's Sixth Amendment right to effective assistance of counsel and imperil any conviction resulting from his trial.

The Court's suggestion that the U.S. Attorney's Office, as well as other components of the Department of Justice unconnected to the Western District of New York, invented the criminal investigation undergirding the motion to disqualify "to get . . . Mr. Soehnlein off the case" is an inaccurate assertion. To be clear, the government is following the directive received by the Second Circuit in *Williams*. As the government attempted to do during oral argument, it now states and restates that its only motivation in seeking the disqualification of Attorney Soehnlein is the identification of information that the government was required to present to the Court because it established a non-waivable conflict of interest between Attorney Soehnlein and Mr. Gerace. This non-waivable conflict of interest prevents Attorney Soehnlein's continued representation of Mr. Gerace. As officers of the Court, the undersigned Assistant United States Attorneys collectively represent that no member of the U.S. Attorney's Office has discussed with us a desire to concoct a criminal investigation to neutralize Attorney Soehnlein as an advocate.

   **b.**  **The government did not breach an ethical duty owed to the Court.**

One of the Court's accusations of bad faith by the government during the March 15th oral argument was a *sua sponte* suggestion that the government had acted unethically and with corrupt intent to influence a judicial proceeding by not identifying or addressing § 1515(c) in its initial filings seeking disqualification. *See* Trans. at 6–7.

The government's failure to address § 1515(c) in its initial motion for disqualification was neither unethical nor in bad faith. Indeed, Attorney Soehnlein earlier in the case omitted the elements of the selective prosecution claim he raised in Mr. Gerace's motion to dismiss the indictment. *See* Mot. Dismiss Indict., at 8–9, ECF No. 515-1, (dated June 09, 2023). Though Attorney Soehnlein had addressed the controlling Supreme Court authority on the issue, he failed to acknowledge or address the requirement under that authority that the claimant in a selective prosecution matter "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). Attorney Soehnlein's failure to cite this controlling authority—authority which negatively impacted his position—did not result in any accusation that he had violated an ethical obligation or attempted to corruptly influence the Court. *See* Oral Arg. Tran., at 22–23, (dated Oct. 31, 2023). The government, for its part, never suggested that Attorney Soehnlein's failure to cite controlling legal authority that hurt his argument was anything other than a good faith error.

Rule 3.3(1)(2) of New York's Rules of Professional Conduct instructs that "[a] lawyer shall not *knowingly* . . . fail to disclose to the tribunal *controlling* legal authority *known* to the lawyer to be *directly adverse* to the position of the client *and not disclosed by opposing counsel*." N.Y. RULES OF PROF'L CONDUCT 3.3(a)(2) (emphases added). For the reasons set forth above, § 1515(c) and the case law that has interpreted it were not "directly adverse" to the government's position. In fact, the government's argument was consistent with, not contrary to, § 1515(c). Moreover, as stated by the government at oral argument, it had unintentionally overlooked the rarely-litigated § 1515(c) provision.[5] Finally, the Rule specifies that the prohibition applies where the controlling legal authority has not been disclosed by opposing counsel. Here, § 1515(c) was raised by counsel for Attorney Soehnlein in their opposition to disqualification.

In sum, the government brought its motion in good faith and pursuant to Second Circuit precedent. Because Second Circuit precedent counsels strongly in favor of

---

5   As to the relevance of § 1515(c) to the government's motion for disqualification, the government notes that not a single case citing the Second Circuit's decision in *Fulton* cites § 1515(c), even though several concern disqualification motions for attorneys implicated in a client's obstruction. *See, e.g.*, *United States v. Elder*, 311 F. Supp. 589, 595–96 (E.D.N.Y 2018) (no mention of § 1515(c) in disqualification matter regarding attorney alleged to have helped client avoid arrest); *United States v. Napoli*, No. 10-CR-150(JG), 2010 WL 1687669, at *3 (E.D.N.Y. Apr. 27, 2010) (no mention of § 1515(c) in disqualification matter regarding attorney who told witness "that he had a legal right to refuse to speak to law enforcement" alongside client who admonished witness not to talk with law enforcement); *id.* (rejecting also proposition that government's allegations must be "proved" at the disqualification stage "to the satisfaction of a jury"); *United States v. Benacquista*, No. 08CR94A, 2008 WL 2371478, at *4 (W.D.N.Y. June 9, 2008) (no mention of § 1515(c) in disqualification matter regarding attorney who allegedly transmitted documents advancing a conspiracy to defraud the United States). In a similar vein, not a single case citing to the Supreme Court's seminal decision on conflicts of interest, *Wheat v. United States*, 486 U.S. 153 (1988), cites to § 1515(c).

disqualification, and for the other reasons set forth above, the Court should grant the government's revised and superseding motion to disqualify.

        Very truly yours,

        Joseph M. Tripi
        Nicholas T. Cooper
        Casey L. Chalbeck