IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

─────────────────────────────

UNITED STATES OF AMERICA,

        v.                                    19-CR-227-LJV
                                            23-CR-37-LJV

PETER GERACE JR.,

               Defendant.

─────────────────────────────

## GOVERNMENT'S MOTION AND MEMORANDUM
## TO RESOLVE ACTUAL AND POTENTIAL CONFLICTS OF INTEREST

The government submits this motion and memorandum to resolve actual and potential conflicts of interest that exist as to counsel for defendant Peter Gerace Jr., Eric Soehnlein, Esq.  The totality of conflicts inherent in Mr. Soehnlein's representation of defendant Gerace should compel the Court to decline to accept any waiver of conflicts by defendant Gerace, and Mr. Soehnlein should be disqualified.

## INTRODUCTION

On April 25, 2024, the Court issued a written decision and concluded that Mr. Soehnlein does not have a *per se* conflict of interest because (1) that there is no reasonable possibility that Mr. Soehnlein committed a crime when he put two names on a witness list that required United States District Court Judge John L. Sinatra, Jr. ("Judge Sinatra"), to recuse himself; and (2) that Mr. Soehnlein is not a witness to procuring false affidavits related to Crystal Quinn's death.  *See* ECF No. 889.  The Court acknowledged that its decision did

not resolve whether Mr. Soehnlein continues to labor under actual or potential conflicts of interests that are waivable by defendant Gerace. *Id.* at 18, n. 9.

Despite the Court's decision that there is not an unwaivable *per se* conflict as to "the 'orchestrated' recusal and the false affidavits," *id.* at 18, there remain actual and/or potential conflicts of interest that require Mr. Soehnlein's disqualification. As this Court has acknowledged, the Supreme Court and Second Circuit have held that "[w]hen a lawyer's conflict, actual or potential, may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an attorney or decline a proffer of waiver." *Id.* at 15. Given the actual and potential conflicts that remain, and in light of the Court's obligation to ensure that "criminal trials are conducted within the ethical standards of the [legal] profession and that legal proceedings appear fair to all who observe them," *Wheat v. United States*, 486 U.S. 153, 160 (1988), this Court should exercise its discretion to disqualify Mr. Soehnlein.

## RELEVANT BACKGROUND

On February 24, 2023, Mr. Soehnlein joined defendant Gerace's defense team. *See* ECF No. 377.

On March 13, 2023, the government filed a motion for a determination of a conflict of interest because Mr. Soehnlein represented a witness who had been interviewed by the government and testified before a federal grand jury regarding defendant Gerace and Pharaoh's Gentlemen's Club. *See* ECF No. 379; *see also* ECF No. 380 (under seal). The

government's motion raised issues with New York Rules of Professional Conduct Rule 1.9(a), which states that a lawyer "who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client gives informed consent, confirmed in writing." The government's motion also raised issues with respect to N.Y. Rule Prof. Conduct 1.6(a)(1) and 1.7(a). On April 18, 2023, following a *Curcio* hearing, Judge Sinatra determined that the conflict was waivable and that defendant Gerace was competent to proceed with Mr. Soehnlein as his attorney. *See* ECF No. 436, Minute entry.[1]

On Friday, June 16, 2023, Mr. Soehnlein and his former co-counsel, Steve Cohen Esq., submitted a witness list on behalf of defendant Gerace to Judge Sinatra, which they later requested to be filed under seal. *See* ECF No. 525-1 (Declaration, June 20, 2023).

On June 21, 2023, the parties, including Mr. Soehnlein, appeared before Judge Sinatra as directed for a status conference. *See* ECF No. 526. During the status conference, Judge Sinatra discussed certain individuals listed on defendant Gerace's witness list and stated, "Mr. Cohen, why did you list 171 and 240 as witnesses and do you have any proffer that you would like to make, other than what's on the witness list?" *See* ECF No. 660 at 4-5. Mr. Soehnlein's former co-counsel, Mr. Cohen, responded:

---

[1] Prior to resolution of the above-described conflict, on March 24, 2023, defendant Gerace was indicted in a separate case and charged with witness tampering. *See United States v. Peter Gerace Jr.,* Case No. 23-CR-037. On April 28, 2023, Judge Sinatra granted the government's motion to join Case Nos. 19-CR-227 and 23-CR-37. *See* ECF Nos. 411 (motion for joinder), 442 (Decision and Order).

