IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

           v.                            19-CR-227-LJV

JOSEPH BONGIOVANNI,

                Defendant.

_____

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE UNRESOLVED COUNTS OF THE INDICTMENT BASED ON ALLEGED SPEEDY TRIAL VIOLATIONS

THE UNITED STATES OF AMERICA, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Corey R. Amundson, Chief of the Public Integrity Section, Joseph M. Tripi, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, and Jordan Dickson, Trial Attorney, Public Integrity Section, of counsel, hereby submits the government's response in opposition to defendant's motion to dismiss the unresolved counts (*see* Docket Nos. 916, 920).

## PRELIMINARY STATEMENT

The Supreme Court has held that it "would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates . . . that the defendant did not want a speedy trial." *Barker v. Wingo*, 407 U.S. 514, 536 (1972). Moreover, *Barker*'s progeny have rejected Speedy Trial claims where defendants invoke the right opportunistically or for gamesmanship. *See, e.g.*, *United States v. Reyes-Batista*, 844 F. App'x 404, 408 (2d Cir. 2021). "It would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not." *United States v. Titlbach*, 339 F.3d 692 (8th Cir. 2003).

"Delays caused by defense counsel are attributable to the defendant." *Vermont v. Brillon*, 556 U.S. 81, 94 (2009).

There is no merit to defendant Bongiovanni's motion to dismiss unresolved counts because the government delayed his trial. At every turn, the government was the only party trying to move the case towards a trial to protect the public's interest, to respect the victims whose lives were upended waiting for trial to commence, and to give the defendant his day in court. Notwithstanding the government's continuous efforts to get this case to trial, defendant Bongiovanni and his codefendant opposed the government's efforts and delayed the trial because the defendant did not want a speedy trial.

For example, on January 7, 2022, the government expressed its desire to set a trial date and, when the United States District Court Judge John L. Sinatra, Jr., ("Judge Sinatra") expressed his willingness to set a trial date, counsel for the defendant stated, "**I would prefer to defer it, Judge, until we wrap up with [Magistrate] Judge Roemer**." *See* Doc. No. 247 at 13: 23-24 (emphasis added).

On November 30, 2022, the government requested an April 2023, trial date. The defendant rejected the government's request, and the trial was scheduled for June 21, 2023. *See* Doc. Nos. 324, 363 (transcript). When it came time for the defendant to file pre-trial memoranda and motions *in limine* on April 26, 2023, the defendant did not file anything. *See* Doc. No. 325 at 10. The defendant's trial would have commenced on June 21, 2023, but it was ultimately adjourned over the government's objection due to issues related to

Bongiovanni's counsel of choice.  *See* Doc. Nos. 456, 458, 465, 467, 468, 471, 473, 474, 476-484, 487.

On August 10, 2023, after trial was delayed again due to issues related to Bongiovanni's co-defendant, counsel for the defendant stated, **"[A]dmittedly, these delays, when evaluated holistically, do not presently present a reason for speedy trial dismissal under the Barker factors**.  It is for this reason that Mr. Bongiovanni and his counsel do not move for dismissal at this time." *See* Doc. No. 586 at 14 (motion to sever) (emphasis added).

On September 6, 2023, after issues with codefendant Peter Gerace's counsel status caused the Court to reschedule the start of trial from October 23, 2023, to January 8, 2024, counsel for defendant Bongiovanni stated, "I think the Court struck the proper balance in the situation."  *See* Doc. No. 626 at 25: 14-15.  When the Court specifically asked if defendant Bongiovanni wanted a separate trial in October [2023], counsel stated, **"[N]o, Judge. At this time, I think the delay is fair and, you know, logistically speaking, I don't know that can be pulled off even if we asked for it**." *Id.* at 18-20 (emphasis added).

On December 15, 2023, after the government filed a motion to disqualify codefendant Gerace's attorney, Eric Soehnlein, Esq., the government took the initiative, engaged counsel for Bongiovanni in discussions about severance, and filed a letter indicating it would consent to severance to ensure that defendant Bongiovanni's trial was not delayed while co-defendant Gerace's counsel issues were litigated.  *See* Doc. No. 695.  Rather than proceeding to trial on January 8, 2024, counsel for the defendant wanted trial to commence 42 days after the

holidays in order to share with the defendant 3500 materials that the government produced early. *Id.; see also* Doc. Nos. 347 & 697-1 at 3-4.

Consistent with the defendant's request, trial commenced with jury selection on February 12, 2024 (*see* Doc. No. 762), and concluded on April 12, 2024, with a partial verdict and mistrial on unresolved counts (*see* Doc. Nos. 867, 880). The government immediately requested a retrial on the unresolved counts, but the defendant chose to tactically delay his retrial and requested time to file the instant motion to dismiss. *See* Doc. No 867. The Court excluded speedy trial time until May 17, 2024, for the defendant to prepare and litigate the instant motion (*id.*), and on April 16, 2024, the government filed a formal motion to set a trial date (*see* Doc. No. 881). As a result, 70 days of speedy trial remain within which to retry the defendant on the unresolved counts. *See* 18 U.S.C. §§ 3161(e).

Against this backdrop, the defendant's motion to dismiss for constitutional speedy trial is meritless and has been waived. First, the defendant's motion failed to identify a single unexcluded day of Speedy Trial Act time that ran in this case or was chargeable to the government. Second, the defendant failed to file a pre-trial motion to dismiss for constitutional speedy trial, and the defendant's motion should be deemed waived. *See* Fed. R. Crim. P. Rules 12(b)(3)(iii) and 12(c)(3). Third, the defendant failed to request a trial date, assert his speedy trial right, engaged in protracted motion practice, and opposed government efforts to set an earlier trial date. Fourth, the defendant was not prejudiced by the delay, but rather benefitted from it because a key government witness was murdered after trial was adjourned, and the defendant is not detained and continues to be released pre-trial. Finally,

despite now claiming "public opprobrium," the defendant's claims are hollow because he opposed the government's request for an intra-district transfer to lessen pre-trial media scrutiny of the case. *See* Doc. Nos. 619, 623, 645, 654, 663.

Simply put, the defendant's motion to dismiss upon constitutional speedy trial grounds distorts reality. The record lays bare, similar to *Barker*, that the government was the only party consistently trying to get the case to trial, the defendant never wanted a speedy trial, and the defendant only tactically sought severance from his co-defendant <u>after</u> all pre-trial defense motions were denied and the trial was set. The Court should deny the defendant's motion to dismiss and schedule a prompt retrial on the unresolved counts.

## **RELEVANT BACKGROUND**

The litigation history of this case is extensive and requires thorough, and accurate, review and analysis. The defendant's motion omits significant facts and distorts the true history of this case. Accordingly, the government submits the following procedural background for the Court's consideration.

### **Pre-Indictment**

As the Court is aware from presiding over the defendant's trial, the defendant was aware he was under investigation by the Fall of 2018. After becoming generally aware he was under investigation, the defendant retired from the DEA, was interviewed by the Department of Justice Office of Inspector General ("DOJ-OIG"), had his cell phone searched

upon re-entering the United States following international travel, and federal law enforcement executed a search warrant at his residence on June 6, 2019.

On June 18, 2019, attorney Paul Cambria contacted the government attorney via email and stated, "If you need [the defendant] in any capacity please contact me." *See* Affidavit in Reply to Defendant's Response in Opposition to the Government's Motion to Disqualify Counsel due to Conflicts of Interest, Exhibit A (filed under seal on January 27, 2020).  The government responded, "You have an actual conflict. Talk to Herb [Greenman]," and Mr. Cambria replied, "I did and I don't," as follows:

**From:** Paul Cambria [REDACTED]@lglaw.com>
**Sent:** Tuesday, June 18, 2019 1:34 PM
**To:** Tripi, Joseph (USANYW) <[REDACTED]@usa.doj.gov>
**Subject:** Joe bongiovani

Hi joe Paul cambria.  If you need joe in any capacity please contact me    Thank you
Sent from my iPhone

On Jun 18, 2019, at 2:28 PM, Tripi, Joseph (USANYW) [REDACTED]> wrote:

Hi Paul,

You have an actual conflict.
Talk to Herb.

**From:** Paul Cambria [REDACTED]@lglaw.com>
**Sent:** Tuesday, June 18, 2019 2:35 PM
**To:** Tripi, Joseph (USANYW) <JTripi@usa.doj.gov>
**Cc:** Herb Greenman [REDACTED]@lglaw.com>
**Subject:** Re: Joe bongiovani

I did and I dont

Sent from my iPhone

| | |
|---|---|
| **From:** | Paul Cambria |
| **To:** | Tripi, Joseph (USANYW) |
| **Subject:** | Herb |
| **Date:** | Tuesday, June 18, 2019 2:38:29 PM |
| **Attachments:** | emailsignature_d62b426c-103f-4958-9e29-50e8f1ce530e111.png |

Says his guy never talked to or met my guy
Sent from my iPhone

Thus, as of June 18, 2019, the defendant, through his attorney Mr. Cambria, was aware of the government's position that Mr. Cambria had an actual conflict of interest. At that time, Mr. Cambria's law firm represented ███████ who was the source of the bribe payments to defendant Bongiovanni, and also represented several other witnesses and an uncharged coconspirator. *See id.* at 2-3 ("It is alarming that the law firm is endeavoring to represent five (5) parties (Bongiovanni, CW-1 ████, CW-2, CW-3, and Coconspirator 3) with varied and competing interests concurrently in the same litigation while also owing an ethical duty to a former client (Coconspirator 1 [Peter Gerace]) in the same case."). Defendant Bongiovanni is responsible for his choice of counsel as "delays caused by defense counsel are attributable to the defendant." *Brillon*, 556 U.S. at 94.

