UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

Docket No.: 19-CR-227

JOSEPH BONGIOVANNI,

PETER GERACE, JR.,

Defendants.

_____

UNITED STATES OF AMERICA,

v.

PETER GERACE, JR.,                                        Docket No.: 23-CR-37


_____

**PETER GERACE, JR. 'S RESPONSE TO THE GOVERNMENT'S MAY 6, 2024 MOTION TO
DISQUALIFY ERIC M. SOEHNLEIN, ESQ. (DKT. # 919)**

Peter Gerace, Jr, by and through counsel (Mark A Foti, Esq. and Eric M.

Soehnlein, Esq.) provides the following memorandum in opposition to the

government's second motion to disqualify Attorney Soehnlein from representing Mr.

Gerace in the above matters. (Dkt. # 919).  The motion should be denied in its entirety.

1

## I.      Introduction

Without proper grounds to do so, the prosecutors in this case previously sought to disqualify Attorney Eric Soehnlein from representing defendant Peter Gerace, Jr. Dkt.# 666.[1]

At oral argument, government counsel invoked the oft-quoted passage from *Berger v. United States* in an attempt to persuade the Court they are concerned "with justice being done" rather than gaining a strategic advantage. Dkt. 825 at p. 4.  That the government chose that as a starting point is a tacit acknowledgment that, objectively viewed, whether the government acted in good faith is an open question.  Later in the same court appearance, the lead prosecutor on the case tried to distance the trial team from the motion to disqualify, referring to the decision to bring the motion as "a shit sandwich."  Dkt.# 825 at p.30.    Five years after *Berger*, then-Attorney General Robert

---

[1] The government's obligation to bring a motion to disqualify under the *per se* conflict standard is triggered by credible evidence. *See, e.g., United States v. Fulton*, 5 F.3d 605 (2d Cir. 1993) (obligation triggered by statements from cooperating government trial witness); *United States v. Williams*, 372 F.3d 96 (2d Cir. 2004) (obligation triggered when defense counsel was indicted on various narcotic and firearms related offenses); *United States v. Lewis*, 850 F. App'x 81 (2d Cir. 2021) (obligation triggered when it was brought forward by government witness who corroborated the allegation with text messages and email communications.).  By comparison, the motion in this case was based upon an unauthenticated tape recording that the prosecution never bothered to investigate despite the Court's instruction that the government should do so (Dkt. # 825 at p. 57), and despite the defense's representation that such an interview would exculpate Attorney Soehnlein (Dkt. # 771 at Exh. 1).  The prosecution also failed to inform the Court of a completely exculpatory transcript of proceedings conducted on May 17, 2023 (Dkt. # 488), demonstrating the existence of a good-faith basis including on the defense witness list the individuals that the government later relied upon as support for its meritless obstruction of justice allegations.

Jackson warned: "While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst."[2]

On April 25, 2024, this Court denied the government's motion to disqualify Attorney Soehnlein, holding "…that a defense attorney's putting the name of an individual who has been disclosed in the government's discovery on a witness list—regardless of the intent behind it—is as a matter of law not obstruction of justice under 18 U.S.C. § 1503. Rather, such conduct constitutes 'lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding' and is therefore protected by the safe harbor of 18 U.S.C. § 1515(c)." Dkt.# 889 at p.1-2.   In its decision, the Court emphasized that, if the government's attack on defense counsel were permitted on these facts and in this case, it would risk the "rights of all defendants in this District and beyond to the effective assistance of counsel—and by extension this Court's obligation to preserve the fairness of its criminal proceedings."  *Id.*

Here we are again.[3]

---

[2] "The Federal Prosecutor", Robert Jackson, Address to the Second Annual Conference of United States Attorneys in Washington, D.C., 1940.

[3] The government all but admits in footnote 7 of its submission that this "new" motion is, in actuality, a motion for reconsideration of the Court's decision denying the government's prior disqualification motion.  There are no "facts or data the Court overlooked," *cf.* Government's Submission (dkt. 919) at 14 n.7, and the government offers no basis for the Court to reconsider its decision other than that the government disagrees with it.  The government not only fails to present the Court with a legitimate basis for reconsideration—it also ignores altogether the law of the case doctrine.

