UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                   Plaintiff,

    v.

JOSEPH BONGIOVANNI,

                   Defendant.

**REDACTED PUBLIC VERSION**

Case No. 19-CR-227-1-LJV

## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANT JOSPEH BONGIOVANNI'S
## MOTION TO DISMISS FOR VIOLATION OF THE
## <u>SPEEDY TRIAL CLAUSE TO THE SIXTH AMENDMENT</u>

**THE LAW OFFICE OF PARKER R. MACKAY**
Parker R. MacKay, Esq.
3110 Delaware Avenue
Kenmore, NY 14217
Ph: (716) 803-8166
Fx: (716) 408-1651
Em: Parker@MacKayLawOffice.com



Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York 14221
(716) 222-3288
rob@singerlegalpllc.com

*Attorneys for Joseph Bongiovanni*

**Argument**

In its response, the government opposes Mr. Bongiovanni's motion to dismiss on two grounds.  First, it attempts to claim that Mr. Bongiovanni's motion is time barred, believing that the date of the first trial in this case should serve as the deadline for Rule 12(b)(3) motions as opposed to the date of the second trial.  Second, the government argues that the last three *Barker* factors do not weigh in favor of dismissal or Mr. Bongiovanni.  As set forth below, neither of these arguments hold merit and should be rejected.  For these reasons set forth below and in Mr. Bongiovanni's initial filing, the Court should dismiss the remaining unresolved counts pursuant to the Speedy Trial Clause of Sixth Amendment and sentence Mr. Bongiovanni on the two counts of conviction returned at trial.

**I.      Mr. Bongiovanni's Motion to Dismiss is neither untimely nor time barred.**

In its opposition, the government argues that Mr. Bongiovanni's motion is untimely and time barred pursuant to Federal Rule of Criminal Procedure 12(b)(3).  *See* ECF 947 at 28-30. This argument is not premised on Mr. Bongiovanni timely raising this motion in advance of the currently scheduled trial which will commence on July 29, 2024.  *See id.*  Instead, the government argues that the defendant was required to bring this motion prior to the first trial which commenced on February 12, 2024.  *See id.*  This argument holds no support under Rule 12 or case law.

First, Rule 12(b)(3)(A)(iii) requires a defendant to raise a motion to dismiss involving "a violation of the constitutional right to a speedy trial" "by pretrial motion."  FED. R. CRIM. PRO. 12(b)(3)(A)(iii); *see also United States v. O'Brien*, 926 F.3d 57, 83 (2d Cir. 2019).  Here, the trial in this

case is set to commence on July 29, 2024.  This motion was filed well in advance of the commencement of trial.  Thus, it is neither untimely nor time barred.[1]

Second, the government's argument that the instant motion is untimely and time barred because it was not raised prior to the first trial in this case holds no support under Rule 12 or caselaw.  Rule 12(b)(3) contains no language that the rule "relates back" to the first trial which commenced on February 12, 2024.  Case law does not contain such an interpretation, either.  What's more, the government's brief contains no citation to any authority that in the case of a mistrial and retrial, Rule 12(b)(3) bars the defense from raising new pretrial motions prior to retrial.  The defense could not find any authority supporting that proposition, either.  The only legal concepts/doctrines that come close to what the government advocates for in its motion concern "law of the case" doctrine and the concept of issue preclusion/collateral estoppel.  But as this Court knows, application of such principles requires a prior ruling by a court of coordinate jurisdiction which resolves the matter.  Here, the district court – whether Judge Sinatra or Judge Vilardo was presiding – never has issued a ruling on a Speedy Trial Motion raised by Mr. Bongiovanni, so those legal concepts/doctrines plainly do not apply.  Consequently, what the government advocates for here is that this Court create a new "rule," out of thin air, that bars the defense from raising *any* pretrial motions governed by Rule 12(b)(3) that were not previously raised prior to the first trial.  The Court should not entertain this invitation as doing so would lead to an absurd result and contradict a plain reading of Rule 12(b)(3).

