IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        v.                                        19-CR-227-LJV
                                                   23-CR-37 LJV

PETER GERACE JR.,

                 Defendant.

---

## REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR DISCLOSURE OF MR. SOEHNLEIN'S *EX PARTE* AND SEALED MOTION TO WITHDRAW

The government submits this reply to defendant's opposition to the government's cross motion for disclosure of Mr. Soehnlein's *ex parte* and sealed motion to withdraw [*see* Docket No. 1015]. For all the reasons stated below, the Court should order the disclosure of Mr. Soehnlein's *ex parte* motion to withdraw.

## PRELIMINARY STATEMENT

"There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. . . . The attorney may be innocent, and still the guilty client must let the truth come out." *Clark v. United States*, 289 U.S. 1, 15 (1933).

The government, the defendant, the Court, and the public all have an interest in ensuring a fair trial and a just verdict. With respect to the instant motion, the government

urges this Court to disclose Mr. Soehnlein's *ex parte* motion to effectuate this communal interest. Where the Court itself has acknowledged that the conflicts issues in this case may jeopardize any conviction of the defendant, the parties' have a heightened interest in the fair and earnest application of the law. *See United States v. Gerace*, No. 19-CR-227, 2024 WL 1793022, at *2 (W.D.N.Y. Apr. 25, 2024). Fairness, however, "can rarely be obtained by secret, one-sided determination of facts decisive of rights." *United States v. Schulte*, No. S2 17 CR. 548 (PAC), 2020 WL 133620, at *6 (S.D.N.Y. Jan. 13, 2020) (quoting *United States v. Abuhamra*, 389 F.3d 309, 322–23 (2d Cir. 2004)). Accordingly, the Court should order disclosure of Mr. Soehnlein's *ex parte* motion to withdraw to fairly and adequately administer justice in this case.

## ARGUMENT

**I.  THE COURT SHOULD DISCLOSE MR. SOEHNLEIN'S *EX PARTE* AND SEALED MOTION TO WITHDRAW BECAUSE THERE IS A FACTUAL BASIS TO BELIEVE THAT THE CRIME-FRAUD EXCEPTION APPLIES TO ANY PRIVILEGED COMMUNICATIONS.**

The defendant contends that the Court should deny the government's motion for disclosure because the *ex parte* motion contains privileged communications. The defendant is wrong. Because there is a factual basis to believe that the *ex parte* motion relates to the orchestrated recusal of Judge Sinatra, the crime-fraud exception applies. "Although there is a societal interest in enabling clients to get sound legal advice, there is no such interest when the communications or advice are intended to further the commission of a crime or fraud." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). Thus, a person may not claim the benefit of the privilege for communications or work product "made for the purpose of getting advice

for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (cleaned up).

To invoke the crime-fraud exception, a party must "demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed— or has been attempted—and that the communications in question were in furtherance of the fraud or crime." *United States v. Costanzo*, No. 22-CR-281 (JPO), 2024 WL 2046053, at *2–3 (S.D.N.Y. May 8, 2024) (internal quotation marks omitted).  The facts supporting these two required showings "must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'"  *Id.*

As to the first showing, an indictment establishes probable cause that a crime has been committed.  *See, e.g.*, *United States v. Levin*, No. 15-CR-101, 2015 WL 5838579, at *4 (S.D.N.Y. Oct. 5, 2015) ("The Grand Jury has returned an Indictment, finding probable cause to charge the defendants with mail and wire fraud .... The Government has thus satisfied the first prong of the crime-fraud exception."); *United States v. Tucker*, 254 F. Supp. 3d 620, 624 (S.D.N.Y 2017) ("[T]he fact that a grand jury issued the Indictment ... supports a finding of probable cause that a crime was committed.").  But "the fact that there is probable cause to believe that a fraud or crime has been committed does not mean that" all the relevant documents "are subject to the crime fraud exception."  *United States v. Ceglia*, No. 12-CR-876, 2015 WL 1499194, at *2 (S.D.N.Y. Mar. 30, 2015).

