12:16PM

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**PETER GERACE, JR.,**

Defendant.

Case No. 1:19-cr-227
1:23-cr-37
(LJV)

June 21, 2024

**TRANSCRIPT OF ORAL ARGUMENT / CURCIO HEARING**
**BEFORE THE HONORABLE LAWRENCE J. VILARDO**
**UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**

**TRINI E. ROSS, UNITED STATES ATTORNEY**
**BY: JOSEPH M. TRIPI, ESQ.**
**CASEY L. CHALBECK, ESQ.**
**NICHOLAS T. COOPER, ESQ.**
**CAITLIN M. HIGGINS, ESQ.**
Assistant United States Attorneys
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202
For the Plaintiff

**THE FOTI LAW FIRM, P.C.**
**BY: MARK ANDREW FOTI, ESQ.**
16 West Main Street
Suite 100
Rochester, New York 14614
And
**SOEHNLEIN LAW**
**BY: ERIC MICHAEL SOEHNLEIN, ESQ.**
350 Main Street
Suite 2100
Buffalo, New York 14202
For the Defendant

**PRESENT:**

**KAREN A. CHAMPOUX, USA PARALEGAL**
**KEVIN W. SPITLER, ESQ.,**
Curcio Counsel for Peter Gerace, Jr.
**RODNEY O. PERSONIUS, ESQ.,**
Ethics Counsel for Eric M. Soehnlein, Esq.

**LAW CLERK:** **REBECCA FABIAN IZZO, ESQ.**

**COURT CLERK:** **COLLEEN M. DEMMA**

**REPORTER:** **ANN MEISSNER SAWYER, FCRR, RPR, CRR**
Robert H. Jackson Courthouse
2 Niagara Square
Buffalo, New York 14202
Ann_Sawyer@nywd.uscourts.gov

12:16PM

12:16PM

12:16PM * * * * * * * *

12:16PM

12:34PM (Proceedings commenced at 12:34 p.m.)

12:34PM THE CLERK: All rise. United States District Court
12:34PM for the Western District of New York is now in session, the
12:34PM Honorable Lawrence J. Vilardo presiding.

12:34PM THE COURT: Please be seated.

12:34PM THE CLERK: 19-cr-227, and 23-cr-37, United States of
12:34PM America versus Peter Gerace, Jr.

12:34PM Assistant United States Attorneys Joseph Tripi,
12:34PM Nicholas Cooper, Casey Chalbeck, and Caitlin Higgins, and
12:35PM paralegal Karen Champoux, appearing on behalf of the
12:35PM government.

12:35PM Attorneys Mark Foti and Eric Soehnlein appearing with
12:35PM defendant. Defendant is present.

12:35PM Also presently is Curcio counsel Kevin Spitler, and
12:35PM attorney Rodney Personius.

12:35PM This is the date set for an oral argument and Curcio
12:35PM hearing.

12:35PM THE COURT: Okay. Good afternoon.

12:35PM ALL PARTIES: Good afternoon, Your Honor.

12:35PM THE COURT: So before we get to the Curcio hearing,
12:35PM there is a motion that the government has filed requesting
12:35PM this Court's permission to disclose some sealed filings in
12:35PM this case to counsel in the Gogolack case. Have defense
12:35PM counsel reviewed that?

12:35PM MR. FOTI: We have. And if the Court would like to
12:35PM address that and argue that today, I think we're prepared to.
12:35PM We've discussed last night who would handle that argument.

12:35PM THE COURT: I take it you're opposed?

12:35PM MR. FOTI: Oh, yes. Yes, for reason that were
12:35PM submitted. But I think the over-arcing issues go much beyond
12:36PM just the arguments that are being made on this particular
12:36PM case. There's an interest that every defendant has and their
12:36PM counsel have in protecting privileged communication, and often
12:36PM privileged communication is part of the reason for moving to
12:36PM withdraw, as I believe it was in this case. So for the
12:36PM reasons that --

12:36PM THE COURT: We're talking about two different things.
12:36PM So there's -- you're talking about disclosing to the
12:36PM government Mr. Soehnlein's affidavits to me.

12:36PM MR. FOTI: Yes.

12:36PM THE COURT: No, that's not what I'm asking.

12:36PM MR. FOTI: Oh, I'm sorry. That's my fault then.

12:36PM THE COURT: That's okay. That's okay.

12:36PM MR. SOEHNLEIN: Your Honor, if I may, we've received
12:36PM the motion. We talked about it at high level. I don't
12:36PM anticipate that we will oppose it, but could you just give us
12:36PM a deadline to put something in in case we do?

12:36PM THE COURT: Absolutely.

12:36PM MR. SOEHNLEIN: Thank you.

12:36PM THE COURT: Yes.

12:36PM MR. COOPER: Judge, one thing I would ask with
12:36PM respect to a scheduling on that is that we -- I know how busy
12:36PM everybody is. It's not to be inconvenient to counsel, but I
12:37PM would just ask that we keep the briefing on it as tight as
12:37PM possible --

12:37PM THE COURT: Sure.

12:37PM MR. COOPER: -- because it's Rule 16 material and --

12:37PM THE COURT: I understand. And you want to get it out
12:37PM as soon as you can.

12:37PM MR. COOPER: Yeah.

12:37PM THE COURT: Yeah.

12:37PM MR. COOPER: Thank you, Judge.

12:37PM MR. SOEHNLEIN: Next Wednesday?

12:37PM THE COURT: Great. Any problem with that?

12:37PM MR. COOPER: No, and I -- my understanding is it's to
12:37PM determine if there's going to be opposition; is that fair?

12:37PM THE COURT: Yeah. So you have -- you have until next

12:37PM Wednesday to file any opposition. The government has until
12:37PM next Friday to file any reply.
12:37PM MR. COOPER: Thank you, Judge.
12:37PM THE COURT: And if nothing is filed by next
12:37PM Wednesday, I will assume that there is no opposition and grant
12:37PM the government's motion, and then -- are you going to propose
12:37PM a protective order?
12:37PM MR. COOPER: I submitted one, Your Honor. Well, let
12:37PM me withdraw that.
12:37PM I submitted a proposed order from the Court
12:37PM permitting the government to disclose the materials. There is
12:37PM currently, as I reference in the motion, an attorney's eyes
12:37PM only order that Judge McCarthy implemented in that case
12:37PM governing discoverable material. That's temporary until a
12:37PM formal discovery -- or until a formal protective order is
12:37PM decided on by the Court.
12:37PM I would also just note for the record --
12:37PM THE COURT: So I don't need to issue a protective
12:37PM order, you're saying, I just need to grant the government's
12:38PM motion.
12:38PM MR. COOPER: As far as I'm concerned, that would be
12:38PM the case, Judge. Obviously --
12:38PM THE COURT: Yep.
12:38PM MR. COOPER: -- if counsel disagrees, they can let
12:38PM you know that.

12:38PM THE COURT: Yep.

12:38PM MR. COOPER: Also, counsel for Defendant Bongiovanni isn't here today. My motion was filed on Monday publicly. None of the filings are filings by Defendant Bongiovanni, and so they have notice that the motion was filed.

12:38PM THE COURT: Okay.

12:38PM MR. COOPER: I don't believe they need to respond to it because it doesn't relate to their filings. But I just want to make a record that it wasn't kept from them, they're aware of it, as well.

12:38PM THE COURT: And I will issue a text order in the Bongiovanni case today giving them the same briefing schedule. If they oppose, they're to file something by next Wednesday. Okay?

12:38PM MR. COOPER: Thank you, Judge.

12:38PM THE COURT: All right. So we'll issue that same order in both cases.

12:38PM MR. FOTI: It took me a while, Judge, but I think I'm caught up now.

12:38PM THE COURT: Okay. Good, Mr. Foti. Good.

12:38PM MR. TRIPI: And for record purposes, that discussion related to the 23-CR-99 case.

12:38PM THE COURT: That discussion related to -- well, it's actually to a motion in this case.

12:38PM MR. TRIPI: Okay. My mistake.

12:38PM THE COURT: It's actually to a motion in this case, but yes, it's to disclosing the material in 23-CR-99, yes.

12:39PM MR. TRIPI: Okay.

12:39PM THE COURT: Okay. Now we're all on the same page.

12:39PM MR. FOTI: Yes.

12:39PM THE COURT: Okay. So now let's get to the Curcio hearing. And so for purposes of the Curcio hearing, I'd like Mr. Spitler to come up and sit at the front table. I don't know which one of you folks wants to go sit in the back.

12:39PM Mr. Soehnlein and Mr. Personius, you can go in back. Mr. Spitler can sit next to Mr. Gerace. Great.

12:39PM And, obviously, if Mr. Soehnlein or Mr. Personius, if for some reason you need to come up and talk to counsel or to Mr. Gerace, you can do that.

12:39PM Okay. Mr. Gerace, the Sixth Amendment to the Constitution gives you the absolute right to legal counsel at all stages of your case. That right includes the right to counsel who is free from any conflict of interest. Your counsel represents your interests and only your interests.

12:40PM The process we're going to go through today is called a Curcio hearing. The purpose of the Curcio hearing is to advise you of dangers that might arise from a particular conflict, to determine whether you understand those risks and that you freely choose to accept those risks, and to give you some time to digest and contemplate the risks and seek advice

12:40PM from your independent counsel, that is your Curcio attorney, Mr. Spitler.

12:40PM And I know that you've already met with Mr. Spitler about these issues more than once, I think; is that correct, Mr. Spitler?

12:40PM MR. SPITLER: Yes, it is, Your Honor.

12:40PM THE COURT: Okay. So, nevertheless, after I explain to you, Mr. Gerace, the conflicts and the risks associated with them, I'm going to give you some time to discuss anything further that you need to discuss with Mr. Spitler. And I want to make sure that you make a fully informed decision, and that you've had enough time to weigh your options and to weigh your decision.

12:41PM So I'm going to start by explaining the 2nd Circuit law about conflict of interest and waiver. And I'm then going to talk about the specific conflicts that have been identified with respect to Mr. Soehnlein, and the risks of proceeding with him as your attorney. And I'm going to ask you some questions to make sure that you understand the conflicts, and that you understand the risks.

12:41PM And finally, as I just said, I'm then going to give you some time to consult with Mr. Spitler, who's your assigned independent Curcio counsel, and then to determine whether you want to move forward with Mr. Soehnlein, whether you need more time to make the decision, just what you want to do.

12:41PM The decision of whether to proceed with Mr. Soehnlein is your decision and only your decision. It's not up to Mr. Soehnlein, it's not up to Mr. Spitler, it's not up to the government, it's not up to me, it's up to you.

12:41PM Ultimately, it's up to me whether to accept your waiver. And the 2nd Circuit has said that I have broad discretion on that. So, let's go over the law and conflict of interest to start.

12:42PM When a defendant's right to choose counsel who the defendant wants conflicts with the right to an attorney who has undivided loyalty to the defendant, the choice as to which right takes precedence generally has to be left to the defendant. But district courts have an independent duty to ensure that criminal defendants receive a trial that's fair, and that doesn't run afoul of the Sixth Amendment.

12:42PM So, when a Court knows about the possibility of conflict of interest, it has an obligation to investigate the facts and the details of the attorney's interests, and to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no conflict at all.

12:42PM An attorney has an actual conflict when, during the course of the representation, the attorney's interest and the defendant's interests diverge with respect to a material, factual, or legal issue, or as to a course of action.

12:43PM An attorney has a potential conflict when the

12:43PM interests of the defendant may place the attorney under inconsistent duties at some point in the future.

12:43PM In most cases when a defendant's attorney has a conflict, the defendant may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he wants the lawyer to continue to represent him.

12:43PM In rare cases, however, an attorney's conflict is unwaivable because it's so serious that no rational defendant would knowingly and intelligently want the conflicted attorney's representation, or because the conflict is so severe that it indicates per se that rendering effective assistance of counsel will be impeded.

12:43PM Before a defendant can waive his attorney's conflict, he must be advised of the conflict's significant strategic consequences, and he must be permitted to consult with independent counsel before making a decision. Okay?

12:44PM So now let's talk about the specific conflicts in this case.

12:44PM So, as you know, back in November of 2023, the government moved to disqualify Attorney Soehnlein.

12:44PM The government stated that Mr. Soehnlein was the subject of, target of, or witness in, a federal investigation that related to his representation of you, Mr. Gerace.

12:44PM The government argued that there was a reasonable possibility that Mr. Soehnlein had engaged in criminal conduct

12:44PM and/or that he was a witness to criminal conduct that involved
12:44PM the allegedly orchestrated recusal of Judge Sinatra, or --
12:44PM and/or allegedly false affidavits that were submitted to the
12:44PM Court. There was extensive briefing on the government's
12:45PM motion.

12:45PM I then issued a lengthy decision finding that
12:45PM Mr. Soehnlein did not have a per se conflict of interest.
12:45PM More specifically, I found that Mr. Soehnlein's actions with
12:45PM respect to Judge Sinatra's recusal were protected by the
12:45PM attorney safe harbor of the obstruction of justice statute,
12:45PM and I also found that the government had not established a
12:45PM reasonable possibility that Mr. Soehnlein had any involvement
12:45PM in or discoverable knowledge about any allegedly false
12:45PM affidavits.

