IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.                                                                 19-CR-227-JLS

JOSEPH BONGIOVANNI,

      Defendant.
_____

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT BONGIOVANNI'S MOTION IN MODIFY CONDITIONS OF RELEASE PENDING SENTENCING.

The UNITED STATES OF AMERICA, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, of counsel, hereby files the government's response in opposition to the defendant's motion to modify the conditions of his release pending sentencing (ECF No. 1006).

### I.    Factual Background

Mr. Bongiovanni was convicted of two federal offenses following a lengthy trial that offered extensive, compelling evidence of his corruption and ties to Italian Organized Crime. His second trial is scheduled to commence in approximately one month, on July 28, 2024. Nevertheless, the principal constraints on Mr. Bongiovanni's liberty are a curfew from approximately 7:00 p.m. through 7:00 a.m., and an ankle monitor that enables the U.S. Probation Office to monitor his movement with GPS precision.

Now, Mr. Bongiovanni asks this Court to relieve him from having to wear the ankle bracelet as he awaits sentencing. *See* ECF No. 1006 at 5. Due to its tightness, the monitor appears to cause skin abrasions and swelling. *Id*. Mr. Bongiovanni further claims that the "ankle monitor does not permit wearing" the medically-recommended compression socks designed to reduce his swelling. *Id.*

As an alternative to the ankle monitor, Mr. Bongiovanni asks this Court place him on a SmartLink monitoring system. SmartLink is smartphone application that enables probation to monitor the location of a defendant's cellphone. Specifically, SmartLink prompts a defendant to submit a photo of themselves and their location via the application, thereby ensuring that the defendant is where his phone is. However, as other courts have recognized, SmartLink does not enable the U.S. Probation Office to "monitor the defendant's location in real time." *United States v. Fomukong*, No. 17-CR-00661-PWG-1, 2020 WL 3073321, at *5 (D. Md. June 10, 2020). Rather, through SmartLink, Probation can determine the defendant's location on a "periodic basis"—essentially, however often Probation chooses to initiate a SmartLink check-in. Moreover, Probation would only use the SmartLink system to confirm that Mr. Bongiovanni is complying with his curfew. It expressly would not use SmartLink to monitor Mr. Bongiovanni whereabouts during the day.

Finally, the Court should be advised that the government is investigating acts of suspected retaliation against at least one witness who testified against Mr. Bongiovanni in his first trial—*viz.*, harassment in response to testimony. Considering Mr. Bongiovanni's conduct toward government witness Anthony Casullo (in the courthouse), relaxing the conditions of

2

Mr. Bongiovanni's pre-trial release would be imprudent during the pendency of this investigation.

## II. Legal Framework

When a defendant is awaiting the imposition of a federal sentence, the burden rests with him to establish by "clear and convincing evidence that [he] . . . is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1). In that regard, § 3143(a)(1) "requires courts to apply a presumption of detention." *United States v. Chansley*, No. 21-CR-3 (RCL), 2021 WL 4133655, at *4 (D.D.C. Sept. 10, 2021). Furthermore, as part of the "safety" analysis, courts have often considered a defendant's risk of obstructing the judicial process. *See, e.g.*, *United States v. Rankin*, 289 F. Supp. 3d 846, 848 (S.D. Ohio 2017) (explaining that defendant did not satisfy § 3143(a)(1) factors where, in part, he exhibited "disregard for the judicial system" and was held in contempt for obstructing a foreclosure sale).

## III. ANALYSIS

As his second trial approaches, Mr. Bongiovanni's incentive to improperly influence witness testimony grows by the day. Indeed, Mr. Bongiovanni is already facing a term of imprisonment under the U.S. Sentencing Guidelines, and his second trial could guarantee a mandatory term of imprisonment. Considering Mr. Bongiovanni's past efforts to intimidate government witness Anthony Casullo and the current investigation into a suspected act of witness retaliation, this Court should not remove the ankle bracelet that deters Mr. Bongiovanni from tampering with, or retaliating against, witnesses.

On this score, the ankle bracelet is an effective deterrent in ways that the SmartLink system is not. Specifically, because its GPS system provides a record of an individual's location, the ankle monitor can disabuse defendants from engaging in more overt acts of witness tampering and retaliation, like travelling to a witness's home, neighborhood, or places of known association. Compared to electronic forms of outreach—telephone calls, social media messaging, and the like—in-person acts of tampering can be harder to trace, harder to prove, and harder to protect against. In that respect, the GPS monitoring system serves to reduce the risk that a defendant will threaten the judicial process by retaliating against or tampering with witnesses—an especially important concern in this case as the defendant's second trial approaches.

The SmartLink system cannot replicate this deterrent effect. Probation uses SmartLink to ensure that the defendant is home during the hours of his curfew, not as a real-time location monitoring system. For that reason, SmartLink does not provide Probation with an accounting of a defendant's location during the daytime hours. The upshot, at least for those defendants seeking to intimidate witnesses, is that SmartLink deprives law enforcement of important, real-time location information that can place perpetrators at the scene of a crime. Because the ankle monitor provides that very information, it functions as a powerful deterrent against the kinds of tampering and retaliation that the government is especially concerned about here.

Given the ankle monitor's superior monitoring abilities, it is incumbent upon Mr. Bongiovanni to articulate an adequate basis to abandon it in favor of the SmartLink system. But, on the current record, that is not a burden Mr. Bongiovanni carries. In conversations with U.S. Probation Officer Michael Macaluso, the undersigned learned that Probation rejects the suggestion that the ankle monitor is fastened too tightly, such that it would restrict blood flow or cause swelling. And, to the extent that the monitor previously rubbed against his skin, Mr. Bongiovanni's motion does not explain whether his use of the prescribed ointment has abated any attendant redness.

Regardless of the monitor's medical impact, as the second trial approaches—and as the government investigates potential witness retaliation—this Court should not relax the conditions of Mr. Bongiovanni's pre-sentence release. Mr. Bongiovanni enjoys substantial liberties, notwithstanding the powerful incentive he has to flee, the connections he has to resource-rich associates of organized crime, and the disdain he has displayed toward one of the chief witnesses against him. Removing the primary deterrent of future acts of misconduct on the eve of trial would increase the risk of either flight or tampering by an impermissible degree. Though this Court should not accept that risk, it should counter-balance any removal of the ankle bracelet with stricter conditions of pre-sentence release.

## **CONCLUSION**

The government respectfully requests the Court deny the defendant's motion to modify the conditions of his pre-sentence release (ECF No. 1006).

DATED: Buffalo, New York, June 24, 2024

                              TRINI E. ROSS
                              United States Attorney

BY:   s/JOSEPH M. TRIPI
        s/NICHOLAS T. COOPER
        s/CASEY L. CHALBECK
        Assistant United States Attorneys
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202