UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- vs. -

Case No. 19-CR-227-LJV

JOSEPH BONGIOVANNI,

*Defendant*.

### DEFENDANT JOSEPH BONGIOVANNI'S
### REPLY IN FURTHER SUPPORT
### OF MOTION TO MODIFY CONDITION OF RELEASE

Defendant Joseph Bongiovanni hereby files this reply to address the government's

opposition to modifying the conditions of release to the Smart Link monitoring system.

First, the government opposes this modification on the basis that 1) the government

believes that Mr. Bongiovanni may have engaged in witness tampering at Trial #1 (SA Tony

Casullo) and it is investigating this possibility and 2) Mr. Bongiovanni's "incentive to

improperly influence witness testimony" prior to Trial #2 "grows by the day." Regarding the

first reason, 18 U.S.C. § 1512 punishes acts and attempted acts of witness tampering. The statute

requires a defendant to "kill or attempt to kill" or use or attempt to use "physical force or the

threat of physical force" against a witness to tamper with testimony. Even assuming the truth of

the government's allegation that Mr. Bongiovanni, during a break, passed by SA Casullo, and

stated "is this your security?" – something the defense denies – such conduct does not meet the

elements of witnesses tampering. Regarding Mr. Bongiovanni's purportedly "greater incentive"

to engage in witness tampering prior to Trial #2, this conclusory assertion has no evidentiary

support. If anything, Mr. Bongiovanni's incentive has *decreased* because Trial #1 showed him

that the government was unable to prove the most significant charges in this case beyond a

reasonable doubt.  And there is no evidence to support the premise that anything has changed since April 2024.  So, Mr. Bongiovanni's incentive to tamper with witnesses is either the same or less than it was before Trial #1.  Finally, the factual record demonstrates that Mr. Bongiovanni did not engage in witness tampering before Trial #1; instead, he abided by all of his conditions of release, so any "deterrent effect" gained by the use of GPS monitoring today is insignificant.  Consequently, these arguments are unconvincing.

Second, notwithstanding USPO Macaluso's assertion that the GPS monitor is not fastened too tightly so that it can cause swelling and irritation, this assertion is belied by the photographic evidence in Mr. Bongiovanni's motion.  Mr. Bongiovanni does not fault USPO Macaluso for this.  Nothing he did aggravated the situation or the injury.  What has caused this injury is the monitor itself.  And despite USPO Macaluso's best efforts (which should be commended), nothing that USPO Macaluso has done (or can do) will make the injury less or cause it to go away.  The only thing that will prevent this injury is removal of the bracelet.

Third, notwithstanding a doctor prescribing ointment, the facts prove that this treatment does little to prevent or cure the injury.  Since the defense filed its motion, the injury has *gotten worse* not better, even after ointment was applied per the doctor's orders.  For example, on June 24, 2024, the defense obtained photographs of Mr. Bongiovanni's injured ankle.  His ankle is bloody, with blood appearing on his sock.  Even with ointment smeared all over the monitor strap, the abrasion has not abated, but has worsened since June 13, 2024:



On June 26, 2024, the defense obtained a new photograph of the injury:



Once again, the injury has not improved; instead, the abrasion is larger, more pronounced, and redder than on June 13, 2024 or June 24, 2024.

Fourth, the government's argument that the monitor should remain because

Mr. Bongiovanni's has "a powerful incentive . . . to flee" based on "the connections he has to

resource-rich associates of organized crime" is a retread of an argument this Court consistently

has rejected.  Back in April 2024, this Court rejected the same argument finding that

Mr. Bongiovanni's track-record on supervision and his perfect attendance in court refutes this

assertion.  And as for Mr. Bongiovanni's purported connection to "resource-rich" IOC members

who can fund his flight, the trial evidence established no such thing.  The only arguable

connection to an IOC member the government may have established at trial was to self-

proclaimed IOC member Michael Masecchia, a person who currently is incarcerated and poor.

Any other purported "associates" beyond Masecchia have no connections to IOC and are poor

(Lou Selva and Ron Serio), incarcerated (Peter Gerace), are cooperating against

Mr. Bongiovanni, or are dead.  Such evidence makes this argument thoroughly unconvincing.

Dated: June 27, 2024
      Kenmore, New York          Respectfully submitted,

                        s/Parker R. MacKay
                        **The Law Office of Parker R. MacKay**
                         By: PARKER R. MacKAY, ESQ.
                         3110 Delaware Avenue
                         Kenmore, NY 14217
                         Ph: (716) 803-8166
                         Em: Parker@MacKayLawOffice.com

                        s/Robert C. Singer

                        Robert C. Singer, Esq.
                        80 East Spring Street
                        Williamsville, New York 14221
                        (716) 222-3288
                        rob@singerlegalpllc.com

                        *Attorneys for Joseph Bongiovanni*