IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.                                                                                                 19-CR-227-LJV

JOSEPH BONGIOVANNI,

           Defendant.
_____

### GOVERNMENT'S RESPONSE TO DEFENDANT BONGIOVANNI'S MOTIONS IN LIMINE

The defendant, JOSEPH BONGIOVANNI, through his attorneys, filed motions in limine. ECF No. 1025. The UNITED STATES OF AMERICA, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, of counsel, hereby files the government's opposition to the defendant's motions.

    **I.**    **Threshold Matter**

The Court should deny each of the defendant's motions in limine under a standard application of the Federal Rules of Evidence. However, as a threshold matter, the Court should consider two foundational principles to deny six of the seven motions. First, the law of the case doctrine warrants denial of the defendant's motions regarding (1) Judge Michalski, (2) Matthew Albert, (3) Joseph Bella, and (4) the admissibility of law enforcement witnesses' understandings of individuals' reputations for being associated with Italian Organized Crime ("IOC"). The law of the case doctrine is implicated when a court is asked to "reconsider[] its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court."

*United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).  The doctrine encourages "that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."  *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991).  The prior decision should only be upended if "cogent" and "compelling" reasons dictate such a result.  *See United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000).

The Court has previously overruled the defendant's objections to (1) the relevance of testimony about Judge Michalski, *see* Katrina Nigro Tr. Transcript 13:3–9, (2) the relevance of Matthew Albert engaging in an act of prostitution with a dancer from Pharaoh's Gentlemen's Club ("PGC"), *see* Matthew Albert Tr. Transcript 22:2–26:9, (3) the relevance of evidence regarding Joseph Bella and the defendant's interactions with other law enforcement agents regarding Bella, *see* Final Pretrial Conference Tr. (Feb. 1, 2024) 101:23–102:13, 105:15–112:2, 116:6–14, and (4) the admissibility of witnesses' understandings about certain individuals' reputation for being a part of or associated with IOC, *see* ECF No. 656; Final Pretrial Conference Tr. (Feb. 1, 2024) 35:16–36:15.  The defendant has offered no cogent or compelling reason in any of those motions to disturb the Court's prior rulings.  Rather, the defendant merely reiterates arguments he has previously raised.  The Court should maintain consistency in its decisions and deny the four aforementioned motions under the law of the case doctrine.

Second, the defendant's motions concerning (1) John McDonald and (2) Jeffrey Anzalone should be denied because they do not identify any specific piece of evidence the defendant seeks to exclude.  Rather, the defendant's motions vaguely request, without any

2

analysis or authority in support, that the Court set "reasonable boundaries" on the testimony of those witnesses. *See* ECF No. 1025 at 5–6. Courts within this district and in Circuit courts around the country have considered a defendant to have waived arguments when the defendant fails to meaningfully engage in any analysis directed toward a specific request for relief. *See e.g.*, *United States v. Figueroa*, No. 18-CR-6094-FPG, 2020 WL 3481454, at *2 (W.D.N.Y. Jun. 26, 2020) ("A court may reject as waived any argument that is conclusory, boilerplate, undeveloped and bereft of any supporting case authority . . . Defendant had ample opportunity to develop arguments challenging the wiretap evidence, but he stands by his generalized, conclusory arguments that are unsupported by citation to record evidence or legal authority." (quotation marks omitted)); *United States v. Rivera-Figueroa*, No. 17CR00183LJVJJM, 2018 WL 7291428, at *9 (W.D.N.Y. Aug. 21, 2018), *adopted by* 2019 WL 244490 (W.D.N.Y. Jan. 17, 2019) (same); *see also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mind readers. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace."); *United States v. Fuentes*, No. 9–cr–00143–RJA–JJM, 2012 WL 4754736, at *3 (W.D.N.Y. Apr. 25, 2012) *adopted by* 2012 WL 4754744 (W.D.N.Y. Oct. 4, 2012) ("[The defendant's] arguments are . . . largely conclusory, boilerplate, undeveloped and bereft of any supporting case authority. To the extent his arguments are raised in such a fashion, I consider them waived, and recommend the denial of this aspect of defendant['s] . . . motion on this basis"). This Court should not venture to guess what kind of relief the defendant seeks. By failing to identify specific evidence he wants excluded and failing to engage meaningfully in application of fact to law in furtherance of seeking specific relief, the defendant has waived his right to a decision by this Court on those motions. *See Murthy v. Missouri*, --- S.Ct. ----, 2024 WL

3

3165801, at *12 n. 7 (2024) ("[J]udges are not like pigs, hunting for truffles buried [in the record.]" (second alteration original and quoting *Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010))). Those motions should be denied.

