UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                          Case No.: 19-CR-227

JOSEPH BONGIOVANNI,

PETER GERACE, JR.,

                            Defendants.

_____

UNITED STATES OF AMERICA,

v.                                                          Case No.: 23-CR-37

PETER GERACE, JR.,

                            Defendant.

_____

**<u>Mr. Gerace's Reply in Further Support of His Motion for Disclosure of All Ex Parte Crime-Fraud Applications Made by the Government in Relation to the Government's Motion to Disqualify Attorney Soehnlein and Supplemental Motion for Disclosure of Communication Between AUSA Resnick and the Trial Team</u>**

I.      **Introduction**

The government's June 26, 2024 memorandum in opposition to Mr. Gerace's

motion for disclosure assumes the Court will forget what the government did over the

last seven and a half months.   It assumes the Court will forget the disclosure

obligations imposed upon the government and the representations the government

made about crime-fraud applications as they related to motion practice seeking the disqualification of Attorney Soehnlein.   The Court cannot ignore the factual record.

The government's opposition depends on three assertions, each of which is easily dispelled.

First, the government asserts the crime-fraud application does not fall within the purview of the government's disclosure obligations imposed by this Court.  The assertion is at odds with submissions and representations the government made over the last seven and a half months, where the government weaponized the existence of a crime-fraud application in support of its position seeking attorney disqualification.

Next, the government asserts that Rule 6 of the Federal Rules of Criminal Procedure prohibits disclosure of the application.  That is not true.  As the Court previously ruled in this matter, grand jury secrecy is not absolute.  Documents, orders and applications related to the grand jury must be disclosed where there is a compelling need.  Here, the Court has already found such a need – Mr. Gerace's Sixth Amendment rights and the fairness and integrity of judicial proceedings.  The government's argument ignores this Court's prior findings, well-settled case law and objective facts.

Third, the government asserts the request should be denied because it is "moot." Again, that is not the case.  The government continues to assert there are potential conflicts in representation that Mr. Gerace must consider stemming from the possibility

Attorney Soehnlein could be called as a witness against him.  Moreover, the government's prior representations read in conjunction with their most recent submission evidence the government's bad faith in seeking, disclosing and taking positions based on the crime-fraud application.  The timing, content and outcome of any crime-fraud application sought in connection with the motion to disqualify goes directly to the issues being litigated in connection with the defense's motion to dismiss and for further sanctions.  The issue could not be more germane to pending motion practice.

The government's June 26 submission is the most recent submission in a pattern of improper conduct.  During the disqualification litigation, the government was mandated to disclose facts relating to disqualification.  Strategically asserting they lacked knowledge of the investigation, the trial team used facts it alleged it learned from other prosecutors, including the application for a crime-fraud order, for strategic benefit.  If the government's current representations are to be believed, it means that representations the trial team made over the course of the last seven and a half months were deliberate inaccuracies.  Based on this record, it is clear the government did not adhere to its disclosure obligations imposed by the Court and that the government made misrepresentations in support of the motion to disqualify.  The Court should mandate further disclosure and a hearing.

This Court already recognized the ramifications of what the government did, noting the government's actions implicated the "rights of all defendants in this District and beyond to the effective assistance of counsel—and by extension this Court's obligation to preserve the fairness of its criminal proceedings." Dkt. 889 at p.1. The government should not be permitted to rewrite history to conceal its misconduct. The Court should order disclosure.

## II.     Facts

The government's motion ignores the conduct and the arguments made by the government over the last seven and a half months.

On November 7, 2023, the government improperly came into possession of an audio recording made by a defense investigator. Despite knowing or having reason to know that it should not be in possession of the record, the government listened to the recording and selectively interpreted the investigator's statements. Viewing the investigator's statements in context of the known facts in the record of this case, it is clear the investigator lacked personal knowledge of the events he was speaking about.

Without speaking to the investigator about the statements or the audio recording, two weeks later, on November 21, 2023, the government made a sealed, *ex parte* motion to disqualify Attorney Soehnlein. Dkt. 666. The Government primarily relied upon *United States v. Fulton*, but *Fulton* was a case where the allegations came

from a trial witness who had met with the government and made direct allegations against defense counsel based on personal knowledge.

