IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

        v.                                                                         19-CR-227-LJV
                                                                                23-CR-37-LJV

PETER GERACE, JR.,

                Defendant.
_____

**GOVERNMENT'S RESPONSE IN OPPOSITION TO GERACE'S MOTION FOR SUPPLEMENTAL DISCLOSURE**

       **THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, Nicholas T. Cooper, Casey L. Chalbeck, and Caitlin M. Higgins, Assistant United States Attorneys, hereby files this response in opposition to defendant Peter Gerace, Jr.'s motion for supplemental disclosure (ECF No. 1035).

### I. INTRODUCTION

       Gerace seeks the disclosure of communications between the trial team and any attorney involved in the investigation of the orchestrated recusal that fraudulently induced Judge Sinatra into abdicating his assignment to this case. Gerace premises his motion upon the idea that some government attorney has submitted a crime-fraud application seeking disclosure of his communications with Attorney Eric Soehnlein. That notion, in turn, appears to spring from an inadvertent comment characterizing the trial team's crime-fraud arguments—contained exclusively in briefing shared with Gerace—as an "application" for a crime-fraud order that has not been disclosed to Gerace. *Curcio* Hr'g Tran., at 55, (dated

June 21, 2024). In Gerace's view, the government's failure to disclose this application "weigh[s] on [his] Sixth Amendment rights, his *Curcio* waiver, the integrity of judicial proceedings, as well as the currently pending motion to dismiss," and demands this Court's intervention. Suppl. Mot., at 25, (ECF No. 1035) (dated June 28, 2024). To that end, he asks the Court to compel various government attorneys to submit affidavits detailing privileged communications.

To be clear, the government has not disclosed a crime-fraud application seeking communications between Gerace and Attorney Soehnlein because no such application exists.[1] Rather, the trial team has *argued*—in response to Gerace's invocation of privilege and in briefing shared with Gerace—that communications between him and Attorney Soehnlein related to the fraudulent recusal are exempted from attorney-client privilege under the crime-fraud exception. Thus, because the motion's entire factual premise is wrong, it undeniably fails.[2]

Moreover, though launching from an understandable misreading of the record, Gerace's motion mischaracterizes unambiguously clear facts and advances arguments that simultaneously (but mistakenly) castigate the trial team for purportedly disobeying the Court's disclosure order, condemn it for complying with the disclosure order, and chastise it for not interviewing an individual who demanded immunity in exchange for information. None of these contentions is tenable under the facts, law, or basic reasoning. Consequently, the Court

---

[1] As detailed *infra*, the only crime-fraud application sought related to the application made in January 2024 by other AUSAs; the trial team's understanding is that the January 2024 application related to a prospective interview with the Investigator and did not seek communications between Gerace and Attorney Soehnlein.

[2] Though the trial team thinks the Court's use of the word "application," when read in context, clearly relates to the trial team's briefing on the crime-fraud exception, it understands the genesis of Gerace's confusion. Miscommunications happen, which is why dialog between the parties—and, barring that, motions for clarification—can save everyone time.

should deny Gerace's motion for supplemental disclosure.

## II. FACTUAL & PROCEDURAL BACKGROUND

The trial team fully incorporates the factual background detailed in its Sur-Reply in Opposition to Gerace's Motion for Disclosure of all *Ex Parte* Crime-Fraud Applications, (ECF No. 1051) (dated July 5, 2024). However, the following review of the June 21st *Curcio* hearing is relevant to resolving the instant motion.

Specifically, on June 21st, the Court held a lengthy *Curcio* hearing apprising Gerace of the actual and potential conflicts afflicting Attorney Soehnlein's representation of him. *See generally Curcio* Hr'g Tran., (dated June 21, 2024). As relevant here, the Court explained as follows:

```
         USA v Peter Gerace - Curcio Hearing - 6/21/24         55

 1            So the government has indicated that Mr. Soehnlein
 2   may be called as a witness against you in case 23-cr-99.  The
 3   government has made an application for an order stating that
 4   communications between you and Mr. Soehnlein are disclosable
 5   under the crime fraud exception.  There's been no order issued
 6   on that application, but if some judge finds that there's
 7   probable cause to believe that the communications between you
 8   and Mr. Soehnlein were to advance a crime or fraud in some
 9   way, then Mr. Soehnlein could be forced to testify about your
10   communicating with him.
```

*Id.* at 55 (highlighted emphasis added).

