UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
SEALED TRANSCRIPT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Docket No.<br>1:19-cr-00227-JLS-MJR<br>1:23-CR-00037-JLS-MJR |
| | * | |
| | * | Buffalo, New York |
| v. | * | May 17, 2023 |
| | * | 11:42 a.m. |
| | * | |
| JOSEPH BONGIOVANNI (1),<br>PETER GERACE, JR. (3), | *<br>* | SEALED PORTION OF<br>TRANSCRIPT |
| Defendants. | *<br>* | |

* * * * * * * * * * * * * *

TRANSCRIPT OF SEALED PROCEEDINGS
BEFORE THE HONORABLE JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    TRINI M. ROSS, ESQ.,
                       UNITED STATES ATTORNEY,
                       By DAVID J. RUDROFF, ESQ.,
                          NICHOLAS COOPER, ESQ.,
                       Federal Centre,
                       138 Delaware Avenue,
                       Buffalo, New York  14202
                       Assistant United States Attorney
                       Appearing for the United States

For Defendant (1):     HARRINGTON & MAHONEY,
                       By MARK J. MAHONEY, ESQ.,
                       70 Niagara Street,
                       Third Floor,
                       Buffalo, New York  14202.

For Defendant (3):     TIVERON LAW, PLLC,
                       By STEVEN M. COHEN, ESQ.,
                       2410 North Forest Road,
                       Suite 301,

```
 1                                    Getzville, New York  14068
                                      And
 2                                    JOSEPH M. LaTONA, ESQ.,
                                      Attorney at Law
 3                                    403 Main Street,
                                      Suite 716,
 4                                    Buffalo, New York  14203
                                      And
 5                                    LIPPES MATHIAS WEXLER FRIEDMAN, LLP,
                                      By ERIC M. SOEHNLEIN,  ESQ.,
 6                                    50 Fountain Plaza,
                                      Suite 1700,
 7                                    Buffalo, New York  14202.

 8
         The Courtroom Deputy:        KIRSTIE L. HENRY
 9

10       The Court Reporter:
                                      BONNIE S. WEBER, RPR,
11                                    Robert H. Jackson Courthouse,
                                      2 Niagara Square,
12                                    Buffalo, New York  14202,
                                      Bonnie_Weber@nywd.uscourts.gov.
13

14       PRESENT:                     SINGER LEGAL, PLLC.,
                                      By ROBERT C. SINGER, ESQ.,
15                                    80 East Spring Street,
                                      Williamsville, New York  14221.
16
                                      THE LAW OFFICE OF PARKER R. MacKAY,
17                                    By PARKER R. MacKAY, ESQ.,
                                      3110 Delaware Avenue,
18                                    Kenmore, New York  14217.

19                                    THE FOTI LAW FIRM, P.C.,
                                      By MARK A. FOTI, ESQ.,
20                                    16 W. Main Street,
                                      Suite 100,
21                                    Rochester, New York  14614.

22

23            Proceedings recorded by mechanical stenography,
                      transcript produced by computer.
24

25          (The sealed portion of the transcript was commenced at
                                  this time.)
```

SEALED TRANSCRIPT

```
 1
 2         THE COURT: Okay.
 3         MR. SOEHNLEIN: So -- and this is -- this might
 4  partially just be my newness to the case, okay?
 5         There is something percolating in -- a couple weeks
 6  ago, Mr. Tripi circulated a video from Todaro, Sr.'s funeral and
 7  indicated that the Government intended to introduce the video
 8  and evidence around Todaro, Sr.'s funeral with regard to
 9  Bongiovanni's belief that Gerace was tied to organized crime.
10         I -- I don't think that any part of it is proper and
11  this might be something we deal with when we deal with the
12  organized crime issue, but candidly, Your Honor, we have some
13  understanding or some sense that there is a relationship that
14  goes back.
15         I don't know that it's anything, okay. I don't. But
16  as long as you said the words, I felt the need to highlight it.
17  It's my job to highlight it and raise it and that's all.
18         MR. COHEN: Let me put a finer point on it, if I may.
19  There were several members of Your Honor's family who are at
20  Senior's funeral and the beautiful flower wreath by the Sinatra
21  family.
22         Also, one of the law enforcement officers to whom
23  Peter Gerace allegedly paid money or he did pay money, but was
24  an officer, a Detective ████ from the Buffalo Police
25  Department, who is related, I think, to your mother.
```

