08:26AM

1          UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF NEW YORK
2

   _____
3  UNITED STATES OF AMERICA,

                              Case No. 1:19-cr-227
4               Plaintiff,              (LJV)
   v.
5                             September 30, 2024
   JOSEPH BONGIOVANNI,
6
                Defendant.
   _____
7

8       TRANSCRIPT EXCERPT - EXAMINATION OF BRIAN BURNS - DAY 2
             BEFORE THE HONORABLE LAWRENCE J. VILARDO
9                  UNITED STATES DISTRICT JUDGE

10 APPEARANCES:          TRINI E. ROSS, UNITED STATES ATTORNEY
                          BY: JOSEPH M. TRIPI, ESQ.
11                           NICHOLAS T. COOPER, ESQ.
                             CASEY L. CHALBECK, ESQ.
12                        Assistant United States Attorneys
                          Federal Centre, 138 Delaware Avenue
13                        Buffalo, New York 14202
                          For the Plaintiff
14
                          SINGER LEGAL PLLC
15                        BY: ROBERT CHARLES SINGER, ESQ.
                          80 East Spring Street
16                        Williamsville, New York 14221
                             And
17                        LAW OFFICES OF PARKER ROY MacKAY
                          BY: PARKER ROY MacKAY, ESQ.
18                        3110 Delaware Avenue
                          Kenmore, New York 14217
19                           And
                          OSBORN, REED & BURKE, LLP
20                        BY: JOHN J. GILSENAN, ESQ.
                          120 Allens Creek Road
21                        Rochester, New York 14618
                          For the Defendant
22
   PRESENT:              BRIAN A. BURNS, FBI Special Agent
23                        MARILYN K. HALLIDAY, HSI Special Agent
                          KAREN A. CHAMPOUX, USA Paralegal
24
   LAW CLERK:            REBECCA FABIAN IZZO, ESQ.
25

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

1   **COURT DEPUTY CLERK:    COLLEEN M. DEMMA**

2   **COURT REPORTER:        ANN MEISSNER SAWYER, FCRR, RPR, CRR**
                            Robert H. Jackson Federal Courthouse
3                            2 Niagara Square
                            Buffalo, New York  14202
4                            Ann_Sawyer@nywd.uscourts.gov

5                        *    *    *    *    *    *    *

6

09:05AM   7           (Excerpt commenced at 9:05 a.m.)

09:05AM   8           (Jury present.)

09:05AM   9           **THE COURT:**  The record will reflect that all our

09:06AM  10   jurors are present.

09:06AM  11           I remind the witness that he's still under oath.

09:06AM  12           And, Mr. MacKay, you're up.

09:06AM  13

09:06AM  14   **B R I A N   B U R N S**, having been previously duly called and

09:06AM  15   sworn, continued to testify as follows:

09:06AM  16

09:06AM  17           **(CONT'D) CROSS-EXAMINATION BY MR. MacKAY:**

09:06AM  18   Q.  All right.  Good morning, again, Agent Burns, how are

09:06AM  19   you?

09:06AM  20   A.  Good morning, Mr. MacKay, I'm disappointed after last

09:06AM  21   night.

09:06AM  22   Q.  So we talked on Friday about an FBI investigation into

09:06AM  23   individuals associated with the bar Gables in North Buffalo;

09:06AM  24   do you recall that?

09:06AM  25   A.  That's correct.

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

09:06AM  1   Q.  You told us the people were arrested back in 2010, 2011

09:06AM  2   timeframe, correct?

09:06AM  3   A.  I think '09 and '10 maybe, without the records.  But

09:06AM  4   around there, yeah.

09:06AM  5   Q.  Right there.  Somewhere in --

09:06AM  6   A.  Absolutely.

09:06AM  7   Q.  -- the '10 timeframe?

09:06AM  8   A.  Yeah.

09:06AM  9   Q.  And you told us those individuals were released back into

09:06AM  10  the community after the arrest, correct?

09:06AM  11  A.  That's correct.

09:06AM  12  Q.  And they were arrested, but they weren't charged,

09:06AM  13  correct?

09:06AM  14  A.  Correct.

09:06AM  15  Q.  And you'd agree with me, it's very possible that these

09:06AM  16  individuals went back into the community and talked about

09:07AM  17  their arrest to other people in the community?

09:07AM  18  A.  I would say it's possible, I don't know about very

09:07AM  19  possible, but it's possible.

09:07AM  20  Q.  It's something that could have happened, fair to say?

09:07AM  21  A.  I would agree with that, that's something that could have

09:07AM  22  happened.

09:07AM  23  Q.  Okay.  It's very -- it's possible they could have told

09:07AM  24  the people at the bar they worked at, correct?

09:07AM  25  A.  My experience --

09:07AM    1    Q.  Not -- so the question was:  Is it possible they could

09:07AM    2    have done that?

09:07AM    3         **MR. COOPER:**  Objection.

09:07AM    4         **THE COURT:**  Overruled.

09:07AM    5         **THE WITNESS:**  It's possible.  Anything is possible.

09:07AM    6         **BY MR. MacKAY:**

09:07AM    7    Q.  Okay.  And you knew Mike Masecchia was an individual who

09:07AM    8    frequented the bars in North Buffalo, correct?

