# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *for the Western District of New York*

---

**THE UNITED STATES OF AMERICA**

*-vs-*

**PETER GERACE JR.**
**(Counts 1-9)**

**REDACTED INDICTMENT**
**19-CR-227**
**23-CR-37**



## INTRODUCTION

**The Grand Jury Charges That:**

As relevant to this Indictment:

1.    Joseph Bongiovanni ("Bongiovanni"), began his career in law enforcement as an Erie County Sheriff Deputy in or about 1995.  In or about 1998, Bongiovanni joined the Drug Enforcement Administration ("DEA") as a Special Agent ("SA") and his career with the DEA took him out of the Buffalo area for a period of time. In or about 2001, until his retirement on or about February 1, 2019, Bongiovanni was assigned to Buffalo, New York, DEA Resident Office.

2.    As a DEA SA, Bongiovanni was a "public official" as defined in Title 18, United States Code, Section 201(a)(1).

3.      Bongiovanni had friends and associates who he knew were involved in possession, use, distribution, and importation of controlled substances. Bongiovanni's friends and associates who were involved in possession, use, and distribution, and importation of controlled substances, included, among others, individuals he believed to be members of, connected to, or associated with Italian Organized Crime (IOC) in the Western District of New York and elsewhere.

4.      **PETER GERACE JR.** ("**GERACE**"), is a friend and associate of Bongiovanni. **GERACE,** for a period of time, was on supervision by the United States Probation Office for the Western District of New York. **GERACE** is also the owner and principal operator of Pharaoh's Gentlemen's Club ("Pharaoh's"), located at 999 Aero Drive, Cheektowaga, New York. **GERACE** employs topless dancers, bartenders, bouncers, managers, and kitchen staff at Pharaoh's where food, beverages, and dances with topless dancers are sold to patrons.   Several of **GERACE's** male employees at Pharaoh's are members of a motorcycle club called the Outlaws Motorcycle Club ("Outlaws MC").

5.      The DEA was an agency within the executive branch of the Government of the United States, and the DEA is charged with, among other things, investigating narcotics trafficking activity and enforcing the controlled substance laws of the United States. The DEA required its SAs to uphold the rule of law, and to act with integrity in their personal and professional actions.

6.     As a DEA SA, Bongiovanni was specially trained in the investigation of drug trafficking activity and was familiar with DEA policy, record keeping, procedures, and databases.

7.     The lawful functions and official duties of DEA SAs included, but were not limited to, initiating and conducting investigations; interviewing witnesses and DEA confidential sources; protecting the identity of witnesses and DEA confidential sources; protecting the integrity, confidentiality, and operational security of federal and state investigations; collecting and preserving evidence; preparing truthful and accurate DEA memoranda and reports; preparing search warrant and criminal complaint affidavits, documenting information that was helpful to current and future DEA investigations; arresting individuals who had violated federal and state drug laws; preparing and proposing DEA cases for prosecution; and acting with honesty and integrity in their representations and communications with prosecutors and other members of law enforcement.

8.     Bongiovanni, through training and experience, was familiar with how the DEA and other law enforcement agencies conducted drug trafficking investigations, and how DEA agents and other law enforcement officers utilized de-confliction databases as a means to coordinate investigations with other agents and law enforcement agencies.

9.     De-confliction databases enabled law enforcement officers conducting an investigation of a specific individual or specific individuals to be alerted if another law enforcement officer or agency had an investigative interest in the same individual or individuals.

3

## COUNT 1

### (Conspiracy to Defraud the United States)

### The Grand Jury Further Charges That:

1.    The allegations of the Introduction are repeated and re-alleged and incorporated by reference as if set forth fully herein.