Your Honor, I would say that with regard to all three of those witnesses, 239, 240 and 171, **we're getting that from the material that the Government has turned over to us as part of its Jencks. The Grand Jury testimony that we've been given access to brings those names up significantly** and I have a duty to reserve my rights to call them. If you are asking whether I intend to call them, we have to see how the case plays out. I don't know yet, but, certainly, the Government felt it was important enough to question about these three individuals -- we'll say the two individuals. And they are on my list and they have to stay there and whether I use them depends upon the case that the Government puts on.

*Id.* at 5:3-17 (Emphasis added).

Notably, as the government has explained (*see* ECF No. 595, n. 9; *see also* ECF No 660 at 5-6 (transcript of proceedings 06/21/2023), and Transcript 12/1/2023 at 5-6 (under seal)) the two defense witnesses Judge Sinatra questioned defense counsel about (171 and 240) were not names that were brough up in Grand Jury testimony significantly.  First, 171 was not referenced in Grand Jury testimony at all.  Second, 240 was only tangentially and minimally referenced principally in relation to being the owner of a business.  Mr. Soehnlein was at counsel table with his former co-counsel and did not correct or disavow his co-counsel's representations to Judge Sinatra that "[t]he Grand Jury testimony that we've been given access to brings those names up significantly."[2]  Hearing the explanation and observing the parties in real time, Judge Sinatra promptly expressed his view that the placement of the witnesses on the list "appear[ed] to be gamesmanship."  *See* ECF 660 at 10.  Judge Sinatra ultimately

---

[2] New York Rule of Professional Conduct 8.4 provides, among other things, that a lawyer shall not violate the Rules of Professional conduct, assist another to do so, engage in conduct involving dishonesty, or engage in conduct that is prejudicial to the administration of justice. Indeed, "attorneys owe an ethical duty of candor in all of their dealings with the Court." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018); see also *UnfortHassoun v. Searls*, 467 F. Supp. 3d 111, 129 (W.D.N.Y. 2020) (Wolford, C.J.).

recused himself, but in doing so stated, "[G]iven Defendant Peter Gerace, Jr.'s inclusion of two individuals as **supposed character witnesses** among the hundreds of individuals on his witness list, recusal even in the absence of any bias, prejudice, or partiality is now required under 28 U.S.C. 455(b)(5)(iv). The undersigned is hereby recused." *See* ECF No. 535 (Text Order) (emphasis added).[3]

On June 26, 2023, just five days later, Mr. Soehnlein filed a motion to withdraw as counsel for defendant Gerace. *See* ECF No. 541. Due to the *ex parte* and sealed nature of Mr. Soehnlein's declaration and memorandum of law in support of his motion to withdraw, the government is unaware of the precise reasons that Mr. Soehnlein provided in support of his motion to withdraw as counsel. However, in the publicly available portion of Mr. Soehnlein's motion to withdraw, he stated: "I have reviewed the New York State Rules of Professional Conduct Rule 1.16(b)-(e) and the other relevant Federal Rules of Criminal and Civil Procedure as well as the applicable Local Rules," and "[b]ased upon that review, I believe that good cause exists for my withdrawal." *Id.* at 2.

In particular, the ethics rules Mr. Soehnlein cited as requiring his withdrawal included, among others, Rule 1.16(b), which states that "a lawyer **shall** withdraw from the representation of a client when: (b)(1) **the lawyer knows or reasonably should know that the representation will result in a violation of these Rules or of law**; or […] (b)(4) **the lawyer**

---

[3] On January 5, 2024, a Federal Grand Jury returned an Indictment related to the murder of a federal witness, Crystal Quinn, which alleges, in part, that defendant Gerace and Gerace Attorney 1 (who is not Mr. Soehnlein) did, in fact, file a witness list that resulted in Judge Sinatra's recusal. *See* Case No. 23-CR-99, Count 1, Overt Act ¶ 24.

**knows or reasonably should know that the client is bringing the legal action, conducting the defense, or asserting a position in the matter, or is otherwise having steps taken, merely for the purpose of harassing or maliciously injuring any person**." (Emphasis added).

Additionally, Mr. Soehnlein also cited Rule 1.16(c), which provides, "a lawyer **may** withdraw from representing a client when," among other things, "(2) **the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent**; (3) **the client has used the lawyer's services to perpetrate a crime or fraud;** or (4) the client insists upon taking action with which the lawyer has a fundamental disagreement." (Emphasis added).  Based upon the publicly cited reasons for Mr. Soehnlein's motion to withdraw, and in light of the conduct that had recently transpired before Judge Sinatra on June 21, 2023, which resulted in Judge Sinatra's recusal, the government did not object to Mr. Soehnlein' s motion to withdraw as counsel for defendant Gerace.  *See* ECF Nos. 546, 553 at 8.