**Arraignment and Disqualification Motion**

On October 31, 2019, approximately four months after the government first advised Mr. Cambria that he had an actual conflict of interest, the defendant was indicted. *See* Doc. No. 1. At the defendant's arraignment on November 5, 2019, the government promptly advised the defendant, Mr. Cambria, and United States Magistrate Judge Michael J. Roemer ("Magistrate Judge Roemer") that "it will be the government's position that there are conflicts of interest that would require the disqualification of Mr. Cambria. Obviously, we'll be filing that motion. There are several unnamed coconspirators in the indictment that his firm has

represented as well as witnesses." *See* Doc. No. 9 at 15: 2-7.  The defendant was present, aware of the government's position that an unwaivable conflict existed and chose to continue with Mr. Cambria as his attorney.

On November 27, 20219, the government filed its motion to disqualify Mr. Cambria as his law firm represented one of the main witnesses against defendant Bongiovanni, and multiple other witnesses and coconspirators.  *See* Doc. No. 10.  Rather than acknowledging the obvious and serious conflicts the government raised months before the defendant was indicted, the defendant and his former counsel, Mr. Cambria, chose to oppose the government's motion until February 28, 2020.  *See* Doc. Nos. 10, 16, 18, 23, 26, 30, 31, 33-35, 37.  On March 9, 2020, Mr. Cambria's motion to withdraw was granted.  *See* Doc. No. 38.

The government is not responsible for any of the delay stemming from the defendant's persistence upon heavily conflicted counsel, who sought several adjournments and extensions of time to respond to the government's motion before withdrawing, either under the speedy trial act or constitutional speedy trial.█



**Delays Obtaining New Counsel**

From March 9, 2020, until April 24, 2020, all of the time in the case was utilized for the defendant to retain unconflicted counsel of his choice. Attorney James P. Harrington filed his Notice of Appearance on April 22, 2020, and appeared with the defendant on April 24, 2020. *See* Doc. No. 39, 40, 41, 42.[2] All of this time was utilized by the defendant, for his benefit, and stemmed from his original choice to proceed for months with conflicted counsel, Mr. Cambria.

**Extensive Motion Practice and Litigation**

On April 24, 2020, Mr. Harrington made his first appearance in the case and Magistrate Judge Roemer issued an Amended Scheduling Order that required the government to produce discovery by May 26, 2020, and the defendant to file motions by July

---

[2] During this time, the COVID-19 Global pandemic disrupted operations worldwide and on March 13, 2020, former Chief Judge Frank Geraci, Jr., issued a General Order regarding Court Operations Under the Exigent Circumstances Created by COVID-19, due to the rapidly evolving developments concerning the impacts of the novel coronavirus. *See also*, Doc. No. 39.

27, 2020.  *See* Doc. Nos. 42-43.  During the extensive litigation that followed, defendant Bongiovanni moved for extension of time and for adjournments regarding virtually every scheduled motion deadline.

On June 4, 2020, just eight days after the government provided voluntary discovery to Mr. Harrington, a superseding indictment added codefendant Michael Masecchia to the case. *See* Doc. No. 46.  At arraignment, the parties agreed to an amended scheduling order that required the defendant to file motions by September 14, 2020.  *See* Doc. No. 51.

On September 11, 2020, three days before motions were due, defendant Bongiovanni requested a 60 day extension of time to file motions.  *See* Doc. No. 58.  In the motion, defendant Bongiovanni acknowledged, "I agree that any time granted by the Court should be excluded from the calculation of the Speedy Trial time because it is necessary for his defense and the proper filing of pretrial motions."  *Id.* at 3.  The government did not object to this extension request, *id.,* and the schedule for motions was amended such that defense motions were due by November 16, 2020.  *See* Doc. No. 61.

On November 13, 2020, again just three days before motions were due, defendant Bongiovanni requested an additional six weeks to file motions, and the Scheduling Order was amended accordingly such that defense motions were due December 28, 2020.  *See* Doc. Nos. 62, 65.

On December 23, 2020, five days before motions were due, the defendant requested another extension of time to file motions as a result of COVID-19 related issues and the schedule was amended such that defense motions were due on January 11, 2021.[3]  *See* Doc. Nos. 71, 75.

On January 11, 2021, the defendant filed a 114-page omnibus motion containing dispositive motions to dismiss the indictment and counts (claiming vindictive prosecution and failure to state an offense), and non-dispositive motions for a bill of particulars, discovery, suppression of evidence (related to the border search of a cell phone and statements), Jencks Act material, 404(b) notice, expert witnesses, and Rule 609.  See Doc. Nos. 78, 79, 81.  The government filed its responses on February 16, 2021.  *See* Doc. Nos. 85, 87.  By comparison, while it took the defendant almost eight months from the initial receipt of discovery for the defendant to file motions (from May 26, 2020, until January 11, 2021), the government took just 36 days to respond to the defendant's voluminous motions (during the midst of a global pandemic).

On February 25, 2021, a Second Superseding Indictment was returned, which added co-defendant Peter Gerace Jr.  *See* Doc. No. 89.[4]  Notably, despite the defendant's erroneous

---

[3]  The defendant provided an affidavit acknowledging and waiving his statutory and constitutional Speedy Trial rights with respect to this motion.

[4]  Despite the defendant's erroneous claims to the contrary, the government's investigation continued diligently.  Subsequent to Bongiovanni's indictment, there were consistent grand jury sessions until February 25, 2021, and over 70 witnesses presented.  There was nothing dilatory or piecemeal about the government's approach despite the challenges caused by the COVID-19 global pandemic.  Moreover, as set forth *infra,* the addition of codefendant Gerace did not delay the case against defendant Bongiovanni, who by that point had been on notice

claims to the contrary (*see* Doc. No. 920 at 19), the government's investigation had diligently continued despite the challenges caused by the COVID-19 global pandemic.  By February 25, 2021, Bongiovanni had the information necessary to file all his pre-trial motions. Bongiovanni knew that Gerace was under investigation, *see* Doc. No. 9*,* was in possession of voluntary discovery (including all text messages between Bongiovanni and Gerace resulting from an April 2019 border search of Gerace's phone), and defendant Bongiovanni could have elected to proceed with the motions he filed on January 11, 2021, but he chose not to do so. In particular, during arraignment on the Second Superseding Indictment March 8, 2021, defendant Bongiovanni chose to start over and re-file motions and declined the opportunity provided by Magistrate Judge Roemer to "stick to the schedule we are currently on."  *See* Doc. No 104 at 10.[5]

Certainly, at no point did either Bongiovanni or Gerace object to the Referral Order assigning Magistrate Judge Roemer to decide all pre-trial matters in the case.  *See* Doc. No. 92.  In other words, the defendant chose to engage in a course of litigation whereby they would have two bites at the proverbial apple for every single motion they filed—and that is exactly what they did.  Defendant Bongiovanni and co-defendant Gerace quickly started working together, filing motions and replies on virtually every potential issue, and objecting

---

that Gerace was under investigation, *see* Doc. No. 9*,* and had obtained discovery (including all text messages between Bongiovanni and Gerace resulting from an April 2019 border search of Gerace's phone) as far back as May 26, 2020.

[5] On December 9, 2020, co-defendant Michael Masecchia had pleaded guilty without filing any motions and by this point was essentially out of the case.  See Doc. No. 68.  Charging Michael Masecchia did not delay this prosecution, or Bongiovanni's trial, whatsoever.

and appealing from every decision by the Magistrate Judge Roemer to Judge Sinatra, and requesting both judges to reconsider adverse decisions.

From April 29, 2021, until June 29, 2021, defendant Bongiovanni and codefendant Gerace filed motions and replied to government responses seeking disclosure of sealed search warrant affidavits.  *See* Doc. Nos. 113, 201, 122, 123, 126, and 132.  On June 29, 2021, Magistrate Judge Roemer issued a decision from the bench denying the defendants' motions. *See* Doc. 138, 139.

On July 1, 2021, the defendants Bongiovanni and Gerace, working together, filed a joint motion for an extension of time to file pre-trial motions (from July 7, 2021, to July 12, 2021), and Magistrate Judge Roemer granted the defendants' motion.  *See* Doc. Nos. 140, 142.