On May 6, 2024, the government filed a second motion to disqualify Attorney Soehnlein, using the same factual predicate as the first motion, but arguing that it now "analyzes the facts through the actual and potential conflict rubric, as opposed to through a per se conflict rubric." Dkt. # 925 at p. 2.  The government makes no proffer as to why the arguments in the current motion to disqualify could not have been advanced in the first motion to disqualify Attorney Soehnlein or why the government brings this second motion now in a further effort to delay Mr. Gerace's trial.

Just as it did before, the government's second motion to disqualify misstates and omits critical facts and fails to cite controlling law.  The motion advances an argument that is contrary to well-settled law and Department of Justice policy.  It is based on a misreading of the law and rank speculation.   It embodies the fears expressed by Attorney General Jackson.

---

The law of the case doctrine indicates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U. S. 605, 618 (1983).  The Second Circuit describes it thusly: "The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F. 3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002)).  Here, the government offers no cogent or compelling reason.  It simply disagrees with the decision.  As a result, "the law of the case doctrine forecloses reconsideration of issues that were decided — or that could have been decided — during prior proceedings." *United States v. Williams*, 475 F. 3d 468, 471 (2d Cir. 2007).  The Second Circuit has recently deferred to the law of the case doctrine on multiple occasions to foreclose reconsideration of decisions it previously decided.  *See e.g. Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 146-47 (2d Cir 2020); *see also Doe v. East Lyme Bd. of Educ.*, 962 F. 3d 649, 662-63 (2d Cir 2020).  This Court should as well.

The motion should be viewed for what it is -- another play in the government's calculated campaign to prevent Mr. Gerace from preparing for trial or defending himself with well-qualified counsel of his choosing.  It should be denied.

## II.    Legal Landscape

The importance of a criminal defendant's Sixth Amendment right to counsel of his choice is well-known.  It has been recognized by this Court in this case, and it bears repeating.

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." *See* U.S. Const. Amend. VI. The right to counsel "was designed to assure fairness in the adversary criminal process." *Wheat v. United States*, 486 U.S. 153, 158, 108 S. Ct. 1692 (1988) (citing *United States v. Morrison*, 449 U.S. 361, 101 S. Ct. 665 (1981)).

The right to counsel includes the right to be represented by counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557, (2006); *Powell v. Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55 (1932). As the Supreme Court has repeatedly reiterated: "[T]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Gonzalez-Lopez*, 548 U.S. at 144 (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617,

5

624-625, 109 S. Ct. 2646 (1989)). Where the right to be assisted by counsel of one's

choosing is wrongly denied, the Sixth Amendment violation is complete, without any

additional showing of ineffectiveness or prejudice. *Id.* at 146; *United States v. Cain*, No.

05-CR-360A, 2008 U.S. Dist. LEXIS 130664, at *9 (W.D.N.Y. Nov. 5, 2008).

### III.   There is No Conflict -- Attorney Soehnlein Is Not and Cannot Be a Witness Against Mr. Gerace

#### a.   Relevant Facts

The government's first argument is that Attorney Soehnlein cannot continue as

counsel to Mr. Gerace because he is a witness to overt acts in furtherance of Count I

(obstruction of justice conspiracy) of the 23-cr-99 indictment.  Specifically, the

government asserts that Attorney Soehnlein is a witness regarding two paragraphs of

the indictment -- paragraph 24, which alleges:

> "On or about June 20, 2023, Gerace Attorney 1 filed and caused the filing of a trial witness list that named two relatives of the assigned District Judge as GERACE'S defense witnesses. The listing of the District Judge's relatives as GERACE trial witnesses resulted in the District Judge recusing himself pursuant to 28 U.S.C. 455(b)(5)(iv), and the trial of Case Nos. 19-CR-227 and 23-CR-37, which was then scheduled for August 14, 2023, being adjourned.";

and paragraph 25, which alleges:

> "The trial witness list filed or caused to be filed by Gerace Attorney 1 listed Crystal Quinn as a defense witness.  The listing of Quinn as a witness for Gerace circumvented the provisions of a protective order which prohibited attorneys for GERACE from revealing to GERACE the government witness' names and from providing GERACE with the government's witness list."