Finally, in the event the Court were to entertain such a reading of Rule 12(b)(3), "good cause" exists to file this motion prior to commencement of the second trial.  As this Court is

---

[1] The government also argues that Mr. Bongiovanni failed to raise "good cause" to make this purportedly untimely motion.  *See* ECF 947 at 28-29.  But a showing of "good cause" is not required unless the motion is untimely.  *See* FED. R. CRIM. PRO. 12(b)(3) & (c)(3).  The defense did not make this showing in its original papers because this motion *is* timely.  To the extent this Court disagrees with that position, argument on "good cause" is included below.

aware, Mr. Bongiovanni first raised his constitutional speedy trial concerns formally in a motion filed on August 10, 2023. *See* ECF 586. In that filing, Mr. Bongiovanni discussed his concerns about how the government and the court contributed to delays in this case, to include the nature of the superseding indictment which added co-defendant Peter Gerace more than a year after Mr. Bongiovanni's indictment and how Mr. Bongiovanni suffered prejudice as a result of the lengthy path this case was taking to get to trial. *See* ECF 586 at ¶¶18-19, p. 10-14.[2] Mr. Bongiovanni later withdrew that motion because 1) co-defendant Gerace finally secured new counsel (Mark Foti, Esq. and Eric Soehnlein, Esq.) and 2) the defense did not believe that the Court would grant severance even if pushed because of Gerace securing counsel who could accommodate a joint trial in January 2024. That joint trial date moved from January 2024 to February 2024 based on the government's motion to disqualify Attorney Soehnlein. And Mr. Bongiovanni chose to proceed forward with the trial he had waited to commence for years rather than continue with motion practice.

Nobody could forecast that this first trial would end in a mistrial, but it did. Now, Mr. Bongiovanni finds himself in a position of having to go to trial again, but the speedy trial concerns that he and his counsel harbored in 2023 have not abated. Given that the speedy trial reasons for dismissal in this case are *bona fide*, the government, Gerace, and the Court contributed to trial-related delays in Summer 2023, Fall 2023, and Winter 2024, the reason for the defense withdrawal of ECF 586 related to an inability to sever from Gerace in Fall 2023, and the defense

---

[2] The government attempts to make hay of the defense's concession on August 10, 2023, that "these delays, when evaluated holistically, do not presently present a reason for speedy trial dismissal under the Barker factors . . . [and i]t is for this reason that Mr. Bongiovanni and his counsel do not move for dismissal at this time." *See* ECF 947 at 29 (quoting ECF 586 at ¶19, p. 12). This argument is unfair just as much as it is meritless. The operative word in that concession – made in August 2023, some *six months prior* to the date this case actually went to trial and *ten months before* the instant motion was filed – was "presently." As both the defense and government timelines constructed of the record in this case reflect, *much* has changed since August 10, 2023. That is why this concession does not accurately reflect the "present" position of Mr. Bongiovanni today.

preserved this argument by raising it prior to commencement of the first trial, the Court should find that "good cause" exists to bring this motion now.

**II.      Mr. Bongiovanni has proven how all fourth *Barker* factors weigh in his favor.**

In defense of Mr. Bongiovanni's motion, the government resorts to attacking the motives of defense counsel and questions claims about whether Mr. Bongiovanni truly wanted to go to trial sooner than he did.  The government also claims that it and the Court holds responsibility for *none* of the delays in getting this case to trial as it consistently wanted to try this case speedily from the beginning.  And the government claims that Mr. Bongiovanni was not the victim of prejudice due to such delays, but, instead, the true victim was the government.  The Court should reject all of these arguments.

**A.  The Court should not conflate Sixth Amendment and Speedy Trial Act arguments.**

Throughout is brief, the government makes arguments about how time counted under the Speedy Trial Act was properly excluded and faults Mr. Bongiovanni for failing to articulate "a single unexcluded day of Speedy Trial Act time that ran in this case or was chargeable to the government."  ECF 947 at 4.  This argument is a red herring because Speedy Trial Act and Sixth Amendment violations are not mutually exclusive. *See, e.g., United States v. Salimonu*, 182 F.3d 63, 69 (1st Cir. 1999) (noting how it is possible for a delay that does not violate the STA to run afoul of the Sixth Amendment's guarantee of a speedy trial).  Mr. Bongiovanni's motion to dismiss is not predicated on a statutory challenge, but a constitutional challenge.  As such, while the reasons behind certain statutory exclusions are considered in the Court's analysis, exclusions of time under the statute are inapposite to the *Barker* framework.  The Court should deem such arguments irrelevant.