As to the second showing, the requirement of probable cause that the communications in question furthered the crime ensures that the exception's reach is tailored. "[T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud." *Richard Roe, Inc.*, 68 F.3d at 40. Instead, it "applies only when the court determines that the client communication or attorney work product in question was itself in furtherance of the crime or fraud." *Id.* Moreover, an indictment alone does not establish that all attorney-client communications were made in furtherance of the crime charged. *Levin*, 2015 WL 5838579, at *4. Instead, applying the exception demands a preliminary finding—satisfying a probable-cause burden—that the particular communications were in furtherance of the relevant crime. *See In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986).

The exception applies even if the attorney, at the time of the attorney-client communication, was unaware of the client's criminal purpose. *See Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426 (2013) (collecting cases). That is because, although there must be a "purposeful nexus" between the crime or fraud and the communication, the relevant intent is that of the client. *Id.* at 427 (citation omitted). And even "facially legitimate conduct [by counsel] may constitute an action taken in furtherance of fraud in appropriate circumstances." *Levin*, 2015 WL 5838579, at *4. "[T]he probable cause necessary to sustain the exception is not an overly demanding standard." *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-CV-4978, 1999 WL 61442, at *5 (S.D.N.Y. Feb. 3, 1999).

In response to the government's motion to disclose Mr. Soehnlein's *ex parte* motion to withdraw, the defendant contends that disclosure is foreclosed by the attorney-client privilege. *See* Docket No. 1015. The defense, however, fails to address the crime-fraud exception, which the government briefed exhaustively on June 5, 2024 (*see* Docket No. 997), and which is unquestionably implicated here. The government has carried its burden to demonstrate that the crime-fraud exception applies to the *ex parte* motion as follows: (1) the government has satisfied the probable cause burden with the grand jury's return of the Second Superseding Indictment in *United States v. Gogolack*, 1:23-CR-99 (*see* Docket No. 997 at 15-16); and (2) there is a factual basis to believe that the *ex parte* motion relates to the orchestrated recusal and includes communications that were in furtherance of that recusal (*see* Docket No. 997 at 16-21).

The factual basis to believe that the *ex parte* motion relates to the orchestrated recusal is well documented in this case. *See, e.g.*, Docket Nos. 997, 999.[1] Instead of addressing the circumstances surrounding Mr. Soehnlein's seemingly sudden motion to withdraw, the defendant ridicules the government for "speculating" as to the contents of the *ex parte* motion to withdraw. The government, however, did not need to speculate because Mr. Soehnlein told the world, five days after the orchestrated recusal of Judge Sinatra, that good cause existed to grant his motion to withdraw based on "the New York State Rules of Professional Conduct Rule 1.16(b)-(e) and the other relevant Federal Rules of Criminal and Civil Procedure." *See* Docket No. 541-1 at ¶¶ 4-5. He did so in a motion that he signed, which leaves him accountable for the accuracy of every word in the filing.

---

[1] The government also incorporates Docket No. 999 by reference herein.

In support of his motion to withdraw, Mr. Soehnlein stated that based on four subsections of Rule 1.16, which addresses "Declining or Terminating Representation," good cause existed for the Court to grant his motion to withdraw.  In his staunch opposition to disclosing the *ex parte* motion, the defendant states that "[t]he government's speculation ignores several other subsections of the ethic rule that can be cited for permissible withdrawal, and as the Court knows, the motion does not cite (or even mention) the above subsections." *See* Docket No. 1015.  For completeness, an examination of both Rule 1.16(b) and Rule 1.16(c) is helpful and results in the same inescapable conclusion – that the Court should order the disclosure of the *ex parte* motion.

### A.  RULE 1.16(b)

**(b)  Except as stated in paragraph (d), a lawyer shall withdraw from the representation of a client when:**

**(1)  the lawyer knows or reasonably should know that the representation will result in a violation of these Rules or of law;**

**(2)  the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client;**

**(3)  the lawyer is discharged; or**

**(4)  the lawyer knows or reasonably should know that the client is bringing the legal action, conducting the defense, or asserting a position in the matter, or is otherwise having steps taken, merely for the purpose of harassing or maliciously injuring any person.**

Rule 1.16(b) provides four scenarios by which an attorney must withdraw from representation.  Even though Mr. Soehnlein wrote in a public filing that he had reviewed Rule 1.16(b) and that, at least in part, based on that rule, good cause existed for the Court to grant his motion to withdraw, the defendant now states that "as the Court knows, the motion does not cite (or even mention) the above subsections."  Docket No. 1015 at 3.  This begs the

question of why Mr. Soehnlein included this specific subsection in his public filing?  The defendant provides no answer.  Instead, stunningly and circularly, the defendant contends that "[t]he government's speculation is wrong.  That alone should foreclose any inquiry."  *See* Docket No. 1015.  Of course, calling a tail a leg does not make it so.  Nor does circumlocuting salvage a logical fallacy.