12:45PM So I then allowed the parties to submit their
12:45PM positions about whether there was still a lesser actual or
12:45PM potential conflict after my ruling. And in response, the
12:45PM government identified seven possible conflicts, seven actual
12:45PM conflicts from the government's view:

12:45PM 1. Mr. Soehnlein entered the case after having
12:45PM represented another witness;

12:45PM 2. Mr. Soehnlein withdrew from the case indicating
12:45PM that New York's ethical rules required or at least permitted
12:46PM him to withdraw from representing you;

12:46PM 3. That Mr. Soehnlein re-entered the case as an

12:46PM attorney without addressing the merits of his initial withdrawal and upon offering only a conclusory assurance that all issues with you had been resolved;

12:46PM 4. That Mr. Soehnlein became a subject of an investigation relating back to the circumstances that led up to his withdrawal;

12:46PM 5. That Mr. Soehnlein may be a witness to several overt acts in a different case;

12:46PM 6. That if additional unknown facts become available, there's at least some potential that those additional facts could alter my application of the facts to this case -- in this case to the law; and then finally,

12:46PM 7. The specter of some ethics investigation that's related to the events that led to the government's original motion to disqualify counsel.

12:47PM Ms. Chalbeck, I have missed anything?

12:47PM MS. CHALBECK: No, Your Honor. I think that succinctly covers the conflicts.

12:47PM THE COURT: Okay. And, Mr. Spitler, you sent a letter to the Court earlier this week that indicated to me that you met with Mr. Gerace, and that you discussed each of these seven conflicts; is that correct?

12:47PM MR. SPITLER: Yes, Your Honor.

12:47PM THE COURT: And you've discussed them in detail with him?

12:47PM MR. SPITLER: I have.

12:47PM THE COURT: Okay.

12:47PM MS. CHALBECK: Your Honor, I'm sorry, may I interrupt?

12:47PM THE COURT: Of course.

12:47PM MS. CHALBECK: Just on the issue of the witness, it's not just that he's a witness to overt acts, but that they're -- and I think the government's reply brief in support of --

12:47PM THE COURT: Can you just come a little closer to the microphone and pull the mask up a little tighter. Go ahead.

12:47PM MS. CHALBECK: The issue of Mr. Soehnlein as a witness extends not only to him being a witness to overt acts in case number 1:23-CR-99, but also a witness to what the government would qualify as substantive obstruction as to his client in connection with the alleged orchestrated recusal, the fraudulent recusal of Judge Sinatra, and that's covered in the briefing. And so I just want to be clear that there are two facets to Attorney Soehnlein's status as a witness that the Curcio process should cover.

12:48PM THE COURT: Okay. Mr. Spitler, did you understand that to be the case?

12:48PM MR. SPITLER: I do, Your Honor.

12:48PM THE COURT: And did you discuss that with Mr. Gerace?

12:48PM MR. SPITLER: I have.

12:48PM THE COURT: Okay. Okay. So on May 10th, 2024, the government reported that it had concluded its investigation into Mr. Soehnlein, and that no charges would be filed. The government indicated, however, that at least some of the conflicts remain, and we're going to go through those conflicts, but first of all, I'd like you to swear Mr. Gerace in --

12:48PM THE CLERK: Yes, Judge.

12:48PM THE COURT: -- and ensure that he's competent to proceed.

12:48PM And if any questions that I ask, obviously, if counsel thinks that the questions go beyond what I should be asking Mr. Gerace under oath, you can interrupt. Feel free to interrupt, feel free to object to questions that I ask. I don't want counsel to feel impeded in any way whatsoever by the fact that I'm the one who's asking the questions.

12:49PM MR. FOTI: Understood.

12:49PM THE COURT: I know ordinarily you don't object to a judge's questions. I am giving you not only my permission but my express instruction to object if you feel an objection needs to be raised. Okay?

12:49PM MR. FOTI: Understood.

12:49PM THE COURT: Okay. Please swear him in.

12:49PM THE CLERK: Mr. Gerace, will you please stand and raise your right hand.

12:49PM **P E T E R G E O R G E G E R A C E, J R.**, having been duly called and sworn, testified as follows:

12:49PM THE COURT: Okay. Mr. Gerace, I'm going to ask you some questions now. The first set of questions I'm going to ask are simply to make sure that I'm comfortable with your understanding everything that I'm going to ask.

12:49PM THE DEFENDANT: Okay.

12:49PM THE COURT: So, first of all, you speak and understand English, correct?

12:49PM THE DEFENDANT: Yes, Your Honor.

12:49PM THE COURT: And you understand that you're now under oath?

12:50PM THE DEFENDANT: Yes, Your Honor.

12:50PM THE COURT: And if you say anything that's not true, what you say can later be used against you in another prosecution for perjury or making a false statement?

12:50PM THE DEFENDANT: Yes, Your Honor.

12:50PM THE COURT: Okay. What's your full name?

12:50PM THE DEFENDANT: Peter George Gerace.

12:50PM THE COURT: Where were you born?

12:50PM THE DEFENDANT: Buffalo.

12:50PM THE COURT: How old are you?

12:50PM THE DEFENDANT: 57.

12:50PM THE COURT: How far along in school did you go?

12:50PM THE DEFENDANT: 12th grade.

12:50PM THE COURT: You're able to read and write without
12:50PM assistance?

12:50PM THE DEFENDANT: Yes.

12:50PM THE COURT: What kinds of things do you like to read?

12:50PM THE DEFENDANT: Novels.

12:50PM THE COURT: Okay. When were you last employed?

12:50PM THE DEFENDANT: I'm self-employed.

12:50PM THE COURT: Say it again?

12:50PM THE DEFENDANT: I'm self-employed.

12:50PM THE COURT: And when -- when were you last actively
12:50PM working in your employment? Are you doing it now?

12:50PM THE DEFENDANT: Well, I still own the place, yes.

12:50PM THE COURT: Okay. And what's your job?

12:50PM THE DEFENDANT: I just talk to my managers at this
12:50PM point.

12:50PM THE COURT: Okay. You run -- you run a business; is
12:50PM that right?

12:50PM THE DEFENDANT: Yes. Yes.

12:50PM THE COURT: Okay. How long have you done that?

12:51PM THE DEFENDANT: On and off for, I think, 18 and a
12:51PM half years.

12:51PM THE COURT: Okay. Are you married?

12:51PM THE DEFENDANT: No.

12:51PM THE COURT: Do you have any children?

12:51PM THE DEFENDANT: Yes, two.

12:51PM THE COURT: How old are they?

12:51PM THE DEFENDANT: 24 and 18.

12:51PM THE COURT: Are you currently seeing a doctor for any physical or mental condition that could affect your ability to read, to communicate, to make decisions, or to understand this proceeding?

12:51PM THE DEFENDANT: No.

12:51PM THE COURT: Do you have any mental condition or disability that would prevent you from fully understanding what's going on today?

12:51PM THE DEFENDANT: No.

12:51PM THE COURT: Have you recently been treated for mental illness or addiction to narcotics?

12:51PM THE DEFENDANT: Mental illness, yes.

12:51PM THE COURT: Okay. Tell me about that.

12:51PM THE DEFENDANT: Well, I -- I take medication for anxiety and depression, but it doesn't affect my ability.

12:52PM THE COURT: Okay. So the next question, are you currently under the influence of any drug, any medication, or any alcohol?

12:52PM THE DEFENDANT: No.

12:52PM THE COURT: Have you taken some medication today though?

12:52PM THE DEFENDANT: I didn't take it today, no.

12:52PM THE COURT: You didn't take it today? Okay. When you do take it, does it affect your ability to understand what people are saying to you?

12:52PM THE DEFENDANT: No.

12:52PM THE COURT: Does it interfere with your judgement or your ability to make decisions?

12:52PM THE DEFENDANT: No.

12:52PM THE COURT: How about the fact that you haven't taken it, does that affect your ability to understand what people are saying to you?

12:52PM THE DEFENDANT: No, Your Honor.

12:52PM THE COURT: And does that interfere with your ability to make decisions or with your judgment.

12:52PM THE DEFENDANT: No, Your Honor.

12:52PM THE COURT: Okay. Have you -- have you taken the any drugs or any medication, prescribed or not prescribed, in the last three days?

12:53PM THE DEFENDANT: Yeah, I get them twice a day.

12:53PM THE COURT: Okay. So you took these medications yesterday?

12:53PM THE DEFENDANT: Last night, yes.

12:53PM THE COURT: Other than those medications that we just discussed, and that you said didn't have any effect on your ability to understand what people are saying to you or on your judgment or on your ability to make decisions, other than

those medications, have you taken any other medications or any other drugs in the last three days?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. Have you had any alcohol in the last 24 hours?

THE DEFENDANT: No, Your Honor.

THE COURT: Is there any medication that your doctor or a medical provider says that you should be taking that you're not taking?

THE DEFENDANT: No, Your Honor.

THE COURT: Other than the medicine today that you didn't take yet, right?

THE DEFENDANT: Yes.

THE COURT: Okay. Do you know of any reason we should not proceed today?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. Mr. Soehnlein and Mr. Foti, it appears to me that your client is intelligent, aware, and oriented, that he understands what's going on and that he's competent to proceed here. Do you have any reservations about his competence, Mr. Soehnlein?

MR. FOTI: No, Judge.

THE COURT: Mr. Foti?

MR. FOTI: No, Your Honor.

THE COURT: Mr. Spitler?

12:54PM MR. SPITLER: No, Your Honor.

12:54PM THE COURT: How about the government?

12:54PM MR. TRIPI: No, Your Honor.

12:54PM THE COURT: Okay. So based on the statements of
12:54PM Mr. Gerace and his counsel, based on my own observations, I
12:54PM find that Mr. Gerace is in full possession of his faculties
12:54PM and is competent to proceed.

12:54PM So there are a couple of issues that we need to
12:54PM address today with respect to Mr. Soehnlein's representation
12:54PM of Mr. Gerace. The first is whether there was any lapse in
12:54PM representation resulting from past conflicts that have since
12:54PM been resolved. The second issue is conflicts that remain, and
12:54PM the nature of those conflicts.

12:54PM So with that in mind, let's go through the list of
12:54PM conflicts that the government has identified.

12:54PM First of all, that Mr. Soehnlein entered the case
12:54PM after having represented a witness.

12:54PM Now, as I understand that potential conflict Judge
12:54PM Sinatra held a Curcio hearing on that issue already, and he
12:55PM found that Mr. Gerace had knowingly and voluntarily waived
12:55PM that conflict; am I correct about that?

12:55PM MR. TRIPI: That's correct.

12:55PM THE COURT: Okay. So does the government agree that
12:55PM there's nothing further that I need to do on this issue today?

12:55PM MR. TRIPI: Judge, under the Pizzonia case that we

12:55PM cited, we raised that because when multiple conflicts are identified, the Court takes them and looks at them in totality.

12:55PM So because that didn't transpire before Your Honor, I thought it pertinent to reflag that issue because when you're looking at all seven of the actual conflicts, or the conflicts we've identified, circling back to that, it has to be part of the calculus.

12:55PM THE COURT: Okay. So, Mr. Gerace, do you understand that Mr. Soehnlein represented a witness in this case at a prior time?

12:55PM THE DEFENDANT: I do, Your Honor.

12:55PM THE COURT: And do you understand that that representation, by virtue of his representation of that witness, he's got some obligations to that witness. So, for instance, he can't use any secrets, anything that that witness told him in his capacity as counsel for that witness, in representing you; do you understand that?

12:56PM THE DEFENDANT: Yes, Your Honor.

12:56PM THE COURT: And so that means that even if he knows something that that witness told him that might work to your advantage in this case, he can't do that. He can't use it, because he knows that through his representation of that witness; do you understand that?

12:56PM THE DEFENDANT: Yes, that was explained to me at that

last Curcio, yes.

THE COURT: And do you understand that there might be some either obligations or some conscious or subconscious issues that might occur that might cause Mr. Soehnlein's allegiance to you to be compromised in some way by his prior representation of that witness?

THE DEFENDANT: I do understand, Your Honor.

THE COURT: Okay. And you nevertheless want to continue with Mr. Soehnlein?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Spitler, have you discussed this issue with Mr. Gerace?

MR. SPITLER: I have, Your Honor.

THE COURT: Are you comfortable with his waiver of any conflict or potential conflict?

MR. SPITLER: I am, Your Honor.

THE COURT: Did he tell you that he waived the conflicts as well?

MR. SPITLER: He did, Your Honor.

THE COURT: Mr. Tripi, anything more that I should do in this regard?

MR. TRIPI: Not in terms of the colloquy, Your Honor. Obviously, as we go through the remaining conflicts, if you think that some vestige of this issue has any weight as you apply the rest -- or, work through the rest of the conflicts,

12:57PM it still bears some consideration. But in terms of the colloquy between the Court that Judge Sinatra had with the defendant and this Court, no issue.

12:57PM THE COURT: Okay. And so, Mr. Gerace, what Mr. Tripi is saying is that, you know, these conflict questions can be asked one at a time as they were with respect to Judge Sinatra's questioning of you with respect to Mr. Soehnlein's prior representation of a witness. But they also have a cumulative effect. So, you know, he's got a little conflict here, he's got a little conflict here, he's a little conflict here, you add them all together and you say oh, gosh, I don't want him to be my lawyer anymore. Because while each of those small conflicts might not be enough, when you them all together, that tips the balance; do you understand?

12:58PM THE DEFENDANT: I understand.

12:58PM THE COURT: So if at any point during this proceeding if you feel as though that balance has been tipped, I want you to tell me. Okay?

12:58PM THE DEFENDANT: Yes, Your Honor.

12:58PM THE COURT: Okay. Next two issues. That Mr. Soehnlein withdrew from the case indicating that New York's ethical rules required or at least permitted him to withdraw from representing his client. And then, number 3, that he re-entered the case as counsel without addressing the merits of his initial withdrawal, and on offering only a

12:58PM conclusory assurance that all issues with his client were resolved.

12:58PM So on these two issues, the government has also moved for disclosure of Mr. Soehnlein's declaration and the memorandum of law in support of his motion to withdraw. And I've reviewed the submissions of both parties. I've reviewed the declaration and the memorandum of law that Mr. Soehnlein submitted to the Court in support of his motion. I do not see a basis for disclosing it.