## II.  Argument

Even if the Court chooses to reach the merits of the defendant's motions, each motion should be denied.

### A.  Judge Michalski

The defendant's reiteration of his argument about the relevance of evidence regarding Judge John Michalski falls flat. As alleged in Count 2 of the Superseding Indictment, the defendant and Peter Gerace conspired to commit bribery and to defraud the United States. ECF No. 89, Count 2. As part of that conspiracy, the government alleges that Gerace maintained PGC, in part, for allowing himself and his friends to engage in illegal activity, including prostitution and sex trafficking. *Id*. at ¶ 36. Part of the evidence of this illegal activity included evidence that Gerace arranged for PGC dancers to go to PGC's upstairs area with Michalski. *See* Katrina Nigro Tr. Transcript 35:5–10. The evidence of Michalski's involvement in this part of the illegal scheme is directly probative of why Gerace bribed the defendant for protection—because Gerace was committing and facilitating illegal acts inside PGC with other co-conspirators. That the defendant may not have known that Michalski went upstairs inside PGC does not vitiate the relevance of that fact. *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008) (holding that the government is not required to "show that the defendant knew all the details of the conspiracy.").

4

Similarly, Michalski's performance of Gerace's marriage to Katrina Nigro on Joseph Todaro Sr.'s birthday is probative of Gerace's reputation for being associated with IOC and corroborative of other aspects of Nigro's testimony about Gerace's affiliation with IOC. The Court has repeatedly rejected the defendant's arguments that evidence about IOC is irrelevant or unfairly prejudicial. *See* ECF No. 656. The government urges the Court to do the same, here.

### B. Matthew Albert

The Court should, as it did in the first trial, reject the defendant's relevance argument about Matthew Albert engaging in a commercial sex act with a PGC dancer. Nigro testified that while at PGC, Gerace arranged for Albert to be set up with a PGC dancer who later engaged in a commercial sex act with Albert offsite. *See* Katrina Nigro Tr. Transcript 40:1–9. Albert largely corroborated Nigro's story—namely that Gerace arranged the set up between Albert and the PGC dancer while at PGC. *See* Matthew Albert Tr. Transcript 26:12–28:23. Albert then engaged in a commercial sex act with the PGC dancer at an offsite location. *See id*. In overruling the defendant's objection to the introduction of this evidence during the first trial, the Court rightly noted that what made this event relevant to the charged conspiracy in Count 2 was that Gerace facilitated the set up at PGC. *See id*. at 22:2–26:9. The defendant has raised no alternative grounds for exclusion of this evidence. Thus, the government's relevance argument remains the same as it was in the first trial. Nigro's and Albert's testimony about this event tends to support the inference that Gerace used PGC to facilitate prostitution. It is inapposite that the commercial sex act occurred offsite. What is

5

relevant is that Gerace (1) facilitated the sex act between a PGC dancer and Albert (2) inside PGC by setting up Albert and the PGC dancer. The defendant's motion should be denied.

      C.      Joseph Bella

The Court should deny the defendant's motion to exclude evidence about Joseph Bella. The defendant reiterates arguments he has previously raised that any evidence about Joseph Bella is irrelevant under Federal Rules of Evidence 401 and 402 and unfairly prejudicial under Rule 403. ECF No. 1025 at 2–4. The defendant's relevance and prejudice arguments are meritless. An overt act in Count 1 of the Second Superseding Indictment directly implicates the defendant's attempts to defraud the DEA by attempting to dissuade fellow law enforcement officers from investigating Bella. *See* ECF No. 89, Count 1 ¶ 52.