Before the parties could get to the merits of the government's motion, the parties were forced to litigate disclosure of the allegations because the government sought to hide the allegations from Mr. Gerace and his counsel.[1]  Even though the government argued the allegations arose entirely outside of the grand jury, the government asserted that it could not share the allegations with Mr. Gerace or counsel.  The parties briefed the issue of grand jury secrecy.  Dkt. 683, 684.  On December 1, 2023, "[t]he Court proposed that the Government withdraw its' Motion to Disqualify and submit a new motion that includes only the facts that are relevant to disqualification." Dkt. 686.  The parties appeared back in Court the following week on December 8, 2023.  The government further delayed the matter, representing the government had still not made a decision about how to proceed on the motion.  Dkt. 687.

At a status conference held December 8, 2023, the Court advised that it "want[ed] [defense counsel] to have everything that they need to know about the disqualification

---

[1] While the defense never received a copy of the government's original *ex parte* submission, the government's motion to disqualify failed to cite applicable law, misconstrued and misrepresented other law regarding disqualification and executive function, and was based on a faulty, easily dispelled factual predicate.  Had the Court not ordered disclosure, major flaws of the government's presentation would not have been exposed, and Mr. Gerace's Sixth Amendment right would have been disregarded.  More importantly for this issue, the government's motion revealed that most -- if not all -- of what the government relied upon and attempted to shield from disclosure was not properly the subject of grand jury secrecy rules.

motion so that they can weigh in on that." Dkt. 688 at 5.  Ultimately, the Court said to the government: "I think they need to have everything that you are alleging with respect to Mr. Soehnlein that is part of your disqualification motion. Everything. Okay?"  AUSA Tripi responded: "Understand, Your Honor." Id. at p. 6. The government acknowledged this directive as an affirmative obligation to share information, filing a supplement to its revised motion to disqualify Attorney Soehnlein on January 9, 2024. Dkt. 711 at p. 2.  That filing alleged the trial team was in consultation with other attorneys at its office investigating the disqualification matter who had recently shared new information with the trial team.  Id.

The Gerace defense team filed its response to the motion on February 20, 2024, asking that the government afford the investigator immunity so he could testify on the conflict matter. Dkt. 771.  The filing included an affidavit from the attorney representing the investigator who made clear that an interview of the investigator would provide helpful, exculpatory testimony to Attorney Soehnlein.  Dkt. 773.

The government refused, directing the inquiry away from the trial team.  Dkt. 798.  Critically, statements made in the government's reply make clear that the trial team continued to be in contact with prosecutors who were investigating the disqualification matter.  Dkt. 798 at p. 18.    In further arguing for Attorney Soehnlein's disqualification, the government argued that a crime-fraud order was being sought as to Attorney Soehnlein, stating: "As the trial team has previously stated, it is responsible for

6

the investigation and prosecution related to the orchestrated death of its federal witness, Crystal Quinn. Other prosecutors are responsible for investigating Eric Soehnlein's conduct. In that vein, the trial team has been advised that the investigation of Eric Soehnlein is underway, and that a crime fraud order application is pending determination by the Court." Id. at p. 18, n.6.

Oral argument on the motion to disqualify was held on March 15, 2024.  Dkt. 825. At oral argument, the Court suggested the government interview the defense investigator as the defense suggested, noting that, if the defense's proffer was true, an interview of the investigator could end the investigation and any potential conflict.  Dkt. 825 at p. 57.  In response, the government represented:

> As you are aware, Judge, there's -- I think a motive on behalf of the government attorneys who are investigating it to interview that person, and they're going through the appropriate channel, which I know -- I believe Mr. Personius knows, as well, which is that they filed a crime fraud application with the Court to attempt to interview that individual. And so there hasn't been this burying the head in the sand, not bothering to interview the individual. That's not the facts. And Your Honor knows that's not the facts. They've filed an application. They're waiting for the Court to rule on it. He's represented by counsel. The government doesn't go and interview people that are represented by counsel. He knows that also.  Id at p. 57-58.