Read in context, the Court appears to have been referring to the crime-fraud *argument* the government advanced in the litigation regarding actual and potential conflicts. *See, e.g.*,

3

Actual & Potential Conflicts Reply Br., at 24–25 ("Attorney Soehnlein is an (immunized) witness in Case No. 23-CR-99 who ought to be called as a witness against his client's indicted obstruction."); *see id.* at 3–21 (explaining why the crime-fraud exception applies to communications between Gerace and Attorney Soehnlein regarding the fraudulent recusal of Judge Sinatra). Indeed, after elucidating its theory regarding the crime-fraud exception, a trial team attorney expressly referenced its briefing, *see Curcio* Hr'g Tran., at 47 (Govt. Att'y: "And that's an aspect that we've *briefed* that remains open by your decision." The Court: "Conceivably, yeah." (emphasis added)), and another trial team attorney explained that the issue of whether "counsel c[ould] serve as a witness against his client, even in a hypothetical scenario, [] has fallen under the umbrella of *per se* or actual conflicts," *id.* at 50.[3] *See also id.* at 50 (Govt. Att'y: "[T]hese issues are not yet ripe insofar as there's no subpoena that has been served, or crime fraud application that has been granted . . . .").[4]

However, to the extent the Court was referring to the January 2024 crime-fraud application submitted by other AUSAs, the trial team understands that that application did not seek communications between Gerace and Attorney Soehnlein and related to a prospective interview with the Investigator.

### III.  ANALYSIS

In his Motion for Supplemental Disclosure, Gerace argues that "[d]isclosure" of

---

[3]  That briefing did not seek a crime-fraud order. *See* Govt.'s Mot. to Resolve Actual & Potential Conflicts, at 23, (ECF No. 919) (filed May 6, 2024) ("The Court should disqualify Mr. Soehnlein and decline to permit defendant Gerace to waive any conflicts."); Actual & Potential Conflicts Reply Br., at 31, ("[T]he government respectfully asks that the Court decline to accept any waiver offer[ed] [sic] by Gerace.").

[4]  Indeed, no crime-fraud order has issued because no crime-fraud application seeking communications between Attorney Soehnlein and Gerace has been submitted. And no crime-fraud application has been submitted because no subpoena has been served at this juncture upon Attorney Soehnlein. The trial-team reserves its right to call Attorney Soehnlein as a witness in the 23-CR-99 case and issue trial subpoenas when it is scheduled for trial. For the purposes of the conflicts analysis, however, it is sufficient that it is conceivable that Attorney Soehnlein could serve as a witness against his client.

affidavits from the trial team and the AUSAs investigating the fraudulent, orchestrated recusal of Judge Sinatra "is necessary to safeguard [his] Sixth Amendment rights." Mot. for Suppl. Disclosure, at 19; *see id.* at 25. Gerace grounds this request in the proposition that the trial team "misrepresent[ed] the content of the crime-fraud application (whether the misrepresentation is being made now or was made in the past)." *Id.* at 19. More specifically, Gerace appears to be operating under the inaccurate belief that some government attorney applied for a crime-fraud order for communications between himself and Attorney Soehnlein. *See id.* at 22 (stating that "the Court had noted [that the crime-fraud application] clearly related to Attorney Soehnlein"); *id.* at 11–12 (noting that the Court referred to the trial team's crime-fraud argument as an "application" (quoting *Curcio* Hr'g Tran., at 55)). As explained below, Gerace's motion fails on the facts, logic, and the law, and should be denied.