1    That was a completely legitimate transfer.  This had
2 to do with a clam bake that Peter sponsored for the Buffalo
3 Police every year, but the idea is since there was a
4 relationship with Your Honor, we're raising it.
5    We're not asking to disqual or a recusal, we're just
6 raising the issues of the presence at the funeral and --
7    **THE COURT:**  I want to do the last issue first.  I
8 don't think that presents -- so there is two ▉▉▉ officers.
9    The elder is retired, that's the person who was on the
10 3500 list that I just mentioned.  That's my uncle.  He's
11 retired.  That's ▉▉▉.
12    His son is ▉▉▉.  He's --
13    **MR. COHEN:**  You want me to find out which one?
14    **THE COURT:**  -- right now.  Probably it was ▉▉▉, in
15 terms of age.  It doesn't really matter, first cousin or uncle
16 in that situation.
17    I don't think that that is an issue, does anyone?
18    **MR. SOEHNLEIN:**  No.
19    **UNIDENTIFIED SPEAKER:**  I don't know the case --
20    **THE COURT:**  Well, you know the issue now, so if there
21 is going to be a motion -- all right.
22    If there is a motion, make it at some point.  But you
23 know what you know now.  You can learn a couple more facts maybe
24 offline.
25    But the issue is that -- certainly it doesn't raise an

```
 1  issue with me, because there was maybe a clam bake and what --
 2  my uncle raised a lot of money for benevolent causes related to
 3  his job as detective, okay.
 4          MR. COHEN:  As far as the funeral goes --
 5          THE COURT:  I'm going to get to that.  If there is a
 6  motion, make it promptly.
 7          MR. COOPER:  Understood.
 8          THE COURT:  All right.  The second issue is regarding
 9  that and regarding my knowledge of that relationship -- I don't
10  know who sent the flowers.  It certainly wasn't me.  Probably
11  was my father.  It could have been my father.
12          MR. COHEN:  He was Peter's -- he was Joe's best
13  friend.
14          THE COURT:  Who was Joe's best friend?
15          MR. COHEN:  Your -- ▮▮▮▮▮▮.
16          THE COURT:  Who -- which Joe?
17          MR. COHEN:  Joe Todaro.
18          THE COURT:  Senior or Junior?
19          MR. COHEN:  Senior.  The guy who died 11 years ago.
20          THE COURT:  Who said that he was the best friend?
21          MR. COHEN:  The members of Peter's family.
22          THE COURT:  Well, anybody who knew my father would
23  know that he didn't have a best friend.  He had lots of medium
24  level friends, I should say.
25          MR. COHEN:  Okay.
```

1     **THE COURT:** Okay.  So I would be surprised to hear him
2  say that anybody was his best friend.  Somebody who knew him my
3  entire life, he had friends and acquaintances, but no best
4  friend.
5        Now, did he hang around with him once in a while and
6  go to the casino?  Yes.
7        Was he friends with him?  Yes.
8        So that's the -- did they socialize together?  Yes.
9        Did they go to Atlantic City?  Yes.  For casino
10 gambling.  And that is defendant Gerace's grandfather, okay?
11       Those are the facts.
12       Did I miss anything, Mr. Soehnlein?
13    **MR. SOEHNLEIN:** Not that I know about, Judge.
14    **THE COURT:** Okay.  Again, any motions related to that,
15 make them promptly.  I don't see any issues there either.
16       I mean, we -- if you remember this case, Mr. Cooper,
17 who was here before, we had a disclosure by me -- that's
18 Buffalo, all right?
19       And early on in this case, when we had defendant
20 Masecchia on this case, I made a disclosure that by -- of the
21 fact that Mr. Masecchia, his father and mother were at my house
22 once in Cleveland.
23       Why?  Because my father brought them there one time.
24 They would come and visit us while we lived in Cleveland -- my
25 parents, to see their grandchildren.