09:07AM    9    A.  Yes, he was known to be -- frequent those bars in North

09:07AM   10    Buffalo.

09:07AM   11    Q.  Okay.  And to your knowledge, working on the FBI

09:07AM   12    investigation, as far as you know, the FBI didn't share

09:07AM   13    anything about this arrest with the public, correct?

09:07AM   14    A.  As far as I know, that's correct.

09:07AM   15    Q.  Okay.  And in your investigation, you also don't know

09:07AM   16    when Ron Serio learned about this information, correct?

09:07AM   17    A.  Just what he testified in the courtroom.

09:08AM   18    Q.  Okay.  Now, I want to go through these charts that were

09:08AM   19    produced.

09:08AM   20         **MR. MacKAY:**  Can we pull up, Ms. Champoux, Government

09:08AM   21    Exhibit 552?

09:08AM   22         **BY MR. MacKAY:**

09:08AM   23    Q.  We'll call this the lines connection chart; is that fair?

09:08AM   24    A.  That's fair.

09:08AM   25    Q.  What you tried to do here is visualize some of the

09:08AM    1    connections that have been generated in this trial, correct?

09:08AM    2    A.  That's correct.

09:08AM    3    Q.  You based it on testimony and evidence that came in at

09:08AM    4    this trial, correct?

09:08AM    5    A.  That's correct.

09:08AM    6    Q.  Now, fair to say this chart is produced using some sort

09:08AM    7    of computer program, correct?

09:08AM    8    A.  Yeah.  I think -- I forget the name of it.

09:08AM    9    Q.  Yeah, I mean, you don't sit here and draw all these lines

09:08AM    10   one by one, correct?

09:08AM    11   A.  No.  We, I mean, we had a paper one at the beginning that

09:08AM    12   had little sticky notes and lines, but then we had an analyst

09:08AM    13   generate it.

09:08AM    14   Q.  But 552, that's in front of us in the jury, you put

09:08AM    15   information in a program and it helps you to actually

09:08AM    16   generate the final product that we see here, correct?

09:09AM    17   A.  Right.  Yeah.  My understanding that we gave the links,

09:09AM    18   and then the computer would make the lines and angle them so

09:09AM    19   they all wouldn't overlap.

09:09AM    20   Q.  Right.  I mean, like, I don't have the artistic mind to

09:09AM    21   do this, I assume, you know, you didn't sit here and do the

09:09AM    22   same thing trying to freehand this whole chart?

09:09AM    23   A.  No, not at all, the program did that.

09:09AM    24   Q.  It's generated by -- you give the computer program,

09:09AM    25   here's the people that are connected, and it makes the chart

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

6

09:09AM  1   in the simplest form, correct?

09:09AM  2   A.  That's accurate, I agree.

09:09AM  3   Q.  And in doing that, you can really organize it to put, for

09:09AM  4   example, anybody in the middle, correct?

09:09AM  5   A.  Yeah, we chose to put the defendant in the middle because

09:09AM  6   it was kind of the focus of the trial.

09:09AM  7   Q.  Right.  Because this is a trial about Joe Bongiovanni,

09:09AM  8   correct?

09:09AM  9   A.  That's correct.

09:09AM  10  Q.  I mean, you can reorganize this chart to put, for

09:09AM  11  example, Peter Gerace in the middle, correct?

09:09AM  12  A.  We could, yes.

09:09AM  13  Q.  It would reorganize the lines in some fashion, but same

09:09AM  14  program, same connections, you can generate the chart to look

09:09AM  15  like that, correct?

09:09AM  16  A.  That's my understanding, I don't know how to run the

09:09AM  17  program, but --

09:09AM  18  Q.  Okay.  And, for example, you can choose what picture you

09:10AM  19  want to put there of Mr. Bongiovanni, correct?

09:10AM  20  A.  That's correct.  Well, I think we had to choose a picture

09:10AM  21  that was in evidence.

09:10AM  22  Q.  Right.  But, you know, ultimately, this is work product

09:10AM  23  of the FBI and the -- the prosecution, correct?

09:10AM  24  A.  Yes, and HSI.  Absolutely.

09:10AM  25  Q.  And these charts, you began creating them before this

09:10AM    1    trial, correct?

09:10AM    2    A.  I'm sorry?

09:10AM    3    Q.  You began working and formulating these charts prior to

09:10AM    4    the start of this actual trial, correct?

09:10AM    5    A.  Yeah, I think it was mid to late June.

09:10AM    6    Q.  Yeah.  Do you have any reason to disagree with me they

09:10AM    7    were first turned over to the defense sometime in like, June?

09:10AM    8    A.  Or early maybe July, right around there.  I would agree

09:10AM    9    with you.

09:10AM   10    Q.  Yeah.  Sometime prior to the July 29th date that we all

09:10AM   11    came into court to start selecting a jury; fair to say?

09:10AM   12    A.  It evolved.  I mean, we did that based on testimony from

09:10AM   13    a prior proceeding, and -- with the understanding that what

09:10AM   14    would come out here would be what is heard this trial, in

09:10AM   15    this courtroom.

09:10AM   16    Q.  Okay.  Yeah, so let's talk about that.

09:10AM   17        What you did is in determining how to create this, you

09:11AM   18    looked at what happened in a prior proceeding; correct?