2.    Beginning in or about 2005 and continuing until in or about February 2019, the exact dates being unknown, in the Western District of New York, and elsewhere, Joseph Bongiovanni and the defendant, **PETER GERACE JR.**, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown:

a.    to defraud the United States and the Drug Enforcement Administration (DEA), an agency of the United States, by interfering with and obstructing by means of deceit, craft, and trickery, the lawful and legitimate governmental functions and rights of the DEA, that is:

   i.    the right to have its business and its affairs, and the transaction of the official business of the DEA conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment and obstruction; and

   ii.   the right to the conscientious, loyal, faithful, disinterested and unbiased services, decisions, actions and performance of his duties by Joseph Bongiovanni, in his official capacity as a DEA SA free from corruption, partiality, improper influence, bias, dishonesty and fraud in dealing with the DEA and other law enforcement agencies;

b.    directly and indirectly, corruptly to give, offer, and promise a thing of value to a public official, with intent to induce the performance of an official act and to induce a public

4

official to do an act and omit to do an act in violation of his lawful duty, as opportunities arose, in violation of Title 18, United States Code, Section 201(b)(1)(C); and

     c.     directly and indirectly, corruptly to demand, seek, receive, accept, and agree to receive and accept, a thing of value personally, in return for being influenced in the performance of an official act and for being induced to do an act and omit to do an act in violation of official duty, as opportunities arose, in violation of Title 18, United States Code, Section 201(b)(2)(A) and 201(b)(2)(C).

## MANNER AND MEANS

3.     The conspiracy was carried out by the Manner and Means set forth below.

4.     It was part of the conspiracy that, in order to build trust and maintain continuity with his coconspirators, Bongiovanni did not investigate his friends and associates and used his position as a DEA SA in Buffalo, New York, to shield his friends and associates, and others, including the defendant **GERACE**, from criminal investigations.

5.     It was part of the conspiracy that, in exchange for payments he received and in order to ingratiate himself to individuals whom he believed were members and associates of IOC, Bongiovanni utilized his position as a DEA SA to attempt to dissuade other members of law enforcement from conducting investigations of his coconspirators, friends, associates and individuals Bongiovanni believed to be connected to or associated with IOC, including the defendant **GERACE** and others; and from conducting investigations into any individuals who may have been able to expose his criminal activities and those of his friends, associates, and individuals Bongiovanni believed to be connected to or associated with IOC.

5

6.     It was part of the conspiracy that, in exchange for payments he received, Bongiovanni used his position as a DEA SA to gain and provide information to enable his coconspirators, friends, and associates to continue their drug trafficking activities without disruption by law enforcement.

7.     It was part of the conspiracy that, at various times between in or about 2005 and in or about 2017, Bongiovanni provided information he learned during the course of his duties as a DEA SA, including information learned through participating in investigations, to the defendant **GERACE**.

8.     It was part of the conspiracy that Bongiovanni used his position as a DEA SA to influence other federal agents, including from the Federal Bureau of Investigation (FBI) and the DEA, to dissuade them from investigating the defendant **GERACE** and Pharaoh's.

9.     It was part of the conspiracy that the defendant **GERACE** paid Bongiovanni cash bribes on a recurring basis to protect the defendant **GERACE** and **GERACE**'s business, Pharaoh's Gentlemen's Club from federal narcotics investigations.

10.     It was part of the conspiracy that Bongiovanni falsely represented that the defendant **GERACE** was Bongiovanni's source of information to protect the defendant **GERACE** and Pharaoh's from federal investigations.

6

11.    It was part of the conspiracy that Bongiovanni falsely represented to the DEA that the defendant **GERACE** was Bongiovanni's source of information about ongoing drug trafficking activity in an effort to protect the defendant **GERACE** and Pharaoh's from federal investigations.

12.    It was part of the conspiracy that Bongiovanni would falsely deny to other agents of the DEA the existence and extent of connections between himself and individuals he knew to be involved in the possession, use, distribution, and importation of controlled substances, and individuals he believed were connected to or associated with IOC.

13.    It was part of the conspiracy that Bongiovanni provided cover stories to his coconspirators and would instruct such individuals that, if the communications or meetings between Bongiovanni and the coconspirators were ever questioned by law enforcement, the conspirators should conceal the true nature of their relationship with Bongiovanni by pretending Bongiovanni was recruiting such individuals to be DEA informants.

14.    It was part of the conspiracy that, upon request, Bongiovanni made efforts to use his position as a DEA SA to help coconspirators get out of trouble with other law enforcement agencies.

15.    It was part of the conspiracy that Bongiovanni would conceal his possession, use, and distribution of controlled substances, the bribes he received, and the assistance he

provided to his friends, associates, coconspirators, and individuals who he believed were members of, connected to, or associated with IOC.

## OVERT ACTS

16.    In furtherance of the conspiracy and to effect the objects thereof, the following overt acts were committed in the Western District of New York, and elsewhere, by the defendant and others.