On July 12, 2023, this Court granted Mr. Soehnlein' s motion to withdraw as counsel for defendant Gerace.  *See* ECF No. 559.  Just three days later, on July 15, 2023, Mr. Cohen sent a letter to the Court advising that defendant Gerace "terminated" him.  *See* ECF No. 567.  On September 6, 2023, after weeks of arguing about whether the Court should allow Mr. Cohen off the case, Mr. Soehnlein reappeared, made assurances to the Court that "all issues are resolved," and stated that he would once again represent defendant Gerace along with current co-counsel, Mark Foti, Esq.  *See* ECF No. 622.  There was no colloquy concerning the underlying basis or substance of the ethical issues that were initially raised by Mr.

Soehnlein's previous motion to withdraw as counsel for defendant Gerace less than 3 months

earlier (*see* ECF No. 541).[4]

In early November 2023, as the parties were heading towards trial and while the

government was simultaneously investigating the circumstances surrounding the death of its

witness, Crystal Quinn, the government obtained information indicating that defendant

Gerace's prior defense team (which included Mr. Soehnlein from February 24 until July 12,

2023) may have engaged in conduct designed to orchestrate the recusal of Judge Sinatra.[5]

On November 21, 2023, the government filed its initial *ex parte* and sealed motion to

disqualify Mr. Soehnlein for a *per se* conflict.  At the Court's suggestion, the government later

withdrew its original motion and filed a revised and superseding motion to disqualify.  *See*

ECF. Nos. 666, 689, 691.

---

[4] In order to have a full rendition of the facts pertaining to Mr. Soehnlein as a witness to specific overt acts in Case No. 23-CR-99, the government respectfully requests a copy of the sealed *ex parte* declaration Mr. Soehnlein provided to the Court on June 26, 2023.  *See* ECF No. 541.  In the event the Court determines that it is inappropriate to release a completely unredacted version of Mr. Soehnlein's affidavit and memorandum of law to the government, the Court should at least release a redacted version of Mr. Soehnlein's affidavit to the government.  This approach would be consistent with and similar to how the Court handled the government's filing of the *ex parte* motion to disqualify Mr. Soehnlein.  *See* ECF No. 889 at 7 ("The Court explained that if the government declined that invitation, the Court would provide its own redacted version of the original disqualification motion to the defense.").

[5] Similar to the Court's April 25, 2024, Decision and Order (*see* ECF No. 889, n. 5), the government is intentionally keeping its discussion of these facts high-level.

On January 5, 2024, a Federal Grand Jury returned a Second Superseding Indictment charging defendant Gerace and others with, among other things, Obstruction of Justice Conspiracy, Witness Tampering Conspiracy, and Witness Retaliation Conspiracy for murdering Crystal Quinn, who was a federal witness anticipated to testify at trial in Case Nos. 19-CR-227 and 23-CR-37. *See United States v. Peter Gerace Jr., et al.*, 23-CR-99.

Mr. Soehnlein is a witness to several overt acts in Case No. 23-CR-99. Specifically, Count 1, Overt Act ¶ 24 of Indictment 23-CR-99, alleges:

> 24.   On or about June 20, 2023, Gerace Attorney 1 filed and caused the filing of a trial witness list that named two relatives of the assigned District Judge as **GERACE'S** defense witnesses. The listing of the District Judge's relatives as **GERACE** trial witnesses resulted in the District Judge recusing himself pursuant to 28 U.S.C. 455(b)(5)(iv), and the trial of Case Nos. 19-CR-227 and 23-CR-37, which was then scheduled for August 14, 2023, being adjourned.

Additionally, Count 1, Overt Act ¶ 25 of Indictment 23-CR-99, alleges:

> 25.   The trial witness list filed or caused to be filed by Gerace Attorney 1 also listed Crystal Quinn as a defense witness. The listing of Crystal Quinn as a witness for Gerace circumvented the provisions of a Protective Order which prohibited attorneys for **GERACE** from revealing to **GERACE** the government's witnesses' names and from providing **GERACE** with the government's witness list.