On July 12, 2021, defendant Bongiovanni and codefendant Gerace filed extensive pre-trial motions, which included dispositive motions to dismiss.  *See* Doc. Nos. 147-149. Bongiovanni's new fifty-seven page motion re-incorporated all of the defendant's 114-page omnibus motion (*see* Doc. Nos. 78, 81), which was previously filed on January 11, 2021, and included additional motions seeking to sever counts, new suppression arguments, joinder in codefendant Gerace's motions, and renewed motions regarding the search warrant applications, and requested leave to file additional motions.  Although Bongiovanni sought

severance of Counts 7 through 9, he did not file a motion for severance from codefendant Gerace, and did not request a trial date. *See* Doc. No. 149.[6]

On July 12 and 13, 2021, defendant Bongiovanni and codefendant Gerace filed motions for reconsideration, objections, and an extension request seeking to press forward and re-litigate Magistrate Judge Roemer's June 29, 2021, decision denying disclosure of search warrant applications. *See* Doc. Nos. 150-153. The parties filed responses and replies regarding the defendants' motions for clarification and reconsideration (*see* Doc. Nos. 163, 164, 167, 169, 171), and within one-week of receiving co-defendant Gerace's reply, on August 6, 2021, Magistrate Judge Roemer resolved the motions for clarification and reconsideration. *See* Doc. No. 174.

Of course, while Magistrate Judge Roemer was re-reviewing the defendants' arguments related to unsealing search warrants, the defendants' extensive omnibus motions remained pending. *See* Doc. Nos. 147-149. On August 13, 2021, the government responded early to defendant Bongiovanni and codefendant Gerace's omnibus motions. *See* Doc. Nos. 142 (Text Order), 177-178.

On August 19-20, 2021, both defendants Bongiovanni and Gerace filed objections to Judge Sinatra seeking review of Magistrate Judge Roemer's August 6, 2021, decision denying the defense motion to unseal search warrant affidavits. *See* Docs. 179-80. By this point,

---

[6] To the extent Bongiovanni joined in motions filed by Gerace, Gerace's motions contained an extremely boilerplate motion to sever with almost no analysis. *See* Doc. Nos. 147, 148. Neither defendant seriously sought severance or asserted their right to a speedy trial.

neither Bongiovanni nor Gerace made any effort to seek a trial date or assert their rights to a speedy trial and were working together in unison—consisting of twelve (12) filings and several oral arguments—trying to unseal sealed search warrant affidavits.   The government's response was due by September 13, 2021, with defense replies due September 20, 2021.  *See* Doc. Nos. 181, 183-84.

On August 27, 2021, codefendant Gerace filed his reply to the government's opposition to pre-trial motions and defendant Bongiovanni requested an extension of time (until September 10, 2021) to file his reply and to adjourn oral argument.  *See* Doc. Nos. 185-87.  Bongiovanni filed his reply on September 10, 2021, *see* Doc. No. 193, and later moved to adjourn oral argument again, *see* Doc. No. 198.  As a result, oral argument on the defendants' voluminous omnibus motions was rescheduled until September 30, 2021.  *See* 09/27/2021 (Rescheduling Notice).  Meanwhile, defendants Bongiovanni and Gerace worked together and pressed their motions to unseal search warrants on a different track from other motions— up to the District Court.

On September 20, 2021, circling back to their joint efforts to unseal search warrant affidavits, defendants Bongiovanni and Gerace filed replies (*see* Doc. Nos. 195-96) to the government's responses in opposition (*see* Doc. No. 194) to the defendants' objections.

On September 30, 2021, Magistrate Judge Roemer held oral argument on the defendants' pre-trial omnibus motions and scheduled an evidentiary hearing for November

18, 2021, regarding Bongiovanni's suppression motions and denied Gerace's motion for a *Franks* hearing.  *See* Doc. No. 201.

On October 13, 2021, codefendant Gerace filed objections to denial of the *Franks* hearing, the government responded on October 27, 2021, and Gerace replied on November 2, 2021.  *See* Doc. Nos. 203, 207, 209.[7]

On November 1, 2021, District Judge Sinatra denied Bongiovanni's and Gerace's motions (*see* Doc. Nos. 113, 122, 150, 151) and affirmed Magistrate Judge Roemer's decisions denying disclosure of search warrant affidavits.  *See* Doc. No. 208.  Despite the fact that the defendants had litigated the search warrant disclosure issue for seven months (from April to November), on November 5, 2021, the defendant's filed additional motions seeking a disclosure order for search warrant affidavits similar to a disclosure order issued in *United States v. Hawit*, No. 15-cr-252 (PKC), 2017 WL 3016794 (E.D.N.Y. 2017).  *See* Doc. Nos. 210-11.  The government was directed to respond to the most recent round of motions seeking disclosure of the search warrants by November 26, 2021, with defense replies due by December 6, 2021.  *See* Doc. Nos. 211, 213.  The government requested and was granted additional time to respond out of time, *see* Doc. Nos. 221-22, responded as directed on December 13, 2021, and codefendant Gerace replied on December 20, 2021,

---

[7] On December 7, 2021, with a myriad of other motions pending, the District Court affirmed Magistrate Judge Roemer's decision to deny codefendant Gerace a *Franks* hearing.  *Se* Doc. No. 223.

On November 17-18, 2021, with motions pending and while continuing to litigate issues pertaining to the search warrant, the government filed its witness list, exhibit list, and conducted an evidentiary hearing with respect to defendant Bongiovanni.  *See* Doc. Nos. 215, 217, 218.  Notably, at the outset of the suppression hearing, the defendant ultimately made the strategic decision to waive his motion to suppress statements made in his residence on June 6, 2019, wasting the time and effort spent litigating the issue.  At the conclusion of the hearing, the defendant reserved and later exercised his option to have additional witnesses called.  *See* Doc. Nos. 219, 220.  As a result of the defendant's decision, the evidentiary hearing was continued until December 28, 2021.  *See* 12/01/2021, Scheduling Notice.

Notably, as the litigation in 2021 demonstrated, both defendant Bongiovanni and codefendant Gerace made a clear strategic decision to work together, file motions, delay progress, and engage in maximum pre-trial litigation.  During this pretrial litigation, defendant Bongiovanni requested to extend the filing deadlines with respect to every scheduled original filing deadline, and the defendants sought District Court review of every motion denied by the Magistrate Judge (despite never objecting to the Referral Order). Defendant Bongiovanni never requested a trial date, made no effort to assert his rights to a speedy trial and, in fact, strategically filed extensive and voluminous motions that delayed his trial.[8]

---

[8] The above description of motion practice does not include the myriad of motions to modify release conditions and other related filings by both defendant Bongiovanni and codefendant Gerace.

On January 7, 2022, the parties appeared before Judge Sinatra status conference to discuss the defendants' *Hawit* motion (seeking disclosure of search warrant affidavits). *See* Doc. No. 247. During the status, Judge Sinatra discussed his plan regarding the manner in which he would determine whether the search warrants should remain sealed, and the government indicated it was ready to request a trial date. Rather than agreeing to set a trial date, and failing to assert his right to a speedy trial, defendant Bongiovanni specifically declined the opportunity to set a trial date and expressly indicated that he wanted to finish matters before Magistrate Judge Roemer before getting a trial date from Judge Sinatra, as follows:

| | |
|---|---|
| MR. TRIPI: | I'm really sorry -- before we move on from issue one, in terms of setting a trial date, when do you foresee us getting together to do that, because I had planned to ask for one today. If you're not ready to do that, I do not want to push the envelope. |
| THE COURT: | **No. I can set a trial date right now, but are we not doing things with Judge Roemer**? |
| MR. TRIPI: | Well, yeah. We just got done with the hearing, briefing and oral argument, and that will -- I think that will wrap up some time in March. And then it will be a matter of -- and those are under advisement of 30 days, objections to Your Honor. So maybe we are premature -- I don't know, but – |
| THE COURT: | It feels like we are, but, I mean, **if you can sketch out what the schedule is going to look to get the case to me, then I can set a trial date**. But if there is a lot of variability with Judge Roemer still, then I think we might be wasting our time setting a trial date. |
| MR. HARRINGTON: | **I would prefer to defer it, Judge, until we wrap up with Judge Roemer.** |

*Id.* at 13. Simply put, the defendant did not want a speedy trial.

On March 4, 2022, defendant Bongiovanni filed a motion for an extension of time to file post-suppression hearing briefs, Magistrate Judge Roemer granted the motion, ordered simultaneous briefs by March 21, 2022, and scheduled oral argument on all outstanding motions to commence April 26, 2022.  *See* Doc. Nos. 253-54.  Defendant Bongiovanni requested two more extensions of time to file his post-hearing brief (*see* Doc. Nos. 259, 261), and post-suppression hearing briefs were filed on March 25, 2022.  *See* Doc. Nos. 263-64.