6

Attorney Soehnlein is not and cannot be a witness with respect to either paragraph.  Each will be addressed in turn.

### i.  Paragraph 24

Attorney Soehnlein's knowledge about the witness list falls into two categories: what occurred publicly, which is not subject to the attorney-client privilege; and knowledge and communication protected by the attorney-client privilege, including Attorney Soehnlein's communications with Mr. Gerace.

With respect to the first category -- information that is not covered by the attorney-client privilege -- there are several witnesses, including AUSAs Tripi and Cooper or a docket clerk from the Clerk's Office, who can speak to the filing of the witness list. The government's allegations in this regard principally stem from the government's disagreement with the defense about what issues are germane at trial in the 19-CR-227 case.  As the Court knows, and as alluded to in footnote 1, above, this issue was discussed in depth at a colloquy on May 17, 2023.  Dkt. # 488.  That discussion wholly undermines any credible basis for arguing that the witness list filing identified in paragraph 24 furthered the conspiracy charged in Count I of the 23-CR-99 indictment.  In all events, information regarding this witness list is a matter of public record in court-filings.  Witness testimony is not needed regarding matters of public record.  *See* Fed. R. Evid. 902.

In such instances, in order to seek testimony from the attorney for a defendant, the government must make a showing that "the information sought is necessary.. [and] that there is no other reasonably available source for that information than the attorney." *In re Grand Jury Subpoena Served upon Doe*, 759 F.2d 968, 976 (2d Cir. 1985). The government's motion makes no attempt as to either.

With regard to the second category – information covered by the attorney-client privilege, the law generally forecloses inquiry.  The attorney-client privilege is well recognized by federal courts. *United States v. Zolin*, 491 U.S. 554, 562, 109 S. Ct. 2619 (1989); Fed. R. Evid. 501. The privilege enables "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677 (1981); *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) (attorney-client privilege and the related work-product doctrine "promote unfettered communication between attorneys and their clients so that the attorney may give fully informed legal advice" and "avoid chilling attorneys in developing materials to aid them in giving legal advice and in preparing a case for trial." (citations omitted)). Given the importance of the privilege, exceptions to it are narrow. *See United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351, 134 S. Ct. 2384 (2014); *United States v. Spinosa*, No. 21 CR 206 (PAE), 2021 U.S. Dist. LEXIS 120141, at *14 (S.D.N.Y. June 28, 2021)  It is not overstatement that the privilege

is essential to the provision of the effective assistance of counsel; without it, there can be no effective communication between attorney and client, and therefore no effective assistance provided by counsel to client.

Where the government seeks disqualification on the assertion that an attorney will be a witness against the accused, the government has the burden to come forward with evidence to show that confidential communications were made in furtherance of a fraud or of the crime at issue. *United States v. McDonald*, 2002 U.S. Dist. LEXIS 21651 (E.D.N.Y. 2002); *United States v. Zolin*, 491 U.S. 554, 573 (1989). To invoke the crime-fraud exception, the government must "'demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed'—or has been attempted—'and that the communications in question were in furtherance of the fraud or crime.'" *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426 (2013) (quoting *Jacobs, supra,*117 F.3d at 87). The facts supporting these two required showings "must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" *Jacobs*, 117 F.3d at 87 (quoting *In re John Doe, Inc.*, 13 F.3d 633, 637 (2d Cir. 1994); *United States v. Spinosa*, No. 21 CR 206 (PAE), 2021 U.S. Dist. LEXIS 120141, at *15 (S.D.N.Y. June 28, 2021)).

Here, the government has not and cannot make such a showing. This Court's decision established that the filing of the defense witness list was not a criminal act, and

the decision arguably forecloses any further argument on that point.  Dkt.# 889 at p. 1-2.