**B. The government's responses regarding the Attorney Cambria conflict are unconvincing.**

In its opposition, the government states that it informed Attorney Cambria about an "actual conflict" that prevented him from representing Mr. Bongiovanni in June 2019. *See* ECF 947 at 6-7. This notice consisted of eight words in an email bereft of legal substance.[3] *See id.* Such a response hardly can be considered adequate notice. The government then argues that Mr. Bongiovanni was aware of this conflict, but maintained Attorney Cambria as his attorney, and, as a result, any delay is attributable to him. *See id.* at 7. Conspicuously absent from this conclusory statement is any proof that Attorney Cambria informed Mr. Bongiovanni of the government's position. How could he given the vague nature of the government's purported "notice" about a conflict. Moreover, the government fails to explain why it took prosecutors 22 days to file a motion that, by its own admission, it expected to file from the beginning of the case. This is why the government is responsible for this delay.

Further still, the government's explanation regarding why it delayed disclosure of the ████████ conflict allegations is another non-answer. According to the government, the ███ conflict allegations were not disclosed until late-February 2024 because the January 13, 2020 allegations were "unsworn," and, by extension, were not worthy of belief until ████ grand jury testimony was taken. *See id.* at 8-9, n. 1. This justification is inapposite as it posits a distinction without a difference. As this Court knows, ████████ statements, if false, subjected ██ to federal prosecution in January 2020 (making a false statement) or in February 2020 (perjury). In fact, ██ proffer agreement made it clear in January 2020 that if ██ lied during the proffer, ██ would lose ██ protection and could be prosecuted. Furthermore, the purpose of the grand jury is not to provide a measure of a prospective witness's veracity to prosecutors, but to provide evidence to a

---

[3] The snarky nature of this response is consistent with the manner in which the government has dealt with defense counsel in this case.

grand jury for the purpose of establishing probable cause that a defendant committed a felony. *See* USAM § 9-11.101 & 120. Consequently, the government, upon learning evidence of a conflict that it believed should occasion the removal of Attorney Cambria had, by its own admission in several instances in this case, a "duty" to reveal the conflict promptly to the Court and counsel. It chose not to do this and this omission caused delay that should be attributable to the government.

**C. The government fails to take accountability or explain why its choice to successively indict this case did not contribute to delay or provide the government a tactical advantage.**

Conspicuously, the government fails to address how its decision to successively indict in this case caused delay. For example, the government responds to the superseding indictment by stating in conclusory fashion that "[c]harging Michael Masecchia did not delay this prosecution, or Bongiovanni's trial, whatsoever" because "Michael Masecchia was charged shortly after[4] Bongiovanni received discovery, did not file any motions, pleaded guilty, and was sentenced." *See* ECF 947 at 12 n. 5 & 37. However, this conclusory assertion fails to account for a number of delays. It fails to account for how adding Masecchia to the case in June 2020 contributed to the existence of a new scheduling order which pushed back the deadlines by 60 days. *See* ECF 50, 51 (resetting pretrial deadlines from July 2020 to September 2020). It does not account for how the delay permitted the government to disclose an additional 12, 379 pages of discovery in July 2020 – supplementing its 24, 818-page disclosure of May 26, 2020 (which additionally included gigabytes of data from three cell phones). And, critically, it does not explain why Masecchia's indictment was delayed until after Mr. Bongiovanni's case commenced months earlier, particularly when the

---

[4] This statement is preposterous. Mr. Bongiovanni was charged on October 31, 2019. Co-defendant Masecchia was charged on June 4, 2020 – ***seven months later***. An interceding period of ***seven months*** does not constitute a date "shortly after" another date, even in the context of criminal litigation.

government was aware of his potential culpability years before June 2020.  This is why this choice contributed to delay in this case.

The same is true of the second superseding indictment adding co-defendant Gerace. On this point, the government's response does not even provide a justification for waiting **483 days/nearly 16 months** to finally charge Gerace.  Instead, the government provides another conclusory statement, commenting in a footnote that "[t]here was nothing dilatory or piecemeal about the government's approach" because "there were consistent grand jury sessions until February 25, 2021, and over 70 witnesses presented" and "had been on notice that Gerace was under investigation . . . and had obtained discovery (including all text messages between Bongiovanni and Gerace) . . . as far back as May 26, 2020."  ECF 947 at 11-12 n.4.  This response is another non-answer.  It does not provide any insight into the purpose behind waiting to charge Gerace when he was clearly a target in 2019 and mentioned as a co-conspirator in the original indictment and superseding indictment.  It does not account for how this choice delayed motion practice yet again.[5] And therein lies the problem.