### B.  RULE 1.16(c)

(c)      Except as stated in paragraph (d), a lawyer may withdraw from representing a client when:

(1)      withdrawal can be accomplished without material adverse effect on the interests of the client;

(2)      the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(3)      the client has used the lawyer's services to perpetrate a crime or fraud;

(4)      the client insists upon taking action with which the lawyer has a fundamental disagreement;

(5)      the client deliberately disregards an agreement or obligation to the lawyer as to expenses or fees;

(6)      the client insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law;

(7)      the client fails to cooperate in the representation or otherwise renders the representation unreasonably difficult for the lawyer to carry out employment effectively;

(8)      the lawyer's inability to work with co-counsel indicates that the best interest of the client likely will be served by withdrawal;

(9)      the lawyer's mental or physical condition renders it difficult for the lawyer to carry out the representation effectively;

(10)      the client knowingly and freely assents to termination of the employment;

(11)      withdrawal is permitted under Rule 1.13(c) or other law;

(12)      the lawyer believes in good faith, in a matter pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal; or

(13)      the client insists that the lawyer pursue a course of conduct which is illegal or prohibited under these Rules.

Regardless of the defendant's contention that Mr. Soehnlein did not cite or mention Rule 1.16(b), the inquiry is far from over when we consider Rule 1.16(c), which includes six subsections relevant to the orchestrated recusal – (c)(2), (c)(3), (c)(4), (c)(6), (c)(8), and (c)(13). Instead, the defendant fails to address any of these subsections in his response.  Most telling, the defendant does not—likely because he cannot—represent the true inquiry ending fact: that Mr. Soehnlein's motion to withdraw had nothing to do with the orchestrated recusal. This conclusion is inescapable, regardless of the defendant's statement that "[t]he motion does not make any factual averment that would support the conclusion that Attorney Soehnlein is to be a witness against his client." *See* Docket No. 1015.  Clever, careful wordsmithing only serves to highlight the obvious—if the motion to withdraw had nothing to do with the orchestrated recusal, why not say that?  Moreover, whether the government will call Mr. Soehnlein as a witness to testify to an overt act committed by this defendant is not up to the defendant and, thus, the Court should reject the defendant's assessment of the relevancy of any factual averments.

Furthermore, the Court should reject the defendant's attempts to paint the government's motion for disclosure as a general assault on the attorney-client privilege.  As the Court is acutely aware, this is not the standard case.  Mr. Soehnlein's motion to withdraw was not the standard withdrawal motion.  The government agrees that this defendant and every other defendant in this district is entitled to the sanctity of the attorney-client privilege. No defendant, however, is entitled to wield the privilege as a sword and shield.  On the one hand, the defendant files an 84-page brief excoriating the "bad faith" of the government in seeking disqualification, where he demands dismissal of exceptionally egregious crimes, and,

on the other, the defendant retreats to the protection of the attorney-client privilege when he fears he may be exposed.  The Court must not allow this defendant, or any defendant, to defile the attorney-client privilege so brazenly.

Put simply, Mr. Soehnlein—not the government—represented that based on Rule 1.16(b) and (c), good cause existed for the Court to grant his motion to withdraw.  This representation, coupled with the circumstances leading to both the orchestrated recusal and Mr. Soehnlein's sudden withdrawal from the case, merits close examination for purposes of resolving the defendant's baseless motion to dismiss and fully and fairly adjudicating the conflict issue.  Accordingly, the Court should order the disclosure of the *ex parte* motion.[2]

## II. THE COURT SHOULD ORDER DISCLOSURE OF THE EX PARTE MOTION UNDER THE LEGAL PRINCIPLES REGARDING PUBLIC ACCESS TO JUDICIAL DOCUMENTS.