12:59PM There's no indication to me from those filings that the crime fraud exception applies in support of the motion to withdraw, rather at a very high level it seems to me that the motion to withdraw was based on a strategic disagreement with cocounsel at the time and with Mr. Gerace, which is an appropriate basis for withdrawal.

12:59PM So let me ask first, Mr. Personius, is that accurate?

12:59PM MR. PERSONIUS: The part of what you said, Judge, that I'm not sure about is that the conflict was limited to a strategic disagreement. I can say categorically, it had nothing to do with what the government now chooses to characterize as the orchestrated recusal of Judge Sinatra. Other than it was five days away, there is no connection.

01:00PM THE COURT: So here's what I would like to do at this point. I would like to have an ex parte inquiry with Mr. Soehnlein. I'd like to go back into chambers with

01:00PM Mr. Soehnlein and with you, Mr. Personius, and I think that's all right now. Maybe we'll invite Mr. Spitler back at some point. But it will be very brief. But are a few questions that I would like to ask, especially in light of the statement you just made.

01:00PM Mr. Foti, I don't want you back there, because I don't want anything said to compromise your ability to represent Mr. Gerace in any way.

01:00PM And as I say, Mr. Spitler, I don't think that you need to be back there at least at this point.

01:00PM But I do want to do an ex parte inquiry of Mr. Soehnlein myself just to assure myself that I've done what I need to do in exploring this. Okay? So let's go back in chambers.

01:01PM Ann, you'll come back with us and bring your machine, and we'll do a little ex parte inquiry. Mr. Tripi?

01:01PM MR. TRIPI: May I just add one thing, Your Honor, when you -- while you're back there to have in your mind. The government doesn't know from any of the filings or the communications with Curcio counsel whether Mr. Gerace actually knows what was put in the filing to Your Honor, and we think that's important.

01:01PM In the publicly available motion that was filed, Mr. Soehnlein writes that he's submitting the ex parte declaration and memorandum of law to the Court. I don't know

01:01PM that Mr. Gerace has ever seen these documents.
01:01PM THE COURT: Mr. Spitler, have you seen those
01:01PM documents?
01:01PM MR. SPITLER: I have not, Your Honor. I purposely
01:01PM have chosen not to review those since they weren't part of the
01:01PM public record.
01:01PM As the Court is aware, the government has provided me
01:01PM with the unredacted documents that have been filed. But I
01:02PM have not requested that document because I didn't want to
01:02PM impose on something that was filed ex parte that I wasn't sure
01:02PM related to what I was doing.
01:02PM THE COURT: Mr. Personius, let me ask you. Is there
01:02PM any reason not to share that with Mr. Spitler so that he can
01:02PM have a fulsome discussion with Mr. Gerace about any issues
01:02PM that might arise from it?
01:02PM MR. PERSONIUS: May I talk with Mr. Soehnlein for a
01:02PM moment?
01:02PM THE COURT: Absolutely.
01:02PM MR. PERSONIUS: Thank you.
01:02PM (Off the record.)
01:03PM (Back on the record.)
01:03PM MR. PERSONIUS: Thank you, Judge. No, no objection.
01:03PM THE COURT: Okay. So, Mr. Foti, do you have that
01:03PM with you by any chance?
01:03PM MR. FOTI: I have an electronic copy of it, yes.

01:03PM THE COURT: Okay. So can you share that with Mr. Spitler? And then we'll let Mr. Spitler talk with Mr. Gerace about it.

01:03PM MR. FOTI: Yes.

01:03PM THE COURT: Privately, of course. And we'll be back when we're back. Okay?

01:03PM MR. TRIPI: Judge, one last thing. I apologize.

01:03PM THE COURT: Not at all.

01:03PM MR. TRIPI: Ms. Chalbeck advises me the case might be Cain, but there is a case where this type of ex parte procedure that you're implementing occurred. And I just wanted to make sure that Mr. Gerace consents to --

01:03PM THE COURT: Oh.

01:03PM MR. TRIPI: -- on the record to this.

01:03PM THE COURT: Oh, very good. Yeah, very good point Ms. Chalbeck. I appreciate that.

01:03PM Mr. Gerace, do you understand what we're going to be doing?

01:03PM Mr. Spitler, you can talk to Mr. Gerace about this, as well.

01:03PM What we're going to be doing right now is an ex parte communication where I talk to Mr. Soehnlein about some questions that I'm going to ask him involving the affidavit that he submitted to me ex parte, that means privately, and the memorandum of law that he submitted to me ex parte, that

01:04PM means privately.

01:04PM Do you consent to me having this conversation with
01:04PM him without you being present?

01:04PM THE DEFENDANT: I do, Your Honor.

01:04PM THE COURT: Mr. Spitler, are you comfortable with his
01:04PM consent to that.

01:04PM MR. SPITLER: I am, Your Honor.

01:04PM THE COURT: Do you see any reason why he should not
01:04PM consent to that?

01:04PM MR. SPITLER: No, I don't, Your Honor.

01:04PM THE COURT: Okay. I don't either.

01:04PM Mr. Tripi, anything more I need to do?

01:04PM MR. TRIPI: I think that's it.

01:04PM THE COURT: Ms. Chalbeck, you're okay with it?

01:04PM MS. CHALBECK: Yes, Your Honor.

01:04PM THE COURT: Okay.

01:04PM THE CLERK: All rise.

01:04PM (Off the record at 1:04 p.m.)

01:17PM (Ex parte discussion in chambers. Sealed.)

01:26PM (Back on the record at 1:26 p.m.)

01:26PM THE CLERK: All rise.

01:26PM THE COURT: Please be seated.

01:26PM THE CLERK: We are back on the record for the
01:26PM continuation of the Curcio hearing in case number 19-cr-227,
01:26PM and 23-CR-37, United States versus Peter Gerace, Jr.

01:26PM All counsel and parties are present.

01:26PM THE COURT: Okay. So I have had an ex parte colloquy with Mr. Soehnlein, and I am satisfied that the crime fraud exception does not apply here, and does not apply to the documents in support of his motion to withdraw. Rather, the decision to withdraw was based on a disagreement with respect to some activity that was going to be taken that had nothing to do with the crime fraud exception, and that is a proper basis for withdrawal.

01:27PM I also agree with the defense that allowing disclosure here would set a dangerous precedent that may well hinder free attorney-client communication in the future. So I deny the government's motion for disclosure.

01:27PM Now, Mr. Spitler, you have represented in your letter that you've discussed this issue with Mr. Gerace; is that correct.

01:27PM MR. SPITLER: Yes, Your Honor.

01:27PM THE COURT: And now you've seen the ex parte submissions, the memorandum of law and the affidavit that were submitted to me; is that correct?

01:27PM MR. SPITLER: Yes, I have.

01:27PM THE COURT: And have you discussed those things with Mr. Gerace?

01:27PM MR. SPITLER: I have, Your Honor.

01:27PM THE COURT: Okay. Are you confident, based on that

01:27PM discussion, that any issues between counsel and Mr. Gerace
01:27PM will resolve when Mr. Soehnlein replaced Mr. Cohen?
01:27PM MR. SPITLER: Yes, Your Honor.
01:27PM THE COURT: Okay. And do you think that there's any
01:27PM remaining conflict at all that Mr. Gerace needs to waive? Or
01:28PM do you think he's waived any conflict that there is? Tell me
01:28PM what your thoughts are.
01:28PM MR. SPITLER: Based upon my conversation with him
01:28PM just now, Judge, after having reviewed Mr. Soehnlein's
01:28PM ex parte, I see no conflict. And I've discussed it with
01:28PM Mr. Gerace, and I believe he would make a knowing -- he's
01:28PM indicated to me he would waive, and I believe it's a knowing
01:28PM and intelligent waiver on his part.
01:28PM THE COURT: Okay. So if there is a conflict, he's
01:28PM waiving it, but you don't think there's a conflict?
01:28PM MR. SPITLER: Correct, Your Honor.
01:28PM THE COURT: Okay. Mr. Gerace, do you understand the
01:28PM reasons that Mr. Soehnlein withdrew from your representation?
01:28PM THE DEFENDANT: Do I understand the reason?
01:28PM THE COURT: Yes.
01:28PM THE DEFENDANT: It was never shared with me.
01:28PM THE COURT: Okay.
01:28PM THE DEFENDANT: I've never read the -- I've never
01:28PM read the papers.
01:28PM THE COURT: Okay. But you've talked with Mr. Spitler

01:28PM about it now?

01:28PM THE DEFENDANT: Yes.

01:28PM THE COURT: Okay. And do you understand the reason
01:28PM now?

01:28PM THE DEFENDANT: Yes.

01:28PM THE COURT: Okay. And in your view, are any issues
01:28PM that you had with Mr. Soehnlein resolved now?

01:28PM THE DEFENDANT: Yes, Your Honor.

01:28PM THE COURT: Okay. Ms. Chalbeck, is there any -- or
01:28PM Mr. Tripi, is there still an issue here?

01:28PM MR. TRIPI: Yeah, Judge, I -- couple things. We
01:29PM believe that Mr. Gerace needs adequate time to review the
01:29PM filing other than this sort of 15-minute window in a
01:29PM discussion with Mr. Spitler.

01:29PM We did raise this issue a while ago in our filings,
01:29PM they never addressed it. And then Mr. Spitler, who I've known
01:29PM for a long time and I respect, and he writes a letter to the
01:29PM Court saying he's discussed all issues with Mr. Gerace prior
01:29PM to today. And then we learn pretty significant information
01:29PM that Mr. Gerace has no idea what is in this affidavit, what
01:29PM his former attorney said about the representation that caused
01:29PM him to cite ethical rules in the publicly filed motions.
01:29PM Those are facts. And, so, I know Mr. Spitler has an ongoing
01:29PM relationship with Mr. Gerace, he's been Curcio counsel at
01:29PM several iterations of this, but I question whether or not an

01:29PM additional Curcio -- an additional Curcio counsel should be assigned.

01:29PM I also think Mr. Gerace needs to review the filing himself with perhaps additional counsel. And then we need to dig into then how, if he hasn't seen it and hasn't reviewed it and didn't know about what was in there until today, how can we have said in September that the issues were resolved?

01:30PM During that appearance, and I'm not trying to elevate this at all, but during that appearance at page 18 on September 6th, I asked four questions:

01:30PM Is whatever issue resolved? Is it a conflict issue? Was it an ethical issue? Is it the type of issue that could permit him to come back into the case?

01:30PM And all we got was, like we said in our filing, the conclusory all issues are resolved.

01:30PM Since September to now, nobody informed Mr. Gerace about this?

01:30PM And then I have another question that this Court, I think, needs drill into in the Curcio context, and we've raised it in sealed filings, and I think it's unsealed now. I have said previously that for a long time in Niagara County jail, his -- his -- his -- he was incarcerated with Roderick Arrington who, of 2nd Circuit fame, had his case come back, a murder conviction and life sentence, had his case come back on a conflicts issue.

01:31PM And I really question whether Mr. Gerace will just utter whatever this Court needs to satisfy the waiver conditions on the record, only to complain later on.

01:31PM THE COURT: Mr. Tripi --

01:31PM MR. TRIPI: So I think we need to have him review the filing and an additional, perhaps, attorney to sit with Mr. Spitler and him. Those are my requests.

01:31PM THE COURT: We're not going to get another Curcio counsel. We have a very qualified Curcio counsel in Mr. Spitler. I have the utmost confidence in Mr. Spitler.

01:31PM As far as your request that Mr. Gerace have more time to review this and to discuss it with Mr. Spitler, once we're concluded with the Curcio inquiry today, we'll set a report back for a week or two from now where Mr. Spitler and Mr. Gerace can come back and tell us whether they've discussed it further, and whether anything has changed.

01:32PM But no, we've gone -- we've gone on so many tangents in this case, we're not going to create another one now. And I am doing what I think is a complete and thorough Curcio inquiry, and we're going to leave it at that.

01:32PM MR. TRIPI: We respect the Court's decision on that. I'm trying to make the best record I can --

01:32PM THE COURT: I know you are.

01:32PM MR. TRIPI: -- for this --

01:32PM THE COURT: I know you are.

01:32PM MR. TRIPI: -- issue for --

01:32PM THE COURT: But --

01:32PM MR. TRIPI: -- a myriad of reasons.

01:32PM THE COURT: I get it. I get it. But we're not --
01:32PM we've done, I think what is appropriate in this case. We're
01:32PM not going to do any more.

01:32PM So let's move on to the -- so, I find that there was
01:32PM no actual conflict. That any potential conflict has been
01:32PM resolved. And that if there is anything remaining, that it's
01:32PM been waived.

01:32PM But at the government's request, we will give
01:33PM Mr. Spitler and Mr. Gerace some time to talk about this in the
01:33PM intervening couple weeks, schedule another date, come back and
01:33PM report back as to whether anything has surfaced, whether
01:33PM anything has changed in Mr. Gerace's mind.

01:33PM MR. COOPER: Judge --

01:33PM THE COURT: Okay.

01:33PM MR. COOPER: Your Honor, before we move on? This
01:33PM could be my memory failing me, but with respect to the first
01:33PM issue we discussed, the prior to representation of a witness,
01:33PM I think the Court had a colloquy back and forth with the
01:33PM defendant. I don't know that we did that with respect to
01:33PM these next two. I think you spoke with -- colloquy with
01:33PM Mr. Spitler. That could be my memory failing me, but --

01:33PM THE COURT: Okay. So let me ask you, Mr. Gerace. Do

01:33PM you understand the issues with respect to any conflict that arose in Mr. Soehnlein's withdrawal of representing you and then coming back?