To understand why the defendant took this action and how this action was in furtherance of a conspiracy to defraud, the government must present evidence about two things. First, the government must present evidence of Bella's suspected drug use and distribution along with Bella's purported connections to organized crime. If Bella was not suspected of being involved with illegal drugs or organized crime, then his name would have not been brought up by Thomas Mozg in an investigatory meeting involving the defendant and other members of law enforcement. Second, the government must present evidence of the defendant's association with Bella, including that the defendant and Bella went to bars together and that both were connected to Robert Missana and others in the Buffalo area. As the Court heard during the first trial, Nancy Standish testified that Bella took actions in front of the defendant that were consistent with someone who was using drugs, specifically cocaine.

6

Nancy Standish Tr. Transcript 20:7–21:14.  The government will argue during trial that the defendant, as an experienced drug investigator, was circumstantially aware, or at least suspicious, of Bella's involvement with illegal drugs.  Thus, to protect his friend and associate, it was necessary for the defendant to intervene when Mozg identified Bella as a potential target of a drug-related investigation.  In other words, without evidence establishing Bella's wrongdoing and the defendant's association with him, the jury will not understand why the defendant might want to or need to protect Bella from investigation.

The defendant wrongly asserts that since Bella was not linked by witnesses to Ron Serio's drug trafficking organization that evidence about the defendant's efforts to dissuade law enforcement from investigating Bella is irrelevant and unfairly prejudicial.  *See* ECF No. 1025 at 4.  But this ignores that along with conspiring to commit bribery, the defendant is charged with conspiring to obstruct and interfere with the lawful functions of the DEA.  As alleged in the Indictment, those lawful functions include:

> the right to have its business and its affairs, and the transaction of the official business of the DEA conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment and obstruction; and

> the right to the conscientious, loyal, faithful, disinterested and unbiased services, decisions, actions and performance of his duties by the defendant, JOSEPH BONGIOVANNI, in his official capacity as a DEA SA free from corruption, partiality, improper influence, bias, dishonesty and fraud in dealing with the DEA and other law enforcement agencies[.]

ECF No. 89, Count 1.  Conspiring to interfere with the DEA's right to honest and impartial business and its right to the unbiased services of its agents can be accomplished by a corrupt agent irrespective of whether the agent was bribed.  In other words, part of the government's

7

theory is that instead of performing his duties as a DEA Special Agent, the defendant conspired to protect his friends and associates, including Bella, from investigation. Such a conspiracy to obstruct and interfere with the DEA's functions does not hinge on whether Bella was a part of the organization that paid the defendant bribes. Evidence about Joseph Bella is relevant, and any unfair prejudice or risk of confusion does not substantially outweigh the probative value of the evidence.[1] The Court should deny the defendant's motion.

### D. Robert Missana

The Court should also deny the defendant's motion to exclude evidence about Robert Missana. Evidence concerning Missana is relevant for two reasons. First, as the defendant admits, Louis Selva testified that the defendant, while he was a sworn DEA Special Agent, observed Missana sell cocaine to a patron at Mother's Bar. *See* Louis Selva Tr. Transcript (Day 1) 130:2–19. Selva acknowledged that both he and the defendant had been friends with Missana since childhood. *See id*. at 129:5–12. As the Court is well-aware, Count 1 charges the defendant with conspiring to defraud the United States, in part, to protect his friends from law enforcement scrutiny. *See* ECF No 89, Count 1. Proof that the defendant failed to take steps as a DEA Special Agent to arrest or investigate Missana when the defendant personally observed him distribute cocaine is evidence of the defendant's actions and intent to defraud the DEA. Second, evidence about Missana is relevant because Missana was part of the impetus for Mozg's meeting with Casullo and the defendant in August 2016 in which the

---

[1] The defendant also refers to the fact that Mozg and DEA Special Agent Anthony Casullo had different reactions to the defendant's behavior during the meeting in which Bella was discussed. *See* ECF No. 1025 at 3. This argument has no bearing whatsoever on whether the evidence regarding Bella is relevant. The jury should be free to weigh the different reactions of each witness with whatever credit it chooses to apportion to each.