The Court immediately dispelled the government's representation, and the following colloquy occurred:

> THE COURT: Why does the government need the decision on the attorney-client privilege before they proceed?

MR. COOPER: That's a decision that's being made by the attorney that's working on the crime fraud order, the attorney that's handling the investigation.

THE COURT: I don't know why the government needs a decision. I mean, that seems to me to be more or less an advisory opinion that they're asking the Court for, and I'm not so sure I'm inclined to give an advisory opinion on this.[2] Id.

On April 25, 2024 this Court denied the government's motion to disqualify Attorney Soehnlein, holding "…that a defense attorney's putting the name of an individual who has been disclosed in the government's discovery on a witness list—regardless of the intent behind it—is as a matter of law not obstruction of justice under 18 U.S.C. § 1503. Rather, such conduct constitutes 'lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding' and is therefore protected by the safe harbor of 18 U.S.C. § 1515(c)." Dkt. 889 at p.1-2.

The parties appeared before the Court for a status conference on May 1, 2024. Dkt. 903.  The government was asked about its position regarding whether a conflict exists. In response, it suggested that a *Curcio* colloquy was appropriate. The Court asked whether the government felt a full colloquy was necessary, and the government indicated that it thought so, but would submit something, in writing, if it believed that

---

[2] If the prosecutors investigating the audio recording believed they needed a crime-fraud order to interview the investigator, then those prosecutors clearly felt they were privilege issues at play, which should have prevented the investigator from being compelled to appear before a grand jury.  The crime-fraud application demonstrates that prosecutors in the United States Attorney's Office for the Western District of New York disagreed with the actions of the trial team in this case compelling the investigator to testify before the grand jury and to produce materials that undoubtedly were protected by the attorney-client and work-product privileges.

anything other than the normal *Curcio* colloquy would be necessary. At no point did the government articulate or allude to any ongoing argument that Mr. Soehnlein had a non-waivable conflict that is immune to the impact of a Curcio waiver. To the contrary, the government indicated that it anticipated it would request a *Curcio* hearing be held, clearly suggesting that if there are lingering conflict issues, they are waivable. A date for a Curcio hearing was set for May 15, 2024. Dkt. 906.

On May 6, 2024 the government filed a second motion to disqualify Attorney Soehnlein, primarily using the same factual predicate as the first motion, but arguing that it "analyz[ed] the facts through the actual and potential conflict rubric, as opposed to through a per se conflict rubric." Dkt. 925 at p. 2.  The government made no proffer as to why the arguments in the current motion to disqualify could not have been advanced in the first motion to disqualify Attorney Soehnlein or why the government brought the second motion to further delay Mr. Gerace's trial.

On May 24, 2024 Mr. Gerace filed a motion to dismiss and for other sanctions. Dkt. 979.  In the motion, the defense asserts the government acted in bad faith in subpoenaing and compelling disclosure from a defense investigator in disregard of the attorney-client privilege and in the means and manner in which it pursued the disqualification of Attorney Soehnlein.  Critical to the analysis are representations the government made to the Court that were inaccurate at various times throughout its investigation of the defense team.

9

On June 5, 2024, the government filed its reply in support of its second motion to disqualify Attorney Soehnlein.  Dkt. 997.  The government's primary arguments in reply, which were different than the arguments focused on in its original moving papers, were couched in the assertion that Attorney Soehnlein could be called as a witness against Mr. Gerace.  Id. a pp 3-27.   In that regard, the government explicitly and repeatedly asserted that the "crime-fraud exception applied" to Attorney Soehnlein and his communications with Mr. Gerace. Id. at p. 11.

Because the possibility of Attorney Soehnlein testifying against Mr. Gerace was wholly dependent upon the district court issuing a crime-fraud order, the defense moved for disclosure of any and all crime-fraud applications made relating to this issue on June 11, 2024.  Dkt. 1002.  At a status conference on June 12, 2024, the Court set a briefing schedule on the motion that contemplated government responses by June 20, 2024 and a *Curcio* hearing on June 21, 2024.  Dkt. 1008.