**A.     There is no crime-fraud application seeking communications between Gerace and Attorney Soehnlein.**

Gerace's motion is premised on there being an undisclosed crime-fraud application seeking communications between him and Attorney Soehnlein that the trial team lied about. *See generally* Mot. for Suppl. Disclosure, at 19–26. Gerace is mistaken: government attorneys have submitted only one crime-fraud application—the January 2024 application—in connection with Gerace's successful efforts to fraudulently induce Judge Sinatra into recusing himself, and that application did not seek communications between Gerace and Attorney Soehnlein.[5]

To be sure, the trial team appreciates that Gerace's belief in this non-existent crime-

---

    5    Far from misrepresenting facts about the January 2024 application, "the record makes clear [that] the trial team made **no** representation regarding . . . the [ ] application beyond noting it sought authority to interview the Investigator." Sur-Reply in Opp. to Gerace's Mot. for Disclosure, at 17, (ECF No. 1051) (filed July 5, 2024).

5

fraud application might stem from a comment made during the June 21st *Curcio* hearing. Specifically, after discussing the details of the crime-fraud *argument* mapped out in the trial team's conflicts briefing, the Court stated that

> [t]he government has made an *application* for an order stating that communications between you and Mr. Soehnlein are disclosable under the crime-fraud exception. There's been no order issued on that application, but if some judge finds that there's probable cause to believe that the communications between you and Mr. Soehnlein were to advance a crime or fraud in some way, then Mr. Soehnlein could be forced to testify about your communicating with him.

*Curcio* Hr'g Tran., at 55 (emphasis added). Read in context, the Court's statements refer to the arguments the trial team advanced in its Actual and Potential Conflicts briefing. That said, and any remaining misconceptions can be put to rest at the continuation of the *Curcio* hearing that this Court—to its great credit—set for July 9, 2024.

In sum, there is no crime-fraud application seeking communications between Gerace and Attorney Soehnlein to disclose, no possible violation of any disclosure order for failing to disclose the non-existent application, and no attendant basis for Gerace's motion for supplemental disclosure. Accordingly, the motion should be denied.[6]

---

6   Though Gerace's motion lacks any factual basis, it also fails on the law. On that score, the government notes, for preservation purposes, that any communications between Department of Justice attorneys regarding the disqualification motion and any investigation into the orchestrated recusal are privileged either under the opinion work-product privilege and/or the deliberative process privilege. The Federal Rules of Criminal Procedure expressly exempt such material from discovery. *See* FED. R. CRIM. P. 16(a)(2) (exempting from "discovery or inspection . . . reports, memoranda, or other internal government documents"); *see United States v. Wilson*, 518 F. Supp. 3d 678, 285 (W.D.N.Y. 2021) (same).

Moreover, Gerace fails to identify a legal standard that might guide this Court's evaluation of his motion. Depending on the claim, it appears courts evaluate discovery requests for internal government material under a "bad faith" or "substantial need" standard. *Compare United States v. Rhodes*, No. 18-CR-887 (JMF), 2019 WL 3162221, at *4 (S.D.N.Y. July 16, 2019) (holding, in a case where defendant alleged that prosecutors used civil investigative findings in support of criminal case, and thereby infringed upon his due process rights, that "a defendant must 'make a substantial preliminary showing of bad faith before an evidentiary hearing or even limited discovery' on the issue of bad faith is to be granted" (quoting *United States v. Gel Spice*, 773 F.2d 427, 434 (2d Cir. 2019)), *with LoCurto v. United States*, No. 10-CV-4589 (NGG), 2017 WL 980296, at *2 (E.D.N.Y. Mar. 10, 2017) (concluding, in § 2255 litigation where petitioner alleged that internal government documents were necessary to press his collateral challenge, that petitioner had not satisfied Federal Rule of **Civil** Procedure

> **B. Gerace's assertion that disclosure is required because the trial team's representations cannot be trusted is unsupported by the facts, which instead show that Gerace mischaracterized the record in his motion.**

The trial team believes that the clarification offered *supra* Sec. A., dispels Gerace's accusations of impropriety. Nevertheless, the trial team notes that several other "facts" Gerace cites in support of his disclosure argument are either belied by the record or reflect his own speculation, and thus severely undermine Gerace's unspecific, unsupported declaration that the government has "made clear its representations regarding its communications with the investigative team and representations regarding facts the Court mandated be disclosed pursuant to its December 8 order could not be trusted." Mot. for Suppl. Disclosure, at 25.