1    And once in a while, he brought a person as a show and
2    tell. I don't know. Somebody that he was hanging around with
3    at the time.
4        Getting back to my point, there was nobody or
5    whatever -- he had a lot of friends, some closer than others,
6    but people -- did he ever utter those words? I don't know.
7        Maybe somebody did after a night out gambling, but I
8    would be surprised if anyone was ever best friends with my
9    father.
10       MR. SOEHNLEIN: We understand the --
11       THE COURT: Not to minimize it. I just think the
12   label "best friend" is probably not appropriate. Friends, yeah.
13   I would say that's accurate.
14       MR. SOEHNLEIN: Yeah. And I hope Your Honor
15   understands, the reason we're doing this -- the reason I wanted
16   to do this right now is so that we have better insight from Your
17   Honor. We might be able to forego any --
18       MR. COHEN: We didn't want some of this to pop up at
19   trial. We wanted to mention it now.
20       THE COURT: Since we're here and talking and using our
21   imaginations, give me some idea of where this could become a
22   problem. Give me some hypotheticals.
23       MR. COHEN: I believe that Joe Tripi -- Mr. Tripi, he
24   already indicated that he intends to use the funeral to show
25   that my client hangs out with bad guys.

```
 1              THE COURT:  Okay.
 2              MR. COHEN:  To the extent that he does that, I intend
 3   to show that at that very funeral, there were a lot of good
 4   guys.  I mean, there were politicians.  There were celebrities.
 5              THE COURT:  And the judge's own father.
 6              MR. COHEN:  And your family as well, yes.  And
 7   brother, by the way.
 8              THE COURT:  Okay.  Which?
 9              MR. COHEN:  Was it brother ███████, maybe?
10              THE COURT:  It doesn't matter which one it was.
11              MR. COHEN:  And also, you know, that big wreath:  With
12   love, from the Sinatra family.
13              MR. COOPER:  So are you saying that that would be your
14   intention, to bring that out during the trial?
15              I'm just asking.
16              MR. COHEN:  If Joe was saying that, look, you know,
17   he's there with these bad guys, with these mafia, with these
18   organized crime -- he was -- okay, but -- and we will --
19              MR. SOEHNLEIN:  To put a finer point on it, Judge, the
20   import of the proof, as I understand it from Mr. Tripi's
21   proffer, is not that the Todaros were involved in organized
22   crime.
23              The import is that because law enforcement was
24   watching that funeral, Bongiovanni believed that he was part of
25   organized crime.
```

```
 1          THE COURT:  Yeah.  I get that that's pretty clear from
 2   the Government's papers on that -- what the angle is on that.
 3          MR. SOEHNLEIN:  Right.  That's the angle.  And so in
 4   order to undercut that belief, okay, we would want to show other
 5   people there that no one would ever believe would be involved in
 6   organized crime or unlawful activity.
 7          And so to that extent, fortunately or unfortunately,
 8   the more honorable the person is who is in attendance, the more
 9   powerful the proof is for us.
10          For us and, frankly, for Bongiovanni's defense team as
11   well.
12          THE COURT:  All right.  I get it.  Now, listen, when
13   you read United States versus Long -- Mr. Cooper, especially,
14   you're going to look at me -- and believe when me when I tell
15   you this, the case is what it is, it says what it says.
16          And this issue is not going to impair my ability to
17   decide United States versus Long and that motion in limine.
18          So don't think for a minute that I'm going to decide
19   the motion in limine in a certain way, because of this issue
20   that was just raised here.
21          MR. COOPER:  Judge, I don't think that of you at all.
22          THE COURT:  Now, if somebody wants to make a motion
23   before I even decide that motion in limine, so I don't have a
24   chance to, you file the motion.
25          On the other hand, I don't think it's an issue and I
```

1  don't think it's an issue at trial.  I don't think it's an issue
2  under the recusal statute either -- statute.
3       Some of this may depend on how the motion in limine
4  gets decided, too.
5       MR. COOPER:  Yeah.  So I guess --
6       THE COURT:  Before I said that, I wanted you to know
7  that I'm not shading a decision on that motion because of this
8  issue --
9       MR. COOPER:  I don't --
10      THE COURT:  -- because I found United States versus
11 Long weeks and weeks and weeks ago, way before this issue.
12      MR. COOPER:  I didn't think that of you, Judge.
13      THE COURT:  Okay.
14      MR. COOPER:  What I would say is that I would like --
15 obviously, there is a missing person in the room today.
16 Mr. Tripi is not here.  This is --
17      THE COURT:  I'm not asking you to make the motion now.
18      MR. COOPER:  Correct.  And what I would like to say
19 is --
20      THE COURT:  Go, read the transcript --
21      MR. COOPER:  -- just give us time to go back and talk
22 --
23      THE COURT:  -- talk amongst yourselves, you still need
24 to make any moves promptly, I think it's fair to say.
25      MR. COOPER:  Absolutely.