09:11AM   19    A.  That was our foundation to start.

09:11AM   20    Q.  Right.  And this chart did not exist for the prior

09:11AM   21    proceeding, correct?

09:11AM   22    A.  Did not.

09:11AM   23    Q.  Okay.  And it might sound silly, but you didn't call us

09:11AM   24    up, you didn't call me or Mr. Singer to ask you how to make

09:11AM   25    this chart, did you?

| | | |
|---|---|---|
| 09:11AM | 1 | A.  No, sir. |
| 09:11AM | 2 | Q.  Okay.  Now, it certainly wasn't a collaborative project |
| 09:11AM | 3 | between the prosecution and the defense, correct? |
| 09:11AM | 4 | A.  No, sir. |
| 09:11AM | 5 | Q.  Now if you draw a line from the judge to the door in the |
| 09:11AM | 6 | back of the courtroom, this is essentially work product of |
| 09:11AM | 7 | everybody on this side of the courtroom, correct? |
| 09:11AM | 8 | A.  It's a government exhibit, yes. |
| 09:11AM | 9 | Q.  Okay.  Now, let's talk about some of the connections that |
| 09:11AM | 10 | are embodied here. |
| 09:11AM | 11 |     The lines here, they're all the same thickness; correct? |
| 09:11AM | 12 | A.  That's correct. |
| 09:11AM | 13 | Q.  But you'd agree with me that some of the connections |
| 09:11AM | 14 | between individuals, there's different levels of connection |
| 09:11AM | 15 | here; that fair to say? |
| 09:11AM | 16 | A.  That's fair to say. |
| 09:11AM | 17 | Q.  Like, for example, the connection line between Joe |
| 09:11AM | 18 | Bongiovanni and Lou Selva, that's generated because they're |
| 09:12AM | 19 | best friends; fair to say? |
| 09:12AM | 20 | A.  Yes. |
| 09:12AM | 21 | Q.  Now the connection on other individuals comes in, at |
| 09:12AM | 22 | least some cases, because somebody's contact is in a phone, |
| 09:12AM | 23 | correct? |
| 09:12AM | 24 | A.  That's correct. |
| 09:12AM | 25 | Q.  For example, Joe Bella, do you see him there?  Circle him |

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

09:12AM 1    here?

09:12AM 2    A.   Yep.

09:12AM 3    Q.   The lines coming mostly from his little bubble there,

09:12AM 4    we'll call it, those are formed from contacts in his phone,

09:12AM 5    correct?

09:12AM 6    A.   Right.  Mr. Bella did not testify, so we utilized the

09:12AM 7    phone extraction to pull the contacts from the -- his phone

09:12AM 8    extraction.

09:12AM 9    Q.   Yeah, but that's --

09:12AM 10   A.   His phone extraction that was seized by Agent Mozg.

09:12AM 11   Q.   Yeah, that was my question.  Joe Bella didn't testify in

09:12AM 12   this proceeding, correct?

09:12AM 13   A.   That's correct.

09:12AM 14   Q.   And what you used as -- I think it was exhibit, maybe one

09:12AM 15   of the 310 exhibits, that was the phone extraction that

09:12AM 16   showed his contacts, correct?

09:12AM 17   A.   Yeah, I don't remember the number, but, I mean, yeah.

09:12AM 18   Q.   Yeah, I don't remember the exhibit number, but, you know,

09:12AM 19   take my word, it's the extraction?

09:13AM 20   A.   Yeah, I agree, that's --

09:13AM 21   Q.   And that was used to generate some of those lines,

09:13AM 22   correct?

09:13AM 23   A.   Definitely, yeah.

09:13AM 24   Q.   And, you know, so fair to say we didn't hear testimony in

09:13AM 25   this trial about how, like, those contacts got in the phone,

| 09:13AM | 1 | correct? |
| 09:13AM | 2 | A.  Definitely. |
| 09:13AM | 3 | Q.  Okay.  We didn't hear testimony about how often these |
| 09:13AM | 4 | individuals called each other, correct? |
| 09:13AM | 5 | A.  That's correct. |
| 09:13AM | 6 | Q.  Okay.  Now, let's look at the line between Joe Bella and |
| 09:13AM | 7 | Joe Bongiovanni.  Why'd you draw that line? |
| 09:13AM | 8 | A.  It's related to the Nancy Standish testimony. |
| 09:13AM | 9 | Q.  How so? |
| 09:13AM | 10 | A.  When she testified that they would be at the same bar in |
| 09:13AM | 11 | proximity to each other. |
| 09:13AM | 12 | Q.  Okay.  So, that line, here, is based simply because two |
| 09:13AM | 13 | people were in close proximity to each other in a bar, |
| 09:13AM | 14 | correct? |
| 09:13AM | 15 | A.  Well, I'd like to -- if I could look at that and see if |
| 09:13AM | 16 | there's anything else on that, the supporting, the 3500, I |
| 09:13AM | 17 | just want to review that. |
| 09:13AM | 18 | Q.  Well, no.  I mean, for right now, my question stands, to |
| 09:13AM | 19 | your recollection, how did you actually generate that line? |
| 09:13AM | 20 | A.  That's to my recollection.  But if I had -- there might |
| 09:13AM | 21 | be additional, I mean, to recall, as I mentioned it was 179 |
| 09:13AM | 22 | of these connections and -- in our -- in the spreadsheet we |
| 09:14AM | 23 | created. |
| 09:14AM | 24 | Q.  Sure, yeah.  So what you're referring to is a spreadsheet |
| 09:14AM | 25 | that actually you used is kind of a master list to generate |

09:14AM    1    the corrections, correct?