17.    In or about 2005, defendant **GERACE** learned information from the execution of a DEA search warrant in which Bongiovanni participated.

18.    Between in or about 2013 and in or about 2016, Bongiovanni accepted cash bribes on a recurring basis from the defendant **GERACE** in exchange for protection from arrest and prosecution.

19.    Between on or about November 1, 2009, and on or about November 3, 2009, in response to information he received from the defendant **GERACE**, Bongiovanni contacted the United States Probation Office in an effort to intercede on the defendant **GERACE**'s behalf and to help the defendant **GERACE** mitigate any sanctions that might be imposed by the Probation Office for the defendant **GERACE** violating the terms and conditions of his term of federal supervised release.

20.    On or about November 6, 2009, Bongiovanni authored an official DEA 6 report in which Bongiovanni made false, fraudulent, fictitious, and misleading statements, namely,

8

that that the defendant **GERACE** had acted as a confidential source and had provided information to the DEA in narcotics investigations.

21.    On or about November 6, 2009, in the DEA 6 report referenced above, Bongiovanni omitted documenting any telephone number for the defendant **GERACE**.

22.    In or about November 2009, Bongiovanni engaged in conduct and made statements portraying the defendant **GERACE** as a DEA confidential source, when in fact the defendant **GERACE** was not a DEA confidential source, in order to dissuade an FBI Special Agent from investigating and potentially charging the defendant **GERACE** with federal criminal offenses.

23.    Between on or about November 6, 2009, and on or about October 31, 2018, Bongiovanni did not document in any DEA reports or memoranda any information about the defendant **GERACE** and did not document the substance of any in-person or telephonic contacts he had with the defendant **GERACE**, who, for a period of time, was on supervision by the United States Probation Office for the Western District of New York and who was an individual whom Bongiovanni knew and had reason to know was involved in possession, use, and distribution of controlled substances, and had reason to believe to be a member of, connected to, or associated with IOC.

24.    On or about February 21, 2016, Bongiovanni attended a party in Toronto, Canada with friends and associates involved in possession, use, and distribution of cocaine.

25.    In or about June 2016, in response to another DEA SA in the Buffalo Resident Office subpoena of phone records showing contacts between the defendant **GERACE** and Bongiovanni, Bongiovanni attempted to dissuade and discourage another DEA SA from further investigating the defendant **GERACE** by asking his colleague if he "hated Italians," and by making other comments to his fellow DEA SA to dissuade and discourage the DEA SA from continuing to investigate the defendant **GERACE** and others.

26.    On a date unknown to the Grand Jury, in response to a telephone call from the defendant **GERACE** after a stripper overdosed on drugs at Pharaoh's in Cheektowaga, New York, Bongiovanni advised the defendant **GERACE** to "get her out" of the gentlemen's club.

27.    On or about May 4, 2017, the defendant **GERACE** left a voicemail message on Bongiovanni's DEA issued cell phone, as follows:

> "Hey Joe, it's Peter. Listen, if a guy is dealing drugs he's got a regular phone…it's a phone that's, one of those Tracfones. Is there a way to ping it like police do? Where they can tell where you're at? I just want to know if you could do that or not. Give me a call back 725-1931."

to which Bongiovanni responded via text message, "Yes but you would need a warrant to get a ping order."

28.    At various times while Bongiovanni was a DEA SA assigned to the Buffalo Resident Office, he possessed, used and distributed, and observed others possess, use, and distribute, cocaine.

29.    On or about November 1, 2018, Bongiovanni authored and submitted an internal DEA memorandum in which he made false and misleading statements as follows: "It should be known that any contact I have had with [the defendant GERACE] in the past was minimal in-person contact and primarily consisted of random telephonic communication based on the fact we were childhood friends. I would sometimes randomly encounter [the defendant GERACE] at a restaurant or golf outing and have not made plans to meet him socially in several years."

30.    On or about December 10, 2018, Bongiovanni authored and submitted an internal DEA memorandum wherein he made false and misleading statements as follows: "I have and will report all contact with [the defendant GERACE] to a DEA supervisor like I have in the past[.]"

31.    On or about January 28, 2019, Bongiovanni authored and submitted an internal DEA memorandum wherein he made false and misleading statements regarding the nature of the defendant GERACE's relationship with another DEA SA in the Buffalo Resident Office.