There is no doubt that Mr. Soehnlein is a witness to the above-referenced charged overt acts in Case No. 23-CR-99. Mr. Soehnlein made statements on June 21, 2023, to Judge Sinatra describing the reasons that certain individuals were placed on defendant Gerace's

witness list, *see* ECF No. 660 at 12:1-20, and Mr. Soehnlein's made further public statements to the Buffalo News the same day defending the tactic.  *See* Patrick Lakamp, *Judge Recuses Himself from Strip Club Case after Voicing Suspicion of Legal 'Gamesmanship'*, THE BUFFALO NEWS, (dated June 21, 2023).  In sum, Mr. Soehnlein has knowledge related to the drafting, filing, and content of defendant Gerace's witness list, and as a result, Mr. Soehnlein is a witness in Case No. 23-CR-99.

On April 25, 2024, the Court denied the government's motion to disqualify Mr. Soehnlein for a *per se* conflict of interest.  *See* ECF No. 889.  Specifically, the Court determined that there were two sets of government allegations at play, namely, "the 'orchestrated recusal' [of Judge Sinatra] and the false affidavits," and that these two allegations did not present an unwaivable *per se* conflict.  *Id.* at 18.  Nevertheless, while characterizing the question as to whether a *per se* conflict existed "a close one," *id.* at 3, n. 2*,* the Court acknowledged that these allegations may constitute an actual or potential conflict of interest.  *Id.* at 18, n. 9.  The Court's decision did not address or analyze whether there was an actual or potential conflict as to Mr. Soehnlein due to his status as a witness to overt acts 24 and 25 in Case No. 23-CR-99, which overlap and relate to Case No. 19-CR-227 and 23-CR-37.[6]

---

[6] Indeed, Case Nos. 19-CR-227/23-CR-37 and 23-CR-99 are so intertwined that joinder would theoretically be proper.  Rule 13 of the Federal Rules of Criminal Procedure states that "[t]he court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information."  This standard is satisfied where the acts charged are "unified by some substantial identity of facts or participants or arise out of a common scheme or plan." *United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir. 1989) (citations and internal quotations omitted).  However, given the fact that 23-CR-99 is in itself a complex and multi-defendant case, the government is not moving to join the cases for trial so that trial in Case Nos. 19-CR-227 and 23-CR-37 may proceed expeditiously.

## DISCUSSION

Mr. Soehnlein should be disqualified because (i) he is a witness in Case No. 23-CR-99, which charges defendant Gerace with conspiring with others to obstruct justice in Case Nos. 19-CR-227/23-CR-37 by conspiring to murder a federal witness; and (ii) there are ethical considerations that will likely make Mr. Soehnlein's interests adverse to his client's interests. Additionally, whether *per se*, actual, or potential, the totality of actual and/or potential conflicts, including the fact that Mr. Soehnlein entered the case after representing a witness in the case against his client, defendant Gerace, weigh heavily in favor of disqualification.

### A.    Legal Background

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This constitutional guarantee generally ensures that a defendant may be represented by any attorney who will agree to take his case. *United States v. Perez*, 325 F.3d 115, 124–25 (2d Cir. 2003) (citing *United States v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir. 1982)).  "The right to the effective assistance of counsel also includes the right to be represented by an attorney who is free from conflicts of interest." *Perez*, 325 F.3d at 125 (citing cases).  "[W]hile a defendant generally may waive his Sixth Amendment right to an unconflicted attorney, 'the essential aim of the Sixth Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'" *United States v. Fulton*, 5 F.3d 605, 612 (2d Cir. 1993) (quoting *Wheat*, 486 U.S. at 159).  This guarantee may be violated if the attorney has "(1) a potential conflict of interest that results in prejudice to the defendant, or (2) an actual conflict of interest that adversely

affects the attorney's performance." *Perez*, 325 F.3d at 125 (quoting *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994)).

When the "specter of conflicts" arises, a district court must follow a series of steps to determine whether the attorney may continue representing the defendant. *United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012). "At the initial, 'inquiry' stage, the court must 'investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.'" *Id.* (quoting *Levy*, 25 F.3d at 153). "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (internal quotation marks and citation omitted). "In satisfying its inquiry obligation, the district court may rely on the representations of counsel as to his interest in the case and how any potential conflict might be cured." *Cain*, 671 F.3d at 293 (citation omitted).

"If the court is satisfied at the inquiry stage that there is no actual conflict or potential for one to develop, its duty ceases." *Id.* (citation omitted). However, "if the initial inquiry establishes that the conflict is 'such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation,' the district court must immediately disqualify [the lawyer]." *Id.* at 293–94 (citation omitted); *see also Perez*, 325 F.3d at 125. In this situation, no waiver of the conflict is possible and, therefore, no *Curcio* hearing is required. *Cain*, 671 F.3d at 293.