After Magistrate Judge Roemer set the date for oral argument on all outstanding motions, and after it appeared for the moment that the defendants were done filing motions, on April 7, 2022, the defendants filed a joint motion (styled as a supplement to prior motions) seeking disclosure of grand jury evidence and instructions.  *See* Doc. No. 265.[9]

On April 26, 2022, Magistrate Judge Roemer held lengthy oral argument on all outstanding defense motions and directed supplemental briefing from the government to be filed by May 10, 2022.  *See* Doc. No. 278.  The government filed its supplement as directed, *see* Doc. No. 284, and defendant Bongiovanni requested an extension of time to file a response.  The request was granted, and Bongiovanni filed his response on June 1, 2022.  *See* Doc. No. 285-289.

---

[9] Without a trial date set, and in an effort to aid defense preparations in order to move the case towards trial, the government permitted the defendants to review certain 3500 materials at the U.S. Attorney's Office.  In turn, the defendants used the opportunity to file meritless motions, which were later denied.  *See* Doc. Nos. 266, 267, 268, 272-77.

On July 5, 2022, Magistrate Judge Roemer filed an order extending his time to decide

pending defense motions and to issue Report and Recommendations ("R&Rs").  In doing so,

Magistrate Judge Roemer stated:

> The Court has reviewed the defendants' motion papers, memoranda/affidavits, and the papers submitted on behalf of the government, in some detail, and has made progress toward a decision on the motions. However, **the Court finds that this case is complex because it involves multiple defendants charged in an 18-count, 45-page indictment alleging multiple conspiracies as well as various other crimes. <u>In addition, a myriad of lengthy pretrial motions have been filed raising complex legal issues, including a suppression motion which necessitated a multi-day evidentiary hearing with numerous witnesses.</u>** Further, on May 6, 2022, the undersigned became unavailable because of illness and the need for immediate surgery. The Court notes that the undersigned has presided over this case since it began in 2019 and has conducted all evidentiary hearings. Thus, transferring the matter to another Magistrate Judge, who would need to become familiar with the extensive prior proceedings, would not have served to shorten the time for deciding the motions and likely would have resulted in further delay.
>
> Therefore, it now appears that full consideration of the motions will take time beyond the 30-day advisement period and that "it is always open to [the court] to find that the interest of justice is best served by granting a continuance under 18 USC § 3161(h)(7) for the excess period". *United States v. Bufalino*, 683 F.2d at 645 (citation omitted). *See also United States v. Savoca*, 739 F.2d 220, 224 (6th Cir. 1984) ("Illness of the trial judge was clearly intended to be considered in determining whether [delay was excludable pursuant to § 3161(h)(7)(A) and § 3161(h)(7)(B)(i) because] the failure to grant a continuance would make 'continuation of [the] proceeding impossible.'"), vacated on other grounds, 761 F.2d 292, 294 n.2 (6th Cir. 1985). Therefore, on the basis of the Court's findings that the motions are both complex and that the undersigned will be unavailable for a period of time to recover from illness and a medical procedure, and further upon the Court's findings that the interest of justice in a continuance overrides the defendants' and public's interest in a speedy trial, a continuance is granted pursuant to 18 USC § 3161(h)(7)(A) from July 5, 2022 to August 4, 2022 for the purpose of rendering a decision.

*See* Doc. No. 290 (emphasis added).

On August 5, 2022, Magistrate Judge Roemer issued R&Rs generally denying the

defendants' motions.  *See* Doc. No. 291-92.  On August 17, 2022, defendant Bongiovanni

filed a joint motion requesting additional time for the defendants to file objections to the R&Rs.  *See* Doc. 293.[10]

**Proceedings Before District Judge Sinatra**

Although some matters had already made their way up to Judge Sinatra, such as the defense motions seeking disclosure of search warrant affidavit, motions to modify conditions, a *Curcio* matter pertaining to codefendant Gerace, and extensive litigation pertaining to injunction of a civil lawsuit (filed against government witnesses by codefendant Gerace), by September 2022, the case was entirely before Judge Sinatra (with the exception of an extremely untimely motion to suppress filed by codefendant Gerace, which was ultimately denied).

On September 9, 2022, defendant Bongiovanni and codefendant Gerace filed objections to the R&Rs issued by Magistrate Judge Roemer.  *See* Doc. No. 296, 298.  The government responded on September 23, 2022, *see* Doc. Nos. 305-06, and codefendant Gerace requested an extension of time to reply, *see* Doc. No. 307.  Replies were rescheduled for October 14, 2022, and oral argument was scheduled for November 10, 2022.  *See* Doc. No. 309.

---

[10] The government objected to the request, and then withdrew its objection because it was never advised that the request was predicated, in part, on medical issues related to Bongiovanni's attorney.  *See* Doc. No. 294.  The government only consented to a three week extension, until September 9, 2022.

During oral argument on November 10, 2022, Judge Sinatra set November 30, 2022, as the deadline for severance motions or supplemental filings. *Id.* On November 22, 2022, Judge Sinatra adopted the R&Rs, affirmed the Decisions and Orders (D&Os) issued by Magistrate Judge Roemer, and directed the parties to appear on November 30, 2022, to set a trial date. *See* Doc. No. 319.

On November 29, 2022, the day before the parties knew a trial date was imminent, codefendant Gerace filed a severance motion and defendant Bongiovanni requested an extension of time to file a severance motion. *See* Doc. Nos. 321, 322.

During the status conference on November 30, 2022, the government requested a trial date for the first week of April 2023, but the government's proposal was rejected by the defendants because they wanted more time with the 3500 materials the government agreed to produce early. *See* Doc. Nos. 324, 363 (transcript). As a result, Judge Sinatra scheduled the trial for June 21, 2023. During that same appearance, Judge Sinatra granted defendant Bongiovanni's request for more time to file a severance motion, which was due on December 30, 2022. *Id.* Speedy trial time was excluded until the June 21, 2023, trial date. *Id.*

On December 29, 2022, defendant Bongiovanni requested another extension of time to file his severance motion (*see* Doc. No. 339), and ultimately filed his motion for severance on January 4, 2023. *See* Doc. No. 343. Notably, Bongiovanni only filed this severance after the joint trial was scheduled and after other pre-trial motions were decided against both Gerace and Bongiovanni. In his severance motion, Bongiovanni made arguments, such as

22

misjoinder and prejudicial joinder, which could have been made when his motions due in July of 2021 (*see* Doc. No. 149), and further argued that Gerace would testify as a witness for him—a representation that later proved to be inaccurate.  The defendant's motion to sever was ultimately denied along with codefendant Gerace's motion to sever, *see* Doc. Nos. 434, 442.


**The Defendants Delayed All Scheduled Trial Dates Scheduled in 2023**

On March 24, 2023, codefendant Gerace was charged in a separate indictment with witness tampering and related offenses.  The government moved to join the cases, and after briefing the cases were consolidated for trial.  *see* Doc. No. 411, 424-25, 442-43.[11]


On or about May 10, 2023, the government received information that counsel for Bongiovanni intended to file a motion to withdraw as counsel, and the government immediately moved to stay certain disclosure provisions related to the Protective Order.  *See* Doc. Nos. 456, 458.


On May 11, 2023, Judge Sinatra heard Bongiovanni's attorney, Mr. Harrington, request assignment of additional counsel due to health-related concerns, and Judge Sinatra considered Parker McKay, Esq., for the assignment, *see* Doc. Nos. 465, 467.[12]

---

[11] There was also substantial litigation related to codefendant Gerace custodial status, which is omitted from this factual background.  During this timeframe, the government also was filing pre-trial submissions, including an extensive pre-trial memorandum, *see* Doc. No. 441.

[12] Notably, in or about November 2022, the government had discussed its concerns related Bongiovanni's attorney's health with the attorney, and the government offered to consent to

On May 16, 2023, Bongiovanni's attorney moved to withdraw.  *See* Doc. No. 476. During argument on May 17, 2023, the government opposed adjournment of the June 21, 2023, trial date.  *See* Doc. No. 587.  During the appearance, Judge Sinatra observed the complexity breadth of motions filed on the docket in this case and stated, "once you spend a lot of time with the docket in this case, you will see there is no shortage of ability to raise things with this Court and no shortage of ways for us to wrestle with them and resolve them, so to the extent that somebody makes a motion, I'm here to decide it, so --."  *Id.* at 39:12-17. Judge Sinatra then assigned Bongiovanni's current lawyers and, after hearing from the defendant's new counsel, adjourned the trial until August 14, 2023 (even though they requested more time to prepare).  The government advised Judge Sinatra, "the Government is ready to go to trial on June 21st and we remain ready to go to trial on June 21st."  *Id.* at 44:5-8.  As to the exclusion of time, newly assigned counsel for the defendant stated, **"I don't think that we can object. I spoke -- we spoke to our client about that, Judge, because we are the proponents of the motion for time for preparation, so I don't believe we have an objection."**  *Id.* at 48:16-19 (emphasis added); *see also* Doc. No. 484.

On June 21, 2023, District Judge Sinatra recused himself and the case was transferred to United States District Court Judge Lawrence J. Vilardo.  *See* Doc. Nos. 535-537.