The government does not allege the witness list was a crime.  Dkt.# 919 at p. 4.   The

facts otherwise demonstrate there was a wholly legitimate, non-nefarious basis for its

filing.  That the government may speculate that Attorney Soehnlein has knowledge

relevant to this overt act that it may want to elicit at trial against Mr. Gerace is

immaterial.  This is a practice the law forbids. *See, e.g*., Section 9-13.410(3) of the Justice

Manual ("In [seeking evidence from an attorney for the defendant in] a criminal

investigation or prosecution, there must be reasonable grounds to believe that a crime

has been or is being committed, and that the information sought is reasonably needed

for the successful completion of the investigation or prosecution. The subpoena must

not be used to obtain peripheral or speculative information.").

### ii.   Paragraph 25

Much the same legal analysis applies to any potential testimony of Attorney

Soehnlein as it relates to paragraph 25.  The fact that Crystal Quinn, a longtime friend of

Mr. Gerace, was named on the witness list as a potential witness in Mr. Gerace's case is

publicly known and provable without testimony from Attorney Soehnlein.  The fact that

Ms. Quinn's name is on the witness list is not alleged to be a criminal act in the 23-CR-

99 indictment.  It was not in violation of any Court order.  There is no prohibition

preventing Mr. Gerace from reserving the right to call individuals who, like Ms. Quinn,

were close to him and whom he believed would provide relevant, helpful, or exculpatory testimony in his case.

Viewed in light of other aspects of the government's multi-indictment attack on Mr. Gerace, the government's argument in this regard is even more problematic. The factual assertions in the indictment are clearly and demonstrably false.[4]  As the Court knows, on March 24, 2023, the government unsealed a four-count indictment alleging that Mr. Gerace has engaged in witness tampering.  *See* 23-CR-37 at Dkt. # 1.   At the detention hearing that day, the government proffered at length about Ms. Quinn, her status as a witness, and her cooperation with the government:

> AUSA Tripi: November 19, 2019, the defendant was with two female associates of his, and as of that date, he'd had conversations clearly describing this witness/victim in this indictment as a snitch. That is, a snitch that was resulting in the problems he was looking at Federally, being a target. After referring to that witness as a snitch on prior occasions, that brought -- brings us to the night of November 19, 2019, where Mr. Gerace was with two females in his basement. And after having drinks with them and providing each of them cocaine, that all three of them used, Mr. Gerace making comments and statements about the witness in this case being a snitch and a snitch bitch. His colleague -- his

---

[4] The 23-CR-99 indictment is riddled with omissions and inaccuracies.  It omits the government's extensive proffer about Ms. Quinn and her anticipated testimony in open court three months before the witness list was filed.  23-CR-37, Dkt.# 6.  It omits the May 17, 2023 colloquy regarding the witness list that occurred five weeks before the witness list was filed.  Dkt. # 488.  It incorrectly argues Mr. Gerace wanted to delay his trial, even though he opposed any adjournment of the trial and demanded a speedy trial.  *See, e.g.,* Dkt.#484 ("Court addresses Defendant Bongiovanni's motion for a continuance of the trial date. Government and Defendant Gerace oppose the continuance. Court grants Bongiovanni's motion, to the extent of moving the trial date to 8/14/2023 at 9:30 AM.").  It omits the government's second proffer about Ms. Quinn's status as a witness on May 31, 2023.  Dkt.# 500 at pp 30-40. It misstates key events about the witness list, insisting it was two witnesses that caused recusal when it was actually only one witness.  Dkt.# 660.  It alleges Mr. Gerace's motion to reopen the detention hearing was denied on May 31, 2023.  *See* Indictment at para. 21.  That allegation is simply wrong, as the Court ordered additional briefing and the motion was denied on June 6, 2023.  *See* Dkt.# 504.