It would be one thing if the government did not know about the involvement of Michael Masecchia or Peter Gerace in this alleged conspiracy back in October 2019 when Mr. Bongiovanni was indictment.  This is why the rules permit the government to supersede an indictment and add a new co-defendant(s) via superseding upon *later learning* of their existence and/or uncovering additional evidence to prove probable cause to a grand jury of their involvement. But this case is not analogous to certain drug prosecutions that develop over time and subsequently

---

[5] For example, in its response, the government faults Attorney Harrington for not agreeing to setting a trial date in January 2022.  ECF 947 at 18.  However, as the colloquy makes clear, Attorney Harrington declined to do so because motions he had filed in January 2021, including the suppression motion that he had just completed hearings on, were not complete.  Moreover, it was not just Attorney Harrington who questioned the propriety of setting a trial date at the time – the colloquy reveals that both the government and Judge Sinatra had reservations about doing so as well.  *See id.*; *see also* ECF 247.

add new co-defendants.  Here, the government *knew* of Masecchia's and Gerace's roles in the conspiracy alleged against Mr. Bongiovanni *from the beginning*.  The original indictment alleged their roles.  Yet, despite the existence of such knowledge and evidence, the government chose to indict on a piecemeal basis anyway.  This is the abuse of authority and cause of delay complained about by the defense in its motion to dismiss.  *See* ECF 916-1 at 15-19.  However, rather than provide a substantive response, the government ducked the argument and dismisses the it in a footnote.  The Court should deem this response inadequate and rule any subsequent argument on this point as waived.

Even worse, the government provides no response or explanation as to why such delay should not be viewed as "deliberate."  The Court should consider this non-response a concession and count this delay as "deliberate" and against the government.  As argued previously, the government gained a tactical advantage by managing this case in such a piecemeal fashion.  Delaying the Masecchia indictment for *seven months* and delaying the Gerace indictment by *nearly 16 months* provided the government time to continue its investigation and build its case.  It provided the government additional time to move past any trial complications related to the pandemic.  And it provided prosecutors additional time to make *ten* additional discovery disclosures, comprising *hundreds-of-thousands of pages* of bank records, witness interviews, police reports, and other electronic items.  None of these advantages would have been available if the government indicted Mr. Bongiovanni, Masecchia, and Gerace at the same time.  Furthermore, if prosecutors pursued this case in a unitary fashion via one indictment, then all of the co-defendants would have remained on the same time schedule for pretrial motions and trial and the government would have had to comply with one discovery deadline.  As we know, that did not happen and Mr. Bongiovanni's case languished for years because of the government's case management choices.  Just like in *United States v. Black*, 918 F.3d 243, 262 (2d Cir. 2019), and *United States v. Handa*, 892 F.3d 95, 106 (1st Cir. 2018),

this Court should hold the government responsible for such "poor" choices and charge the government with such delays heavily.

### D. The defense did not pursue motions for the purpose of delay and "tactical" advantage.

The government's opposition is replete with claims that Mr. Bongiovanni filed motions to delay trial and for "tactical" reasons. *See, e.g.,* ECF 947 at 5 ("[T]he defendant only tactically sought severance from his co-defendant after all pre-trial defense motions were denied and the trial was set."); *Id.* at 17 ("[D]efendant Bongiovanni and codefendant Gerace made a clear strategic decision to work together, file motions, delay progress, and engage in maximum pre-trial litigation . . . [and] strategically filed extensive and voluminous motions that delayed his trial."); *Id.* at 38 ("Bongiovanni and Gerace engaged together in a joint, concerted, and protracted course of motion practice—filing *ad hoc* motions piecemeal to delay trial."); *Id.* at 40 ("The record demonstrates that defendant consistently engaged in dilatory tactics in pushing the trial as far down the line as possible."). This claim even extends to the instant motion to dismiss. *See id.* at 4 ("[T]he defendant chose to tactically delay his retrial and requested time to file the instant motion to dismiss."). These claims are belied by the record. As the record demonstrates, Mr. Bongiovanni's motion to suppress was a "close call" which the Magistrate denied based on the then-existing state of the law and the "good-faith" exception only. *See* ECF 292 at 34-35. Mr. Bongiovanni's joint motion for disclosure of the warrant applications was granted, in part, by Judge Sinatra. *See* ECF 359, 372, 375, 384, 387, 390, 398, 401, 404, 420, 429. Decisions on severance are not decided by the Magistrate Judge on referral pursuant to 28 U.S.C. § 636(b)(1), but by the District Judge *after* matters referred to the Magistrate are resolved, so filing severance motions prior to November 2022 was not possible. And given the record and length of this prosecution, the instant motion hardly can be classified as frivolous and designed to delay trial.