The Court should also order disclosure of the *ex parte* motion pursuant to the First Amendment and common law right to public access.  "In our adversary system, *ex parte* motions are disfavored."  *Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018).  In this vein, the Second Circuit promulgated a three-prong test to determine whether documents may be placed and remain under seal.  *See United States v. Avenatti*, 550 F. Supp. 3d 36, 45 (S.D.N.Y.

---

[2] Typically, if a party demonstrates both probable cause that the defendant committed a crime and that documents contain communications in furtherance of that crime, a court can exercise its discretion to conduct an *in camera* review of the documents.  *See, e.g.*, *United States v. Spinosa*, No. 21 CR 206 (PAE), 2021 WL 2644936, at *8 (S.D.N.Y. June 28, 2021) (holding that the court will conduct an *in camera* review of all documents to identify the specific communications made in furtherance of the alleged crime for disclosure purposes).  Because the Court reviewed the *ex parte* motion and granted Mr. Soehnlein's motion to withdraw, the Court is already familiar with the contents of the motion.

2021).  First, a court must determine whether "the documents at issue are indeed 'judicial documents'" to which the "presumption of access attaches." *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119 (2d Cir. 2006).  The Second Circuit has defined a "judicial document" as one that is "relevant to the performance of the judicial function and useful in the judicial process," *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995).  "A document is . . . relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (internal quotation marks omitted).

Second, the court "must determine the weight of that presumption," which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (internal quotation marks omitted).  "The weight of the common law presumption is strongest for 'matters that directly affect an adjudication ....'" *United States v. Correia*, No. 19-CR-725-3 (JPO), 2020 WL 6683097, at *1 (S.D.N.Y. Nov. 12, 2020) (quoting *Lugosch*, 435 F.3d 119). "Finally, ... the court must balance competing considerations," including "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure," against the presumption.  *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted).

"Separate and apart from whether the common law presumption of access mandates disclosure of a document, the Court must determine whether a First Amendment presumption of access also exists, because the constitutional presumption gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption." *Avenatti*, 550 F. Supp. 3d at 45 (S.D.N.Y. 2021) (internal quotation marks omitted).  "The Second Circuit has consistently affirmed that the right of access applies to 'judicial documents' in criminal cases."  *Id.* at 46.  If the "more stringent First Amendment framework applies, continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim."  *Lugosch*, 435 F.3d at 124.

Here, both common law and the First Amendment weigh in favor of disclosure of the *ex parte* motion.  This is not to say that in every instance where an attorney files an *ex parte* motion to withdraw, it must be disclosed.  Rather, given the circumstances in this case, and where the *ex parte* motion may fairly be considered in the resolution of both the defendant's motion to dismiss and the conflict issues, disclosure is warranted in this case.

Under the test above, the *ex parte* motion satisfies the three-prong test: (1) it is undoubtedly a judicial document because it is relevant the Court's performance of its judicial function (regardless of whether the Court is ultimately influenced by it); (2) the *ex parte* motion is matter that directly affects an adjudication – whether it be the motion to dismiss or the conflict issue; and (3) because the crime-fraud exception eradicates the defendant's claim of

privilege, the competing concerns weigh in favor of disclosure.  For the same reasons, disclosure is warranted under the First Amendment framework as well.

Furthermore, Local Rule of Criminal Procedure 55(a) provides that "except where restrictions are imposed by statute or rule, there is a presumption that Court documents are accessible to the public and that a substantial showing is necessary to restrict access." This Rule is consistent with the long-established "presumption in favor of a First Amendment right of access to pretrial criminal proceedings for which 'the place and process have historically been open to the press and general public'[.]"  *United States v. Urlacher*, 136 F.R.D. 550, 556- 57 (W.D.N.Y. Apr. 2, 1991) (J. Telesca), *citing Press-Enterprise Company v. Superior Court of California (Press-Enterprise II)*, 478 U.S. 1, 8-9 (1986). Accordingly, the Court should order disclosure of the *ex parte* motion.

## CONCLUSION

For all the reasons stated above, the Court should order disclosure of Mr. Soehnlein's *ex parte* motion to withdraw.

DATED:  Buffalo, New York, June 18, 2024.

TRINI E. ROSS
United States Attorney

BY:    s/JOSEPH M. TRIPI
s/NICHOLAS T. COOPER
s/CASEY L. CHALBECK
Assistant United States Attorneys
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202