01:33PM THE DEFENDANT: I do, Your Honor.

01:33PM THE COURT: Okay. And are you satisfied that any issues that you had with Mr. Soehnlein when he withdrew have now been resolved?

01:34PM THE DEFENDANT: They have, Your Honor.

01:34PM THE COURT: If there is any conflict that remains with respect to those issues, do you waive that conflict?

01:34PM THE DEFENDANT: Yes, Your Honor.

01:34PM THE COURT: Okay. If there's an disagreement between you and Mr. Soehnlein about strategy going forward that Mr. Soehnlein is going to take, are you satisfied with Mr. Soehnlein's decisions on the strategy that he's taking?

01:34PM THE DEFENDANT: Yes, I'm satisfied with both of my attorneys, Your Honor.

01:34PM THE COURT: Okay, Mr. Cooper?

01:34PM MR. COOPER: Thank you, Judge.

01:34PM THE COURT: Okay. Now, let's move on to what I consider to be the main conflicts.

01:34PM So, Mr. Soehnlein became the subject of an investigation relating back to the -- the circumstances that led to his withdrawal, or became a subject of investigation, let's just leave it at that. The issue's been resolved by the

01:34PM government's immunity letter to Mr. Soehnlein, and there is no longer a conflict. Everybody agrees with that, right?

01:34PM MR. TRIPI: There is no per se conflict in light of the Court's decision, and there's no conflict related to him being the subject of or target of an investigation.

01:35PM THE COURT: Right.

01:35PM MR. TRIPI: Our position vis-à-vis witness remains.

01:35PM THE COURT: I understand that. But there's no -- there's nothing that is presently in place that would cause Mr. Soehnlein's allegiance to Mr. Gerace to be compromised in any way because he wants to curry favor with the government?

01:35PM MS. CHALBECK: Perspectively, Your Honor, that's -- that's correct. I think maybe it would behoove us to do some kind of colloquy as it relates to prior actions.

01:35PM THE COURT: That's exactly where I'm going.

01:35PM MS. CHALBECK: Thank you.

01:35PM THE COURT: Okay. So, everybody agrees that there's no longer a current conflict in this regard; is that right, Mr. Tripi?

01:35PM MR. TRIPI: Yes. Prospectively.

01:35PM THE COURT: Mr. Spitler?

01:35PM MR. SPITLER: Yes, Your Honor.

01:35PM THE COURT: Mr. Foti?

01:35PM MR. FOTI: Yes.

01:35PM THE COURT: Mr. Soehnlein?

01:35PM MR. SOEHNLEIN: Yes, Your Honor.

01:35PM THE COURT: Mr. Personius, I might as well get your two cents.

01:35PM MR. PERSONIUS: Yes, Your Honor, thank you for asking.

01:35PM THE COURT: Okay. But as I mentioned earlier, I think we need to ensure that there was no conflict in the past that caused a lapse in representation during the time when Mr. Soehnlein was under investigation, and when he was aware that he was investigated.

01:36PM And as I understand it, that time period is from November 21st, 2023, until May 10th, 2024; is that correct?

01:36PM MR. COOPER: Yes, Judge.

01:36PM THE COURT: Okay. Now, the 2nd Circuit caselaw holds that there's ineffective assistance of counsel if the lawyer has an actual conflict, and the conflicted lawyer's performance was adversely -- I'm sorry, the conflicted lawyer's performance was adversely affected in a way that resulted from the conflict that's caused -- that's called a lapse in representation.

01:36PM So, Mr. Gerace, the 2nd Circuit has held that when an attorney is under investigation by the same prosecutor's office that's prosecuting the client, that can create an actual conflict of interest. And it's easy to see why. The lawyer in such circumstances may consciously or otherwise may

01:37PM want to seek the good will of the prosecutor's office for his own benefit. And the lawyer's attempt to seek the good will of the prosecutor may not always be in the best interest of the lawyer's client.

01:37PM So the question is whether there was any adverse impact here based on the government's investigation of Mr. Soehnlein, and Mr. Soehnlein's awareness of that investigation.

01:37PM And more specifically, the caselaw says that a lapse in representation occurs when there's some plausible alternative defense strategy or some tactic, something that was -- could have been done by the lawyer but wasn't. That includes pretrial strategies related to cooperation and pleas. There's no need to show prejudice, there's no need to show that the forgone strategy or tactic was even reasonable, just that it was plausible and not taken. Okay?

01:38PM Now this case was essentially on hold during the period when Mr. Soehnlein was under investigation, and you were also represented by Mr. Foti during that entire period who did not have a conflict. But I still want to make sure that on the record we discuss and that both sides are able to weigh in on whether there was any lapse as I've explained that.

01:38PM So let me start with you, Mr. Foti. What's your position on this? Were there any plausible alternative

01:38PM defense strategies or tactics that Mr. Soehnlein might have
01:38PM pursued that he did not because the investigation was pending?
01:38PM MR. FOTI: I think in the narrow manner which the
01:38PM question is posed, the answer is no. But I just -- to offer a
01:39PM clarification, and I don't think this is inconsistent with
01:39PM anything that we haven't articulated in the past, consistent
01:39PM with the point that the case was on hold, there was an impact
01:39PM here not as a result of any conscious decision by
01:39PM Mr. Soehnlein to alter his representation of Mr. Gerace, but
01:39PM there was an impact to the extent that while the motion was
01:39PM pending, and now with this additional motion pending related
01:39PM to disqualification, there's been no communication between
01:39PM Mr. Gerace and Mr. Soehnlein. And there has been certain
01:39PM steps that may have been taken in terms of preparation for
01:39PM trial that we've held off on as a result of having this issue
01:39PM pending. I don't think that speaks to a conflict, I think
01:39PM that's something completely separate, but just --
01:39PM THE COURT: Yeah, I agree with you.
01:39PM MR. FOTI: -- but just because of the way the
01:39PM question was asked, I want to clarify that that's my answer.
01:40PM THE COURT: Yeah, so there was a delay in your
01:40PM communicating with Mr. Gerace, maybe your communicating with
01:40PM him, certainly Mr. Soehnlein's communicating with him, and a
01:40PM delay that inured to Mr. Gerace's disadvantage because he's
01:40PM been held in detention during that period. But I don't think

that that speaks to account --

MR. FOTI: It's not anything that results from action taken by Mr. Soehnlein --

THE COURT: Okay.

MR. FOTI: -- which I think is what the conflict would arise out of.

THE COURT: Mr. Soehnlein, do you agree with that? Was there anything that you -- other than the period of delay that we've talked about, was there any action that you took that you would not have taken had you not been under investigation, or is there anything that you would have done that you didn't do because you were under investigation?

MR. SOEHNLEIN: No, Your Honor. Obviously had the investigation not taken place, things would have played out differently, and we would have prepared the case for trial in a different way. But no, I think Mr. Foti's answer is spot on.

THE COURT: Okay. Mr. Spitler, anything that you see that created a lapse as I've explained it?

MR. SPITLER: No, Your Honor.

THE COURT: Okay. Mr. Gerace, let me ask you, you understand how this issue works that, in other words, that while Mr. Soehnlein was under investigation, he had reason to compromise his representation of you; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that there might

have been things that he did during that period of time that he would not have done had he not been under investigation, and there might have been things that he didn't do that he would have done had he not been under investigation; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So you understand that during that period of time at least, from November until May, that -- yeah, November until May -- that Mr. Soehnlein's representation of you may have been compromised in some way; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And if there is some sort of conflict that exists now because of what happened in the past, do you want to waive that conflict and have Mr. Soehnlein continue to represent you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Spitler, have you discussed these issues with Mr. Gerace?

MR. SPITLER: Judge, the issue as to --

THE COURT: Whether --

MR. SPITLER: -- he was off --

THE COURT: -- whether the -- whether the conflict that may result, the fact that there was a time, a discrete period of time, six months or so, when Mr. Soehnlein was under

investigation and, therefore, may have had compromised loyalties to Mr. Gerace. Have you discussed with him that that may create a conflict now? So he may look back on that now and say, well, look, he represented a witness at the beginning of the case. There was a time in the case when he may not have had my best interests at heart. Yeah, those two things together, you know, tip the balance for me, and I don't want him to represent me anymore. Have you discussed those kinds of issues with him?

MR. SPITLER: I have discussed those issues, as well as others.

THE COURT: Yeah.

MR. SPITLER: Inability to counsel to fully and properly represent his client with whatever other outside factors may be in play, and he has indicated to me that he is -- that he -- if such factors occurred or in play, he is ready to waive those factors. Again, Judge, the government has indicated that there are these are potential issues that may --

THE COURT: We're not there yet.

MR. SPITLER: All right.

THE COURT: We're gonna get there, we're going to get to the potential issues. We're not there yet.

MR. SPITLER: Okay.

THE COURT: Mr. Gerace, is that correct?

01:43PM THE DEFENDANT: Yes, Your Honor.
01:43PM THE COURT: Okay. So I just want to make -- the fact that Mr. Soehnlein represented a witness at the beginning, and the fact that there might have been a period of time when his allegiance to you, consciously or unconsciously, may have been compromised by the investigation, you understand that, right?
01:44PM THE DEFENDANT: Yes, Your Honor.
01:44PM THE COURT: And do you want to waive any conflict that results from that?
01:44PM THE DEFENDANT: Yes, Your Honor.
01:44PM THE COURT: Okay. Government? Anything you want to add?
01:44PM MR. COOPER: Judge, I just want to follow up on one of the remarks, the Court inquired from each of the different attorneys, and when the Court made an inquiry with respect to Mr. Soehnlein, he said had the investigation not taken place, obviously we would have prepared the case for trial in a different way. And that comment, I guess, goes directly to the inquiry that the Court's making, which is, is there some strategy that you would have undertaken that you chose not to, so there wasn't a follow-up on that, and maybe it was just --
01:44PM THE COURT: Okay. So was there some strategy that you didn't undertake that you would have undertaken that you can't undertake now?
01:44PM MR. SOEHNLEIN: No.

01:44PM MR. COOPER: Okay. Thank you, Judge.

01:44PM THE COURT: Anything else?

01:45PM MR. COOPER: Just one second, please.

01:45PM MR. TRIPI: I just want, you know, just want the
01:45PM record to be clear that at all times, he's had Mr. Foti who he
01:45PM can communicate with, who could file any motions that were
01:45PM necessary, all of those things and --

01:45PM THE COURT: Yeah, I think I made that point.

01:45PM MR. TRIPI: -- and -- and Jencks material to review to
01:45PM prepare for trial, all of that, so he had qualified counsel,
01:45PM he could have done anything he needed to do during that time
01:45PM period.

01:45PM THE COURT: Okay. Okay. So I agree that there was
01:45PM no lapse in representation. I think there was no ineffective
01:45PM assistance of counsel that occurred during that time period,
01:45PM during the period that Mr. Soehnlein was aware of the
01:45PM investigation, the case really was on hold while the motion
01:45PM was litigated. Mr. Foti continued to represent Mr. Gerace.
01:45PM Mr. Foti does not have a conflict. I do not think that during
01:45PM that period of time there was any alternative defense strategy
01:45PM or tactic that might have been pursued but wasn't, and that
01:46PM can't be pursued now. In other words, there were things that
01:46PM weren't done by way of trial preparation, as Mr. Soehnlein
01:46PM said, during that period because things were on hold, but
01:46PM there was nothing that wasn't done that can't be done now.

01:46PM Nothing that -- no strategies that weren't pursued that have
01:46PM somehow been lost. So I don't think that there is a lapse.
01:46PM And I think I have ensured that Mr. Gerace
01:46PM understands the conflict that was present during that time
01:46PM period, and that he knowingly waived any conflict that
01:46PM resulted from that.
01:46PM MR. TRIPI: There's just one thing.
01:46PM THE COURT: Yep.
01:46PM MR. TRIPI: I think the date was November 21st, 2023.
01:46PM I think you said May 10th. I think the letter from the U.S.
01:46PM Attorney was delivered May 16th.
01:46PM THE COURT: Okay. So obviously a little change in
01:46PM the date. Does that change anything, Mr. Spitler?
01:47PM MR. SPITLER: No, Your Honor.
01:47PM THE COURT: Does that change anything, Mr. Gerace?
01:47PM THE DEFENDANT: No, Your Honor.
01:47PM THE COURT: Okay. Okay. So, Mr. Gerace, you've
01:47PM indicated to me that you waive any conflict that resulted from
01:47PM that temporary period of time when Mr. Soehnlein was under
01:47PM investigation. And, again, when we are done today, I'm going
01:47PM to give you a chance to talk to Mr. Spitler about these
01:47PM issues, and we'll conclude today. And then, again, we're
01:47PM going to schedule something for a couple weeks from now, and
01:47PM we'll wrap it up then finally .
01:47PM Okay. So let's talk about the current conflicts now.

01:47PM The fifth conflict is that Mr. Soehnlein may be a witness to several overt acts in case number 23-cr-99, and in addition may be a witness to some other --

01:47PM To what else, Ms. Chalbeck? You told me, but I've forgotten.

01:47PM MS. CHALBECK: Yes, Your Honor. It's the government's position that even if Mr. Soehnlein is protected by 1515(c), that 1515(c) does not extend to non attorneys. And so to the extent that Mr. Gerace used his attorneys as conduits, unwitting or otherwise, to convey false information with the goal of fraudulently inducing a federal judge to recuse himself, that that, consistent with our earlier briefing, constitutes obstruction. And if not obstruction, at least contempt.

01:48PM And so there's still this, like, specter of criminality hovering over Mr. Gerace's conduct, even though that specter does not extend to Mr. Soehnlein's pursuant to your decision and order and, of course, cured by the U.S. Attorney's letter of immunity.