8

defendant attempted to dissuade Mozg from investigating Bella. Specifically, Mozg testified that after identifying Missana's phone number in Bella's phone, he ran Missana's number through a deconfliction database. Thomas Mozg Tr. Transcript 46:3–50:4. When he did so, he saw that Missana was associated with a DEA case file attributed to Casullo. *See id*. As a result, Mozg arranged a meeting with Casullo to discuss Missana, Bella, and others who were listed as contacts in Bella's phone. *See id*. This meeting, as described above, was when the defendant made attempts to dissuade Mozg from continuing to investigate Bella. *See id*. Because Missana was the impetus for the meeting to take place in the first place, it is important for the jury to understand the context of who he is. Without that context, Casullo's presence at the meeting would not make logical sense. The evidence regarding Missana is plainly relevant. The Court should deny the defendant's motion.

### E. John McDonald

The Court should deny the defendant's motion regarding John McDonald because the motion does not identify any specific request for relief. As such, the government is unable to meaningfully respond to the defendant's motion. McDonald provided relevant evidence about Michael Sinatra's drug use, distribution, and growing operation. *See, e.g.*, John McDonald Tr. Transcript 7:23–8:14, 11:1–12. He provided relevant evidence about drug and currency evidence that could have been recovered from Sinatra's house if the defendant had made any effort to investigate him. *See id*. at 16:10–25:11. Both of these pieces of evidence are relevant, in part, because the government alleges that the defendant later lied about his relationship with Sinatra. *See* ECF No. 89, Count 15. McDonald also provided evidence about prolific and notorious drug use and distribution at PGC. *See id*. at 36:10–38:13. In

9

summary, McDonald's testimony was highly relevant. If the defendant wants to preclude certain parts of that testimony, he should specifically identify those parts in a motion or make objections during trial. He has not done so in his motion, here, and he did not do so during the first trial. Instead, the defendant invites this Court to do his work for him. *But see United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[I]n both civil and criminal cases . . . , [federal courts] rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008))). The Court should deny the defendant's motion.

### F.     Jeffrey Anzalone

Similarly, the Court should deny the defendant's motion regarding Jeff Anzalone because the motion does not identify any specific request for relief. As such, the government is unable to meaningfully respond to the defendant's motion. In the defendant's motion, he admits that Anzalone provided relevant evidence. ECF No. 1025 at 6 ("(1) he patronized PGC and obtained drugs there, and (2) he had limited drug dealings with Anthony Gerace, including witnessing what appeared to be a larger transaction on one occasion."). The defendant does not identify a single piece of Anzalone's testimony that he thinks will be irrelevant in the retrial. He does not even identify a broad category of evidence that he thinks will be irrelevant. As such, the defendant has left the Court—and the government—to attempt to guess what kind of relief he seeks. If the defendant wants evidence excluded, he should identify that evidence specifically in a motion or make objections during trial. By failing to do so in his present motion, the defendant has left the Court unable to meaningfully consider his motion. The Court should deny it.

G. <u>Evidence about IOC Reputation</u>

Finally, the Court should deny the defendant's motion to preclude law enforcement witnesses from testifying about their understanding of certain individuals' reputation for being associated with IOC. The defendant incorrectly asserts that this type of testimony is hearsay. ECF No. 1025 at 6–8. While the government maintains that the Court has already broadly ruled that this type of testimony is admissible, *see* ECF No. 656; Final Pretrial Conference Tr. (Feb. 1, 2024) 35:16–36:15, the defendant's arguments to the contrary in his present motion remain meritless.

Generally, out of court statements offered to prove the truth of the matter asserted are inadmissible hearsay. Fed. R. Evid. 801, 802. A statement that is offered to show its effect on the listener, rather than to prove the truth of its contents, is not hearsay. *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). Similarly, a statement offered to show that a defendant was on notice to a particular fact is not hearsay. *United States v. George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990). And a statement offered to establish a declarant's state of mind is also not hearsay. *Smith v. Duncan*, 411 F.3d 340, 346 (2d Cir. 2005); *United States v. Bellomo*, 176 F.3d 580, 587 (2d Cir. 1999).