On June 17, 2024, however, the government moved for an extension to reply to the defense motion, citing various circumstances.  Dkt. 1014.   In pertinent part, the government's motion stated: "In order to compose a response to the defendant's motion, the prosecutors on this case need to coordinate with AUSA Richard Resnick and other members of the United States Attorney's Office." Id. at p. 2, para.4.  The government's response to the motion was adjourned until after the *Curcio* hearing.  The day after the motion for the extension of time, the trial team filed a 12-page

memorandum further arguing for the disclosure of Attorney Soehnlein's ex parte

motion to withdraw, relying heavily on the assertion that the crime fraud exception

applied. Dkt. 1018 (the first heading of the brief is: "The Court should disclose Mr.

Soehnlein's Ex Parte and Sealed Motion to Withdraw Because there is a Factual Basis to

Believe that the Crime-Fraud Exception Applies to Any Privilege Communications").

On June 21, 2024, the Court held a lengthy *Curcio* inquiry.  Throughout the

inquiry, the government raised several potential conflicts, most of which were based on

the possibility that Attorney Soehnlein could be compelled at some point to testify

against Mr. Gerace.  *See generally* Dkt. 1027.  The Court accepted Mr. Gerace's waiver

and instructed that it would have Mr. Gerace back to Court to conduct a further inquiry

after Mr. Gerace had additional time to reflect on the potential conflicts and the

possibility of Attorney Soehnlein being called as a witness in particular.  Dkt. 1026 (Text

Order) ("Since defendant just read certain sealed submissions today, additional time

will be provided so he can meet with Attorney Spitler. Continuation of Curcio Hearing

scheduled for 7/9/2024 at 12:30 PM").

Notably, at the *Curcio* hearing, the Court noted that the crime-fraud application

made by the government related to Attorney Soehnlein:

> THE COURT: So the government has indicated that Mr. Soehnlein may be called
> as a witness against you in case 23-cr-99. The government has made an
> application for an order stating that communications between you and Mr.
> Soehnlein are disclosable under the crime fraud exception. There's been no order

issued on that application, but if some judge finds that there's probable cause to believe that the communications between you and Mr. Soehnlein were to advance a crime or fraud in some way, then Mr. Soehnlein could be forced to testify about your communicating with him.

Dkt. 1027 at p. 55.

### III. The Crime-Fraud Application Falls Within the government's Disclosure Obligations

The relevant facts cannot be disputed:

1. On December 8, 2023, the Court ordered that it "want[ed] [defense counsel] to have everything that they need to know about the disqualification motion so that they can weigh in on that." Dkt. 688 at 6;

2. The government acknowledged this order as an affirmative obligation, using the order as a reason to file supplemental submissions in its attempts to disqualify Attorney Soehnlein and argue that conflicts existed in his continuing representation.  Dkt. 711 at p. 2;

3. Relying on the existence of the crime-fraud application, these submissions included the thinly veiled suggestion that criminal prosecution was imminent, which the trial team strategically employed to advance arguments in support of disqualification.  Dkt. 798 at p. 18;

4. The government continued to advance the same argument at oral argument on the first motion to disqualify.  Dkt. 825 at p. 54.  The issuance of a crime-fraud has been (and continues to be) the factual basis in support of the government's second motion to disqualify Attorney Soehnlein.  Dkt. 997 at p. 11.  And the government persists in the argument in pursuing the second motion to disqualify.  Dkt. 1027 at p. 54;

5. The Court and the government made clear that the crime-fraud application identified by the trial team seeks communications between Mr. Gerace and Attorney Soehnlein.  Dkt. 1027 at p. 55.

The government's opposition to disclosure of the crime-fraud order is premised on the assertion that the application "is not subject to the Court's prior order directing the disclosure of grand jury material to the defendant."   Dkt. 1030 at p. 2.  That assertion cannot be true.  The trial team has repeatedly pointed to the existence of the application to argue for disqualification.  The basis and content of the application bear on whether the application is likely to be granted or denied.  Whether the application is likely to be granted or denied weighs directly on Mr. Gerace's potential waiver.  And the basis and content – and what the trial team knows of the basis and content – directly relate to the government's misconduct in pursuing attorney disqualification, both at the time the motion was brought and as the government continued to pursue the motion as it learned (or deliberately disregarded) new facts.