First, without providing any specific citation, Gerace claims that "the trial team used the [Court's prior disclosure] order to cite to the crime-fraud application . . . ." Mot. for Suppl. Disclosure, at 19. This is incorrect. As detailed in the Sur-Reply, in neither of the two instances where it cited to the January 2024 application's existence did the trial team invoke the Court's prior disclosure order. *See* Actual & Potential Conflicts Reply Br., at 18 & n.6, (ECF No. 997) (filed June 5, 2024); Oral Arg. Hr'g Tran., at 54–55, (dated Mar. 5, 2024).

Second, Gerace claims that, "[t]hroughout its second motion to disqualify, the government repeatedly pointed to the pendency of the crime-fraud application as a basis to disqualify Attorney Soehnlein." Mot. for Suppl. Disclosure, at 23 (citing Govt.'s Reply to Def.'s Resp. in Opp. to Govt.'s Mot. for Disclosure & Sealed Mot. to Withdraw, at 2, (ECF No. 1018) (filed June 18, 2024); *Curcio* Hr'g Tran., at 54–55 (ECF No. 1027) (dated June 21,

---

26's "substantial need" requirement to pierce "work-product materials"). Regardless of which standard the Court employs to evaluate Gerace's request, it is clear he cannot make even a preliminary showing that would pierce the government's privilege.

7

2024)). This, too, is incorrect. In its disclosure motion, the government argued that "[b]ecause there is a factual basis to believe that [Attorney Soehnlein's] *ex parte* motion [to withdrawal] relates the orchestrated recusal of Judge Sinatra, the crime-fraud exception applies." Govt.'s Reply to Def.'s Resp. in Opp. to Govt.'s Mot. for Disclosure & Sealed Mot. to Withdraw, at 2. This *argument* related to the disclosure of Attorney Soehnlein's *ex parte* motion to withdraw, a wholly separate issue from the crime-fraud application submitted by other prosecutors in January 2024. Similarly, during the *Curcio* hearing, the trial team never "pointed to the pendency of the crime-fraud *application*." Mot. for Suppl. Disclosure, at 23 (emphasis added). Rather, it *argued* that the crime-fraud *exception* attaches to communications between Gerace and Attorney Soehnlein, and it expressly directed the Court and Gerace to its briefing. *See Curcio* Hr'g Tran., at 46–47; *see also id.* at 47 (Govt. Att'y: "And that's an aspect that we've briefed that remains open by your decision." The Court: "Conceivably, yes.").

Third, Gerace suggests that the trial team "strategically" timed its filing of the Supplement to its Revised and Superseding Motion to Disqualify, (ECF No. 711), (dated Jan. 5, 2024) (hereinafter "Supplement") in response to a *Buffalo News* article critical of the government. *See* Mot. for Suppl. Disclosure, at 23 & n.4. The trial team unequivocally rejects Gerace's offensive speculation. As noted in the Sur-Reply (ECF No. 1051), and as Gerace well knows, the Supplement was filed during the same period that a Grand Jury returned an indictment against Gerace and others for obstructing justice and conspiring to murder Crystal Quinn, and while those same trial team prosecutors were preparing for trial in *United States v. Joseph Bongiovanni*, 1:19-CR-227. Simply put,

> the press of other matters—not the petty schemes that seem to occupy Gerace's attention—required the trial team's attention. And if that were

8

>not enough, Gerace's suggestion is illogical on its face: it is difficult to see how filing a Supplement under seal could have any strategic effect vis-à-vis the journalistic institutions following this matter.

Sur-Reply, at 6 n.2.

Considering that Gerace's own motion for disclosure is riddled with inaccuracies, mischaracterizations, and baseless speculation, it cannot seriously invite the fishing expedition detour he would like to take en route to the speedy trial he has demanded.

      **C.**    **Gerace's complaints about the structure of the government's investigation into his fraudulent conduct are meritless.**

Finally, the remainder of Gerace's motion for supplemental disclosure can best be characterized as a three-part assault on the structure and timing of the U.S. Attorney's Office's investigation into his fraudulent, obstructive conduct before Judge Sinatra. Specifically, Gerace complains that "[t]he government used the pendency of another investigation as a sword and a shield to prevent disclosure on the disqualification motion and prolong the proceedings to Mr. Gerace's detriment." Mot. for Suppl. Disclosure, at 19 (capitalization and bolded removed). Reviewing his arguments in their totality, it appears that Gerace is upset that (1) other AUSAs were investigating some of the conduct underlying the disqualification motion; (2) the trial team disclosed and summarized FBI 302s of interviews with the two individuals related to Judge Sinatra whom Gerace placed on his witness; and (3) other AUSAs did not interview the Investigator. *See id.* at 20–23. Gerace's complaints are unavailing for three reasons.