1     THE COURT: While we're here, the two new lawyers to
2  the game probably don't know this already, but you will see a
3  Michael Sinatra in the file somewhere.
4          That's not my brother. That's a different Michael
5  Sinatra. He is a landscaper. My Michael Sinatra is the
6  restaurant guy.
7          MR. COOPER: That's accurate.
8          THE COURT: You will also see overlap with names in
9  the 3500 and elsewhere in the discovery; names that overlap with
10 assistant U.S. Attorneys that are in this case, also unrelated.
11         That's for the benefit of the two new lawyers, but
12 that's -- again, it's Buffalo.
13         MR. SOEHNLEIN: There are no other Soehnleins, don't
14 worry.
15         MR. COOPER: Thank goodness.
16         THE COURT: All I have to say is -- is there anything
17 else on that issue that Mr. Soehnlein, Mr. Cohen brought up?
18         That's the one vignette, if you will, of where this is
19 going to come up.
20         MR. SOEHNLEIN: I think so, Judge.
21         MR. COHEN: I think that's the scenario.
22         MR. SOEHNLEIN: Yes.
23         THE COURT: Okay. Because if there is a second
24 vignette, I think we all should know it.
25         MR. SOEHNLEIN: Put it this way, we -- I only became

1  aware of this issue maybe a week ago and so -- I checked with
2  prior counsel, because I know that you had done something early
3  in the case, you know, saying essentially what you just said:
4  It's Buffalo.
5       And so I've been trying to figure out if that's what
6  this is referring to or anything.  And so I felt like this was
7  the most appropriate way to -- to voir dire this issue.
8       As I'm sure you understand, Your Honor, this is
9  something that we had to bring up one way or another.
10      **THE COURT:**  Look, you read this witness list.  I
11 recognize names on the witness list.  Why?  Because it's
12 Buffalo.
13      **MR. SOEHNLEIN:**  I understand.
14      **THE COURT:**  I've had trials where I knew the witness,
15 because I knew the witness from Buffalo.
16      I don't think that creates an issue, certainly not
17 under the recusal statute and certainly not an appearance of
18 impropriety issue.
19      There are people on the witness list, too, I've
20 encountered in public.  Like Mr. Singer said, you encounter
21 people.
22      **MR. COHEN:**  Just making you aware of it, Your Honor.
23      **THE COURT:**  But I think that is just -- in a case like
24 this, in certain parts of the city, certain neighborhoods,
25 certain ethnicities, if you will, you are going to get people

1  recognized.
2      And you'd probably have that with at least two of the
3  other judges in this building.
4      So anything else --
5      MR. SOEHNLEIN: That's true, Judge. That's true.
6      THE COURT: -- to talk about?
7      MR. COOPER: Nothing from the Government.
8      MR. SOEHNLEIN: I don't think so.
9      THE COURT: Any motions from anybody, obviously,
10 sooner rather than later is all I can say.
11     MR. COHEN: Well, I mean, just be prepared, as I think
12 everybody is, Peter is behind bars. We want him out, especially
13 given the adjournment, so we're going to be making a motion for
14 pretrial release, if not today.
15     THE COURT: If there is any indication at all that I
16 have got no favoritism by whatever -- I mean, your client was
17 detained because I thought that was the right answer to the
18 Government's detention motion.
19     So if there is any questions about whether I'm calling
20 the balls and strikes properly, then that can be dispelled.
21     But, if you know, that's going to be an issue, bring
22 it up sooner rather than later, because I don't want any taint
23 on this case at all, okay?
24     MR. COHEN: Thank you.
25     THE COURT: Not even a suggestion of one, so now is

```
 1  the time to bring it up.
 2          MR. COOPER:  Thank you, Judge.
 3          MR. SOEHNLEIN:  Thank you.
 4          THE COURT:  All right.  Everybody, thank you.
 5
 6          (The sealed portion of the transcript was concluded at
 7  this time.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

In accordance with 28, U.S.C., 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Western District of New York before the Honorable John L. Sinatra, Jr.

s/ Bonnie S. Weber          May 19, 2023
Signature                    Date

**BONNIE S. WEBER, RPR**

Official Court Reporter
United States District Court
Western District of New York