09:14AM    2    A.   Correct.  And it would be if somebody's testimony, if two

09:14AM    3    people testified to something, I would put their -- we would

09:14AM    4    put their names on the line.  And then if there was an

09:14AM    5    exhibit or two, and it's quite possible that that one is just

09:14AM    6    the Standish testimony, but I'd want to -- I think your

09:14AM    7    original question was how did you generate it, so if I had

09:14AM    8    that, there might be additional information.

09:14AM    9    Q.   Sure.  And I'm not trying to hide anything here.

09:14AM    10           **MR. MacKAY:**  So, Ms. Champoux, can we show the

09:14AM    11    witness only Government Exhibit 3633AQ?

09:14AM    12           **BY MR. MacKAY:**

09:14AM    13    Q.   Can you read that?

09:14AM    14    A.   Yeah.  That -- that's -- that 3500 relates to items in

09:14AM    15    the paper file, the shared drive, and the --

09:14AM    16    Q.   Well, no, I don't want you to narrate what this is

09:14AM    17    because it's not in evidence.

09:14AM    18    A.   Oh, okay.

09:14AM    19           **MR. MacKAY:**  Can we scroll down some pages,

09:15AM    20    Ms. Champoux?  Some pages, I think we'll see it here.

09:15AM    21           You can keep going.  Okay.

09:15AM    22           **BY MR. MacKAY:**

09:15AM    23    Q.   All right.  So, I think we're on page -- I think this is

09:15AM    24    4 of the exhibit.

09:15AM    25           All right.  So, again, I don't want you to narrate, I

09:15AM 1    just want you to look --

09:15AM 2    A.  I understand.

09:15AM 3    Q.  -- and try to figure out the answer of my original

09:15AM 4    question.  Why did you draw the line from Joe Bella to Joe

09:15AM 5    Bongiovanni?

09:15AM 6    A.  Okay.  So I did indicate that Nancy Standish, as I

09:15AM 7    mentioned, and additionally in looking at this, it refreshes

09:15AM 8    my memory that Louis Selva also testified that they had a

09:15AM 9    connection, a relationship.

09:15AM 10   Q.  Okay.  Now, we'll leave that up there in case you need

09:15AM 11   any review.

09:15AM 12       What we're looking at here, this chart -- well, sorry,

09:15AM 13   we're not looking at it.  But what you refreshed your

09:15AM 14   recollection with was a chart, again, showing the connections

09:15AM 15   as you understood them to be based on your review of

09:15AM 16   testimony and evidence, correct?

09:15AM 17   A.  You're referring to the spreadsheet?

09:15AM 18   Q.  Yes, what's in front of you.

09:16AM 19   A.  Yes.

09:16AM 20   Q.  Okay.  Now, that's not the first version of that

09:16AM 21   spreadsheet, correct?

09:16AM 22   A.  No, it evolved as the trial went on, like each week,

09:16AM 23   or --

09:16AM 24   Q.  So, yes.  So the one you're looking at now is not the one

09:16AM 25   that you originally started with, correct?

09:16AM      1    A.   That's correct.

09:16AM      2    Q.   You had a prior version, and you modified that over time,

09:16AM      3    correct?

09:16AM      4    A.   That's correct.

09:16AM      5    Q.   And the prior version, what you started with, was based

09:16AM      6    on, again, the testimony or the evidence at the prior

09:16AM      7    proceeding, correct?

09:16AM      8    A.   I would say it was our baseline.  But, I mean, obviously

09:16AM      9    to make that exhibit for this trial, it had to -- all that

09:16AM     10    information had to come through the course of this trial.  It

09:16AM     11    had to be introduced.

09:16AM     12    Q.   Okay, so, let's take a look.

09:16AM     13          MR. MacKAY:   Ms. Champoux, can we go back to

09:16AM     14    Government Exhibit 552?

09:16AM     15          BY MR. MacKAY:

09:16AM     16    Q.   Okay.  This guy, Mark Falzone.

09:16AM     17    A.   Correct.

09:16AM     18    Q.   He was a subject of investigation in -- your total

09:16AM     19    investigation that you ran, correct?

09:16AM     20    A.   I'm sorry?

09:16AM     21    Q.   I mean, he was a subject of investigation in this case,

09:16AM     22    correct?

09:16AM     23    A.   Yeah.  He was part of the Serio drug-trafficking

09:16AM     24    organization.

09:16AM     25    Q.   Right.  There's a line here.  I don't know that I'll get

09:17AM   1   it right, but there's a line that reflects his connection to

09:17AM   2   Ron Serio, correct?

09:17AM   3   A.   Yeah.   They were, like, best friends, and he helped him

09:17AM   4   in the marijuana distribution, including trips to New York

09:17AM   5   and then at the residence when they offloaded the wood chips.

09:17AM   6   Q.   Sure.   Now, again, you sat here in court.   Mark Falzone

09:17AM   7   did not testify in this proceeding, correct?