32.    On or about February 1, 2019, Bongiovanni's last day as a DEA SA in the Buffalo Resident Office due to his retirement from the DEA, Bongiovanni caused his DEA issued cellular telephone to be wiped clean such that all data was deleted from the telephone.

33.    On a date unknown to the Grand Jury, but before on or about February 1, 2019, without authorization or permission, Bongiovanni removed the DEA working file in DEA

11

Case Number C2-13-0026, which contained DEA database information (including de-confliction database information), administrative subpoenas and responses, cellular telephone toll analysis, and other DEA records and property, including an Organized Crime Drug Enforcement Task Forces investigation initiation form for Operation Past Due, from the DEA Buffalo Resident Office and stored and concealed this DEA property in the basement of his residence.

34.     At various times between in or about 2006, and on or about February 1, 2019, defendant **GERACE** possessed with intent to distribute, and distributed cocaine, a Schedule II controlled substance.

35.     At various times between in or about 2009 and in or about 2018, female dancers employed at Pharaoh's have overdosed inside Pharaoh's after ingesting controlled substances.

36.     Beginning in or before 2009, and continuing until at least in or about February 2019, and later, defendant **GERACE**, knowingly maintained the premises known as Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York, to facilitate prostitution; to provide drugs and money to Pharaoh's employees in exchange for sex with the defendant **GERACE** and others; and for use and distribution of controlled substances, including cocaine, cocaine base, and amphetamine also known as Adderall, Schedule II controlled substances, and marijuana and heroin, Schedule I controlled substances.

**All in violation of Title 18, United States Code, Section 371.**

12

## COUNT 2

### (Paying a Bribe to a Public Official)

### The Grand Jury Further Charges That:

1.    The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.

2.    Beginning in or about 2009, and continuing to on or about June 6, 2019, the exact dates being unknown to the Grand Jury, in the Western District of New York, the defendant, **PETER GERACE JR.**, did, directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, namely a DEA Special Agent, with intent to induce the performance of an official act and to induce a public official to do an act and omit to do an act in violation of his lawful duty, as opportunities arose; that is, the defendant, **PETER GERACE JR.** paid and facilitated bribe payments to Joseph Bongiovanni, a DEA Special Agent, in United States currency to among other acts, to falsely advise an Federal Bureau of Investigation (FBI) Special Agent (SA) that the defendant **PETER GERACE JR.** was a DEA confidential source, thereby inducing the FBI SA to abandon a narcotics investigation into the defendant **PETER GERACE JR.** and Pharaoh's Gentlemen's Club; to create an official DEA 6 document falsely stating that the defendant **PETER GERACE JR.** was a DEA source; to provide advice and information to the defendant **PETER GERACE JR.**; to help the defendant **PETER GERACE JR.** and Pharaoh's Gentlemen's Club avoid federal narcotics investigations; to induce Bongiovanni to use his position as a DEA SA to make statements to his co-worker, a fellow DEA SA, to dissuade and discourage the fellow

13

DEA SA from investigating the defendant **PETER GERACE JR.** and Pharaoh's; to make false and misleading statements to other members of law enforcement; to provide information about law enforcement methods and techniques; to help such drug trafficking activities continue; and to make false statements in official DEA memoranda in order to minimize the relationship between Bongiovanni and the defendant **PETER GERACE JR.** as a means to conceal their conspiratorial relationship.

**All in violation of Title 18, United States Code, Sections 201(b)(1)(A) and 201(b)(1)(C).**

## COUNT 3

### (Maintaining a Drug-Involved Premises)

### The Grand Jury Further Charges That:

1.     The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.

2.     Beginning in or about 2006, and continuing until on or about December 12, 2019, the exact dates being unknown to the Grand Jury, in the Western District of New York, and elsewhere, the defendant, **PETER GERACE JR.**, did knowingly, intentionally, and unlawfully use and maintain a place, that is, the premises known as Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York, for the purpose of manufacturing, distributing, and using cocaine, cocaine base, methamphetamine, and amphetamine also known as Adderall, Schedule II controlled substances, and marijuana and heroin, Schedule I controlled substances.