11

"Where an attorney labors under an actual conflict of interest, the public interest 'in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them' trumps a defendant's right to counsel of the defendant's choice and requires disqualification of the attorney." *United States v. Scala*, 432 F.Supp.2d 403, 405 (S.D.N.Y. 2006) (Kaplan, J.), *aff'd*, 266 F. App'x 41 (2d Cir. 2008) (quoting *Wheat*, 486 U.S. at 160). "In other words, the conflict is not waivable by the defendant." *Id.*

On the spectrum between no conflict and an actual conflict is an "attorney [who] suffers from a lesser actual or only a potential conflict." *Perez*, 325 F.3d at 125 (quoting *Levy*, 25 F.3d at 153). An attorney has a potential conflict of interest if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998) (citation omitted). Where the court determines such a conflict exists "but that it would not fundamentally impair the lawyer's representation, the district court should address the defendant directly and determine whether he wishes to make a knowing and intentional waiver of his right to conflict-free counsel in conformity with the procedures set out in *Curcio*." *Cain*, 671 F.3d at 293. The court may then "accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." *Perez*, 325 F.3d at 125 (citations omitted).

However, as the Supreme Court articulated in *Wheat v. United States*, the district court is "allowed substantial latitude in refusing waivers of conflicts of interest . . . where a potential

for conflict exists which may or may not burgeon into an actual conflict as the trial processes."
486 U.S. at 163; *see also Cain*, 671 F.3d at 294 ("[D]istrict courts have broad latitude in making
a decision whether to disqualify a defendant's chosen counsel.") (citation omitted). "Federal
courts['] . . . independent interest in ensuring that criminal trials are . . . ethical . . . [and] fair,"
*Wheat*, 486 U.S. at 160, coupled with the "potential for gamesmanship on the part of the
defendant who waives a conflict only to later claim ineffective assistance," *Cain*, 671 F.3d at
294, necessitates affording the district courts broad latitude in refusing conflict waivers.

### B.     An Actual Conflict Exists as to Mr. Soehnlein.

When counsel is burdened by an actual conflict of interest, prejudice to the client is
presumed.  *See Schwartz*, 283 F.3d 76, 91; *see also United States v. Malpiedi*, 62 F.3d 465, 469 (2d
Cir.1995); *United States v. Iorizzo*, 786 F.2d 52, 58 (2d Cir.1986).  As the Second Circuit has
recognized, "[a]n attorney who is prevented from pursuing a strategy or tactic because of the
canons of ethics is hardly an objective judge of whether that strategy or tactic is sound trial
practice." *Schwartz*, 283 F.3d at 91.

### i.     Mr. Soehnlein's is a Witness in Case No. 23-CR-99.

Mr. Soehnlein is a witness to specific overt acts in Case No. 23-CR-99.  While this
Court's decision concluded that Mr. Soehnlein did not engage in criminal conduct, it is well-
settled that overt acts in furtherance of a conspiracy need not be, in and of themselves,
criminal acts.  *United States v. Slocum*, 695 F.2d 650, 654 (2d Cir. 1982) ("An overt act need
not 'be the substantive crime charged in the indictment as the object of the conspiracy'—nor
need it even be a criminal act—in order to support a conspiracy conviction.") (citation

omitted).  "The reason for this is that the function of the overt act is simply to demonstrate the conspiracy's existence, i.e., to prove that it is at work."  *Id.*

Thus, as described above, at a minimum Mr. Soehnlein is a witness against his client pertaining to several charged overt acts in case No. 23-CR-99.[7]  *See* 23-CR-99-LJV, Overt Act ¶¶ 24-25.  Undeniably, Mr. Soehnlein, in signing the witness list and defending the legitimacy of including witnesses 171 and 240 on the list to Judge Sinatra, must have relied on information provided by someone else—namely, his client, defendant Gerace.  As a result, Mr. Soehnlein has an actual (if not *per se*) conflict for which this Court should not permit a waiver.  *See United States v. Cain,* 671 F.3d 271, 295 (2d Cir. 2012); *see also United States v. Jones,* 381 F.3d 114, 120 (2d Cir. 2004) ("The risk that [the defendant's attorney] would become a witness at trial was enough alone to allow the district court to reach this determination under an abuse of discretion standard.").