---

assignment of additional co-counsel, but the offer was not accepted.  *See* Doc. No. 468 at 10-11.

On June 30, 2023, the newly assigned judge, United States District Judge Lawrence J. Vilardo ("Judge Vilardo") held a status conference to discuss rescheduling the trial and related issues.  During discussion of a new trial date, new counsel for defendant Bongiovanni stated:

> So, Judge, **when we originally got assigned to the case about a month and a half ago or so at this point, I had spoken Judge Sinatra about my feelings about where this case should be potentially tried based on the number of witnesses and number of documents and experience in other cases kind of taking them up after counsel had bowed out, you know, later in the game, let's just say that. I had suggested a trial date in January [2024]**. Part of that was driven by the Fox trial that we had docketed. The other part of that was this is an enormous undertaking even with two counsel, Mr. MacKay and I knew that this case would take. I can say that both of us, Mr. MacKay and I, are available on September 24th, given the fact that the trial was scheduled to go by Judge Sinatra in August. **But I can say that it would be both of our preference to have this tried on the 1 November date that Mr. Cohen stated.**

*See* Doc. No. 553 at 19-20.  Judge Vilardo scheduled trial for October 23, 2023, and defendant Bongiovanni agreed with the adjournment and to the exclusion of speedy trial time.  *Id.* at 29-30.  Importantly, defendant Bongiovanni did not assert his speedy trial right and suggested that a longer adjournment would have been preferable.

On July 12, 2023, Judge Vilardo granted codefendant Gerace's attorney, Eric Soehnlein's  motion to withdraw as counsel and, just three days later, codefendant Gerace fired his other attorney, Steven Cohen.  *See* Doc. Nos. 559, 567.

On August 10, 2023, while codefendant Gerace's counsel status was being sorted out, defendant Bongiovanni filed a motion for severance.  *See* Doc. No. 586.  In his motion, Bongiovanni acknowledged **"[a]dmittedly, these delays, when evaluated holistically, do not presently present a reason for speedy trial dismissal under the Barker factors. It is for**

this reason that Mr. Bongiovanni **and his counsel do not move for dismissal at this time**." *See* Doc. No. 586 at 14 (emphasis added).  Defendant Bongiovanni's admission that there was no basis for speedy trial dismissal was appropriate because all of the delay in the case was attributable to Bongiovanni's decision to retain conflicted counsel, delay in retaining new counsel, concerted motion practice with Gerace, withdrawal of his attorney on the eve of trial, and desire to delay trial to prepare with a substantial amount of 3500 material that the government began producing in January 2023, approximately eight months earlier.

On September 6, 2023, Gerace's counsel status was settled—attorneys Mark Foti and Eric Soehnlein were retained to represent codefendant Gerace, and Judge Vilardo rescheduled trial for January 8, 2024.  *See* Doc. No. 622.  At that point, defendant Bongiovanni withdrew his severance motion (*see* Doc. No. 586), and made clear that he did not want an earlier trial, as follows:

> THE COURT: **Okay. So you don't -- you don't want a separate trial, for instance, in October?**
>
> MR. SINGER: **No, Judge. At this time, I think the delay is fair and, you know, logistically speaking, I don't know that can be pulled off even if we asked for it.**
>
> THE COURT: Okay.
>
> MR. SINGER: So we'll withdraw that motion at this time.

*See* Doc. No. 626 at 25: 16-23 (emphasis added).  Plainly, defendant Bongiovanni and his counsel were in favor of delaying trial into 2024, consistent with the position they advocated the first day they were assigned to the case on May 17, 2023.  *See* Doc. No. 553 at 19-20.

**The January 8, 2024, Trial Date**

On November 21, 2023, as a result of information obtained during the course of the government's investigation into the death of its witness, Crystal Quinn, the government filed a motion to disqualify Mr. Soehnlein.  *See* Doc. No. 666.  Although substantial litigation related to the disqualification motion ensued, time was already excluded until January 8, 2024.  Indeed, when the disqualification motion is viewed through the lens of whether defendant Bongiovanni asserted his right to a speedy trial, or whether the government delayed Bongiovanni's trial, the answer is clearly no.  In particular, the government made its disqualification motion within the window of time defendant Bongiovanni already agreed to exclude for purposes of trial preparation, and Bongiovanni's attorneys were reviewing 3500 material, the government's voluminous trial memorandum (explaining in detail the facts and government's legal arguments), witness list, and proposed jury charges.

On December 15, 2023, after it became clear the disqualification motion pertaining to Gerace's counsel would not promptly be resolved, the government took the initiative to move Bongiovanni's case to trial.  As a result of the discussions the government initiated, the government filed a letter indicating it would consent to severance to ensure that defendant Bongiovanni's trial was not delayed while due to the pending disqualification motion.  *See* Doc. No. 695.  Defendant Bongiovanni's attorneys wanted the trial to commence 42 days after the holidays.  *Id.; see also* Doc. No. 697-1 at 3-4.  In other words, the defense wanted more time with the 3500 materials and did not want to proceed to trial more expeditiously.  Consistent with the defendant's preferences and with the government's consent, Judge Vilardo scheduled the trial to commence on February 12, 2024.  *See* Doc. No. 762.  The trial

concluded with a partial verdict and mistrial on unresolved counts on April 12, 2024 (*see* Doc. Nos. 867, 880).

The government submits this response in opposition to the defendant's motion to dismiss the indictment based on alleged Speedy Trial violations.

## **ARGUMENT**

### I.   **THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO DISMISS BASED UPON CONSTITUTIONAL SPEEDY TRIAL BECAUSE THE MOTION WAS NOT FILED BEFORE TRIAL.**

The defendant's trial commenced on February 12, 2024, and concluded with a partial verdict and mistrial on unresolved counts on April 12, 2024.  *See* Doc. Nos. 867, 880.  A motion to dismiss for violation of constitutional speedy trial is one that must be brought before trial.  Fed. R. Crim. P. 12(b)(3)(A)(iii).  A motion to dismiss due to a violation of constitutional speedy trial is untimely if it is not brought before trial in accordance with Rule 12(b)(3).  Fed. R. Crim. P. 12(c)(3).  To file an untimely motion, a movant must establish good cause.  *Id.*  "To satisfy the 'good cause' standard of Rule 12(c)(3) defendant must establish that the basis for the motion was not (and could not have been) known before the expiration of the motion deadline." *United States v. Sanders,* No. 19CR00125RJAJJM001, 2020 WL 8513483, at *3 (W.D.N.Y. Oct. 9, 2020), *report and recommendation adopted,* No. 19-CR-125-A, 2021L 81654 (W.D.N.Y. Jan. 11, 2021).

The defendant has failed to acknowledge that good cause is required to file the instant motion to dismiss and has failed to establish it.  Unquestionably, the defendant did not file a

motion to dismiss for constitutional speedy trial before trial commenced on February 13, 2024. In fact, on August 10, 2023, the defendant specifically stated, "**[A]dmittedly, these delays, when evaluated holistically, <u>do not presently present a reason for speedy trial dismissal under the Barker factors</u>. It is for this reason that Mr. Bongiovanni <u>and his counsel do not move for dismissal at this time</u>.**" *See* Doc. No. 586. Moreover, on September 6, 2023, while the Court was in the process of setting a January 8, 2024, trial date, the defendant specifically stated that he did not want to sever and proceed to trial in October 2023, as follows:

|  |  |
|---|---|
| THE COURT: | **Okay. So you don't -- you don't want a separate trial, for instance, in October [2023]**? |
| MR. SINGER: | **No, Judge. At this time, I think the delay is fair and, you know, logistically speaking, I don't know that can be pulled off even if we asked for it.** |

*See* Doc. No. 626 at 25: 16-21 (emphasis added).

The defendant's trial commenced on February 12, 2024, and the defendant never filed a motion to dismiss for constitutional speedy trial grounds. When the Court granted a mistrial on the unresolved counts on April 12, 2024, it did not create an avenue for the defendant to file a motion he waived pre-trial. Rather, mistrial on the unresolved counts triggered the provisions of the Speedy Trial Act, which allow for 70 days for the Court to conduct the retrial following the granting of a mistrial. *See* 18 U.S.C. § 3161(e); *see also Rivera*, 844 F.2d at 919.