confidante, a proxy of his, you might say, made some messages, borrowing the other female's phone, because this witness had taken the steps to block certain people from her Facebook account. But the third person in the room was not blocked, so that provided an avenue for communications. So the one female associate of Mr. Gerace borrows the other female associate of Mr. Gerace's phone, while all three of them are using cocaine and makes statements that are stated out loud as to what those threats are. And it was after Mr. Gerace was making comments about the witness. I'll read them to you, leaving out names. The Facebook communication reads: "Hey, you ray ass bitch" -- I believe that to be a typo, potentially. Y is next to T on a keyboard. "It" and then name, "I'm good to G" -- should be "good to go." "See you, and when I do, well, use your imagination, bitch, you snitch junkie cunt. You are a fucking funny cunt. You do whatever for drugs. In feeling" -- should be "I'm feeling" -- insert name of second female Gerace associate, "in on how much of a scum bag you are. But if you want to claim Peter's home like you deserve it, bitch. You deserve nothing, you nasty cunt. Learn how to be a mother, because your husband was just at my place filling me in on how my" -- it says, "H of a pull." I believe it should be, "pill head junkie you are. Too bad you couldn't take" -- insert name of second Gerace female associate -- "down. Oops. She is too smart because you're the biggest piece of shit I've ever met. That why" -- insert name another female -- "was fucking your husband and being mother to your daughter, you junkie ass pond scum. Plan on nothing. Peter knows better, you fucking nut. Girl, H" -- should be U. U and H are next to each other on a keyboard -- "Girl, you don't want to fuck with me. You know how I get down. I hope you fucking his, cunt." And then there are some typos. It talks about shampoo, and then the last line is: "Ha ha, you are a joke. Go kill yourself, you dirty cum guzzling whore.""  23-CR-37, Dkt.#6 at pp. 15-17.

Later in the proffer AUSA Tripi made clear that Ms. Quinn was a witness who

had spoken with his office, saying:

Now, the defense is going to argue: They knew about this for three years. What I say to that, Judge, truth does not equal proof. It was true three years ago that through proxies, he intimidated and tampered with this young lady. There is a reason there is a five-year statute of limitations; we are well within that. We now have the proof from everyone else who was involved and the victim of the crime. *Id*. at p. 31.

12

Simply put, the government's argument must fail because it is diametrically opposed to the factual record.

### b.  Case Precedent Cited by the government

In support of its motion, the government once again relies on *United States v. Cain*, 2008 U.S. Dist. LEXIS 130664, at *9 (W.D.N.Y. Nov. 5, 2008).  As the defense repeatedly points out in previous briefing, the government misreads and misstates the *Cain* case.

First, and contrary to the government's assertions, the Second Circuit held in *Cain* that the trial court's decision to disqualify counsel, who had been served with a grand jury subpoena to testify against his client, was not error.  There is no authority in the Second Circuit (or any other authority counsel can identify) that an attorney who is a potential witness relative to his client must be disqualified.

More critically, the factual underpinnings of *Cain* have little relation to this case. In *Cain* the government argued the defense attorney would be a witness against his client, and Magistrate Judge Schroeder declined to disqualify the attorney merely because he was designated as a witness by the Government.  Disqualification only occurred *after* the attorney received a grand jury subpoena, *Curcio* counsel had made an independent inquiry of the facts, and it was likely that the attorney would be called to testify against his client in the case headed to trial.

13

The facts leading to disqualification in *Cain* are also at odds with the facts before this Court.  The government had served defense counsel with a grand jury subpoena to testify about his possession of false affidavits provided to him by his client.  The affidavits were prepared and obtained by the client, who delivered them to the defense attorney for submission to the Court.  Unlike the Gerace witness list, the *Cain* affidavits were false on their face.  There could be no argument their delivery to and possession by Cain's attorney were protected by the privilege.  In addition, Cain's attorney was the only individual with knowledge as to the source of the affidavits and of Cain's intention that they be provided to the Court.  Here, as alleged in the 23-CR-99 indictment, the judicial documents the government seeks to rely upon are self-authenticating, and there are dozens of witnesses to the overt acts – every individual present in the courtroom.