**E.  The delays prejudiced Mr. Bongiovanni more than the government.**

In response to Mr. Bongiovanni's showing of trial-related prejudice, the government dismisses such claims summarily and attempts to spin *Barker* Factor Four in its favor by alleging it was the victim of prejudice.  With regarding the passing of Frederick Bongiovanni, the government attempts to shift blame to the defense by arguing that Attorney Harrington should have sought to depose Frederick to preserve his testimony.  *See* ECF 947 at 45 & n.17.  This argument misses the mark.  First, it places a burden on counsel to prognosticate the untimely death of an elderly witness.  This is a ridiculous proposition.  Second, it fails to address the point the defense made in its motion which shows how but for the government's successive indictments, Mr. Bongiovanni likely would have gotten to trial in the 18-24-month period that most cases take to get to trial – a date *before* Frederick Bongiovanni's passing.

The government also dismisses the "anxiety and stress" Mr. Bongiovanni faced as a result of substantial press coverage caused by the government's three speaking indictments by blaming Mr. Bongiovanni for opposing the government's motion for intra-district transfer.  *See id.* at 44-45.  This argument is equally unpersuasive.  Transferring the *trial* to Rochester would not cure or abate *pretrial* media coverage of this case.  As this Court (and the government) knows, press coverage of this case did not begin near the trial, rather, it began at the time of the filing of the original indictment.  For example, according to the government's own intra-district transfer motion, from November 2019 to September 2023, *at least* 71 articles related to this case were published in the Buffalo News and that count did not include any articles/coverage produced by local and national broadcast media, blogs, and social media.  *See* ECF 619 at 4-5, n.2.  This is the prejudice and public opprobrium that Mr. Bongiovanni complains of in his motion.

Finally, the government's attempt to spin this factor in its favor by citing the death of Crystal Quinn is not dispositive.  According to the government, Quinn would have testified that

Peter Gerace told her that Mr. Bongiovanni was "giving the feds the wrong information to derail them from Pharaohs and throwing them off other things to protect the club" as well as giving "false information to the feds" to "protect" Gerace and Pharaohs. *See* ECF 947 at 38.  The premise of this argument fails based on the facts adduced at the first trial.  Law enforcement consistently testified at Trial #1 that Mr. Bongiovanni *did not* provide false information to protect Gerace or PGC.  Any false information he was alleged to have given regarding Gerace related to the closeness of his relationship to Gerace, not what was happening at PGC.  And according to DEA SA Tony Casullo's testimony, Mr. Bongiovanni informed him that Gerace once contacted him about an overdose at PGC.  So, viewing the evidence in the light most favorable to the prosecution, if anything, Mr. Bongiovanni provided true information to law enforcement, not false information.  Furthermore, unlike the Serio Conspiracy allegations, Mr. Bongiovanni was not investigating Gerace or PGC.  This is because trial testimony showed that he was instructed not to have involvement in the case due to a conflict of interest and to allow SA Casullo to investigate.  At trial, there was no evidence which proved that Mr. Bongiovanni disregarded that order and opened a parallel investigation.  In fact, the evidence proved that Mr. Bongiovanni rarely spoke to SA Casullo after 2016.  Thus, the veracity and import of Quinn's testimony is not as "damaging" as the government argues and certainly not as direct as that caused by the death of Frederick Bongiovanni – a witness, who unlike Quinn, was prepared to testify directly to facts of his personal knowledge which contradicted the government's theory, rather than rank hearsay, that was contradicted by trial evidence.[6]

This is why the evidence proves that Mr. Bongiovanni suffered "prejudice" as a result of this delay to a much greater degree than the government is willing to admit.  The public opprobrium he endured was greater than that of any recent defendant in the WDNY who has had

---

[6] Unlike Petere Gerace, Mr. Bongiovanni never was alleged to have engaged in any act of tampering vis-à-vis Crystal Quinn, so the import of her death is even further removed from his case.

his case dismissed for Sixth Amendment violations.[7]   More importantly, prejudice that impaired his

defense, the type of prejudice that *Barker* considered most significant, did occur here with the

passing of Frederick Bongiovanni.  The government cannot argue away this fact, even using Crystal

Quinn as a counter-factual since the prejudice is not equivalent.  This is why Mr. Bongiovanni

prevails on this *Barker* Factor #4.