01:48PM THE COURT: So why wouldn't Mr. -- why wouldn't those communications be protected by the privilege?

01:48PM MS. CHALBECK: Because it's -- it would be subject to the crime fraud. The defendant cannot use his attorney to perpetuate a fraud on the Court. And so the inquire that if there's a reasonable possibility that a fraud on the Court

01:49PM occurred --

01:49PM THE COURT: Okay.

01:49PM MS. CHALBECK: -- that those communications therefore
01:49PM would not be privileged and, therefore, Attorney Soehnlein --

01:49PM THE COURT: Because the client was using the
01:49PM attorney, even though the attorney may not have realized it,
01:49PM the client was using the attorney to commit a fraud upon the
01:49PM Court.

01:49PM MR. TRIPI: Correct.

01:49PM MS. CHALBECK: Precisely, Your Honor.

01:49PM MR. TRIPI: The client weaponized the attorney.

01:49PM THE COURT: Okay.

01:49PM MR. TRIPI: And that's an aspect that we've briefed
01:49PM that remains open by your decision.

01:49PM THE COURT: Conceivably, yeah.

01:49PM MS. CHALBECK: And, Your Honor, I would just add to
01:49PM that. In 23-cr-99, I think that these two issues are related,
01:49PM that there's a substantive obstruction concern here -- sorry
01:49PM for my mask dropping -- and that there are also overt acts to
01:49PM which Attorney Soehnlein is a witness, and that those two
01:49PM inquiries really go hand in hand. Because the government, of
01:50PM course, has to prove corrupt intent in its effort to prove the
01:50PM client conspiracy charged in 23-cr-99.

01:50PM And so insofar as the substantive obstruction there
01:50PM forbears on the corrupt intent that the government must prove,

01:50PM these two issues are two sides of the same coin.

01:50PM THE COURT: I get it.

01:50PM MS. CHALBECK: Okay.

01:50PM THE COURT: Yeah, I get it. Okay.

01:50PM So the government says, Mr. Gerace, the government 01:50PM says that Mr. Soehnlein has a conflict because he may be a 01:50PM witness in case 23-cr-99 regarding several overt acts charged 01:50PM in that indictment. In particular, the government suggests 01:50PM that you may have given Mr. Soehnlein false information 01:50PM about -- in addition to that, Mr. -- the government says you 01:50PM may have given Mr. Soehnlein false information about relatives 01:50PM of Judge Sinatra that Mr. Soehnlein and Mr. Cohen put on your 01:50PM witness list in an effort to cause Judge Sinatra to recuse 01:50PM himself, and that that might surface in another prosecution, I 01:50PM suppose, for obstruction, right?

01:51PM MS. CHALBECK: Yes, Your Honor. They're overt acts 01:51PM charged in the indictment.

01:51PM THE COURT: They're overt acts charged in that 01:51PM indictment, and there could be another prosecution apart from 01:51PM that; is that right?

01:51PM MS. CHALBECK: Yes, conceivably obstruction could be 01:51PM substantively charged.

01:51PM THE COURT: Right. So that those -- those -- if you 01:51PM gave Mr. Soehnlein false information about relatives of Judge 01:51PM Sinatra that were put on your witness list, that Mr. Soehnlein

01:51PM may be compelled to testify to that against you in 23-cr-99 or in another case. And the government says based on those allegations and its evidence in support of them, there's probable cause to trigger what we've been talking about, that is the crime fraud exception to the attorney-client privilege. That applies where communications with an attorney were made in furtherance of a crime or fraud, and a court may find that the privilege does not apply, and the attorney may be forced to disclose those communications.

01:52PM So even though Mr. Soehnlein is protected from prosecution now by the government's immunity letter in connection with his putting the names on the witness list, if a court found that you gave him false information that he didn't know about, and that resulted in the obstruction of justice, he could be compelled to testify against you in the other case, either 23-cr-99 or another case that hasn't even been brought yet; do you understand that?

01:52PM THE DEFENDANT: I do, Your Honor. It's kind of troublesome, but yes.

01:52PM THE COURT: Okay. So have I -- do I -- have I couched the issue appropriately?

01:52PM MS. CHALBECK: Yes, Your Honor.

01:52PM THE COURT: Okay. So let me -- let me ask the government first. The government calls this an actual conflict, not a potential conflict. Tell me why. There's

01:53PM no -- been no crime fraud ruling, Mr. Soehnlein hasn't been subpoenaed, right? So it's a potential conflict.

01:53PM MS. CHALBECK: That's -- it's correct, Your Honor, that there's no pending crime fraud order and Mr. Soehnlein has not been subpoenaed. I think that this is an area of the caselaw, this being where counsel can serve as a witness against his client even in a hypothetical scenario that has fallen under the umbrella of per se or actual conflicts. And so we understood the Court's prior decision and order from April 26th insofar as it did not cover Mr. Soehnlein's potential status as a witness to imply that this was not a species of per se conflict. But nevertheless, this issue comes up in that category of cases. And so we would suggest that the caselaw categorizes it and identifies it as an actual conflict at minimum, and that's why we labeled it as such.

01:54PM But I understand the Court's point that because there's a certain, well, let me rephrase. Because there's -- these issues are not yet ripe insofar as there's no subpoena that has been served, or crime fraud application that has been granted, there is an element of potential here that makes it a flavor of potential conflict.

01:54PM THE COURT: Yeah, I think we're talking about semantics now, really, whether it's potential or actual, it's really a semantic question in this regard. It's not -- so he's not going to be called as a witness against Mr. Gerace in

01:54PM this case of course, we're talking about a different case, we're talking about 23-cr-99, and we're talking about potential of another case altogether, right?

01:54PM MS. CHALBECK: That's correct, Your Honor. I would add, though, and I think this came up in a supplemental letter that the government filed with the Court previously, that insofar as this there's evidence of obstruction that occurred related to the recusal, that is something that we could raise at sentencing in this case.

01:55PM MR. TRIPI: Judge, I think it goes back to what this Court said in the beginning of the proceeding when you were laying out the law vis-à-vis actual conflicts, and I think you might have been citing the 2nd Circuit decision in Schwartz, 2nd Circuit, 2002, where the attorney is a witness in another related case, the analysis as to whether it's an actual conflict, is: Does that defendant and the attorney's interest diverge with respect to a material, factual, legal issue, or course of action.

01:55PM There's a material factual issue here regarding whether or not Defendant Gerace weaponized his attorneys in 23-cr-99, which is the most plausible -- which is the most plausible explanation in light of this Court's decision and order at docket 889.

01:55PM THE COURT: Well, the most plausible explanation viewed from the government's perspective. I'm not so sure

that there aren't equally plausible explanations that the defense might say that they think are the case.

MR. TRIPI: To the extent we're forecasting though, you know, what the actual real world impact is vis-à-vis 23-cr-99, that's our position.

THE COURT: So in any event, Mr. Gerace, Mr. Soehnlein conceivably could be called as a witness against you in 23-cr-99; he could conceivably be called as a witness against you in some other case that hasn't even been brought yet; he could conceivably be called as a witness against you in sentencing in this case, I suppose, in some way or another; and that might obviously create a conflict in terms of his representation of you in this case; do you understand that?

MR. FOTI: Judge, if I can jump in at this point?

THE COURT: Yes, sir.

MR. FOTI: I have -- I don't know if it's -- it amounts to an objection, but I have some concern about engaging in this particular waiver at this point. And I think my concerns stem from some of the concerns that may have given rise to the colloquy that the Court just engaged in with the government.

There is a point, sort of a threshold, between when something, a hypothetical scenario amounts to a potential conflict, and then when it moves to an actual conflict. I don't know if this is even ripe for an analysis that there's a

01:57PM potential conflict that exists. The government's referring to the caselaw that relates to per se conflicts. And in their briefing, I think they heavily cited Cain in support of that position. In Cain, my recollection is, this didn't even amount to a potential conflict at least until the attorney was subpoenaed. And then there was some additional analysis at that point that may have occurred.

01:57PM There's multiple levels here that I think prevent this from even getting to the point where Mr. Gerace is in a position to answer questions about whether he would be willing to waive. And those positions include both the fact that Mr. Soehnlein has never been subpoenaed, the government did not attempt to subpoena him for the grand jury presentation for that case, there's no indication that --

01:58PM THE COURT: But -- but, Mr. Foti, I understand that, and so I will -- I will not ask him any specific questions. But -- but we need -- Mr. Gerace needs to understand that there's a possibility of Mr. Soehnlein being called as a witness against him in another proceeding as the government has said, and that he has a decision to make as to whether he wants Mr. Soehnlein to continue to represent him.

01:58PM I think -- I think that is, at a minimum, what we need -- I need to satisfy myself that he understands that that's a possibility, and that he still wants Mr. Soehnlein to represent him. That's all.

01:58PM MR. FOTI: And I think he would answer in the affirmative because it's so important to him that he be able to maintain Mr. Soehnlein as his attorney. But as his other attorney, my concern is I don't know how that waiver could be knowing at this point when we haven't -- we've asked for information about what the disposition of those crime fraud applications are, the government asked for adjournment for understandable reasons, but that's still not resolved. Obviously, if we don't know what the status of that is, Mr. Gerace doesn't know what the status of that is. And I think that's going to have some bearing on what the nature of this potential conflict is.

01:59PM So, I -- I -- as much as I think he's willing to answer the Court's question, and he'll answer it affirmatively, at a minimum I think this issue is not fully ripe to the extent that the circumstances could change later on.

01:59PM THE COURT: You may be right. But we can only do what we can do based on the knowledge that we have right now.

01:59PM So let me do this. After reviewing the parties' submissions and their arguments, I think that Mr. Soehnlein has a potential conflict based on the fact that he might be called as a witness in case 23-cr-99 and perhaps in other cases. So I want to go through that potential conflict with Mr. Gerace and the risks of proceeding.

02:00PM So the government has indicated that Mr. Soehnlein may be called as a witness against you in case 23-cr-99. The government has made an application for an order stating that communications between you and Mr. Soehnlein are disclosable under the crime fraud exception. There's been no order issued on that application, but if some judge finds that there's probable cause to believe that the communications between you and Mr. Soehnlein were to advance a crime or fraud in some way, then Mr. Soehnlein could be forced to testify about your communicating with him.

02:00PM And depending on what the substance of those communications were, that could be testimony that's harmful to you.

02:01PM Now 23-cr-99 is a separate case, it's not this case, so there's no risk that Mr. Soehnlein is going to be called to testify against you in this trial.

02:01PM And -- that's correct?

02:01PM MS. CHALBECK: Yes.

02:01PM MR. TRIPI: As to this case, yes.

02:01PM THE COURT: Okay. And the government has also indicated that it's not going to charge Mr. Soehnlein in connection with an orchestrated recusal, so there's not an issue of Mr. Soehnlein trying to avoid his own criminal charges. But there's nonetheless the risk that he's going to have to give testimony against you in case 23-cr-99, which is

02:01PM related to this case. And I suppose there is a possibility
02:01PM that as a result of that, he will not represent you as
02:01PM zealously as he could have in this case.
02:01PM And there's also the possibility that you may not
02:01PM feel comfortable being fully honest with him, and that that
02:02PM would negatively impact your attorney-client relationship with
02:02PM him.
02:02PM Mr. Tripi and Ms. Chalbeck, are there any other
02:02PM possibility repercussions that I'm missing?
02:02PM MS. CHALBECK: No, Your Honor, I think that that
02:02PM covers it.
02:02PM THE COURT: I'm sorry?
02:02PM MS. CHALBECK: I think that that covers it,
02:02PM Your Honor.
02:02PM THE COURT: Okay. So, Mr. Gerace, do you understand
02:02PM how this situation could limit your defense?
02:02PM THE DEFENDANT: I do, Your Honor. It's just some
02:02PM things that are said are kind of disturbing to me. When the
02:02PM government puts a case in front of me and I seem to be -- they
02:02PM seem to think I shouldn't be able to call certain witnesses
02:02PM that are relevant to that case --
02:02PM THE COURT: No, I understand.
02:02PM THE DEFENDANT: -- that's not right. And what I
02:02PM don't understand is how they can bring in saying that, well,
02:02PM some type of -- this type of recusal thing where -- how is it

02:02PM my fault? I don't understand.

02:02PM THE COURT: But let me ask you, do you understand how
02:02PM Mr. Soehnlein's potential of having to testify against you in
02:03PM another case might create a conflict here?

02:03PM THE DEFENDANT: I guess so.

02:03PM THE COURT: Well, tell me. Tell me in your own
02:03PM words, what do you think? What do you think it is?

02:03PM THE DEFENDANT: I think -- I think --

02:03PM THE COURT: Before you talk, before you talk, talk to
02:03PM Mr. Foti, talk to Mr. Spitler. Tell them first what you want
02:03PM to say, and then say it to me.

02:04PM (Off the record.)

02:04PM (Back on the record.)

02:04PM THE COURT: So tell me.

02:04PM THE DEFENDANT: I do not have a concern with him
02:04PM being my attorney.

02:04PM THE COURT: But explain to me what you see as the
02:04PM conflict.

02:04PM THE DEFENDANT: I don't see a conflict. I don't see
02:04PM a conflict at all. I don't see where they're coming from as
02:04PM far as saying that there was a crime committed.

02:04PM THE COURT: But let me ask you this. Do you feel as
02:04PM though you're not going to be as honest with Mr. Soehnlein
02:04PM because of this issue that's out here?

02:04PM THE DEFENDANT: No.

02:04PM THE COURT: You're going to have the same ability to talk to him you would regardless of whether he might have to testify against you in another case?