Even statements that are offered to prove the truth of the matter asserted are admissible hearsay if an enumerated exception to the hearsay rule applies. Fed. R. Evid. 803. One such exception applies when the statement relates to "[a] reputation among a person's associates or in the community concerning the person's character." Fed. R. Evid. 803(21). "Reputation evidence by its very nature "'must be based on hearsay.'" *United States v. Romanello*, No. 22-

11

CR-194(EK), 2023 WL 8435993, at *1 (E.D.N.Y. Dec. 4, 2023) (quoting *United States v. Zhong*, 26 F.4th 536, 554 (2d Cir. 2022)).

While the defendant's motion is generally vague about what he seeks to exclude, the three examples of allegedly inadmissible hearsay he identifies are not hearsay and fall within Rule 803(21)'s exception. For example, the defendant contends that Thomas Mozg's testimony about Frank BiFulco's reputation within the law enforcement community as a member of IOC is hearsay. ECF No. 1025 at 8. This testimony about BiFulco falls squarely within Rule 803(21)'s ambit and is admissible for its truth. *See* Thomas Mozg Tr. Transcript 29:13–21. Specifically, Mozg testified that in his fifteen years in law enforcement, Mozg learned that BiFulco had a reputation for being "a member or associate of [IOC]." *Id*. Such testimony is plainly reputation evidence that is an exception to hearsay. Mozg's testimony about BiFulco is also admissible as non-hearsay because it tends to establish Mozg's state of mind going into his meeting with Casullo and the defendant—namely that Bella was associated with others Mozg believed were connected to IOC, like BiFulco. The defendant's second claim about Thomas Herbst's testimony and his third claim about 1234 Hertel Avenue fail for the same reasons. The defendant's arguments seem to fundamentally be a complaint that this testimony should be inadmissible because IOC association has not been definitively proved as incontrovertible fact. *See* ECF No. 1025 at 7–8. But such an argument has no pertinence to a hearsay analysis. Those arguments are more applicable to a relevance or prejudice analysis under Rules 401 and 403. But, as articulated above, the Court has generally rejected the defendant's claims that IOC evidence is irrelevant or overly prejudicial. *See* ECF No. 656; Final Pretrial Conference Tr. (Feb. 1, 2024) 35:16–36:15. The Court should not

allow the defendant to, again, relitigate the relevance of IOC evidence under the guise of fashioning his motion as one invoking a hearsay analysis.[2]  The Court should deny the defendant's motion.

## CONCLUSION

The government respectfully requests the Court deny the defendant's motions in limine.

TRINI E. ROSS
United States Attorney

BY:   s/JOSEPH M. TRIPI
      s/NICHOLAS T. COOPER
      s/CASEY L. CHALBECK
      Assistant United States Attorneys
      United States Attorney's Office
      Western District of New York
      138 Delaware Avenue
      Buffalo, New York 14202

---

[2] The defendant also claims that he is entitled to receive unidentified records from unrelated investigations to effectively cross-examine witnesses.  *See* ECF No. 1025 at 8–9.  The defendant's claim is meritless.  The government has complied with, and will continue to comply with, its discovery obligations.  Nothing the defendant raises implicates those obligations.  Indeed, the reputations of IOC members and associates referenced during trial are widely known in the community, *see* ECF No. 441 at 101–06; *see also* ECF No. 528 (Response in Opposition to Defendant's Motion to Preclude IOC Evidence), and the government marked fourteen Buffalo News articles as trial exhibits, although it did not enter them at trial, further establishing the widely-held and public reputations of individuals linked to the mafia, including Joseph Todaro Sr., Frank "Butchie" BiFulco, and others.  *See* Government Trial Exhibits 315–25 and 515–17.  The news articles are described on the Government's Exhibit List, were provided to counsel, and are in the trial binders previously delivered to the Court.  Additionally, the government previously produced to the defense during the last trial a log (spreadsheet) from an investigator, David Turri, who catalogued public and non-public information about suspected IOC members and associates over time.