For seven and a half months the government has attacked defense counsel and prevented Mr. Gerace from preparing for trial.  Relying on the Court's disclosure instruction, at several points the trial team has cited the crime-fraud application in support of its efforts to disqualify Attorney Soehnlein and threaten criminal prosecution, seeking to intimidate defense counsel and hinder Gerace's defense.   The government's representation that the crime fraud application is outside the scope of the Court's disclosure order is not and cannot be true.

## IV.    Rule 6 Does Not Prohibit Disclosure

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(i), "[t]he Court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter ... preliminarily to or in connection with a judicial proceeding...." When considering a request to disclose grand jury materials, the trial court has broad discretion to decide whether disclosure is appropriate. *In re Petition of Craig*, 131 F.3d 99, 104 (2d Cir.1997); *United States v. Parlato*, No. 15-CR-149-A, 2024 U.S. Dist. LEXIS 54171, at *2 (W.D.N.Y. Mar. 25, 2024).

The burden is on the movant to demonstrate a "particularized need" for disclosure that is (1) necessary to avoid a "possible injustice in another judicial proceeding"; (2) "greater than the need for continued secrecy"; and (3) "structured to cover only material so needed." *Douglas Oil Co. of Calif. v. Petrol Stops Nw.*, 441 U.S. 211, 222-23, 99 S. Ct. 1667, 60 L. Ed. 2d 156 & n. 12 (1979); *Bourne v. United States*, No. 21-2497, 2023 U.S. App. LEXIS 10282, at *2-3 (2d Cir. Apr. 27, 2023).   As stated above, this Court has already determined that the facts relating to disqualification meet this criteria.

Even if the Court's prior order did not encompass disclosure of the application, the law would still counsel toward disclosure at this time.

Subsection 6(e)(6) of the rule provides: "Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." "[U]nless information reveals something about the grand jury proceedings, secrecy is unnecessary." *United States v. Stanford,* 589 F.2d 285, 291 (7th Cir. 1978); *See also In re Grand Jury Matter*, 640 F. Supp 63 (E.D. Pa. 1986).

When the content of the grand jury testimony has already been disclosed publicly, either by the testifying party or by the government, the need for secrecy of grand jury material is substantially diminished.  *See, e.g., Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 411, 422 (noting "[none] of the reasons traditionally advanced to justify nondisclosure of grand jury minutes was significant in such circumstances") (quoting *Dennis v. United States,* 384 U.S. 855, 872 n.18).

Further, when documents are sought "for [their] own sake" rather than to learn what transpired before the grand jury, and their release would not compromise the grand jury proceedings, Rule 6(e) does not preclude their disclosure. *United States v. Parlato*, No. 15-CR-149-A, 2024 U.S. Dist. LEXIS 54171, at *2 (W.D.N.Y. Mar. 25, 2024)(permitting disclosure of sections of grand jury transcript where the substance of the testimony had already been made known to the litigants in the case); *DiLeo v. Commissioner of Internal Revenue*, 959 F.2d 16, 19 (2d Cir.), *cert. denied*, 506 U.S. 868 (1992) (reaffirming *Interstate Dress* as law of Second Circuit and granting request

for documents subpoenaed by grand jury for use in investigation

because documents sought for intrinsic value); *see also In the Matter of Montauk Oil*

*Transp. Corp.*, No. 90 Civ. 5702 (KMW), 1992 WL 131770, at *2 (S.D.N.Y. June 2, 1992)

(ordering disclosure of documents subpoenaed by grand jury that investigated fire

because movant sought documents for their own sake in order to "shed light on

accident" at issue in negligence suit); *In re Regular Grand Jury*, 741 F. Supp. 1027, 1028

(E.D.N.Y. 1990) (McLaughlin, J.) (allowing disclosure of canceled checks, accounting

spreadsheets, bank records and miscellaneous notes subpoenaed by grand jury because

intrinsic value of documents would advance lawful investigation); *Capitol Indem. Corp.*

*v. First Minnesota Constr.*, 405 F. Supp. 929, 931 (D. Mass. 1975) (ordering discovery

of documents subpoenaed by grand jury because plaintiff sought documents "for their

own intrinsic value" in related civil suit for declaratory relief).