First, just as Gerace has no right to pick his judges, he lacks any claim over which AUSAs investigate his crimes. Staffing decisions regarding criminal investigations fall under the Executive Branch's exclusive domain, and the decision to assign other prosecutors to the investigation reflects nothing short of a prudent exercise of the Executive Branch's discretion.

9

Second, the trial team disclosed FBI interviews of two civilian witnesses because this Court ordered it to disclose information relating to, and bearing on, Attorney Soehnlein and the disqualification litigation—not because the information, "in [the trial team's] view . . . assisted the arguments it advanced in support of disqualification," though it undeniably did.[7] Mot. for Suppl. Disclosure, at 22.

More fundamentally, the government is wholly at a loss as to what Gerace wants. In one breath, Gerace lambasts the trial team for failing to disclose a non-existent crime-fraud application for his communications with Attorney Soehnlein, arguing that disclosure was necessary because it related to the disqualification motion. *See id.* at 19. In the next, he chides the trial team for disclosing FBI 302s that clearly related to the disqualification motion. *See id.* at 22–23. Though this "heads I win, tails you lose" approach may be at home in Joseph Heller's *Catch-22*, it has no basis in fact, law, or this litigation. *See generally* JOSEPH HELLER, CATCH-22 (1961).

Third, contrary to Gerace's assertions, the decision not to interview the Investigator did not prolong the disqualification proceedings under either the law or the facts. Turning first to the law, the disqualification motion was premised on Attorney Soehnlein being either an active participant in a conspiracy to obstruct justice—and thus a target—**or** an unwitting tool in his client's obstructive scheme—and thus a subject or **witness**. *See* Rev'd & Super. Mot. to Disqualify, at 3, 25, 62–63, 67 (ECF No. 691), (dated Dec. 12, 2023); Supp., at 2; Ltr.

---

[7] For example, though Attorney Soehnlein claimed that Witness 171 had a "particularly close" relationship with Gerace to include the payment of money for various things, Witness 171 called that statement "bullshit," said he had no relationship with Gerace, and offered that he had neither given nor received money to or from Gerace. This information, in turn, supported the inference that Attorney Soehnlein either knowingly lied—and thus knowingly participated in a conspiracy to defraud the Court and fraudulently induce Judge Sinatra's recusal—or unwittingly served as a mouthpiece for Gerace's falsehoods—and was thus a witness to his client's obstruction.

Re. March 15th Oral Arg., at 6, (ECF No. 886) (filed Apr. 22, 2024) ("[I]f Attorney Soehnlein did not affirmatively misrepresent the witness's "particularly close" relationship with Mr. Gerace, he unwittingly relayed false information provided by his client . . . . Because Attorney Soehnlein's role in conveying false information from his client to the Court renders him a witness to his client's misconduct, no 'rational defendant would knowingly and intelligently be represented by him." (quoting *United States v. Fulton*, 5 F.3d 605, 613 (2d Cir. 1993)).

Indeed, several courts have analyzed an attorney's status as a potential witness through the *per se* conflict framework adopted in the trial team's motion to disqualify. *See, e.g.*, *United States v. Cain*, 671 F.3d 271, 295 & n.11 (2d Cir. 2012) (concluding that "the risk that [attorney] would become a witness against his client [in a separate proceeding] was sufficient to justify his disqualification" under the *per se* conflict framework); *United States v. Jones*, 381 F.3d 114, 120–21 (2d Cir. 2004) ("The risk that [attorney] would become a witness at trial was enough alone to allow the district court to [disqualify counsel for an actual conflict] under an abuse of discretion standard."); *cf. In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 160 (2d Cir. 2002) ("If the use of Attorney's testimony were limited to proving that General Counsel committed the crime of false statements in Attorney's presence, the Government would have strong arguments that the work product privilege should not bar a prosecutor's access to eyewitness testimony of the commission of criminal acts.").[8]

Accordingly, even assuming *arguendo* that the Investigator would offer exculpatory information as to *Attorney Soehnlein*, such information would not alleviate the conflict

---

[8] That this Court ultimately decided to exercise its ample discretion to view Attorney Soehnlein's status as a potential witness against his client's obstruction in separate proceedings, *see Cain*, 671 F.3d at 295 & n.11, as creating an actual or potential conflict does not mean the government was wrong to brief the conflict under the *per se* conflict framework.