09:17AM   8   A.   He did not in this proceeding.

09:17AM   9   Q.   Yet, in drawing some of the lines here, you did rely on

09:17AM   10  his testimony though, correct?

09:17AM   11  A.   I did not.

09:17AM   12  Q.   Okay.   Do you want to take a look at your sheet again?

09:17AM   13  A.   Certainly.

09:17AM   14        **MR. MacKAY:**   Okay.   Ms. Champoux, can we go back to

09:17AM   15  Government Exhibit 3633AQ, can we go to page 9?   Can you

09:17AM   16  rotate that?

09:17AM   17        **BY MR. MacKAY:**

09:17AM   18  Q.   Okay.   Take a look at that, and refresh your rec -- tell

09:17AM   19  me if that refreshes your recollection as to whether you

09:18AM   20  relied on Mark Falzone's testimony to produce that chart.

09:18AM   21  A.   Well, that one you're referring to is Chris Baker.   But

09:18AM   22  we did not use Mark Falzone's.

09:18AM   23      That was from the original version, but we did not

09:18AM   24  consider any of Mark Falzone's testimony in this trial.

09:18AM   25  Q.   Okay.   But you recall that in the prior versions of

09:18AM    1    charts that you produced, in the prior version -- I'm sorry,

09:18AM    2    the prior version of these charts you produced, you had Mark

09:18AM    3    Falzone's in a lot -- name in a lot more places; correct?

09:18AM    4    A.  That's correct.

09:18AM    5    Q.  And you tried to remove that where you thought the

09:18AM    6    evidence in this trial satisfied that, correct?

09:18AM    7    A.  That's correct.

09:18AM    8    Q.  But here, ultimately in the final chart that you did use

09:18AM    9    to produce the exhibit, you still left Mark Falzone's name

09:18AM   10    in, correct?

09:18AM   11         **MR. COOPER:**  Objection to the form of question.  The

09:18AM   12    chart that's in evidence doesn't have this index that he's

09:18AM   13    being asked about, and so if we can -- I'd like to come up and

09:18AM   14    argue it if we're gonna continue down this --

09:18AM   15         **THE COURT:**  Come up and argue it.

09:18AM   16         **MR. COOPER:**  Thanks.

09:19AM   17         (Sidebar discussion held on the record.)

09:19AM   18         **THE COURT:**  I don't see anything wrong with the form

09:19AM   19    of the question.

09:19AM   20         **MR. COOPER:**  So the -- so the line that exists

09:19AM   21    between Serio and Baker that Mr. MacKay is questioning him

09:19AM   22    about, has five witnesses and in the exhibit of evidence that

09:19AM   23    are in support of it.  What he's pointing out, which I

09:19AM   24    understand, is that Falzone's name wasn't removed from that,

09:19AM   25    but the -- the form of the question is saying you used

09:19AM    1    Falzone's testimony to draw that line.  There's six bases for

09:19AM    2    the line that exists between Baker and Serio.

09:19AM    3        **THE COURT:**  And you can do that on redirect.  You can

09:19AM    4    say that wasn't the only reason, there were other reasons as

09:19AM    5    well.

09:19AM    6        **MR. COOPER:**  Okay.  Understood.  All right.

09:19AM    7        I'll withdraw the objection.  Thank you, Judge.

09:19AM    8        (End of sidebar discussion.)

09:19AM    9        **THE COURT:**  So are you withdrawing?

09:19AM   10        **MR. COOPER:**  I'll withdraw the objection.  Thanks,

09:19AM   11    Judge.

09:19AM   12        **MR. MacKAY:**  I'm sorry, Ms. Sawyer, can you read back

09:19AM   13    the last question for us?

09:19AM   14        (The above-requested question was then read by the

09:19AM   15    reporter.)

09:20AM   16        **THE WITNESS:**  On this index, yes.

09:20AM   17        **BY MR. MacKAY:**

09:20AM   18    Q.  Okay.

09:20AM   19    A.  The chart does not rely on Mark Falzone's testimony, as

09:20AM   20    he did not testify in this trial.

09:20AM   21    Q.  Okay.

09:20AM   22        **MR. MacKAY:**  All right.  Ms. Champoux, can we go to

09:20AM   23    Government Exhibit 551?

09:20AM   24        **BY MR. MacKAY:**

09:20AM   25    Q.  Okay.  So this is another of the charts you produced?