**All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.**

## COUNT 4

### (Conspiracy to Distribute Controlled Substances)

### The Grand Jury Further Charges That:

1.     The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.

2.     Beginning in or about 2009 and continuing to in or about February 2019, the exact dates being unknown, in the Western District of New York, and elsewhere, Joseph Bongiovanni and the defendant, **PETER GERACE JR.**, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to commit the following offenses, that is:

a.     to possess with intent to distribute, and to distribute, cocaine, cocaine base, methamphetamine, and amphetamine also known as Adderall, Schedule II controlled substances, and marijuana and heroin, Schedule I controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(C); and

b.     to knowingly, intentionally, and unlawfully use and maintain a place, that is, the premises known as Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York, for the purpose of manufacturing, distributing, and using cocaine, cocaine base, methamphetamine, and amphetamine also known as Adderall, Schedule II controlled substances, and marijuana and heroin, Schedule I controlled substances.

**All in violation of Title 21, United States Code, Section 846.**

## COUNT 5

**(Conspiracy to Commit Sex Trafficking)**

**The Grand Jury Charges That:**

Beginning in or about 2009 and continuing to in or about 2018, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant, **PETER GERACE JR.**, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown, to knowingly recruit, entice, harbor, transport, provide, obtain,

16

and maintain by any means, in and affecting interstate and foreign commerce, persons, and to benefit, financially and by receiving anything of value, from participation in a venture which has engaged in such acts, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and a combination of such means, would be used to cause such persons to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a) and 1591(b)(1).

**All in violation of Title 18, United States Code, Section 1594(c).**

## COUNT 6

**(Tampering with a Witness)**

**The Grand Jury Charges That:**

On or about November 19, 2019, in the Western District of New York, the defendant, **PETER GERACE, JR.**, and others, did knowingly use intimidation, threaten, and corruptly persuade, and attempt to use intimidation, threaten, and corruptly persuade Witness 1, a person known to the Grand Jury, by sending intimidating, threatening, and harassing Facebook messages to Witness 1 with the intent to influence, delay, and prevent the testimony of Witness 1 in an official proceeding, that is, a federal grand jury investigation and subsequent criminal proceedings involving the defendant, **PETER GERACE, JR.**, in the United States District Court for the Western District of New York.

**All in violation of Title 18, United States Code, Sections 1512(b)(1) and 2.**

## COUNT 7

**(Tampering with a Witness)**

**The Grand Jury Further Charges That:**

On or about November 19, 2019, in the Western District of New York, the defendant, **PETER GERACE, JR.**, and others, did knowingly use intimidation, threaten, and corruptly persuade, and attempt to use intimidation, threaten, and corruptly persuade Witness 1, a person known to the Grand Jury, by sending intimidating, threatening, and harassing Facebook messages to Witness 1 with the intent to cause and induce Witness 1 to withhold testimony from an official proceeding, that is, a federal grand jury investigation, and subsequent criminal proceedings involving the defendant, **PETER GERACE, JR.**, in the United States District Court for the Western District of New York.

**All in violation of Title 18, United States Code, Sections 1512(b)(2)(A) and 2.**

## COUNT 8

**(Tampering with a Witness)**

**The Grand Jury Further Charges That:**

On or about November 19, 2019, in the Western District of New York, the defendant, **PETER GERACE, JR.**, and others, did knowingly use intimidation, threaten, and corruptly persuade, and attempt to use intimidation, threaten, and corruptly persuade Witness 1, a person known to the Grand Jury, by sending intimidating, threatening, and harassing Facebook messages to Witness 1 with the intent to hinder, delay, and prevent communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense.

**All in violation of Title 18, United States Code, Sections 1512(b)(3) and 2.**

## COUNT 9

### (Distribution of Cocaine)

### The Grand Jury Further Charges That:

On or about November 19, 2019, in the Western District of New York, the defendant,

**PETER GERACE, JR.**, did knowingly, intentionally, and unlawfully possess with intent to

distribute, and distribute, cocaine, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).**


DATED:     Buffalo, New York, November 5, 2024

                                        TRINI E. ROSS
                                        United States Attorney

                        BY:    s/JOSEPH M. TRIPI
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Western District of New York
                                        138 Delaware Avenue
                                        Buffalo, New York  14202
                                        716/843-5839
                                        Joseph.Tripi@usdoj.gov

A TRUE BILL:

s/FOREPERSON