As a result, the Court should decline to permit defendant Gerace to waive this conflict of interest and should disqualify Mr. Soehnlein.[8]

---

[7] Although the Court did not address this argument in its decision, *see* ECF No. 889, the government previously made this argument in the Government's Supplement to its Revised and Superseding Motion to Disqualify, dated on January 5, 2024, and filed under seal on January 9, 2024.  *See* ECF No. 711, at 8.  Thus, to the extent this argument presents facts or data the Court overlooked, the government respectfully requests that the Court reconsider its April 25, 2024, decision (*see* ECF No. 889).  Alternatively, this information strongly supports the government's argument herein, that even if it is not a *per se* conflict, Mr. Soehnlein has an actual that the Court should decline to permit waiver of because Mr. Soehnlein is a witness against his client.

[8] To offset Mr. Soehnlein's disqualification, the government respectfully requests the Court assign additional attorneys now, as the Court deems appropriate, to assist Mr. Foti in the

### ii.    Mr. Soehnlein' s Ethical Obligations and Considerations.

As discussed above, there is at least an actual conflict of interest because Mr. Soehnlein is a witness against his client in Case No. 23-CR-99.  Moreover, Mr. Soehnlein's duties and obligations under the New York ethics rules make it likely that his interests will diverge from his client, defendant Gerace.  As the Second Circuit has recognized, "[a]n attorney who is prevented from pursuing a strategy or tactic because of the canons of ethics is hardly an objective judge of whether that strategy or tactic is sound trial practice." *Schwartz*, 283 F.3d 76, 91.  Importantly, even in absence of criminal liability, an actual conflict of interest exists when a defendant's lawyer faces "significant disciplinary consequences as a result of his questionable behavior related to his representation of the defendant." *United States v. Levy*, 25 F.3d 146, 156 (2d Cir. 1994).

Mr. Soehnlein previously recognized the ethical concerns that intertwined with his representation of defendant Gerace.  Just five days after Judge Sinatra recused himself, and after Judge Sinatra openly questioned whether defendant Gerace was "manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking or other strategic reasons," *see* ECF No. 660 at 10, Mr. Soehnlein moved to withdraw as counsel for the defendant.

Based upon the timing, circumstances, and Mr. Soehnlein's citation to New York State Rules of Professional Conduct Rule 1.16(b)-(e), it is clear that Mr. Soehnlein believed that the ethical rules required him to withdraw as counsel.  Importantly, it was Mr. Soehnlein who

---

defense of Gerace in Case Nos. 19-CR-227, 23-CR-37, and 23-CR-99.

stated in his motion to withdraw as counsel, "I have reviewed the New York State Rules of Professional Conduct Rule 1.16(b)-(e) and the other relevant Federal Rules of Criminal and Civil Procedure as well as the applicable Local Rules," and "[b]ased upon that review, I believe that good cause exists for my withdrawal."  *See* ECF No. 541 at 2.  Notably, as referenced above, some of the rules Mr. Soehnlein cited in support of his motion to withdraw require a lawyer to withdraw where "the lawyer knows or reasonably should know that the representation will result in a violation of these Rules or of law," or where "the lawyer knows or reasonably should know that the client is bringing the legal action, conducting the defense, or asserting a position in the matter, or is otherwise having steps taken, merely for the purpose of harassing or maliciously injuring any person."  *See,* N.Y. Rule Prof. Conduct 1.16(b)(1) & (b)(4).

In hindsight, it is clear that when Mr. Soehnlein resumed representation of Gerace on September 6, 2023, less than three months after he withdrew, Mr. Soehnlein's assurance to the Court that, "all issues are resolved," should have been subject to further inquiry.  Two months later, in early November 2023, the government received previously unknown information regarding the events that culminated in Judge Sinatra's recusal, prompting the government's motion to disqualify Mr. Soehnlein.  The receipt of the previously unknown information regarding the circumstances surrounding the placement of the witnesses on the defense witness list obligated the government to file a motion to disqualify Mr. Soehnlein under *United States v. Fulton*, 5 F.3d 605 (2d Cir. 1993) and *United States v. Williams*, 372 F.3d 96 (2d Cir. 2004).

While this Court has opined that Mr. Soehnlein conduct was not criminal, the Court's opinion neither commended the ethical or tactical methods that culminated in Judge Sinatra's recusal, nor explicitly rejected Judge Sinatra's observation that the placement of the witnesses on the list "appear[ed] to be gamesmanship." *See* ECF 660 at 10.  In that vein, Mr. Soehnlein's conduct may come under the scrutiny of the New York State Bar Association, and it is unknown whether anyone, including Judge Sinatra, has or will make any ethics referrals related to these events.[9]

These events cannot be viewed in isolation.  The events that gave rise to the government's investigation of Mr. Soehnlein are consistent and inextricably intertwined with Mr. Soehnlein's evaluation of the facts which compelled him to conclude, "I have reviewed the New York State Rules of Professional Conduct Rule 1.16(b)-(e) and the other relevant Federal Rules of Criminal and Civil Procedure as well as the applicable Local Rules," and "[b]ased upon that review, I believe that good cause exists for my withdrawal."[10]  *See* ECF No. 541 at 2.