Because the defendant failed to file his motion to dismiss pre-trial, and because he cannot establish that good cause, the only window of time the Court should be concerned with is the time since April 12, 2024. As to that time-period, once again the government has

been the only party seeking to progress the case towards trial.  *See* Doc. No. 867 ("Court declares a mistrial on Counts 1 - 11 and 14 of the Indictment. Jury individually polled by Judge Vilardo. All jurors and alternate jurors discharged. Government requests case be scheduled for trial on unresolved counts."); *see also* Doc. No. 881 (government motion to set a trial date).  Accordingly, the defendant's motion to dismiss on constitutional speedy trial grounds is untimely, has been waived, the defendant has failed to establish good cause, and it should be denied in all respects.[13]

## II.   THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO DISMISS BECAUSE THE DEFENDANT HAS NOT ESTABLISHED A SIXTH AMENDMENT SPEEDY TRIAL VIOLATION.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . .  U.S. Const. Amend. VI.  "The absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim.  *See* 18 U.S.C. § 3173.  Numerous courts, however, have held that it will be an "unusual case in which the Act is followed but the Constitution violated."  *United States v. Rodriguez-Mendez*, No. 22-1422, 2023 WL 3378005, at *4 (3d Cir. May 11, 2023), *cert. denied*, No. 23-5526, 2023 WL 6558697 (U.S. Oct. 10, 2023); *United States v. Koerber*, 10 F.4th 1083, 1109 (10th Cir. 2021); *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014); *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002); *United States v. Davenport*, 935 F.2d 1223, 1238-39 (11th Cir. 1991); *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982); *United States v. Feeterman*, 2023 WL 2782287, at *11 (W.D.N.Y. Apr. 5, 2023).  "Even more exceptional must be the case in

---

[13] "It would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not."  *Titlbach*, 339 F.3d at 699.  "Delays caused by defense counsel are attributable to the defendant."  *Brillon*, 556 U.S. at 94.

which the Act is followed but there is a 'clear or obvious' Sixth Amendment error." *Rice*, 746

F.3d 1081.  This is not that unusual or exceptional case.

The Supreme Court has set forth four factors to be balanced when considering a Sixth

Amendment speedy trial claim: "Length of delay, the reason for the delay, the defendant's

assertion of his right, and prejudice to the defendant."  *Barker v. Wingo*, 407 U.S. 514, 530

(1972).  If the threshold inquiry, length of delay, triggers a *Barker* analysis, no single factor is

"a necessary or sufficient condition" to finding that the Sixth Amendment right to a speedy

trial has been violated, and all four factors "must be considered together with such other

circumstances as may be relevant."  *Id.* at 533.  This is to say that none of the *Barker* factors

"possesses any 'talismanic qualities.'"  *Rayborn v. Scully*, 858 F.2d 84, 92 (2d Cir. 1988) (citing

*Barker*, 407 U.S. at 533).

Accordingly, "presumptive prejudice" caused by excessive delay "cannot alone carry

a Sixth Amendment claim without regard to the other *Barker* criteria."  *Doggett v. United States*,

505 U.S. 647, 656 (1992).  The second factor, "reason for the delay – is often critical. The

Sixth Amendment is rarely violated by delay attributable entirely to the defendant." *United*

*States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015).  Moreover, "when it is manifestly apparent

that a defendant has no serious interest in the speedy prosecution of the charges against him,

a court need not ignore the defendant's . . . recalcitrance in determining whether his sixth

amendment rights have been violated."  *Rayborn*, 858 F.2d at 92.

With respect to the factor regarding prejudice to the defendant, this factor "should be assessed in light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532.  There are three interests the Supreme Court has identified: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*.  Of the three, the Supreme Court has acknowledged "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. However, affirmative proof of the impairment of defense is not required in order to show a speedy trial violation. *United States v. Tigano*, 880 F.3d 602, 618 (2d Cir. 2018).

The speedy-trial right is "amorphous," "slippery," and "necessarily relative."  *Barker*, 407 U.S. at 522, (quoting *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S. Ct. 573 (1905)).  It is "consistent with delays and depend[ent] upon circumstances."  *Id.* at 522 (internal quotation marks omitted).  The right therefore cannot be measured in a finite number of days, months, or years, "largely because what may be considered 'speedy' is necessarily dependent on the nature of the trial and the parties' interests in the given case."  *United States v. Tufino*, No. 20-CR-81S, 2021 WL 1788521, at *2 (W.D.N.Y. May 5, 2021) (citing *United States v. Ghailani*, 733 F.3d 29, 41 (2d Cir. 2013); *Barker*, 407 U.S. at 521 ("It is . . . impossible to determine with precision when the right has been denied.  We cannot definitively say how long is too long in a system where justice is supposed to be swift but deliberate."); *United States v. Ewell*, 383 U.S. 116, 120 (1966) ("A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself."); *United States v. Ray*, 578 F.3d 184, 191 (2d Cir. 2009) (noting that the right "neither prohibits all delays,

nor establishes a strict time limit between the announcement of a charge and the commencement of trial")).

There is a fundamental "difference between the right to speedy trial and the accused's other constitutional rights." *Barker*, 407 U.S. at 521. Although pretrial delays can harm the defendant, sometimes "deprivation of the right may work to the accused's advantage." *Id.* For example, "witnesses may become unavailable or their memories may fade," which may weaken the prosecution's case if it depends on witness testimony. *Id.* "Thus, unlike the right to counsel or the right to be free from compelled self-in-crimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." *Id.*

As set forth below, because the factors weigh heavily against a finding of a Speedy Trial violation, the Court should deny the defendant's motion to dismiss.

**1. The Length of Delay Weighs in Favor of the Defendant.**

The pre-trial litigation in this case was lengthy: approximately 4 years, 3 months, and 13 days elapsed between the indictment in October 2019 and the trial in February 2024. However, even presumptive prejudice caused by excessive delay "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett*, 505 U.S. at 656. All other *Barker* factors weigh against a speedy trial violation.

"The length of delay is merely considered a 'triggering mechanism': if the delay is not sufficiently long, there is no need to consider the other factors." *United States v. Swinton*, 797

F. App'x 589, 594 (2d Cir. 2019) (citing *Barker*, 407 U.S. at 530).  There is no bright-line rule for when a delay begins to infringe a defendant's speedy trial right; when unlawful infringement starts depends "upon the peculiar circumstances of the case."  *Barker*, 407 U.S. at 530-31.  Once the fact of a sufficiently long delay has been established, "the burden is upon the government to prove that the delay was justified and that appellant['s] speedy trial rights were not violated."  *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979).[14]

### 2.  Reason for Delay.

The reason for the delay, *Barker*'s second factor, also weighs heavily against this Court finding a speedy trial violation. As the reasons for the delay are readily apparent from the record, described in detail above, the government highlights only a few representative causes here.

Much of the delay in this case is attributable to the defendant's decision to engage in protracted pre-trial motion practice, both individually and by joining in motions with codefendant Gerace.  Moreover, the defendant sought extensions and adjournments to the point where he rarely, if ever, adhered to the original deadlines imposed by the Magistrate Judge and District Court.  Furthermore, the defendant objected to and appealed from virtually

---

[14] The government, however, also notes that the delay "remains within a time period where the Second Circuit has found no violation."  *See United States v. Pettway*, No. 12-CR-103S (1), 2017 WL 3475434, at *2 (W.D.N.Y. Aug. 11, 2017) (citing *Flowers v. Warden, Connecticut Correctional Institution*, 853 F.2d 131, 133 (2d Cir. 1988) (collecting cases with delays ranging from 24 months to six years where no speedy trial violation was found); *United States v. Saglimbene*, 471 F.2d 16 (2d Cir. 1973) (six years)).

every decision rendered by the Magistrate Judge to the District Court.  Additionally, the defendant retained conflicted counsel, chose to litigate the conflict for months, and then took time hire a conflict-free attorney.   Finally, after Mr. Harrington withdrew over the government's objection, the remaining time was used by Bongiovanni and his new attorneys to prepare for trial.

Indeed, the second *Barker* factor requires courts to consider the reason for delay and evaluate "whether the government or the criminal defendant is more to blame." *Doggett,* 505 U.S. at 651.   The Second Circuit has observed that, while no one *Barker* factor is independently dispositive, the reason-for-delay factor "is often critical" in the analysis of a speedy trial claim. *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015).  The record in this case easily establishes that the defendant, who jointly litigated his case with codefendant Gerace for the majority of the time they were joined for trial, is responsible for the delay.

There are three types of Sixth Amendment speedy trial delay: deliberate, neutral and valid.  *See Barker*, 407 U.S. at 531.   Deliberate delay, which is delay intended to confer an advantage over a defendant, weighs most heavily against the government.   *See Barker*, 407 U.S. at 530.   Delay resulting from government negligence and overcrowded court dockets, however, is weighed less heavily against the government.   *See id.* at 530; *see also United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (no Sixth Amendment violation despite apparent government negligence in failing to expedite a mental competency examination).   "Delay is considered 'valid' delay if it is reasonable pretrial delay, *see e.g.*, *United States v. Vassell*, 970

F.2d 1162, 1165 (2d Cir. 1992) (seven-month delay in complex case to negotiate plea and cooperation agreement with codefendant).

In contrast, delay caused by the defense weighs against the defendant: "[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine." *Barker*, 407 U.S. at 529. "That rule accords with the reality that defendants may have incentives to employ delay as a defense tactic: delay may work to the accused's advantage because witnesses may become unavailable or their memories may fade over time." *Brillon*, 556 U.S. at 90. "Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant." *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546 (1991)). Indeed, "[i]t will be an exceptional case where . . . a delay caused by a defense attorney counts against the government . . . and not the defense. Unless the record shows otherwise, we normally presume that a defense attorney is carrying out his or her client's chosen trial strategy and that any delays resulting from that strategy count against the defendant." *Tigano*, 880 F.3d at 616-17.