The government also attempts to rely on *United States v. Jones*, 381 F.3d 114 (2d Cir. 2004) – another case that bears little relation to this issue.  In *Jones*, a letter and packet of discovery material from Jones's case was found in the apartment of another drug dealer when that apartment was searched long after Jones was indicted.  Due to events that took place involving the defendants after the date of the letter (and presumably after the date of the dissemination of the materials by the attorney), the government asserted the attorney was likely to become a witness for the government in the case that was currently in trial – an assertion the defense attorney agreed with.  As a result, the district court declined to accept the defendant's waiver of any actual or

14

potential conflict with his attorney.  Obviously, the facts of *Jones* are far different than those in this instance.  Here, the government is alleging Attorney Soehnlein may become a witness <u>not</u> in the consolidated 19-CR-227/23-CR-37 cases, but rather in the 23-CR-99 case – a scenario the Court already addressed and dismissed in the prior disqualification litigation.  Dkt.# 825 a p. 44-45.

The government's theory is unsupported by the law.  Of note, this argument was explicitly rejected by the Second Circuit decision in *United States v. Perez*, 325 F.3d 115 (2d Cir. 2003), where the attorney was allowed to continue representation despite being a potential witness against his client.

## IV.     There Are No Ethical Concerns and the government's Arguments in that Regard are Speculation Without Factual Basis

The government's second argument is that Attorney Soehnlein should be disqualified because of speculative ethical considerations from his withdrawal from representing Mr. Gerace in June 2023.

The government does not cite legal authority for its position.  That is because there is no legal authority.  In its briefing, the government's argument is tethered to a single source -- a gross misrepresentation of *United States v. Levy*, 25 F.3d 146 (2d Cir. 1994).   In that case, the defendant's trial counsel had the following actual and potential conflicts of interest: (1) counsel engaged in joint representation, which included representation of a co-defendant who had fled; (2) counsel was under indictment by the

15

same United States Attorney's Office in an unrelated criminal prosecution awaiting his own sentencing; (3) counsel was the object of an Eastern District of New York grand jury's investigation into co-defendant's flight; and (4) counsel was a possible witness concerning statements made during plea negotiations on behalf of co-defendant.  25 F.3d at 150.  After trial, the Second Circuit reversed defendant's conviction and remanded the remanded matter for a new trial -- not because of the attorney's real or potential conflicts, but because the trial court never engaged in a colloquy with the defendant about the potential conflict of interests, which were numerous. *Id.* at 152.  The case does not stand for the proposition for which it is cited by the government.

What is more, the government's argument is based on speculation.  Without factual basis, the government surmises that Attorney Soehnlein's June 26, 2023 withdrawal was due to the witness list, despite the fact the ethical rules cited by Attorney Soehnlein presented a good-faith basis for withdrawal when: the client insists upon taking action with which the lawyer has a fundamental disagreement; the client deliberately disregards an agreement or obligation to the lawyer as to expenses or fees; the client fails to cooperate in the representation or otherwise renders the representation unreasonably difficult for the lawyer to carry out employment effectively, or when the lawyer's inability to work with co-counsel indicates that the best interest of the client likely will be served by withdrawal.  *See generally* New York State Rules of Professional Conduct 1.16(b)-(e).

The government's irresponsible speculation that Attorney Soehnlein may have violated ethical rules is especially galling because this Court's decision put that issue to rest.  This Court decided, as a matter of law, that his actions constituted appropriate measures to defend Mr. Gerace in this case.  Dkt. # 889 at p. 1-2; *see also* Note 3, *supra*.  The government's disagreement with that decision notwithstanding, it should know better than to impugn the ethical integrity of a colleague —especially given the careful analysis this Court employed to come to its decision about Attorney Soehnlein's conduct in defending Mr. Gerace.

**V.      Conclusion**

The government's motion lacks factual basis.  The government's motion lacks legal basis.  The government's motion is riddled with irresponsible rank speculation of the worst kind.  The government's stated positions are at odds with well-settled law and Department of Justice policy.  It is meritless and should be denied in its entirety.


s/ Mark A. Foti, Esq.                                             s/ Eric M. Soehnlein, Esq.

Mark A. Foti, Esq.                                      Eric M. Soehnlein, Esq.
**The Foti Law Firm, P.C.**                       **Soehnlein Law, PLLC**
16 W Main Street, Suite 100                   2100 Main Place Tower
Rochester, NY 14614                              350 Main Street
(585) 461-1999                                        Buffalo, NY 14202
(585) 491-6512                                        (716) 771-9092