---

[7] The government attempts to challenge the import of Mr. Bongiovanni's claim of prejudice as a result of being subject to public opprobrium in the press and in the community while he awaited this trial by claiming that the defense failed to cite any applicable case supporting this form of prejudice in its motion.  *See* ECF 947 at 45.  Apparently, the government failed to read *Barker*, the seminal case on the subject, and the concerns about such prejudice.  In the words of the Supreme Court:

> [A] defendant confined to jail prior to trial is obviously disadvantaged by delay **as is a defendant released on bail but unable to lead a normal life because of community suspicion and his own anxiety**.
>
> ###
>
> [E]ven if an accused is not incarcerated prior to trial, **he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility**.
>
> ###
>
> [O]ne of the major purposes of the [Speedy Trial Clause] is to guard against inordinate delay between public charge and trial, which, wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and that **may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends**." *United States* v. *Marion*, 404 U.S. 307, 320 (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty.

*Barker v. Wingo*, 407 U.S. 514, 527, 533, 537 (White, J., concurring) & n.33 (citing *United States* v. *Ewell*, 383 U.S., at 120; *Smith* v. *Hooey*, 393 U.S. 374, 377-378 (1969) and noting that "[i]n *Klopfer* v. *North Carolina*, 386 U.S. 213, 221-222 (1967), we indicated that a defendant awaiting trial on bond **might be subjected to public scorn, deprived of employment, and chilled in the exercise of his right to speak for, associate with, and participate in unpopular political causes**.") (emphasis added).

**F.  The January 2024 trial date was not as "preferred" by Attorneys MacKay and Singer as the government believes.**

To absolve itself of responsibility for causing delay associated with the motion to disqualify Attorney Soehnlein, the government posits that Attorneys Singer and MacKay truly did not want to try this case until January 2024 at the earliest.  *See* ECF 947 at 25-26.  The government urges the Court fin support in this position by citing to statements made in three pretrial hearings/status conference regarding the date trial.  *See id.*  The record does not support such a position.  For example, on May 17, 2023, Attorneys MacKay and Singer suggested a January 2024 trial date based on the complexity of the case and Attorney Singer's November 2023 trial scheduled in *United States v. Fox* which was expected to last three weeks.[8]  *See* ECF 487 at 29:21-31:21.  Current counsel also expressed their opposition to commencing the trial on the existing schedule or within 30-60 days advocated for by the government.  *See id.* at 31:23-33:8, 39:20-40:11.  The record reflects that but for the *Fox* trial conflict and opposition to the unreasonable schedule proposed by the government, it was the preference of current counsel to try this case earlier than January 2024 (and the Court ordered that to happen).  On June 30, 2023, this Court held another status to set a trial date following the transfer from Judge Sinatra.  In that hearing, Attorneys Singer and MacKay advocated for a November 2023 trial date.  *See* ECF 553 at 19-20.  This was well in advance of January 2024.  And at a further status conference on September 6, 2023, Attorneys Singer and MacKay reluctantly agreed to the January 5, 2024 proposal because the Court did not indicate a preference to sever, the government strongly opposed severance, there was no movement on any of Mr. Bongiovanni's pretrial motions, and Judge Vilardo's calendar, which already had a trial booked in November 2023, did not appear open to logistically permit an earlier date for trial.  *See* ECF 626

---

[8] AUSA Nicholas Cooper had the same conflict as he was part of the trial team on this case and *Fox.*

at 16-23.  Thus, it is inaccurate to portray Attorneys Singer and MacKay as consistently advocating for a trial in 2024.  The record belies that assertion.

### G.  The Attorney Soehnlein Disqualification Motion caused so much prejudicial delay that the government was forced to concede to severance.  The government did not "initiate" severance to keep things moving as it claims.