02:04PM THE DEFENDANT: Yes.

02:04PM THE COURT: Do you think he's still going to have your best interest at heart in this case even though he might have to testify against you in another case?

02:04PM THE DEFENDANT: Yes.

02:04PM THE COURT: Do you think it's going to compromise his ability to represent you in any way?

02:04PM THE DEFENDANT: Absolutely not.

02:04PM THE COURT: Okay. Mr. Spitler, have you discussed this issue with Mr. Gerace?

02:05PM MR. SPITLER: Not to this -- not to the depth that we've had in this colloquy right now, Judge.

02:05PM Judge, what I did is based upon the government representing to me that the issues contained in paragraph D represented the areas of conflict, I specifically spoke with him on the 5th. Mr. Soehnlein, although perhaps not a witness to procuring of the false affidavits related to the death of Crystal Quinn by Defendant Gerace and Gerace Attorney 1, is a witness to several overt acts in case 23-cr-99 described above. And I explained to him that he could possibly be a witness in those cases.

02:05PM And based upon our discussions, his representation to

02:05PM me was, I'm aware of that, but I still want Eric be my attorney.

02:05PM THE COURT: Okay. So, and you're comfortable with that decision on his part?

02:05PM MR. SPITLER: Yes, I am Judge.

02:05PM THE COURT: So I think what we're going to do is we'll give you time again at the end of this proceeding today to talk to him, and then again we're going to come back in a couple weeks as well so you can talk to him more about it then.

02:06PM Is there anything more that I should do now? Yes, Mr. Cooper?

02:06PM MR. COOPER: I just want to address a couple things.

02:06PM First of all, Mr. Spitler just said that the government told him that paragraph D covered everything. That's what Mr. Spitler said in an email to the government, not what the government said to him.

02:06PM So I'm not playing tit for tat, but we didn't limit to a specific subparagraph. In fact, the government's response indicated that, as he previously indicated to the Court, that we weren't going to comment outside of what was in our briefing generally. And so there was no limitation placed in communications between the government and Mr. Spitler.

02:06PM Secondly, Judge, just -- I know that the Court's tracking on them as well, but some of the comments that were

02:06PM made by the defendant during that colloquy are a specific
02:06PM concern to the government with respect to whether there's a
02:06PM knowing and voluntary waiver.

02:06PM First of all, the defendant said in the first
02:06PM instance, it's kind of troublesome, but yes, in response to
02:07PM the Court's question about whether he understood the nature of
02:07PM the conflict.

02:07PM Later, when the Court asked him again whether he
02:07PM understood the nature of the conflict, the defendant said some
02:07PM things that are said are kind of disturbing to me. And that's
02:07PM a portion of the quote, I'm not at good as Ann getting it all.

02:07PM And then finally the third time the Court discussed
02:07PM the nature of the conflict, the defendant stated I guess.

02:07PM And so just the equivocation, and what seems to be --
02:07PM and I mean no disrespect through this -- but what seems to be
02:07PM a lack of understanding about what the conflict is. And I
02:07PM certainly understand the defendant disagrees with the
02:07PM government that a crime occurred, I get that he disagrees.
02:07PM But that's not what's important today.

02:07PM What's important today is does he understand how the
02:07PM conflict can impact his representation? And I don't --
02:07PM respectfully, I don't believe that he does, based on his
02:07PM responses.

02:07PM THE COURT: Well, I did not -- you're right when you
02:07PM say that he said what he said. But I did not hear those

02:07PM things to mean what you think they mean.

02:07PM I heard them to mean that he thinks he's being unfairly prosecuted because there was no crime, not that he understand that there -- that -- just because he disagrees with your view of what occurred doesn't mean that he doesn't understand the -- the conflict.

02:08PM You understand the government thinks there was a crime, right?

02:08PM THE DEFENDANT: I do.

02:08PM THE COURT: That's what troubles you, right? You don't think there was any crime.

02:08PM THE DEFENDANT: Very much so.

02:08PM THE COURT: Yeah, okay.

02:08PM THE DEFENDANT: I'm only trying to protect myself.

02:08PM MR. COOPER: Judge, when you asked him to explain in his own words the nature of the conflict, he said I don't have a problem with him continuing to represent me. He didn't explain in his own words the nature of the conflict.

02:08PM And I know the Court followed up on that by going through kind of potential, you know, outcome by outcome how it could impact. But it doesn't sound from Mr. Spitler's comments to the Court a moment ago that he went into this degree of detail, and it doesn't sound from the defendant's responses like he comprehends them. I'm not trying to --

02:08PM THE COURT: We're going to come back to this one

02:08PM after we break today, and I will ask some more questions about it.

02:08PM MR. COOPER: Thank you, Judge.

02:08PM THE COURT: The sixth conflict is if additional unknown facts become available, there's at least some potential that such additional facts could alter the Court's application of the facts of this case to the law.

02:09PM So as I understand it, I think the government is saying that there may be additional facts that come out that may alter this Court's conclusion that Mr. Soehnlein is protected by the safe harbor, is that what you're trying to say?

02:09PM MS. CHALBECK: I think Mr. Tripi is on that.

02:09PM MR. TRIPI: I think we briefed that before Mr. Soehnlein received his letter from the U.S. Attorney, so before he was immunized --

02:09PM THE COURT: Okay.

02:09PM MR. TRIPI: -- from criminal prosecution. However, other investigation remains potentially ongoing. And not into Mr. Soehnlein, but other investigation remains potentially ongoing as to other potential entities, people.

02:09PM And there's a five -- I'm just trying to cover my bases here, there's a five-year statute of limitation. Mr. Soehnlein is not going to be charged ever, but we don't -- there's enough -- there's enough here, and there were enough

people who were within the specter of an investigation that we just don't know what we don't know.

THE COURT: I understand that. But I'm trying wrap my head around how that creates a conflict. I mean, that's true of any attorney's representation of any client. There always could be something that comes up that might create a conflict in the future.

MR. TRIPI: There are some things that Mr. Gerace may know that the government doesn't know, and that will be on him if it comes out later.

THE COURT: Okay. So let me say this.

Mr. Gerace, I found in my decision and order that Mr. Soehnlein's protected by the attorney safe harbor. He can't be guilty of obstruction of justice for putting witnesses on the list. I base that conclusion on the record.

The government has now written to Mr. Soehnlein and has told him he's not going to be charged, so there is no investigation.

But I suppose that there could be facts that come up in the future that you know now that we don't that might create a conflict of interest in Mr. Soehnlein's representation of you; do you understand that? There's a potential of that?

THE DEFENDANT: I do, Your Honor.

THE COURT: Okay. And -- and I don't know what more

02:11PM to ask him. I mean, if some -- if there are facts that come
02:11PM out, is there anything that you know now that you think might
02:11PM create a conflict for Mr. Soehnlein.
02:11PM THE DEFENDANT: No. But I do believe the government
02:11PM knew of conflicts with the judge that I believe that they
02:11PM should have --
02:11PM THE COURT: Okay. We don't want -- I don't want --
02:11PM again, Mr. Gerace.
02:11PM THE DEFENDANT: They're talking --
02:11PM THE COURT: Stop, stop, stop. And I'm doing this to
02:11PM protect you, sir, not because I want to cut you off.
02:11PM THE DEFENDANT: I'm sorry, Your Honor.
02:11PM THE COURT: I'm doing it to protect you.
02:11PM That's okay. I just don't want you saying anything
02:11PM that's going to work to your disadvantage. You've got two
02:12PM lawyers sitting on either side of you --
02:12PM THE DEFENDANT: Okay.
02:12PM THE COURT: -- and I don't want you saying -- you're
02:12PM starting to volunteer things now, and I don't want you to do
02:12PM that because you might say something that works to your
02:12PM disadvantage. And that's not why we're having this hearing,
02:12PM okay?
02:12PM THE DEFENDANT: Okay, Your Honor.
02:12PM THE COURT: Okay. So let me ask you, Mr. Tripi, is
02:12PM there anything more that I can ask him about?

02:12PM MR. TRIPI: No, Judge. I -- I think you've done what I've asked that you do. It's -- if there's something the government unearths later that relates to Mr. Gerace, it's not going to be the government's --

02:12PM THE COURT: Okay. So finally, the government says that there's the possibility of an ethics investigation relating to the events that triggered the government's motion to disqualify Mr. Soehnlein. And again, the government says this is an actual conflict. It's a potential conflict, right? There's no knowledge of any ethics investigation, right?

02:12PM MR. TRIPI: Yeah, I think that's right, Judge, to characterize that as more of a potential conflict, I think that would be accurate.

02:13PM THE COURT: Okay. So there's -- I guess there's a possibility that there's an ethics investigation of Mr. Soehnlein, and that might be a potential conflict. There's no indication that any such investigation has commenced, or that one will ever take place.

02:13PM So, Mr. Gerace, the issue here is that there could be an ethics investigation involving Mr. Soehnlein, and if that happens, then he could be tempted not to represent you as zealously for fear of compromising that investigation of him, your ability to communicate with him freely could be compromised.

02:13PM Are there any other risks that --

02:13PM MR. TRIPI: Judge, just to amplify, I don't think there's any other risks, but to amplify what the Court is saying a little bit, you're a Federal District Court Judge, you know conduct occurred before a different Federal District Court Judge. Judges have an independent ability to make referrals. We have no idea if that will or will not happen, but it's happened in other contexts. And we flag it because, obviously, Judge Sinatra had some strong words at the time, and more information is now known, and so that's a real issue.

02:14PM Separately, there are non-litigating components of the Department of Justice that independently evaluate whether to make referrals. We have no role in that.

02:14PM Under rule 8.4, usually a New York lawyer has an independent obligation to report. When you're a department lawyer, we have no role in that. That's a different entity, Office of Professional Responsibility. They, and they alone, decide whether or not -- they become aware of information, and whether or not to refer it to the New York State Bar. That's as far as I can go with it.

02:14PM I have no role. None of us here have any role in any of that. But we flag -- that's the process, that's the procedure, and we have no idea if, or when, or if it ever will happen.

02:14PM As I further understand it, those types of decisions -- there's not like a statute of limitations

necessarily connected with them, so --

THE COURT: Yep. Okay. So do you understand that, Mr. Gerace? So what Tripi is saying is there could be an ethics investigation of Mr. Soehnlein in connection with the putting the witness names on the list, and that -- that could be triggered not by him or by the folks at the table with him, but by other folks at the Department of Justice, it could be done by another judge perhaps, it could be done by the Office of Professional Responsibility in New York on its own. And if there is such an investigation, that might compromise Mr. Soehnlein's representation of you not in exactly the same way as the criminal investigation might have compromised it, in other words, he doesn't want to curry favor with the government because the government's got really nothing to do with that, but it may color his ability to represent you zealously and freely and have your interests at heart, because there is this other investigation right now, potential investigation, that's pending or possible; do you understand that?

THE DEFENDANT: I do, Your Honor.

THE COURT: Okay. And do you understand how that might limit Mr. Soehnlein's ability to represent you freely, either consciously or subconsciously?

THE DEFENDANT: I do, Your Honor.

THE COURT: Okay. And, Mr. Spitler, have you

02:16PM discussed this with Mr. Gerace?

02:16PM MR. SPITLER: We have. We have discussed it, Judge.

02:16PM THE COURT: Okay.

02:16PM MR. SPITLER: Again, I'm confident that he
02:16PM understands this potential conflict, and that he is ready to
02:16PM waive -- make a knowing and intelligent waiver of that
02:16PM potential conflict.

02:16PM THE COURT: Okay. So what I'd like to do now --

02:16PM MR. PERSONIUS: Your Honor, before you go further,
02:16PM may I make one comment, because this issue has come out?

02:16PM THE COURT: Yes, sir.

02:16PM MR. PERSONIUS: As personal ethics counsel for
02:16PM Mr. Soehnlein, I can say definitively there is no known ethics
02:17PM investigation nor anticipated ethics investigation of
02:17PM Mr. Soehnlein related to this matter or anything else.

02:17PM THE COURT: Thank you. Appreciate that.

02:17PM So, let me just ask you generally, Mr. Gerace, do you
02:17PM understand all the risks that we've discussed if you decide to
02:17PM proceed with Mr. Soehnlein as your attorney?

02:17PM THE DEFENDANT: I do, Your Honor.

02:17PM THE COURT: And do you understand there might be
02:17PM other dangers and other risks that we haven't discussed and
02:17PM that we can't foresee right now if you decide to proceed with
02:17PM Mr. Soehnlein as your attorney?

02:17PM THE DEFENDANT: I do, Your Honor.

02:17PM THE COURT: Okay. And with -- except for the three matters on which I really haven't gotten Mr. Gerace's in his own words explanation of what the conflict is and whether he understands it, as Mr. Cooper has pointed out, are you comfortable that he understands the risks proceeding with Mr. Soehnlein as his attorney with respect to any conflict?

02:18PM MR. COOPER: Judge, the last one that we just covered, the ethics investigation one? I know that the Court discussed and asked Mr. Spitler, and Mr. Spitler indicated that Mr. Gerace was prepared to waive it. But I don't know that he actually waived it.

02:18PM THE COURT: I haven't, and we're going to do that after, because I want to do the last three issues, I want to get Mr. Gerace's explanation to me in his own words of what the conflict is that he waives. And I think the better way to do that is to give him some time to talk to Mr. Spitler about it now, and then go through that with him on each of those three.

02:18PM MR. COOPER: I understand. I didn't realize this was in that category of three. So yes is the answer to the Court's question.

02:18PM THE COURT: Okay. So are you comfortable that I've done, with the exception of those three things, are you comfortable that I've done what I should do in terms of ensuring myself that Mr. Gerace is aware of the conflict, and

02:19PM that he waives the conflict as least so far?