    In reply, the government's arguments rely on reference to the 23-CR-99 case, a

case where an indictment has already been returned against Mr. Gerace and eight other

defendants.  This assertion undercuts the government's argument -- "Generally the only

reason for Grand Jury secrecy that survives the conclusion of an investigation is the

encouragement of disclosures by those with knowledge of crime." *United States v.*

*Moten,* 582 F.2d 654, 663 (2d Cir. 1978); *See also United States v. Alper*, 156 F.2d 222, 226

(2d Cir. 1946) ("After an indictment has been found and the accused apprehended, the

veil of secrecy surrounding grand jury proceedings may safely be lifted where justice so

requires.").   Here, the Gerace defense team does not seek public disclosure of the crime-fraud application, but merely seeks disclosure to Mr. Gerace and the defense team.  Since Mr. Gerace has already been indicted in that case and Attorney Soehnlein has been immunized from any potential prosecution, there can be no risk that unidentified targets of any grand jury contemplating a superseding indictment are made aware of the content of the crime-fraud application or of any grand jury material.

More importantly, as the Court already recognized in this case, disclosure of all materials relating to disqualification, including those materials the government asserts are covered by law regarding grand jury secrecy, are necessary because the issues go directly to Mr. Gerace's Sixth Amendment rights.  Presently, they implicate Mr. Gerace's rights in two ways.

First, any crime fraud-application relating to the allegations giving rise to the disqualification motion impacts Mr. Gerace's ability to understand the full impact of any *Curcio* waiver sought by this Court.  If Mr. Gerace's waiver is to be knowing and intelligent, it should be informed by all available facts, including the content of the crime-fraud application and an understanding of the likelihood that any such application will be granted in the future.

More importantly, as the government's reply further demonstrates, the crime-fraud application – including the timing of the application, the content of the

application, and the trial team's understanding with regard to the status of the defense investigator in connection to that application – further evidence the government's bad faith in seeking materials and testimony of a defense investigator and in the way it litigated the attorney disqualification motions.

## V.      Issues Related to the Crime-Fraud Applications are Not Moot

The government's final argument in reply is that disclosure of any crime-fraud applications is moot.  Dkt. 1030 at p. 7.  That is not the case.  The government continues to assert that there are conflicts in Attorney Soehnlein's representation of Mr. Gerace that require further reflection from Mr. Gerace, and the government continues to urge Mr. Gerace not to waive such conflicts.  Dkt. 1026 and 1027.  Further, it has become clear that the government's actions in making crime-fraud applications, disclosing the existence of crime-fraud applications, and strategically representing (or misrepresenting) the content of any such crime-fraud applications is material to the defense's motion to dismiss and for other sanctions.  These facts concern both the litigation of the attorney disqualification motions as well as the government's conduct in compelling a defense investigator to disclose materials and testify before a federal grand jury.

VI.     **Motion for Supplemental Disclosure**

As the government repeatedly acknowledged, the Court placed an affirmative obligation on the government to disclose all material relating to disqualification.  Paying lip service to the obligation, the trial team used the order to cite to the crime-fraud application, repeatedly asserting that the trial team was not conducting the investigation of the Gerace defense team but consistently coming forward with facts it asserted were further evidence to be considered in support of disqualification.  The government has now done a 180, taking the position that the crime-fraud application is not encompassed by the Court's disclosure order.   The trial team cannot rewrite history.  And the trial team's willingness to misrepresent the content of the crime-fraud application (whether the misrepresentation is being made now or was made in the past) demonstrates the trial team's representations regarding various aspects of the attorney disqualification litigation are not credible.