11

stemming from his status as a potential witness against his client in other prosecutions. That is especially true given the Investigator's apparent unwillingness to proffer via his attorney that he would provide exculpatory information exculpating everyone involved in the conspiracy, including, most notably, Gerace. And even then, the conflict would not be cured, as interviews of Witnesses 171 and 240 independently established probable cause that **either** Gerace's counsel affirmatively lied in filings and statements provided to Judge Sinatra **or** served as unwitting conduits to Gerace's lies.

The facts also underscore that investigative steps vis-à-vis the Investigator did not prolong the disqualification proceedings. Specifically, as the trial team understands it, other AUSAs applied for a crime-fraud order seeking authorization from this Court to interview the Investigator in January 2024. The trial team's understanding is that the Court neither granted nor denied the application. It was not until the March 15th hearing on the ripe and fully briefed disqualification motion that the Court told the *trial team* that it did not think the crime-fraud application submitted by *other AUSAs* was non-justiciable. But by then, as Gerace previously disclosed but now conveniently forgets, the Investigator would only talk with the government if offered immunity. *See* Gerace Resp. in Opp. to Rev'd Mot. to Disqualify, at 24, (ECF No. 771) (filed Feb. 20, 2024) ("Mr. Gerace and Mr. Soehnlein request that the Government afford Mr. Lawrence immunity under 18 U.S.C. § 6003 so that a complete record can be developed on the issue of Mr. Soehnlein's disqualification.").

That demand for immunity proved that any attempt to interview the Investigator— even with a crime-fraud order on hand—would have been fruitless. Because it is axiomatic that neither this Court nor Gerace can force the government to immunize a witness, *see United States v. Todaro*, 744 F.2d 5, 9 (2d Cir. 1984) ("We reiterate our view that a witness' status as

an actual or potential target of prosecution always warrants summary rejection of a claim for defense witness immunity."), it is equally self-evident that Gerace cannot exploit the government's unwillingness to immunize the Investigator as a basis to develop the prosecutorial misconduct claims undergirding his motion for supplemental disclosure. Thus, as a matter of fact, logic, and law, it is simply untrue that another AUSA's investigative approach—namely, to interview the Investigator only after obtaining a crime-fraud order—prolonged the disqualification proceedings or otherwise provides a basis for the disclosures Gerace demands.

* * *

In sum, Gerace's motion for supplemental disclosure fails because it launches from an inaccurate factual premise—*i.e.*, a miscommunication that occurred during a lengthy, intensive *Curcio* hearing. Notwithstanding Gerace's understandable confusion, the motion also fails because it quite clearly mischaracterizes other record evidence. A careful review of the record confirms what Gerace would ignore: the trial team complied with the Court's disclosure order and has accurately represented the facts developed in the investigation. Because there is ultimately no factual, let alone legal, basis for Gerace's motion for supplemental disclosure, it must fail. Therefore, the Court should deny Gerace's motion and keep this case on track, consistent with Gerace's demand for a speedy trial.

## IV.   CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny Gerace's motion for supplemental disclosure (ECF No. 1035).

DATED:   Buffalo, New York, July 8, 2024.

                            TRINI E. ROSS  
                            United States Attorney

BY:   s/JOSEPH M. TRIPI  
       s/ NICHOLAS T. COOPER  
       s/CASEY L. CHALBECK  
       s/CAITLIN M. HIGGINS  
       Assistant United States Attorney  
       Western District of New York  
       138 Delaware Avenue  
       Buffalo, New York 14202  
       716-843-5839  
       Joseph.Tripi@usdoj.gov