| | | |
|---|---|---|
| 09:20AM | 1 | A.  That's correct. |
| 09:20AM | 2 | Q.  Same thing, you put Joe Bongiovanni in the middle, |
| 09:20AM | 3 | correct? |
| 09:20AM | 4 | A.  That's correct. |
| 09:20AM | 5 | Q.  Because he's the defendant here, correct? |
| 09:20AM | 6 | A.  That's accurate. |
| 09:20AM | 7 | Q.  And is a fair way to summarize this, the government's |
| 09:20AM | 8 | theory about what witnesses and evidence pertain to what |
| 09:20AM | 9 | overt acts and Counts, correct? |
| 09:20AM | 10 | A.  I'm sorry? |
| 09:20AM | 11 | Q.  Is a fair way to summarize what this chart is trying to |
| 09:20AM | 12 | impart is the government's theory on what witnesses and what |
| 09:20AM | 13 | evidence pertain to what Counts and overt acts in the |
| 09:20AM | 14 | indictment? |
| 09:20AM | 15 | A.  That's accurate. |
| 09:20AM | 16 | Q.  Okay.  Now, I'm not going to go through all of this, but, |
| 09:21AM | 17 | you know, it's fair to say there were a lot of agencies |
| 09:21AM | 18 | involved in this investigation, correct? |
| 09:21AM | 19 | A.  A lot of witnesses from various agencies. |
| 09:21AM | 20 | Q.  Okay.  Now, yeah, I mean, I want to clarify that.  Just |
| 09:21AM | 21 | because a witness came in and testified, that doesn't mean |
| 09:21AM | 22 | that their agency was directly involved in the investigation |
| 09:21AM | 23 | of Joe Bongiovanni, correct? |
| 09:21AM | 24 | A.  That's what I was alluding to, is they're witnesses, they |
| 09:21AM | 25 | weren't involved in the investigation of Mr. Bongiovanni. |

| | | |
|---|---|---|
| 09:21AM | 1 | Q.  Right.  So if we go -- |
| 09:21AM | 2 | A.  Some were, but not -- |
| 09:21AM | 3 | Q.  If we go around the circle on the witnesses, these are |
| 09:21AM | 4 | all law enforcement witnesses, correct? |
| 09:21AM | 5 | A.  Correct. |
| 09:21AM | 6 | Q.  Right.  Because next to each one of these, you have the |
| 09:21AM | 7 | symbols for their own agencies, correct? |
| 09:21AM | 8 | A.  That's correct. |
| 09:21AM | 9 | Q.  Now, what I was getting at with my prior question is, you |
| 09:21AM | 10 | know, Mike O'Rourke, I circled him here. |
| 09:21AM | 11 | A.  Yes. |
| 09:21AM | 12 | Q.  You know, you've got his name and you got the State |
| 09:21AM | 13 | Police logo above that, correct? |
| 09:21AM | 14 | A.  That's correct. |
| 09:21AM | 15 | Q.  But the State Police were not involved in investigating |
| 09:21AM | 16 | Joe Bongiovanni, correct? |
| 09:21AM | 17 | A.  They were not. |
| 09:21AM | 18 | Q.  Okay.  I'm just going to focus on one here. |
| 09:22AM | 19 | So, you've got this line here that I'm drawing from Joe |
| 09:22AM | 20 | Bongiovanni, Agent Mozg investigation of Bella, correct? |
| 09:22AM | 21 | A.  That's correct. |
| 09:22AM | 22 | Q.  And then, you know, there's another line that goes off of |
| 09:22AM | 23 | that, that ultimately connects to Tom Mozg; you see that? |
| 09:22AM | 24 | A.  That's correct. |
| 09:22AM | 25 | Q.  Okay.  What are you trying to embody with this series of |

| | | |
|---|---|---|
| 09:22AM | 1 | lines that connect up to Tom Mozg? |
| 09:22AM | 2 | A.  Well, it ties back, if -- I mean, if I could have a copy |
| 09:22AM | 3 | of the indictment, I can -- that Count and those overt acts |
| 09:22AM | 4 | that references, that supports what occurred related to his |
| 09:22AM | 5 | testimony and -- or, his, Mr. Mozg, or Officer Mozg's |
| 09:22AM | 6 | testimony as well as the exhibits. |
| 09:22AM | 7 | Q.  Okay.  So, is it fair to say that what you're trying to |
| 09:22AM | 8 | encapsulate with this little prong of the chart is that June |
| 09:22AM | 9 | 2016 meeting between Tom Mozg and Joe Bongiovanni, and what |
| 09:22AM | 10 | that relates to in the indictment; is that a fair statement? |
| 09:22AM | 11 | A.  Yeah, I would feel more comfortable saying that |
| 09:22AM | 12 | definitively if I could read that -- that overt act on that |
| 09:22AM | 13 | Count, but -- |
| 09:22AM | 14 | Q.  Sure, I'll get rid of the line. |
| 09:23AM | 15 | A.  No, I meant, I'm sorry, the indictment itself just to -- |
| 09:23AM | 16 | for the right phrase. |
| 09:23AM | 17 | Q.  Okay.  Well, I'm not going to pull up the whole |
| 09:23AM | 18 | indictment right here. |
| 09:23AM | 19 | A.  Okay. |
| 09:23AM | 20 | Q.  But, you know, for example, that's -- what we're just |
| 09:23AM | 21 | talking about contains one portion of this case, correct? |
| 09:23AM | 22 | A.  Absolutely. |
| 09:23AM | 23 | Q.  Yeah.  And, you know, again, I'll circle him, Tom Mozg, |
| 09:23AM | 24 | you're trying to embody in this chart that he has something |
| 09:23AM | 25 | to do with that piece of the case, correct? |

09:23AM   1    A.  The meeting you referred to.

09:23AM   2    Q.  Yeah.  Now you recall that there was another individual

09:23AM   3    besides Joe Bongiovanni and Tom Mozg present at that

09:23AM   4    June 26th meeting?

09:23AM   5    A.  Special Agent Casullo, you're referring to.