---

[9]  *See,* N.Y. Rule Prof. Conduct 8.3 (Reporting Professional Misconduct).

[10] Defendant Gerace continues to engage in conduct that may further place him in an adverse posture with Mr. Soehnlein.  For example, defendant Gerace recently mailed voluminous documents to various news outlets, which according to one news report contain police reports relating to witnesses expected to testify.  *See, "No Clear Picture as to When Peter Gerace Will go on Trial,"* WGRZ-TV (May 2, 2024) (available at https://m.youtube.com/watch?si=YFeIRE6-iwwjxbbh&v=33bMz7Mssnc&feature=youtu.be).  The footage depicted in the news report showed images of redacted police reports, which may be copies of reports provided to the defense under a Protective Order, an example of which is screenshot and depicted below:

Similarly, Rule 1.7(a) of the New York Rules of Professional Conduct provides that a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests. The circumstances indicate that Mr. Soehnlein will likely have to choose whether to engage in a course of conduct defendant Gerace wants to pursue, or to distance himself further from past conduct engaged in by defendant Gerace and others. Thus, in light of defendant Gerace's pattern of conduct, coupled with defendant Gerace's Indictment in Case No. 23-CR-99, it is highly probable, if not certain, that Mr. Soehnlein and defendant Gerace's interests will diverge at some point in the future if they have not already. *See Cain,* 671 F.3d at 295; *see also Jones,* 381 F.3d at 120.

Based upon the foregoing, an actual conflict of interest exists because Mr. Soehnlein's interests have diverged from the defendant's interests with respect to a material factual or legal



issue or to a course of action.  *Schwarz*, 283 F.3d at 91.  Indeed, Mr. Soehnlein recognized the ethical concerns his representation posed when he previously moved to withdraw as counsel for defendant Gerace.  When he got back on the case, claiming that the issues had been resolved, information about the tactics implemented by defendant Gerace came to light and required the government to investigate Mr. Soehnlein's involvement in or connection with such tactics..  *See* Case No. 23-CR-99, Overt Act ¶¶ 24-25.

Even if a *per se* conflict does not exist because this Court determined upon the record before it that Mr. Soehnlein has not committed a crime, additional facts could become known that would impact the Court's analysis.  Moreover, it is unknown whether the New York State Bar will review any conduct related to the conduct at issue, including the tactics, statements, and representations that Mr. Soehnlein and his former co-counsel engaged in that Judge Sinatra observed "appear[ed] to be gamesmanship."  *See* ECF 660 at 10.

At bottom, the fact that Mr. Soehnlein previously moved to withdraw as counsel for defendant Gerace making specific reference to New York State ethical rules of conduct, and the fact that Mr. Soehnlein's conduct later became the subject of a government investigation related to those same facts,[11] coupled with the fact that it is unknown whether Mr. Soehnlein's conduct has fallen under the scrutiny of the New York State Bar Association, compel the conclusion that there is at least an actual conflict of interest that the Court should not permit defendant Gerace to waive.  Accordingly, the government respectfully submits that, even if

---

[11] *See* ECF No. 889 at 8 (citing Docket Items 691 at 3, 5 and 698).

there is not a *per se* conflict of interest, there is an actual conflict that should result in Mr. Soehnlein's disqualification.

### C.   Potential Conflicts Exists as to Mr. Soehnlein.

The Second Circuit has held that even where there is no nexus between an attorney's alleged conduct and the charges against his or her client, a conflict may still be present. "When counsel is the target of a criminal investigation by the same office that is prosecuting his client, he 'may, consciously or otherwise, seek the goodwill of the office for his own benefit' and his attempt to do so 'may not always be in the best interest of his client.'" *United States v. Pizzonia*, 415 F.Supp.2d 168, 183 (E.D.N.Y. 2006) (quoting *Armienti v. United States,* 234 F.3d 820, 825 (2d Cir. 2000)); *see also  Levy,* 25 F.3d at 156 (attorney's prosecution on unrelated charges by the same office presented a conflict of interest because the attorney "may have believed he had an interest in tempering his defense of [the defendant] in order to curry favor with the prosecution"); *United States v. Ramos,* 350 F. Supp. 2d 413, 420 (S.D.N.Y. 2004) (noting that the Second Circuit "has never wavered from considering the lawyer's position as a target of criminal investigation while representing a criminal defendant a situation of conflict of loyalties analogous to representation of multiple clients").