Here, the defendant has conjured up large swaths of time that he claims are chargeable to the government, but THE defendant's claims are belied by the record. The overwhelming majority of the delay was caused by the defendant, and any other delay was valid or at least neutral. First, this case is a far cry from *Tigano*, 880 F.3d at 616, where confusion and assignment to multiple magistrate judges caused nearly two years of delays, whereas here a single magistrate judge. Second, with respect to the proceedings before the magistrate judge,

when given the opportunity by the district court in January 2022 to set a trial date, the defendant's counsel stated, ""**I would prefer to defer it, Judge, until we wrap up with [Magistrate] Judge Roemer**." *See* Doc. No. 247 at 13: 23-24 (emphasis added). Third, the case involved voluminous and complex motions, and the record plainly establishes that the magistrate judge was diligent, worked hard, and only extended his time to decide motions once despite having surgery in the midst of a Global pandemic, as follows:

> The Court has reviewed the defendants' motion papers, memoranda/affidavits, and the papers submitted on behalf of the government, in some detail, and has made progress toward a decision on the motions. However, the Court finds that this case is complex because it involves multiple defendants charged in an 18-count, 45-page indictment alleging multiple conspiracies as well as various other crimes. In addition, a myriad of lengthy pretrial motions have been filed raising complex legal issues, including a suppression motion which necessitated a multi-day evidentiary hearing with numerous witnesses. Further, on May 6, 2022, the undersigned became unavailable because of illness and the need for immediate surgery. The Court notes that the undersigned has presided over this case since it began in 2019 and has conducted all evidentiary hearings. Thus, transferring the matter to another Magistrate Judge, who would need to become familiar with the extensive prior proceedings, would not have served to shorten the time for deciding the motions and likely would have resulted in further delay.

*See* Doc. No. 290.

Similarly, the government's decision to charge Michael Masecchia and Peter Gerace did not delay the trial. First, Michael Masecchia was charged shortly after Bongiovanni received discovery, did not file any motions, pleaded guilty, and was sentenced. Second, by the time Gerace was added to the case on February 25, 2021, speedy trial time was already excluded and Bongiovanni had already set course on a path of protracted litigation and delay. Specifically, as described above, Bongiovanni filed a 114-page omnibus motion containing dispositive motions to dismiss the indictment and counts (claiming vindictive prosecution and

failure to state an offense), and non-dispositive motions for a bill of particulars, discovery, suppression of evidence (related to the border search of a cell phone and statements), Jencks Act material, 404(b) notice, expert witnesses, and Rule 609, *see* Doc. Nos. 78, 79, 81, and the government filed its responses on February 16, 2021, *see* Doc. Nos. 85, 87.  Moreover, when given the option to stick with the original schedule and pursue his recently filed motions, Bongiovanni chose to start over and re-file motions.  *See* Doc. No 104 at 10.  Thereafter, Bongiovanni and Gerace engaged together in a joint, concerted, and protracted course of motion practice—filing *ad hoc* motions piecemeal to delay trial.

The joint defense strategy employed by Bongiovanni and Gerace was consistent with the Supreme Court's recognition in *Barker*, 407 U.S. at 521, that although pretrial delays can harm the defendant, sometimes "deprivation of the right may work to the accused's advantage."  *Id.*  For example, "witnesses may become unavailable or their memories may fade," which may weaken the prosecution's case if it depends on witness testimony.  *Id.* Indeed, the delays in this case hurt the prosecution because if trial proceeded as scheduled on June 21, 2023, it is anticipated that Crystal Quinn would have provided damaging testimony against both Bongiovanni and Gerace.  In particular, Crystal Quinn would have testified, in part, that that Gerace said in front of Quinn that Bongiovanni "is giving the feds wrong information to derail them from Pharaohs and throwing them off to other things to protect the club," and that  Bongiovanni was giving "false information to the feds" to "protect" Gerace and Pharaohs.  Instead of a jury hearing this critical testimony from Crystal Quinn, the delay of the June 21, 2023 trial, rendered Crystal Quinn unavailable due to her untimely

death, which Gerace and others have been charged with causing because of her status as a witness in this case. *See United States v. Peter Gerace Jr., et al.,* Case No. 23-CR-99.

The defendant's additional claim that any component of the government acted in bad faith by moving to disqualify Gerace's attorney, Mr. Soehnlein, (*see* Doc. No. 920 at 23), and that Bongiovanni's case should be dismissed as a result, is nothing more than a meritless barb. First, the government's motion to disqualify Mr. Soehnlein came during a period when time was already excluded and trial was scheduled for January 8, 2024. Second, as described above, the government took the initiative and filed a letter indicating it would agree to severance. Third, the defendant did not want to proceed to trial on January 8, 2024, but rather wanted the trial to commence 42 days "after the holidays" to have additional time to prepare with 3500 materials the government produced early. Fourth, the Court observed that the obstruction of justice issue as to Mr. Soehnlein (which was part of the basis for the government's motion to disqualify due to a *per se* conflict of interest) was "a matter of first impression," and that "[t]he *per se* conflict question—which the government created and which the government has the power to eliminate—is a close one." *See* Doc. No. 889 at 1, 3 n.2.

Here, there is no evidence of deliberate delay — and to the contrary, at every turn it was the government seeking to move the defendant's case towards trial. Only after all motions were decided and a joint trial was set did the defendant move for severance from codefendant Gerace. *Cf. Tufino,* 2021 WL 1788521, at *3. The record illustrates that the defendant engaged in protracted litigation due to the serious nature of the charges against

them.  Because the defendants face significant terms of imprisonment if convicted, it was in the defendants' best interest to vigorously attack each part of the government's case. These delays are neutral.  *Cf. Pettway*, 2017 WL 3475434, at *3 ("Consequently, this is not a case where the government is solely responsible for unreasonable delay.  Rather, the majority of delay is attributable to the defendants' motion practice and the delay attendant to multi-defendant criminal trials.").[15]

The record demonstrates that defendant consistently engaged in dilatory tactics in pushing the trial as far down the line as possible.  For example, defense counsel sought extensions and adjournments with respect to every original motion filing deadline and related argument.[16]  The defendant argued against setting trial dates, and when trial dates were inevitable, consistently requested dates farther out than either the government or court proposed.  The defendants also sought modifications of bail conditions, and these delays count against the defense.  *Cf. United States v. Blanco*, 861 F.2d 773, 778 (2d Cir. 1998) ("A defendant's claim that the government violated her right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay.").

---

[15] To the extent there was any pandemic-related delay, it was certainly neutral.  *See United States v. Akhavan*, 20-cr-188 (JSR), 2021 WL 797806, at *5 (S.D.N.Y. Mar. 1, 2021) (finding delay due to the COVID-19 pandemic to be "a neutral reason [for delay] outside of the Government's control"); *United States v. Zhukov*, 18-CR-633 (EK), 2020 WL 6302298, at *3 (E.D.N.Y. Oct. 27, 2020) (finding delay attributable to the COVID-19 pandemic to be "surely beyond the prosecution's control").

[16] By the government's count and review of the docket, excluding replies and motions to seal, the defendant filed or made approximately 50 motions.  When Bongiovanni's motions are considered in conjunction with the coordinated and protracted motion practice that he and Gerace engaged in for the majority of the time they were joined for trial, the number of motions (excluding replies, motions to seal, and Second Circuit appeals) exceeds 100 motions.

Finally, by engaging in protracted motion practice in a complex case, the defendant now seeks to use "use the delay caused by those motions as a basis for a speedy-trial claim" where"[h]aving sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon."  *See United States v. Loud Hawk*, 474 U.S. 302, 316-17 (1986).  Accordingly, the reason for delay weighs heavily in favor of the government.

### 3.  Assertion of Right.

This Court can immediately weigh the third factor – the defendant's assertion of his rights – heavily against finding a constitutional violation.  Bongiovanni never requested a trial date, chose a course of maximum litigation of pre-trial motions, requested extensions and adjournments routinely (albeit often during the midst of the COVID-19 pandemic), and opposed virtually every effort the government made to move this case towards trial. Defendant Bongiovanni had "no serious interest in the speedy prosecution of the charges against him," and this Court should not ignore his "recalcitrance in determining whether his sixth amendment rights [had] been violated." *Rayborn*, 858 F.2d at 92.

As set forth in detail above, on January 22, 2022, when the government indicated to Judge Sinatra that a trial date should be set, counsel for the defendant stated, "**I would prefer to defer it, Judge, until we wrap up with [Magistrate] Judge Roemer**."  *See* Doc. No. 247 at 13: 23-24 (emphasis added).