The government attempts to cast itself as the "white knight" following the delay occasioned by its since rejected motion to disqualify levied in November 2023 by arguing that it "took the initiative" and "initiated" conversations with Attorneys Singer and MacKay to accomplish severance.  *See* ECF 947 at 27.  The Court should reject such attempts at revisionism.  As the record makes clear, at the November 29, 2023 status conference Attorneys Singer and MacKay announced Mr. Bongiovanni's desire to proceed to trial on January 5, 2024 without Mr. Gerace, but the government opposed severance to accomplish that.  *See* ECF 679 at 25:9-30:6.  This position was reiterated again on December 8, 2023 when Mr. Bongiovanni objected to the Court not amending the protective order to permit Mr. Bongiovanni to prepare for trial.  *See* ECF 688 at 18:1-19:10.  And on December 14, 2023, counsel for Mr. Bongiovanni announced their intention to move for severance and objection to any Speedy Trial Act exclusion of time because of more delay, a move that the government continued to opposed.  *See* ECF 694 at 18:16-20:8.  It was only after this conference that AUSA Tripi approached Attorneys Singer and MacKay, first in a phone call and later via the December 15, 2023 letter, and the government consented to severance.  *See* ECF 695.  Consequently, the government cannot credibly claim that it "initiated" severance or Mr. Bongiovanni's separate trial.  The government only agreed to severance after it became clear that Mr. Bongiovanni would move to sever and advocating for anything else was no longer tenable.

Furthermore, to the extent the government argues that Attorneys Singer and MacKay asked to delay the trial until 42 days after Christmas, *see* ECF 947 at 26-27, this argument is disingenuous because it omits an incontrovertible fact: the Protective Order requested by the

government and ordered by the Court barred counsel from sharing the protected materials with

Mr. Bongiovanni to prepare for trial until 42 days before trial.  Thus, Mr. Bongiovanni's position on

a trial start-date (and the Court's) always factored this time period into the determination of a trial

date and the government would not budge on this point to facilitate earlier preparation

(Mr. Bongiovanni requested an exception in November 2023 and December 2023, but the

government and the Court opposed this request).  *See* ECF 679 at 25:9-30:6; ECF 688 at 18:1-19:10;

ECF 694 at 18:16-20:8.

### H. The Government provides cursory argument regarding Mr. Bongiovanni's mathematical apportionment of delays to the government and the Court.

The last fact worth noting is how little attention the government pays to the

mathematical breakdown of delays in this case.  Unlike the defense, who maps things out *and* makes

concessions regarding the delays attributable to Mr. Bongiovanni, the government takes the position

that neither it nor the Court are responsible for *any* delay.  This is so even after the defense notes at

least 408 days of delay – 26% of this case – that should e attributable to the government and the

Court without counting all the time it took the government to bring the second superseding

indictment.  If the Gerace delay is added into the time attributable to the government and Court,

then that number surpasses 600 days, notably *half* of the delays in this case.  Based on the

government's opposition, this portion of the defense motion is apparently unworthy of a response.

Once again, the Court should deem the absence of a response as a concession.  As set forth above,

the government did not respond in kind because it does not have persuasive arguments against

attributing these delays to itself and the Courts.  The record makes this clear.

### Conclusion

15

When the Court considers all of the *Barker* factors in combination, the scale tips in Mr. Bongiovanni's favor. The government did not act with diligence to move this case forward expeditiously. Its successive indictments caused significant delays that continue to go unexplained. Why? Because those delays are tactical and unjustified. Furthermore, the Court also caused delays in the processing of this case. Mr. Bongiovanni has suffered significant prejudice as a result of those decisions. Because Mr. Bongiovanni suffered irreversible prejudice, the Court should dismiss the remaining charges in case, *with prejudice*, for a violation of the Sixth Amendment and proceed forward on the counts of conviction forthwith.

Dated:  May 22, 2024
        Williamsville, New York

**THE LAW OFFICE OF PARKER R. MACKAY**
*Attorneys for Joseph Bongiovanni*

By:   s/Parker R. MacKay
      Parker R. MacKay, Esq.
3110 Delaware Avenue
Kenmore, NY 14217
Ph: (716) 803-8166
Fx: (716) 408-1651
Em: Parker@MacKayLawOffice.com

**SINGER LEGAL PLLC**
*Attorneys for Joseph Bongiovanni*

By:   s/Robert C. Singer
      Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York 14221
(716) 222-3288
rob@singerlegalpllc.com