02:19PM MR. COOPER: Yes, Judge.

02:19PM THE COURT: Okay. And, Mr. Soehnlein, are you 02:19PM comfortable that I've done enough?

02:19PM MR. SOEHNLEIN: Yes, Judge.

02:19PM THE COURT: Mr. Spitler, are you comfortable that I 02:19PM did enough?

02:19PM MR. SPITLER: Yes, Your Honor.

02:19PM THE COURT: Okay. So at this time, I'm reasonably 02:19PM satisfied that Mr. Gerace understands the conflict of interest 02:19PM involving Mr. Soehnlein. And now let me go through the 02:19PM options, and then we're going to let you talk to Mr. Spitler.

02:19PM So the question of how you'd like to address the 02:19PM conflict given your Sixth Amendment right to conflict-free 02:19PM counsel has two options:

02:19PM 1. You can decide that Mr. Soehnlein is capable of 02:19PM representing your interests completely and fully, despite the 02:19PM risks that we've discussed. And that would require you to 02:19PM waive your right to have an independent conflict-free lawyer 02:20PM representing you at all times during the trial, representing 02:20PM you in all aspects of this case including sentencing, and 02:20PM waiving any past issues as well. So if there is any conflict 02:20PM with respect to a potential conflict or an actual conflict, 02:20PM you're going to waive it, and say I want him to represent me, 02:20PM I understand the risks, and I want him to represent me.

02:20PM On the other hand, you could decide that you'd feel more comfortable having another lawyer represent you with Mr. Foti at trial. And if you made that decision, I would relieve Mr. Soehnlein of his obligation to represent you going forward, and I'd give you time to find another lawyer, or we'd find -- Mr. Foti would find another lawyer to work with him on this.

02:20PM And we've talked about it in some detail. I know you've already talked with Mr. Spitler about this. I want to make sure that you're able to discuss these conflicts with him again after you've heard me explain the risks. I also want to hear from you in your own words what these conflicts are, and that you're willing to waive them.

02:21PM And then after you discuss this with Mr. Spitler, we're going to have you back up here, get some answers from you, and then adjourn for the day, and then come back in a couple weeks and ask again.

02:21PM So we're going to take a break. And I want to make sure that you understand what I'm going to ask when we come back. So I'm going to ask Mr. Gerace to explain to me what the conflict is with respect to the possibility that Mr. Soehnlein will be called as a witness against him. I'd like him to explain to me what he understands by that conflict, the dangers to him of that conflict, and whether he waives it.

02:22PM Number 2. The -- the -- the -- well, the other facts, I don't know whether he can explain to me what -- whether he understands what a conflict that might result in facts that we don't know.

02:22PM MR. TRIPI: Maybe skip to the potential for the ethics --

02:22PM THE COURT: I think that that's right. So the other question -- so only two issues that I'm going to ask that about. The ethics investigation into -- the potential ethics investigation into Mr. Soehnlein. And Mr. Personius says there is none, but there's always the potential of that. And as Mr. Tripi says, there's no statute of limitations, that can always be a possibility in the future. So I'm going to want Mr. Gerace to tell me what he understands that potential conflict to be, and what the risk and danger to him is as a result of that, and whether he waives it. Okay?

02:23PM And then I also want to know from Mr. Gerace whether he believes that you, Mr. Spitler, as independent Curcio counsel for him, have fully discussed the conflict issues with him, have ensured that he understands those, and have adequately advised him with respect to that.

02:23PM So I'd like you to go through everything with him one more time, but in particular those two issues that I'm going to ask him to explain in his own words, and to explain to me the risks to him in his own words, and his -- whether he

waives it or not. And then we'll get a decision from him. And we'll come back again in a couple weeks after that. Okay?

Anything -- anybody want to express any concern about the way I'm handling this, or give me some ideas about different ways that I can do it?

MR. TRIPI: Not at this time, Judge, but if on the break we confer, we'll let you know if we have any other thoughts.

THE COURT: Great. Terrific.

MR. FOTI: Can I ask for a quick clarification, Judge? Each of the questions listed something that Mr. Gerace and Mr. Spitler are going to review and attempt to provide an answer today, and then in the intervening weeks, there's going to be an opportunity for Mr. Gerace to consult with Mr. Spitler if necessary and return with the expectation that he'll confirm after having some deliberation that -- that all of those answers remain the same; am I understanding that correctly?

THE COURT: I would say everything is correct except the "if necessary." I'm going to want him to talk to Mr. Spitler in the interim. So it's not just let's leave it up to Mr. Gerace to call Mr. Spitler if he's got any questions. I'm going to ask Mr. Spitler to talk to Mr. Gerace in the interim. So everything except "if necessary," yes, spot on.

02:24PM MR. COOPER: Judge, on that topic, is the filing that's ex parte, I know -- I'm not going back on the Court's ruling about the government not getting access to it, but I think today Mr. Gerace indicated that he had never seen it. But I believe now Mr. Spitler has seen it and discussed it with Mr. Gerace.

02:25PM It's the government's position that the defendant should see the affidavit so that he can make a knowing and voluntary decision. I don't know that anybody disagrees with that, but that would be our recommendation for this meeting, and I guess I'm asking the parties to weigh in on that.

02:25PM THE COURT: Yeah, I think that makes sense. I think you should show it to him. I think you should show him the memorandum of law, show him the affidavit, let him read it, and then talk to him about it.

02:25PM MR. SPITLER: I will do that, Judge.

02:25PM THE COURT: Great.

02:25PM MR. TRIPI: Thank you.

02:25PM THE COURT: Anything else we should do before we break?

02:25PM MR. TRIPI: No, thank you, Judge.

02:25PM THE COURT: Okay. Let's come back -- Colleen, what's my calendar?

02:25PM THE CLERK: We have a 3:15.

02:25PM THE COURT: 3:15? So let's come back at --

02:25PM THE CLERK: Oral argument.

02:25PM THE COURT: Oh, yeah, yeah, yeah. Let's come back at 3:45. Okay? 3:45, and we'll wrap up then. Thanks.

02:25PM THE CLERK: All rise.

02:25PM (Off the record at 2:25 p.m.)

03:43PM (Back on the record at 3:43 p.m.)

03:43PM THE CLERK: All rise. We are back on the record for the continuation of the Curcio hearing in case number 19-cr-227, and 23-cr-37, United States of America versus Peter Gerace Jr.

03:43PM All counsel and parties are present.

03:43PM THE COURT: Okay. So what I'd like to do is, as I said, first address the two issues on which I'd like to find that Mr. Gerace understands the nature of the conflict, and that we wants to waive the conflict, the two specific issues that we talked about.

03:43PM So the first is that Mr. Soehnlein is a witness to several overt acts in this case on which he may be required to testify against you in 23-CR-99, or in some other case.

03:44PM Explain to me in your own words that conflict, please, and tell me -- have you had a chance to talk to Mr. Spitler about it?

03:44PM THE DEFENDANT: Yes, Your Honor.

03:44PM THE COURT: Okay. Explain that to me in your own words.

03:44PM THE DEFENDANT: I guess if they wanted to call him as a witness against me, that he wouldn't be able to represent me obviously.

03:44PM THE COURT: Well, he would have to testify against you, right?

03:44PM THE DEFENDANT: Yes.

03:44PM THE COURT: So do you understand how that might compromise his representation of you in this case?

03:44PM THE DEFENDANT: I do, Your Honor.

03:44PM THE COURT: Yeah? Tell me how. What do you think?

03:44PM THE DEFENDANT: Well, maybe, he could say he's not gonna do a good job for me maybe. He doesn't want to do certain things that maybe he should do.

03:44PM THE COURT: Okay. And so do you understand that that might affect his zealous representation of you in this case?

03:44PM THE DEFENDANT: Yes, Your Honor.

03:44PM THE COURT: And you nevertheless want to waive that conflict?

03:44PM THE DEFENDANT: Yes, Your Honor.

03:44PM THE COURT: Okay. Now the other one is that -- that there might be an ethics investigation. Now Mr. Personius has told us that as far as he knows, there isn't any, but there could be one that's going on that he doesn't know about, or there might be one that starts in the future at some point. And do you understand how that might create a conflict for

03:45PM Mr. Soehnlein?

03:45PM THE DEFENDANT: I do, Your Honor.

03:45PM THE COURT: Okay. Explain that to me in your own words.

03:45PM THE DEFENDANT: I believe that if they thought there was something ethical done, that means he could be called a witness, I guess, against me.

03:45PM THE COURT: Well, it wouldn't be an -- it would be an ethical issue with respect to him --

03:45PM THE DEFENDANT: Yes.

03:45PM THE COURT: -- right?

03:45PM THE DEFENDANT: Yes, Your Honor.

03:45PM THE COURT: So if he thinks he's being investigated because some people might think he did something unethical, that might affect his ability to represent you; do you understand that?

03:45PM THE DEFENDANT: I do understand that.

03:45PM THE COURT: So tell me how that might affect his ability to represent you, if he's being investigated for doing something in this case that somebody thought was unethical.

03:46PM THE DEFENDANT: I -- I don't know how to explain it to you. I mean, I got to know Eric very well. I think he's a great lawyer, and I don't think he'd ever do anything unethical, so I'm not even worried about that.

03:46PM THE COURT: Okay. But if somebody was investigating

03:46PM him for something that they thought was unethical in your case, do you understand how that might make him want to pull punches in your case?

03:46PM THE DEFENDANT: I do.

03:46PM THE COURT: And maybe be not as aggressive on your behalf in this case?

03:46PM THE DEFENDANT: I guess so, Your Honor.

03:46PM THE COURT: And even in light of that, do you want to waive any conflict?

03:46PM THE DEFENDANT: Of course, Your Honor, yes.

03:46PM THE COURT: Does the government want to ask any more questions?

03:46PM MS. CHALBECK: Judge, I would like to maybe develop the colloquy as it relates to --

03:46PM THE COURT: Say it again?

03:46PM MS. CHALBECK: Judge, I would like to develop the colloquy as it relates to Mr. Soehnlein's status as a witness a little bit more.

03:46PM I thought I heard Mr. Gerace say that he thought that Mr. Soehnlein's status as a witness could affect Mr. Soehnlein's ability to zealously advocate for him. One of my concerns and the government's concerns is that Mr. Soehnlein's status as a potential witness against him would impede his trust in Mr. Soehnlein, his willingness to confide in Mr. Soehnlein and foster the kind of relationship

03:47PM with him that would enable Mr. Soehnlein to zealously advocate
03:47PM for him. And I don't think that the colloquy really touched
03:47PM on Mr. Gerace's trust.

03:47PM THE COURT: This colloquy didn't, but I think I did
03:47PM that colloquy before we broke. So let me do it again.

03:47PM Do you understand that if Mr. Soehnlein has to
03:47PM testify as a witness against you, if he's compelled to testify
03:47PM as a witness against you, that might make you reluctant to
03:47PM confide in him; do you understand how that might be the case?

03:47PM THE DEFENDANT: Yes, Your Honor.

03:47PM THE COURT: Okay. Would you be reluctant to confide
03:47PM in him if he had to testify as a witness against you?

03:47PM THE DEFENDANT: Absolutely not.

03:47PM MS. CHALBECK: That's good, Your Honor.

03:48PM THE COURT: Anything else that you think I should do
03:48PM on those two?

03:48PM MS. CHALBECK: No, Your Honor.

03:48PM THE COURT: Okay. So let me go back to where we
03:48PM were, and let me just run through the two options now. Okay.

03:48PM Option number 1 is that you could decide that
03:48PM Mr. Soehnlein is capable of representing your interests fully
03:48PM despite the risks that we've discussed in some detail. And
03:48PM that would require you to waive your right to have independent
03:48PM conflict-free counsel representing you at trial, and
03:48PM representing you in every aspect of your case, and waiving any

03:48PM past issues. So if there is some conflict that might
03:48PM compromise his ability to represent you, you're waiving that;
03:48PM do you understand that?

03:48PM THE DEFENDANT: Yes, Your Honor.

03:48PM THE COURT: Okay. And the other option is you could
03:48PM decide that you feel more comfortable having another lawyer
03:48PM representing you along with Mr. Foti at trial, and if you made
03:48PM that decision, I'll relieve Mr. Soehnlein of his obligation to
03:48PM represent you, and I'll give you a chance to get another
03:49PM lawyer.

03:49PM So have you had a chance to discuss all these issues
03:49PM and those two options with Mr. Spitler?

03:49PM THE DEFENDANT: I have, Your Honor.

03:49PM THE COURT: Do you need more time to discuss this
03:49PM with Mr. Spitler?

03:49PM THE DEFENDANT: Absolutely not.

03:49PM THE COURT: Okay. Now you have to decide whether you
03:49PM want to waive the conflicts after you've considered the facts
03:49PM and their impact on Mr. Soehnlein's representation of you.
03:49PM And as I said earlier, you have to understand that the waiver
03:49PM decision is yours to make, not Mr. Soehnlein's, not
03:49PM Mr. Spitler's, not mine.

03:49PM You should waive the conflict only if you want to
03:49PM waive it, not because somebody else wants you to; do you
03:49PM understand that?

03:49PM THE DEFENDANT: Yes, Your Honor.

03:49PM THE COURT: Has anything that I said or anything
03:49PM we've covered on this issue been unclear to you?

03:49PM THE DEFENDANT: No, Your Honor.

03:49PM THE COURT: Are there things that you don't
03:49PM understand that you want to ask me about?

03:49PM THE DEFENDANT: No, Your Honor.

03:49PM THE COURT: Okay. Do you understand your right to
03:49PM conflict-free counsel?

03:50PM THE DEFENDANT: Yes, Your Honor, I do.