Disclosure is necessary to safeguard Mr. Gerace's Sixth Amendment rights.

a.   **The government Used the Pendency of Another Investigation as a Sword and a Shield to Prevent Disclosure on the Disqualification Motion and Prolong the Proceedings to Mr. Gerace's Detriment**

The government has possessed the audio recording giving rise to the allegations buttressing the attorney disqualification motion since November 7, 2023.  The

government has not interviewed the defense investigator regarding the allegations the government made in the disqualification motion.

To be clear, the government raised the disqualification argument on "flimsy" evidence (Dkt. 825 at p. 33), and when it learned that an interview of the defense investigator would absolve Attorney Soehnlein and end the potential conflict, it failed to take action – prolonging the conflict inquiry and impairing Mr. Gerace's constitutional rights.

### i. The Shield

Throughout the litigation regarding attorney disqualification, at strategic points the trial team sought to distance itself from the investigation of the facts leading to the government's motion to disqualify.

At the first appearance on the matter on November 28, 2023, speaking about the actions the trial team was taking and what was being pursued in the way of an investigation into the allegations giving rise to the disqualification motion, AUSA Tripi said: "well, if there -- Judge, there's a determination, like, if you're talking about the factual predicate for a second – that has gone through -- that is not -- that doesn't land and end at this desk. Okay? This is the trial team for the trial. That is taking its own course with its own set of considerations and its own set of prosecutors in consultation with different department components. All right?" Dkt. 679 at p. 11-12.

On December 8, 2023, the trial team stated: "So but, Judge, as you know, this is the team in front of you that uncovered information that caused another investigation which animates the per se conflict. So I just want to say that at the outset, I'm seeking without full comprehension of the scope of whatever other prosecutors are doing. I just want the Court to be aware of that. Okay?" Dkt. 688 at p. 3.

And as is referenced above, in response to the defense's inclusion of an affidavit from the attorney for the investigator indicating that an interview of the investigator would provide helpful and exculpatory information to Attorney Soehnlein and Mr. Gerace (Dkt. 773)  the trial team refused to engage with the request, insisting that it was not involved in with investigation and that it was being handled by other prosecutors. Dkt. 798 at p. 18.[3]

At oral argument, the Court seized on the representation of the defense counsel that an interview of the defense investigator would exculpate Attorney Soehnlein and urged the government to take the defense up on its suggestion for an interview, noting that it created a likelihood that "this whole thing would go away."  Dkt. 825 at p. 57. This came after the discussion cited above, wherein the Court had advised the trial team that in the Court's opinion the prosecutors did not need a crime-fraud order to speak

---

[3] The trial team made this argument in a document where it represented facts it had been advised of by the prosecutors investigating the allegations leading to the disqualification motion.  Id. at p. 18, n.6.

with the defense investigator regarding the allegations giving rise to the disqualification motion.  Id.

This trend continued in the government's June 26 filing, where the government asserted that the crime-fraud order, which the Court had noted clearly related to Attorney Soehnlein and disqualification, was "submitted as part of and related to a grand jury investigation not encompassed within the Court's prior disclosure directive."  Dkt. 1030 at p. 2.

Simply put, where it has been strategically beneficial for the trial team to deflect inquiries about the investigation, the trial team weaponized its espoused ignorance of the investigation.  This had the clear impact of prolonging the disqualification litigation, hindering Mr. Gerace's ability to prepare for trial, and adversely impacting Mr. Gerace's Sixth Amendment rights.

### ii.  The Sword

Despite trying to distance itself from other prosecutors when it was strategically beneficial, the trial team repeatedly used the other investigation and evidence it indicated came from other prosecutors when, in their view, that information assisted the arguments it advanced in support of disqualification.

As noted above, on January 5, 2024 the trial team filed a supplement to its revised motion to disqualify Attorney Soehnlein, sharing and purporting to summarize

materials it had recently received from the prosecutors investigating the allegations giving rise to the disqualification issue.  Dkt. 711 at p. 2.

In its March 8, 2024 filing, the trial team filed its reply in support of disqualification, noting that it had been advised by the other prosecutors that they had made a crime-fraud application and that the "investigation of Attorney Soehnlein was underway."  Dkt. 798.