09:23AM   6    Q.  I'm going to circle him.  He's up there?

09:23AM   7    A.  That's correct.

09:23AM   8    Q.  I mean, you didn't put him down here to remind the jury

09:23AM   9    that he's also involved in that same incident?

09:23AM   10   A.  Well, it was -- Mozg was the individual that brought that

09:23AM   11   information to the DEA.  So --

09:23AM   12   Q.  Right.  And when he brought it to the DEA, there was

09:23AM   13   another DEA present named Anthony Casullo, correct?

09:23AM   14   A.  That's correct.

09:23AM   15   Q.  But you didn't put those two together in that same area

09:23AM   16   of the chart, correct?

09:23AM   17   A.  I did not.

09:24AM   18   Q.  Okay?

09:24AM   19        **MR. MacKAY:**  Judge, I have no further questions at

09:24AM   20   this point.

09:24AM   21        **THE COURT:**  Redirect?

09:24AM   22        **MR. COOPER:**  Briefly, Judge.  Can I just have one

09:24AM   23   second to --

09:24AM   24        **THE COURT:**  Sure.

09:24AM   25        **MR. COOPER:**  Thank you.

09:24AM  1    **REDIRECT EXAMINATION BY MR. COOPER:**

09:24AM  2  Q.  Special Agent Burns, were there a number of different

09:24AM  3  versions of this chart to try to fit everything on a piece of

09:24AM  4  paper like this, or a screen?

09:24AM  5  A.  Yes, there were many versions, and it was kind of a tall

09:24AM  6  order to make everything fit.

09:24AM  7  Q.  Did it become challenging during the creation of this

09:24AM  8  exhibit to fit all the information you were trying to fit in

09:24AM  9  one space?

09:24AM  10  A.  Yes.  We could not include all of the information

09:24AM  11  because -- for that reason.

09:24AM  12  Q.  Okay.

09:24AM  13      **MR. COOPER:**  Can we go back to 552 for a second,

09:24AM  14  please, Ms. Champoux?

09:24AM  15      **BY MR. COOPER:**

09:24AM  16  Q.  You were asked some questions about whether you relied on

09:24AM  17  Mark Falzone's testimony from a prior proceeding in

09:24AM  18  generating some of the lines on this chart; do you remember

09:24AM  19  being asked that question?

09:24AM  20  A.  Yes, I do.

09:24AM  21  Q.  You described for defense counsel on cross-examination

09:24AM  22  that you kept an index where you documented, as this trial

09:25AM  23  went on, what came into evidence, which witnesses testified;

09:25AM  24  is that correct?

09:25AM  25  A.  That's correct.

09:25AM   1   Q.  Did Falzone testify at this trial?

09:25AM   2   A.  He did not.

09:25AM   3   Q.  Did you endeavor to remove him from the index where he

09:25AM   4   was referenced as a witness in support of connections on this

09:25AM   5   chart?

09:25AM   6   A.  Yeah.  I mean, we thought we got most of them.

09:25AM   7   Q.  Okay.  And, so, to the extent that Mr. MacKay pointed one

09:25AM   8   out to you here, the connection between Ron Serio and Chris

09:25AM   9   Baker, you see the line that exists?

09:25AM  10   A.  Yes.

09:25AM  11   Q.  Between Ron Serio and Chris Baker?

09:25AM  12   A.  Yes.

09:25AM  13   Q.  Okay.

09:25AM  14       MR. COOPER:  Mr. MacKay, I'm holding a paper copy of

09:25AM  15   that index.

09:25AM  16       MR. MacKAY:  AQ?

09:25AM  17       MR. COOPER:  It's AQ.

09:25AM  18       MR. MacKAY:  Okay.

09:25AM  19       MR. COOPER:  May I approach the witness?

09:25AM  20       THE COURT:  You may.

09:25AM  21       BY MR. COOPER:

09:25AM  22   Q.  Look towards the bottom of that, I scribbled on it, but

09:25AM  23   it's my copy.  But do you see the connection between Ron

09:25AM  24   Serio and Chris Baker?

09:25AM  25   A.  Yes, I do.

| | | |
|---|---|---|
| 09:25AM | 1 | Q.  How many different witnesses' testimony support that |
| 09:26AM | 2 | connection in your chart, not including Mark Falzone? |
| 09:26AM | 3 | A.  Ron Serio, R.K., J.R., Lou Selva, and Exhibit AI. |
| 09:26AM | 4 | Q.  Okay.  So four other witnesses and an exhibit? |
| 09:26AM | 5 | A.  Supports that link, yes. |
| 09:26AM | 6 | Q.  Okay.  And so when you created the index and as you |
| 09:26AM | 7 | updated it throughout the trial, did you leave Falzone's name |
| 09:26AM | 8 | in one -- in one cell of a giant spreadsheet? |
| 09:26AM | 9 | A.  Yes.  A 179-line spreadsheet. |
| 09:26AM | 10 | Q.  Is Falzone's testimony alone the predication for the line |
| 09:26AM | 11 | between Baker and Serio? |
| 09:26AM | 12 | A.  No.  It does not support -- his testimony wasn't |
| 09:26AM | 13 | considered in that. |
| 09:26AM | 14 | Q.  Okay.  Four other witnesses, right? |
| 09:26AM | 15 | A.  And an exhibit, yes. |
| 09:26AM | 16 | **MR. COOPER:**  Okay.  May I approach, Judge? |
| 09:26AM | 17 | **THE COURT:**  Yes, you may. |
| 09:26AM | 18 | **MR. COOPER:**  Thank you. |
| 09:26AM | 19 | **BY MR. COOPER:** |
| 09:26AM | 20 | Q.  You were asked some questions also about, I think the |
| 09:26AM | 21 | Gables topic, about whether people might have gone out and |
| 09:26AM | 22 | told others that they got arrested and they were working as |
| 09:27AM | 23 | informants, something like that; do you remember those |
| 09:27AM | 24 | questions? |
| 09:27AM | 25 | A.  I do. |