Nevertheless, "[i]n the absence of a strong connection between the activity for which counsel is investigated and defendant's charges, [a] defendant may generally waive a conflict stemming from a criminal investigation of his attorney." *Pizzonia*, 415 F. Supp. 2d at 183-84; *see also Levy,* 25 F.3d at 157 n. 8 (permitting waiver where the attorney was under investigation for unrelated crimes and allegedly had a role in codefendant's flight); *United States v. Aiello,*

900 F.2d 528, 531–32 (2d Cir. 1990) (permitting waiver where the attorney was investigated in a different district for unrelated conduct); *Ramos,* 350 F. Supp. 2d at 422 (a defendant can make a knowing waiver of conflict arising from counsel's investigation and indictment on unrelated charges).

Thus, for purposes of this Court's inquiry, the government believes that, at a minimum, there is a potential conflict such that the Court should conduct a *Curcio* colloquy with defendant Gerace to ensure that he is fully informed of the potential conflict that exists as to Mr. Soehnlein and that defendant Gerace makes a knowing and informed decision as to whether to waive the conflict.

## D.   The Totality of Conflicts Requires Disqualification.

The government has raised concerns that Mr. Soehnlein has multiple conflicts of interest.  First, Mr. Soehnlein entered the case after having represented a witness.  Second, Mr. Soehnlein withdrew from the case indicating that New York's ethical rules required, or at least permitted, him to withdraw from representation of his client.  Third, Mr. Soehnlein re-entered the case as counsel without addressing the merits of his initial withdrawal and upon offering a conclusory assurance that all issues with his client were resolved.  Fourth, Mr. Soehnlein became a subject of investigation relating back to the circumstances leading up to his withdrawal.  Fifth, Mr. Soehnlein, although perhaps not a witness to procuring of false affidavits related to the death of Crystal Quinn by defendant Gerace and Gerace Attorney 1, is a witness to the several overt acts in Case No. 23-CR-99, as described above.[12]  Sixth, if

---

[12] "In no case, however, must the government's exercise of prosecutorial discretion yield to

additional unknown facts become available, there is at least some potential that such additional facts could alter the Court's application of the facts of this case to the law. Seventh, the specter of an ethics investigation exists related to the events which animated the government's original motion to disqualify counsel. Whether these conflicts are construed as *per se*, actual, or potential, there are many and they must be considered together, rather than in isolation. *See United States v. Pizzonia*, 415 F. Supp. 2d 168, 177 (E.D.N.Y. 2006) (citing *Levy* at 157); *see also United States v. Yannotti*, 358 F. Supp. 2d 289, 291–92 (S.D.N.Y. 2004) ("When an attorney suffers from multiple conflicts, the court must consider them not in isolation, but rather in the aggregate.").

The Supreme Court has directed that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the [legal] profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988). Here, the record before the Court, the myriad conflicts presented by Mr. Soehnlein's representation of defendant Gerace, the Supreme Court's edict in *Wheat*, and the Court's observation that even just the "orchestrated recusal" issue (which represents just a fraction of the conflicts at issue) was a "close call," *see* ECF No. 889 n. 2,

---

the defendant's choice of counsel." *United States v. Pungitore*, 910 F.2d 1084, 1143 (3d Cir. 1990); *see also United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972) ("While courts must be assiduous in their defense of an accused's right to counsel, that right may not be 'manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.' (quoting *United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir. 1972))); *cf. United States v. Jones*, 381 F.3d 114, 121 (2d Cir. 2004) (noting that "the government . . . would still have been *entitled* to subpoena [attorney] to testify" if the prosecution intended to make certain allegations).

should compel this Court to exercise its discretion and decline to permit defendant Gerace to waive the actual and potential conflicts inherent in Mr. Soehnlein's continued representation.

## **CONCLUSION**

The Court should disqualify Mr. Soehnlein and decline to permit defendant Gerace to waive any conflicts.

DATED:  Buffalo, New York, May 6, 2024.

TRINI E. ROSS
United States Attorney

BY:     s/JOSEPH M. TRIPI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5839
Joseph.Tripi@usdoj.gov