On November 30, 2022, when the government requested an April 2023, trial date, the defendant rejected the idea in favor of having more time to review 3500 materials the government agreed to produce early.  *See* Doc. Nos. 324, 363 (transcript).

In May 2023, Bongiovanni's former counsel withdrew from the case, thereby further delaying the scheduled June 21, 2023, trial.  When an August 14, 2023, trial date was set despite Bongiovanni's current counsel's request for a longer adjournment of the trial, defense counsel stated, **"I don't think that we can object. I spoke -- we spoke to our client about that, Judge, because we are the proponents of the motion for time for preparation, so I don't believe we have an objection."**  *See* Doc. No. 587 at 48:16-19; *see also* Doc. No. 484. The government remained ready to go to trial on June 21, 2023.  *Id.* at 44:5-8.

Later, on June 30, 2023, after the case was transferred to a new District Judge Vilardo and trial was rescheduled for October 23, 2023, the defendant indicated that an even later trial date was preferable.  *See* Doc. No. 553 at 19-20 ("So, Judge, when we originally got assigned to the case […] I had suggested a trial date in January [2024]. […]But I can say that it would be both of our preference to have this tried on the 1 November [2023] date that Mr. Cohen stated."); *see also Id.* at 29-30.

On September 6, 2023, after codefendant Gerace obtained new counsel and trial was rescheduled for January 8, 2024, the Court asked defendant Bongiovanni if he would prefer a severed trial in October [2023], as scheduled, and counsel for the defendant stated, "No,

Judge. At this time, I think the delay is fair and, you know, logistically speaking, I don't know that can be pulled off even if we asked for it." *See* Doc. No. 626 at 25:18-20.

Finally, on December 15, 2023, after additional issues arose with respect to codefendant Gerace's counsel (which occurred during a time when speedy trial time was already excluded and the government and Bongiovanni were preparing for trial), the government indicated it would agree to severance as long as trial was scheduled no later than February 5, 2024. *See* Doc. No. 695. The defendant filed the severance motion invited by the government but requested that trial commence 42 days after the holidays, which culminated in the February 12, 2024, trial date. *See* Doc. Nos. 697, 700, 762.

Plainly, the defendant never requested a trial date, failed to assert his right to a speedy trial, and even when the government indicated it would agree to sever as long as trial commenced on February 5, 2024, the defendant strategically requested a little additional time. Moreover, the defendant's motion is devoid of any specific claim or date that the defendant asserted his right to a speedy trial. Rather, the defendant's motion, while attempting to finesse and wordsmith around reality, essentially acknowledges that the defendant "admittedly was not vocal," and that he did not assert his right to a speedy trial because he "trusted" his attorney. *See* Doc. No. 920, at 26. "Delays by a defendant's attorney are attributable to the defendant." *Brillon*, 556 U.S. at 94.

The law does not require prosecutors and courts to read minds. It does require defendant's to assert their speedy trial right, and this defendant did not. When the defendant's

failure to assert his right to a speedy trial is viewed in combination with the defendant's actions—filing a seemingly endless array of motions, extension requests, and objections—and through the words of his former and current attorneys declining to set trial dates and requesting longer adjournments, there is no doubt the defendant did not assert his right to a speedy trial. Accordingly, any argument proffered by the defendant that he asserted his right to speedy trial lacks merit and should be rejected.

### 4. Prejudice to Defendant.

As to the fourth and final *Barker* factor, prejudice, the Supreme Court has identified three interests: (i) oppressive pretrial incarceration; (ii) anxiety and concern of the accused; and (iii) the possibility that the defense will be impaired, with the third interest as the most serious. *Barker*, 407 U.S. at 532.

First, the defendant was not incarcerated pre-trial, and so oppressive pre-trial incarceration is inapplicable.

Second, there is no indication that Bongiovanni suffered anxiety or concern, and, as is clear from the motion practice, the delay worked to Bongiovanni's favor as a powerful government witness, Crystal Quinn, became unavailable. Additionally, to the extent Bongiovanni claims that "significant media attention" (*see* Doc. No. 920 at 28) caused him anxiety and concern, the defendant neglected to mention that he opposed the government's motion for an intra-district transfer of the trial to Rochester, New York—a transfer the government sought to avoid excessive media coverage. *See* Doc. Nos. 619, 623, 645, 654,

663.   "Anxiety and concern of the accused are undoubtedly present to some degree in every case... [h]owever, that alone does not establish prejudice where... the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific circumstances." *Morris v. Wyrick*, 516 F.2d 1387, 1391 (8th Cir. 1975); *see also United States v. Santacruz,* No. 21 CR. 754 (JFK), 2022 WL 3701549, at *8 (S.D.N.Y. Aug. 26, 2022) ("[Defendant] has failed to show that he has experienced undue pressures beyond the considerable anxiety [that] normally attends the initiation and pendency of criminal charges[.]" (internal quotation marks omitted)).   The defendant's motion claiming he suffered from "anxiety and concern" is unsupported by a single case wherein media reports of a criminal case were relevant to a motion to dismiss for constitutional speedy trial.  As a result, Bongiovanni's claims of anxiety and concern are nothing more than buzz words and should be rejected.

Third, as set forth, the delays inured to the defendant's benefit and the defense was not impaired by having government 3500 materials for almost one year (production commenced in January 2023, and former counsel for Bongiovanni was given access to 3500 materials as far back as 2022) before trial commenced.  Moreover, to the extent the defendant claims that his father, Frederick Bongiovanni, was a critical witness, any such argument lacks merit because the defendant's actions in pursuing protracted litigation delayed the trial.  Additionally, the defendant could have taken a Rule 15 deposition to preserve Mr. Bongiovanni's testimony before trial, but decided not to do so.[17]  Finally, to the extent that Bongiovanni's delays and the protracted litigation he pursued resulted in him losing his

---

[17] Pursuant to Rule 15(a)(1), a party may move that a prospective witness be deposed in order to preserve the testimony for trial.  The Court may grant the motion because of exceptional circumstances and in the interest of justice.

45

original attorney, that circumstance resulted in his acquisition of not one, but two, skilled attorneys—attorneys that he consistently praised.  In that vein, the delays Bongiovanni caused inured to his benefit.

The Second Circuit, and courts in this district, has rejected generalized claims of impairment.  *See, e.g.*, *Blanco*, 861 F.2d at 780 ("[[B]ecause] delay can just as easily hurt the government's case, [defendant's] general claim that the delay impaired her defense . . . lacks force."); *Rayborn*, 858 F.2d at 94 ("[C]ourts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice."); *United States v. Ramos*, 420 F. Supp. 2d 241, 252 (S.D.N.Y. 2006) ("Defendant's heavy reliance on presumptive prejudice would be considerably more compelling if the [g]overnment was primarily responsible for the delay, or was responsible for a greater portion of the delay[;] [b]ecause this [c]ourt has found that the [g]overnment is only minimally to blame for the delay, the presumption of prejudice is correspondingly weakened.").

"[T]he government bears the burden of proof when the case comes at last to trial." *Barker*, 407 U.S. at 521.  If anything, it was the government and the public who were unduly prejudiced by the delay in this case.  The defendant, thus, has failed establish impairment to his defense.

### 5.  Conclusion: There was no Speedy Trial Violation.

This case is not *Black*[18] or *Tigano*.  "[D]elay, no matter how lengthy, cannot alone carry

---

[18] 918 F.3d 243 (2d Cir. 2019).

a Sixth Amendment claim without regard to the other *Barker* criteria.  Instead, all four factors must be considered together with such other circumstances as may be relevant."  *United States v. Cabral*, 979 F.3d 150, 157 (2d Cir. 2020) (internal quotation marks and citations omitted).  Indeed, "if the government pursues a defendant with reasonable diligence, the Sixth Amendment claim fails however great the delay unless the defendant can show specific prejudice to his defense."  *Id.*  Here, the *Barker* factors weigh heavily against finding a constitutional speedy trial violation.  Bongiovanni never asserted his constitutional speedy trial right; he and his codefendant were responsible for the bulk of the delay in a complex case; and he did not suffer prejudice because he was released and resisted multiple government attempts to move the case toward trial.  Accordingly, the Court should deny the defendant's motion to dismiss based on the Sixth Amendment Speedy Trial claim.

## CONCLUSION

For all the reasons stated above, the Court should deny the defendants' motion to dismiss the indictment based on alleged speedy trial violations.

DATED:  Buffalo, New York, May 17, 2024.

COREY R. AMUNDSON                    TRINI E. ROSS
Chief                                United States Attorney


BY:   s/JORDAN DICKSON           BY:   s/JOSEPH M. TRIPI
      Trial Attorney                   s/NICHOLAS T. COOPER
      Public Integrity Section         s/CASEY L. CHALBECK
      U.S. Department of Justice       Assistant United States Attorneys
      Criminal Division                Western District of New York
      1301 New York Ave. NW, Suite 1000   138 Delaware Avenue
      Washington, D.C. 20530           Buffalo, New York 14202
      202-597-0508
      Jordan.Dickson@usdoj.gov