03:50PM THE COURT: Okay. And do you understand you're not
03:50PM required to have Mr. Soehnlein as your lawyer?

03:50PM THE DEFENDANT: Yes, I do, Your Honor.

03:50PM THE COURT: Okay. Do you understand that if I permit
03:50PM you to waive this conflict to proceed with Mr. Soehnlein as
03:50PM your lawyer, you may not be permitted to make any argument on
03:50PM any appeal or afterwards in any way based on the conflicts
03:50PM that we've discussed; do you understand that?

03:50PM THE DEFENDANT: Yes, I do, Your Honor.

03:50PM THE COURT: And so if you're convicted, a waiver
03:50PM would mean you're giving up your right to argue that your
03:50PM conviction should be set aside because Mr. Soehnlein had a
03:50PM conflict and didn't represent you properly; do you understand
03:50PM that?

03:50PM THE DEFENDANT: Yes, I do, Your Honor.

03:50PM THE COURT: Okay. Are you -- are you deciding whether to waive your conflict voluntarily and of your own free will? Is that decision being made voluntarily and of your own free will?

03:50PM THE DEFENDANT: Yes, Your Honor.

03:50PM THE COURT: Is anyone threatening you, or promising you something with respect to this decision?

03:50PM THE DEFENDANT: No, Your Honor.

03:50PM THE COURT: You think you've had a reasonable time to make the decision?

03:51PM THE DEFENDANT: Yes, Your Honor.

03:51PM THE COURT: Okay. Do you need more time to think about it?

03:51PM THE DEFENDANT: No, not at all.

03:51PM THE COURT: Mr. Spitler, you spoke to Mr. Gerace about these conflict issues before today, and now during this pretty extensive break that we've just taken?

03:51PM MR. SPITLER: Yes, Your Honor.

03:51PM THE COURT: Did you talk to him about the possible consequences of waiving the past conflict regarding the government's investigation?

03:51PM MR. SPITLER: Yes, Your Honor.

03:51PM THE COURT: Did you talk to him about the impact if any of Mr. Soehnlein's representation as it's already occurred in the pretrial phase of this case while there was an

03:51PM investigation pending.

03:51PM MR. SPITLER: Yes, Your Honor.

03:51PM THE COURT: Have you talked to him about the conflict vis-a-vis Mr. Soehnlein's prior representation of someone who was a witness in this case?

03:51PM MR. SPITLER: Yes, Your Honor.

03:51PM THE COURT: And have you talked to him about the fact that there might be an ethics investigation that might compromise Mr. Soehnlein's representation of him?

03:51PM MR. SPITLER: Yes, Your Honor.

03:51PM THE COURT: How about the fact that Mr. Soehnlein may be called to testify as a witness against him?

03:51PM MR. SPITLER: Yes, Your Honor.

03:51PM THE COURT: Have you talked to him about the fact that there might be other issues that we're not even thinking about now that might arise in the future that might create a conflict?

03:51PM MR. SPITLER: Yes, I have.

03:52PM THE COURT: Okay. And based on these conversations that you've had with Mr. Gerace, do you think that Mr. Gerace is able to knowingly and willfully waive these conflicts if that's what he chooses to do?

03:52PM MR. SPITLER: I do.

03:52PM THE COURT: Okay. Mr. Gerace, do you agree with what Mr. Spitler just said?

03:52PM THE DEFENDANT: I do, Your Honor.

03:52PM THE COURT: Do you want to waive any past conflict 03:52PM relating to Mr. Soehnlein being under investigation, or 03:52PM Mr. Soehnlein having represented a witness in the case, and to 03:52PM keep Mr. Soehnlein as your lawyer in the case?

03:52PM THE DEFENDANT: I do, Your Honor.

03:52PM THE COURT: Do you want to waive the current 03:52PM potential conflicts we've discussed, including the fact that 03:52PM there might be an investigation involving Mr. Soehnlein into 03:52PM ethical issues, that he represented a witness previously in 03:52PM this case, that he was investigated at some time in this case, 03:52PM that he may be called as a witness against you in some other 03:53PM case, do you want to waive all those current potential 03:53PM conflicts we've discussed and keep Mr. Soehnlein as your 03:53PM lawyer?

03:53PM THE DEFENDANT: I do, Your Honor.

03:53PM THE COURT: Okay. Mr. Tripi, Mr. Soehnlein, 03:53PM Mr. Spitler, Mr. Foti, have I complied with the procedures set 03:53PM forth in Curcio as to Mr. Gerace?

03:53PM We're going to do this again not in quite the detail 03:53PM we're doing it now, but we're going to do it again in a couple 03:53PM of weeks. But have I complied with Curcio insofar as I've 03:53PM gone through this today?

03:53PM MR. TRIPI: Yes, Your Honor. But if I could add one 03:53PM thing?

03:53PM Earlier before the break, when you were discussing the lapse in representation, I think the window of time that you utilized was November 21st, 2023 to then May 16th, 2024, and we developed the record on that point.

03:53PM In light of the fact that Mr. Gerace had not reviewed the affidavit and memorandum, and in light of the representations that occurred on September 6th, 2023, that all issues were resolved, now, when viewed through the lens of the fact that Mr. Gerace didn't know what those issues were, I think we need to just --

03:54PM THE COURT: Sure.

03:54PM MR. TRIPI: -- go back to that date.

03:54PM THE COURT: Yep. So let me ask, Mr. Gerace. There were some issues that caused Mr. Soehnlein to withdraw as your you counsel, and then he came back in as your counsel later. Are you satisfied that those issues have been resolved?

03:54PM THE DEFENDANT: Yes, Your Honor.

03:54PM THE COURT: And do you waive any conflict that arose or that might arise in the future as a result of those issues?

03:54PM THE DEFENDANT: Could you repeat the question, please?

03:54PM THE COURT: Sure. So there were some issues that caused Mr. Soehnlein to withdraw. And those issues resulted in him not being your counsel for a while. And so my question to you now is: Do you waive any conflict that might have resulted from the disagreement you had with him that caused

03:55PM you him to withdraw, and any issues that might come up in the future as a result of the same thing?

03:55PM THE DEFENDANT: I -- I waive that, yes, Your Honor.

03:55PM THE COURT: Okay. And, Mr. Tripi, anything more you want me to ask about that.

03:55PM MR. TRIPI: Not at this time, thank you, Judge.

03:55PM THE COURT: Okay. So, Mr. Soehnlein, have I complied with Curcio?

03:55PM MR. SOEHNLEIN: Yes, Your Honor.

03:55PM THE COURT: Mr. Foti?

03:55PM MR. FOTI: Yes.

03:55PM THE COURT: Mr. Spitler?

03:55PM MR. SPITLER: Yes, Your Honor.

03:55PM THE COURT: Okay. So I find that Mr. Gerace is fully competent and aware of the nature of his right to effective counsel, including his right to be represented by counsel that has no conflict of interest.

03:55PM I find that he's been fully informed of the risks of representation by Mr. Soehnlein, that he understands those risks, and that he chooses to continue with Mr. Soehnlein.

03:55PM I also think that he's had a reasonable time to consider this decision, and the opportunity to consult with and did consult with independent counsel on this issue.

03:56PM However, because there were some issues that came up today that resulted in him learning things today that he may

03:56PM not have known in the past, I believe that he's entitled to some additional time to think about those issues and to talk to Mr. Spitler about them, so we will schedule a date -- maybe two weeks from today. That's the Fourth of July?

03:56PM THE CLERK: Yep, that's the Fourth of July.

03:56PM THE COURT: I tried that before today, didn't I, and it didn't work then either.

03:56PM THE CLERK: Correct.

03:56PM THE COURT: The following week?

03:56PM THE CLERK: Yes, Judge. I'm looking at the week of July 8th. The Court is available at 12:30 on Tuesday, July 9th. Does that work for your schedules?

03:56PM MR. TRIPI: Yes.

03:56PM MR. SPITLER: Tuesday the 9th at 12:30?

03:56PM THE CLERK: Correct.

03:56PM MR. SPITLER: That would work for me.

03:56PM THE COURT: Work for the government?

03:56PM MR. TRIPI: Yes.

03:56PM THE COURT: Okay. So I find that at this point Mr. Gerace has waived his right to conflict-free counsel, and that he's done so knowingly, voluntarily, and intelligently.

03:57PM And if, when we meet again in a few weeks, I find that he has not changed his mind, that he still wants to adhere to that decision, I will then exercise my discretion to accept his waiver, because I don't think that the waiver runs

03:57PM afoul of my independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession, and that the legal proceedings appear fair to all who observe them.

03:57PM I think that it's important that Mr. Gerace retain his Sixth Amendment right to counsel of his choice, but I do want to make sure that he's made a knowing and intelligent decision. So in an abundance of caution, we're going to put this off for a few weeks, come back, and make sure nothing's changed.

03:57PM So in those few weeks, Mr. Spitler, I want you to meet with him at least once and talk with him about it. And then maybe even when you come back on the day that we're coming back, maybe make some time to talk to him before the Court proceedings that day as well. Okay?

03:58PM MR. SPITLER: I will do that, Your Honor.

03:58PM THE COURT: Terrific.

03:58PM MR. SPITLER: May I request on an expedited basis a transcript of today's proceedings so that I have it when I meet with Mr. Gerace?

03:58PM THE COURT: Yeah. Ann, can you do that for him?

03:58PM THE COURT REPORTER: Yes, Judge.

03:58PM MR. SPITLER: Thank you.

03:58PM THE COURT: Yes. That's granted. And provide it to the government as well, of course.

03:58PM Anything else from the government?

03:58PM MR. TRIPI: No, we're good. Thank you, Judge.

03:58PM THE COURT: Anything else, Mr. Spitler?

03:58PM MR. SPITLER: No, thank you, Judge.

03:58PM THE COURT: Anything, Mr. Foti?

03:58PM MR. FOTI: Yes, Judge.

03:58PM THE COURT: Okay.

03:58PM MR. FOTI: When we were here last time, we set a 03:58PM schedule for a number of submissions that included submissions 03:58PM related to the motion that the defense had made for disclosure 03:58PM of the crime fraud applications. The government moved for an 03:58PM extension of that, and for understandable reasons, you didn't 03:58PM have any objection to it. That's been pushed back. However, 03:59PM we still have a deadline currently set for Monday for the 03:59PM reply on the motion to dismiss that we filed.

03:59PM In drafting that, we've discussed the fact that the 03:59PM government's response potentially factors into a number of 03:59PM issues that we may want to address in the reply. We don't 03:59PM have an argument date scheduled at this point, and I think we 03:59PM weren't really ultimately get to this issue until after we 03:59PM conclude these proceedings. I don't think it would effect 03:59PM anything if there were to be an extension, and so that would 03:59PM be our request. I would like to put it out at least until we 03:59PM have an opportunity to know whether the government is in a 03:59PM position to disclose those applications, or whether that's --

03:59PM THE COURT: When's the government's due date for that?

03:59PM MR. COOPER: Tuesday, June 25.

03:59PM MR. FOTI: The 25th. And I think our reply date is July 1st. But the way we left it last time, the government, after speaking to Mr. Rzeznik, was open to different possibilities of what their position would be at this point.

04:00PM THE COURT: Okay. So do you have any objection to my extending their time to reply from this Monday until after July -- or, June 25th?

04:00PM MR. TRIPI: Maybe I just didn't understand a part what was Mr. Foti said, so I apologize. Did he say after seeking to Mr. Rzeznik as it relates to our motion to dismiss? I don't view those things as connected. I'm unaware of a conversation that Mr. Foti had with Mr. Rzeznik.

04:00PM MR. FOTI: So, we haven't had a conversation with Mr. Rzeznik. When the government moved to extend the time to respond to the crime fraud application, in their submission to the Court they indicated part of the reason they needed the extension is Mr. Rzeznik is on trial currently.

04:00PM MR. TRIPI: I misunderstood what he said.

04:00PM MR. FOTI: So my understanding was they were going to engage in communications with Mr. Rzeznik, and depending on the result of that communication, they were going make a decision that could impact certain items.

04:00PM THE COURT: So what you're asking is for me to extend

04:00PM your time from Monday to file whatever reply you were supposed
04:01PM to reply on Monday until after June 25.
04:01PM MR. FOTI: Yes.
04:01PM MR. TRIPI: That's fine.
04:01PM THE COURT: Great. So what's the Monday after
04:01PM June 25th?
04:01PM THE CLERK: July 1st.
04:01PM THE COURT: You've got until July 1st.
04:01PM MR. FOTI: That's fine. Thank you, Judge.
04:01PM THE COURT: Okay. Anything else, Mr. Foti?
04:01PM MR. FOTI: I have nothing further.
04:01PM THE COURT: Anything more, Mr. Soehnlein?
04:01PM MR. SOEHNLEIN: No, thank you, Your Honor.
04:01PM THE COURT: Anything more, Mr. Personius?
04:01PM MR. PERSONIUS: This is the most thorough Curcio
04:01PM hearing I've been through, Judge. It was well done. Thank
04:01PM you.
04:01PM THE COURT: You know, that's not going to get you any
04:01PM brownie points with me, you understand that, right?
04:01PM MR. PERSONIUS: I'll take it back.
04:01PM THE COURT: Okay, thank you. I appreciate the
04:01PM comment, but thank you. Thanks, everybody, have a good
04:01PM weekend.
04:01PM (Proceedings concluded at 4:01 p.m.)

* * * * *

**CERTIFICATE OF REPORTER**

In accordance with 28, U.S.C., 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Western District of New York on June 21, 2024.

s/ Ann M. Sawyer
Ann M. Sawyer, FCRR, RPR, CRR
Official Court Reporter
U.S.D.C., W.D.N.Y.