Throughout its second motion to disqualify, the government repeatedly pointed to the pendency of the crime-fraud application as a basis to disqualify Attorney Soehnlein.  *See, e.g.*, Dkt. 1018 at p. 2; Dkt. 1027 at p. 54-55 (and elsewhere).

Although it has denied involvement and knowledge, the trial team repeatedly weaponized information it allegedly received from the other prosecutors.  This information, which the trial team alleged was always damaging to the disqualification motion, seemed to come forward at strategically beneficial moments[4] and avoided interviewing the defense investigator who the government knew would exculpate Attorney Soehnlein.

---

[4] The trial team's January 2024 supplemental filing in further support of disqualification was made days after a <u>Buffalo News</u> article that was critical of the government's conduct in seeking disqualification.

### b.  Disclosure is Warranted

In recent memory, this United States Attorney's Office has repeatedly disregarded or abused disclosure obligations imposed upon it.  *See United States v. Morgan*, 18-CR-108-EAW (indictment dismissed without prejudice due to government's violations of its discovery obligations); *United States v. Padua*, 20-CR-191-LJV (indictment dismissed with prejudice due to prosecutorial misconduct related to sanction imposed for violations of government's discovery obligations); *United States v. Tyshawn Brown*, 19-CR-222-EAW (indictment dismissed on government's motion related to Brady/Giglio disclosure issues); *United States v. Coleman*, 19-CR-221-RJA (Brady/Giglio disclosure issues); *United States v. Parks*, 19-CR-87 -LJV (precluding the government from offering certain testimony for failure to disclose evidence to the defendant).

In instances where the government has not faithfully adhered to its disclosure obligations, the Court has mandated that Assistant United States Attorneys responsible for an investigation provide affidavits setting forth investigative measures relating to disclosure obligations.  *See, e.g., United States v. Parks*, 19-CR-87 (W.D.N.Y.) at Dkt. 776.

In a recent filing, the trial team identified AUSA Richard Resnick as the government attorney responsible for the investigation that corresponded to the government's motion to disqualify Attorney Soehnlein (the "investigative team").  Dkt.

1014 at p.2.   In Dkt. # 1030, the government made clear its representations regarding its communications with the investigative team and representations regarding facts the Court mandated be disclosed pursuant to its December 8 order could not be trusted. These communications weigh on Mr. Gerace's Sixth Amendment rights, his *Curcio* waiver, the integrity of judicial proceedings, as well as the currently pending motion to dismiss.  At minimum the Court should compel attorneys comprising the trial team and attorneys comprising the investigative team, including AUSA Resnick, independently to provide affidavits stating the following:

1. Whether any crime-fraud applications were made relating to the investigation into the facts giving rise to the government's November 21, 2023 disqualification motion, to which Judge the application was made, the outcome of any application, and the date the government learned of the outcome;

2. The date, time and manner of any communication between the investigative team or any attorney/investigator working in conjunction with the investigative team and the trial team, including what tangible materials were shared by the investigative team or any attorney/investigator working for the investigative team with the trial team;

3. The date, time and manner of any communication with the attorney representing the defense investigator, including whether or not the investigative team or any attorney/investigator working in conjunction with the investigative team sought any interview of the defense investigator relating to the allegations giving rise to the government's November 21, 2023 motion to disqualify.

## VII.    Conclusion

For the foregoing reasons, Mr. Gerace respectfully requests an Order of the Court mandating the disclosure of all crime-fraud applications submitted by the government in connection with the investigation into the allegations giving rise to the government's November 21, 2023 motion to disqualify and mandating disclosure as set forth above.

Dated:          June 28, 2024

<u>s/ Mark A. Foti, Esq.</u>                                          <u> s/ Eric M. Soehnlein, Esq.</u>

Mark A. Foti, Esq.                                          Eric M. Soehnlein, Esq.
**The Foti Law Firm, P.C.**                            **Soehnlein Law, PLLC**
16 W Main Street, Suite 100                       2100 Main Place Tower
Rochester, NY 14614                                  350 Main Street
(585) 461-1999                                          Buffalo, NY 14202
(585) 491-6512                                          (716) 771-9092