09:27AM    1    Q.  In your experience working as an FBI agent, have you

09:27AM    2    handled informants?

09:27AM    3    A.  Yeah, hundreds.

09:27AM    4    Q.  It sounds like you started to give an answer and

09:27AM    5    Mr. MacKay cut you off.  What were you trying to tell the

09:27AM    6    jury about whether informants run around telling people

09:27AM    7    they're informants?

09:27AM    8    A.  Informants, I mean, it's -- informants don't want to be

09:27AM    9    known.  I mean, they're cooperating against friends,

09:27AM   10    associates.  It's dangerous.  So, it's rare in my experience

09:27AM   11    that they would share with anyone.  I mean, sometimes they

09:27AM   12    slip with a spouse or a close acquaintance.  But informants

09:27AM   13    don't have an incentive to disclose that they're cooperating

09:27AM   14    with the government.

09:27AM   15    Q.  Okay.  Did you do your best on Government Exhibit 552 to

09:27AM   16    assist the jury in being able to see the connections on a

09:27AM   17    physical chart?

09:27AM   18    A.  That was the purpose of the chart.

09:27AM   19    Q.  Okay.

09:27AM   20          MR. COOPER:  I have no further redirect, Judge.

09:27AM   21          MR. MacKAY:  I'll do it from here, Judge.

09:27AM   22

09:27AM   23                  RECROSS-EXAMINATION BY MR. MacKAY:

09:27AM   24    Q.  So, Agent Burns, you just testified you did your best

09:27AM   25    trying to produce these charts?

09:28AM   1   A.  Well, I mean, I made -- they're accurate, I can tell you

09:28AM   2   that.

09:28AM   3   Q.  Well, but you -- you told us that you thought you got

09:28AM   4   most of the references removed, but you missed one, correct?

09:28AM   5   A.  And again, I, we didn't rely on that reference.

09:28AM   6   Q.  Right.  But I'm saying, in cross checking your work, you

09:28AM   7   made a mistake in some fashion, correct?

09:28AM   8   A.  Right, I left Mark Falzone's name on the one line, yes.

09:28AM   9   Q.  So you made a mistake in some fashion, correct?

09:28AM  10   A.  I wouldn't say it's a mistake.  I mean, the charge is

09:28AM  11   what is in evidence, not my working, the items I used to

09:28AM  12   create the chart.

09:28AM  13   Q.  But you're hoping the jury relies on this chart to

09:28AM  14   convict Mr. Bongiovanni?

09:28AM  15           **MR. COOPER:**  Objection as to what Mr. Burns is

09:28AM  16   hoping, Judge.

09:28AM  17           **THE COURT:**  Overruled.

09:28AM  18           **THE WITNESS:**  I'm sorry, what was your question?

09:28AM  19           **BY MR. MacKAY:**

09:28AM  20   Q.  I said you're hoping the jury relies on this chart in

09:28AM  21   trying to convict Mr. Bongiovanni?

09:28AM  22   A.  I mean, I hope they use it to examine the evidence at

09:28AM  23   trial.  That's the purpose of it, was to organize it and tie

09:28AM  24   the connections.

09:28AM  25           **MR. MacKAY:**  No further questions, Your Honor.

09:28AM 1 **MR. COOPER:** I'm good. Thank you, Judge.

09:28AM 2 **THE COURT:** Okay. You can step down, sir. Thank

09:28AM 3 you.

09:28AM 4 (Witness excused at 9:28 a.m.)

5 (Excerpt concluded at 9:28 a.m.)

6 * * * * * * *

7

8

9

10

11

12 <u>**CERTIFICATE OF REPORTER**</u>

13

14 In accordance with 28, U.S.C., 753(b), I

15 certify that these original notes are a true and correct

16 record of proceedings in the United States District Court for

17 the Western District of New York on September 30, 2024.

18

19 <u>s/ Ann M. Sawyer</u>

  Ann M. Sawyer, FCRR, RPR, CRR
20 Official Court Reporter
  U.S.D.C., W.D.N.Y.

21

22

23

24

25

**TRANSCRIPT INDEX**

**EXCERPT - EXAMINATION OF BRIAN BURNS - DAY 2**

**SEPTEMBER 30, 2024**

**W I T N E S S**                                                **P A G E**

**B R I A N   B U R N S**                                          2

    (CONT'D) CROSS-EXAMINATION BY MR. MacKAY:        2

    REDIRECT EXAMINATION BY MR. COOPER:              21

    RECROSS-EXAMINATION BY MR. MacKAY:               24