1              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF NEW YORK
2
   _____
3  UNITED STATES OF AMERICA,
                                    Case No. 1:19-cr-227
4                 Plaintiff,              1:23-cr-37
   v.                                        (LJV)
5
   PETER GERACE, JR.,                 December 11, 2024
6
                  Defendant.
7  _____

       TRANSCRIPT EXCERPT - EXAMINATION OF JOHN McDONALD
8          BEFORE THE HONORABLE LAWRENCE J. VILARDO
                UNITED STATES DISTRICT JUDGE
9
   APPEARANCES:      TRINI E. ROSS, UNITED STATES ATTORNEY
10                   BY: JOSEPH M. TRIPI, ESQ.
                         NICHOLAS T. COOPER, ESQ.
11                       CASEY L. CHALBECK, ESQ.
                     Assistant United States Attorneys
12                   Federal Centre, 138 Delaware Avenue
                     Buffalo, New York 14202
13                   For the Plaintiff

14                   THE FOTI LAW FIRM, P.C.
                     BY: MARK ANDREW FOTI, ESQ.
15                   16 West Main Street, Suite 100
                     Rochester, New York 14614
16                      And
                     SOEHNLEIN LAW
17                   BY: ERIC MICHAEL SOEHNLEIN, ESQ.
                     350 Main Street, Suite 2100
18                   Buffalo, New York 14202
                     For the Defendant
19
   PRESENT:          KAREN A. CHAMPOUX, USA PARALEGAL
20                   BRIAN A. BURNS, FBI SPECIAL AGENT
                     MARILYN K. HALLIDAY, HSI SPECIAL AGENT
21                   OLIVIA A. PROIA, J.D., PARALEGAL

22 LAW CLERK:        REBECCA FABIAN IZZO, ESQ.

23 COURT CLERK:      COLLEEN M. DEMMA

24 REPORTER:         ANN MEISSNER SAWYER, FCRR, RPR, CRR
                     Robert H. Jackson Courthouse
25                   2 Niagara Square Buffalo, New York 14202
                     Ann_Sawyer@nywd.uscourts.gov

09:49AM    1              (Excerpt commenced at 9:49 a.m.)

09:49AM    2              (Jury is present.)

09:49AM    3              **THE COURT:** The government can call its next witness.

09:50AM    4              **MR. COOPER:**  Thank you, Your Honor.  The government

09:50AM    5    calls John McDonald.

09:50AM    6

09:50AM    7    **J O H N   M c D O N A L D**, having been duly called and sworn,

09:50AM    8    testified as follows:

09:50AM    9              **MR. COOPER:**  May I inquire, Judge?

09:51AM   10              **THE COURT:**  You may.

09:51AM   11

09:51AM   12                   **DIRECT EXAMINATION BY MR. COOPER:**

09:51AM   13    Q.  Good morning, John.

09:51AM   14    A.  Good morning.

09:51AM   15    Q.  How old are you?

09:51AM   16    A.  38.

09:51AM   17    Q.  38?

09:51AM   18    A.  Yeah.

09:51AM   19    Q.  Okay.  And where did you grow up generally?

09:51AM   20    A.  This area.

09:51AM   21    Q.  Okay.

09:51AM   22    A.  716.

09:51AM   23    Q.  What's that?

09:51AM   24    A.  In the 716, this area.

09:51AM   25    Q.  Okay.  So you're from Western New York?

09:51AM 1    A.  Yeah.

09:51AM 2    Q.  Okay.  And how far have you gone in school, John?

09:51AM 3    A.  Got my GED, college.

09:51AM 4    Q.  Okay.  You have some college, or did you graduate?

09:51AM 5    A.  I'm still going right now.

09:51AM 6    Q.  Got it.  Good for you.

09:51AM 7       I'm gonna kind of jump right into it here, and then we'll

09:51AM 8    move around a little bit.

09:51AM 9       During times in your life, have you struggled with drugs?

09:51AM 10   A.  Yes.

09:51AM 11   Q.  Okay.  When did that start?

09:51AM 12   A.  Young age.  Young.

09:51AM 13   Q.  About how old is a young age?

09:51AM 14   A.  15, 16.

09:51AM 15   Q.  What kind of drugs did you start using at that age?

09:51AM 16   A.  Alcohol, weed.

09:51AM 17   Q.  Okay.  Did that progress over time to harder drugs?

09:51AM 18   A.  Yes.

09:51AM 19   Q.  Can you describe that for the jury?

09:51AM 20   A.  Yeah.  Cocaine.  Heroin.  Everything, really.  Just, I

09:51AM 21   like to party.

09:51AM 22   Q.  Okay.  About what age were you when you started using

09:52AM 23   cocaine?

09:52AM 24   A.  19, 20.

09:52AM 25   Q.  Now, did there come a time when you got involved in

USA v Gerace - McDonald - Cooper/Direct - 12/11/24

| | | |
|---|---|---|
| 09:52AM | 1 | selling cocaine? |
| 09:52AM | 2 | A.  Yes. |
| 09:52AM | 3 | Q.  Okay.  Now, what kind of work, other than selling |
| 09:52AM | 4 | cocaine, what kind of work were you doing at that time? |
| 09:52AM | 5 | A.  Construction, roofing. |
| 09:52AM | 6 | Q.  When you were doing roofing, were you working mostly in |
| 09:52AM | 7 | the warmer months up here? |
| 09:52AM | 8 | A.  Yes. |
| 09:52AM | 9 | Q.  Okay.  In the colder months, were you doing less roofing? |
| 09:52AM | 10 | A.  Yes. |
| 09:52AM | 11 | Q.  Were you doing more cocaine selling at that time? |
| 09:52AM | 12 | A.  Yes. |
| 09:52AM | 13 | Q.  Okay.  Ultimately, we're gonna fast forward for a second, |
| 09:52AM | 14 | did there come a time when you were arrested by federal law |
| 09:52AM | 15 | enforcement and charged here in federal court for charges |
| 09:52AM | 16 | related to drug distribution and possessing a firearm? |
| 09:52AM | 17 | A.  Yes. |
| 09:52AM | 18 | Q.  Okay.  And did you get an attorney on that case? |
| 09:52AM | 19 | A.  Yes. |
| 09:52AM | 20 | Q.  Did you ultimately plead guilty on that case? |
| 09:53AM | 21 | A.  Yes. |
| 09:53AM | 22 | Q.  Okay.  As a part of your guilty plea, did you enter into |
| 09:53AM | 23 | what's called a cooperation agreement? |
| 09:53AM | 24 | A.  Yes. |
| 09:53AM | 25 | Q.  Okay.  And that guilty plea, did that happen sometime |

| | | |
|---|---|---|
| 09:53AM | 1 | around 2020? |
| 09:53AM | 2 | A.  Yeah. |
| 09:53AM | 3 | Q.  Okay.  I'm going to hand you what's marked for |
| 09:53AM | 4 | identification as 3649L. |
| 09:53AM | 5 | **MR. COOPER:**  May I approach the witness, Judge? |
| 09:53AM | 6 | **THE COURT:**  You may. |
| 09:53AM | 7 | **MR. COOPER:**  Do you need this, Mr. Soehnlein?  Are |
| 09:53AM | 8 | you good? |
| 09:53AM | 9 | **MR. SOEHNLEIN:**  No, I don't need to see it.  Thank |
| 09:53AM | 10 | you. |
| 09:53AM | 11 | **BY MR. COOPER:** |
| 09:53AM | 12 | Q.  Do you recognize that, John? |
| 09:53AM | 13 | A.  Yes. |
| 09:53AM | 14 | Q.  Okay.  What do you recognize that to be? |
| 09:53AM | 15 | A.  My plea agreement. |
| 09:53AM | 16 | Q.  Okay.  And did you enter into that with the assistance of |
| 09:53AM | 17 | your attorney? |
| 09:53AM | 18 | A.  Yes. |
| 09:53AM | 19 | Q.  Okay.  And part of that plea agreement, did it include a |
| 09:53AM | 20 | cooperation section? |
| 09:53AM | 21 | A.  Yes. |
| 09:53AM | 22 | Q.  What was your understanding of your obligations in the |
| 09:53AM | 23 | cooperation agreement that you signed? |
| 09:53AM | 24 | A.  That I'd have to come -- come to someone's trial and |
| 09:53AM | 25 | testify. |

09:53AM  1    Q.  Okay.  And have you -- without getting into any more

09:53AM  2    details, just a "yes" or "no" answer to this question, have

09:53AM  3    you done that before today?

09:53AM  4    A.  Yes.

09:53AM  5    Q.  Have you done that at least twice before today?

09:53AM  6    A.  Yes.

09:54AM  7            **MR. COOPER:**  Okay.  Judge, can I approach?

09:54AM  8            **THE COURT:**  Yeah, sure.

09:54AM  9            **MR. COOPER:**  Thank you.

09:54AM  10            **BY MR. COOPER:**

09:54AM  11    Q.  May I have that back, John?  Thanks.

09:54AM  12        So is today the third time that you're testifying in a

09:54AM  13    proceeding like this one?

09:54AM  14    A.  Yes.

09:54AM  15    Q.  Does your cooperation agreement require that you show up

09:54AM  16    when you're called to show up?

09:54AM  17    A.  Yes.

09:54AM  18    Q.  Does it require that you answer any questions that are

09:54AM  19    asked of you truthfully?

09:54AM  20    A.  Yes.

09:54AM  21    Q.  Ultimately, when you entered into that cooperation

09:54AM  22    agreement, John, was it your hope that at on the back end

09:54AM  23    when you were sentenced, you'd receive some sort of benefit?

09:54AM  24    A.  Yes.

09:54AM  25    Q.  Okay.  Now, in this instance, you've actually been

09:54AM   1   sentenced already; is that correct?

09:54AM   2   A.   Yes.

09:54AM   3   Q.   Now, you told us just a moment ago that you've testified

09:54AM   4   at two other proceedings.   Were you sentenced sometime after

09:54AM   5   the second proceeding that you testified at?

09:54AM   6   A.   Yes.

09:54AM   7   Q.   At that time, when you were finally sentenced, had you

09:54AM   8   been pending sentence for quite some time?

09:54AM   9   A.   Yeah, about five years.

09:54AM   10   Q.   Okay.   Ultimately, what was the sentence that you

09:55AM   11   received from a judge in this courthouse?

09:55AM   12   A.   24 months.

09:55AM   13   Q.   Okay.   And did that amount to time served, based on how

09:55AM   14   long you had spent incarcerated?

09:55AM   15   A.   Yes.

09:55AM   16   Q.   Okay.

09:55AM   17   A.   I think I did, like, 26 months.   I think more than what

09:55AM   18   they sentenced me to.

09:55AM   19   Q.   A little extra on the top?

09:55AM   20   A.   Yeah.

09:55AM   21   Q.   Ultimately, you were facing more time than that, right?

09:55AM   22   A.   Yes.

09:55AM   23   Q.   Okay.   And you cooperated, and you ended up serving about

09:55AM   24   26 months; is that accurate?

09:55AM   25   A.   Yes.

09:55AM   1   Q.  Can you give the jury an idea of the timeframe that you

09:55AM   2   were involved in distributing cocaine?  What years are we

09:55AM   3   talking about?

09:55AM   4   A.  Probably from 2015 to 2019.

09:55AM   5   Q.  What was the first year you said?

09:55AM   6   A.  '15.  2015 to 2019.

09:55AM   7   Q.  And then up to 2019?

09:55AM   8   A.  Yeah.

09:55AM   9   Q.  Okay.  And what drugs did you distribute?

09:55AM  10   A.  Cocaine.

09:55AM  11   Q.  Okay.  During that time -- well, withdrawn.

09:55AM  12       At any time in your life, have you ever been to a strip

09:56AM  13   club before?

09:56AM  14   A.  Yes.

09:56AM  15   Q.  Do you like strip clubs?

09:56AM  16   A.  Yes.

09:56AM  17   Q.  Have you been to strip clubs a lot?

09:56AM  18   A.  Yes.

09:56AM  19   Q.  Have you ever heard of a place called Pharaoh's

09:56AM  20   Gentlemen's Club?

09:56AM  21   A.  Yes.

09:56AM  22   Q.  Have you been there before?

09:56AM  23   A.  Yes.

09:56AM  24   Q.  Okay.  I'd like for you to tell the jury how many times

09:56AM  25   you've been to Pharaoh's Gentlemen's Club.

USA v Gerace - McDonald - Cooper/Direct - 12/11/24

| | | |
|---|---|---|
| 09:56AM | 1 | A.  It's uncountable. |
| 09:56AM | 2 | Q.  Okay.  More than you can recall or estimate? |
| 09:56AM | 3 | A.  Four, five times a week, for years. |
| 09:56AM | 4 | Q.  Okay.  I want to discuss with you now what you observed, |
| 09:56AM | 5 | and conduct that you've participated in when you were at |
| 09:56AM | 6 | Pharaoh's Gentlemen's Club. |
| 09:56AM | 7 | Earlier on your direct examination, you described using |
| 09:56AM | 8 | cocaine, and I think what you said is "I like to party." |
| 09:56AM | 9 | During those times that you went to Pharaoh's, four or |
| 09:56AM | 10 | five times a week for years, were you a heavy cocaine user? |
| 09:56AM | 11 | A.  Yes. |
| 09:56AM | 12 | Q.  When you went to Pharaoh's Gentlemen's Club, would you |
| 09:56AM | 13 | use cocaine there? |
| 09:56AM | 14 | A.  Yes. |
| 09:56AM | 15 | Q.  Okay.  Can you tell the jury, if you can, estimate, how |
| 09:56AM | 16 | many times you personally have used cocaine inside of |
| 09:56AM | 17 | Pharaoh's? |
| 09:56AM | 18 | A.  100?  200? |
| 09:57AM | 19 | Q.  Okay.  Now if you went to Pharaoh's four or five times a |
| 09:57AM | 20 | week, would it be fair to say that you used cocaine every |
| 09:57AM | 21 | time you went? |
| 09:57AM | 22 | A.  Yes. |
| 09:57AM | 23 | Q.  Okay. |
| 09:57AM | 24 | A.  Absolutely. |
| 09:57AM | 25 | Q.  Okay.  Would you go to Pharaoh's if you didn't have any |

09:57AM   1   cocaine?

09:57AM   2   A.  I never didn't have cocaine.

09:57AM   3   Q.  Okay.  Let's talk about what you did while you were in

09:57AM   4   Pharaoh's.

09:57AM   5       Where would you use cocaine inside of Pharaoh's

09:57AM   6   Gentlemen's Club?

09:57AM   7   A.  Wherever I was at.

09:57AM   8   Q.  Okay.

09:57AM   9   A.  I didn't hide it.  I did it right out in the open.

09:57AM  10   Q.  You didn't hide it?

09:57AM  11   A.  No.

09:57AM  12   Q.  Let's talk about the geography or the layout of

09:57AM  13   Pharaoh's.  When you walk in the front door, is there, like,

09:57AM  14   a bouncer by the door?

09:57AM  15   A.  Yes.

09:57AM  16   Q.  They ever, like, check your pockets to see if you had

09:57AM  17   cocaine on you?

09:57AM  18   A.  No.

09:57AM  19   Q.  That didn't happen?

09:57AM  20   A.  No.

09:57AM  21   Q.  Okay.  When you got --

09:57AM  22           **THE COURT:**  Right into the microphone, Mr. McDonald.

09:57AM  23           **THE WITNESS:**  Sorry.  No.

09:57AM  24           **MR. COOPER:**  Or just -- or just talk a little louder.

         25

09:57AM    1              **BY MR. COOPER:**

09:57AM    2    Q.  That big -- is there a big open when you walk inside?

09:57AM    3    A.  Yes.

09:57AM    4    Q.  Is that where the stage is?

09:57AM    5    A.  Yes.

09:57AM    6    Q.  Are there tables there?

09:57AM    7    A.  Yes.

09:57AM    8    Q.  Would you sit at those tables and watch dancers?

09:57AM    9    A.  No, I'd sit over to the left where the pool table used to

09:57AM   10    be.

09:57AM   11    Q.  Okay.  So you'd sit by the pool table?

09:58AM   12    A.  Um-hum.

09:58AM   13    Q.  Is that a yes?

09:58AM   14    A.  Yes.

09:58AM   15    Q.  Okay.  When you're sitting over by the pool table, would

09:58AM   16    you use cocaine out in the open in that area?

09:58AM   17    A.  Yes.

09:58AM   18    Q.  Okay.  Did anybody ever come over and throw you out for

09:58AM   19    that?

09:58AM   20    A.  No.

09:58AM   21    Q.  You get in trouble for it?

09:58AM   22    A.  No.

09:58AM   23    Q.  Let's talk about selling cocaine.

09:58AM   24         You told the jury earlier that you've sold cocaine for

09:58AM   25    times in your life from about 2015 to 2019; is that correct?

USA v Gerace - McDonald - Cooper/Direct - 12/11/24

09:58AM    1    A.  Yes.

09:58AM    2    Q.  Were you going to Pharaoh's during the time that you were

09:58AM    3    a cocaine dealer?

09:58AM    4    A.  Yes.

09:58AM    5    Q.  Okay.  Would you distribute cocaine, whether you sold it

09:58AM    6    or gave it away, to other people at Pharaoh's?

09:58AM    7    A.  Yes.

09:58AM    8    Q.  Did that happen frequently?

09:58AM    9    A.  Yes.

09:58AM   10    Q.  Describe for the jury the different people that you would

09:58AM   11    sell or give cocaine to at Pharaoh's.

09:58AM   12    A.  I believe it was, I mean, everybody.  I'd give the shit

09:58AM   13    away.  I like to party, and I want everyone to have fun, you

09:58AM   14    know what I mean?  I'd give it to dancers, the bouncers,

09:58AM   15    whatever.

09:58AM   16    Q.  Okay.

09:58AM   17    A.  You know what I mean?

09:58AM   18    Q.  Were there times when you went to Pharaoh's with friends?

09:58AM   19    A.  Yes.

09:58AM   20    Q.  Would you share cocaine among your friends while you were

09:58AM   21    there?

09:58AM   22    A.  Yes.

09:59AM   23    Q.  Were there times when you gave cocaine to dancers that

09:59AM   24    were working at Pharaoh's?

09:59AM   25    A.  Yes.

USA v Gerace - McDonald - Cooper/Direct - 12/11/24

09:59AM   1   Q.  Did that happen frequently?

09:59AM   2   A.  Yes.

09:59AM   3   Q.  Was that something you enjoyed doing while you were

09:59AM   4   there?

09:59AM   5   A.  Absolutely.

09:59AM   6   Q.  Okay.  And you mentioned bouncers.  Would you give

09:59AM   7   cocaine to bouncers?

09:59AM   8   A.  Yes.

09:59AM   9   Q.  Did you get money from them, or you just gave it away?

09:59AM  10   A.  I just gave it to them.  They let me do whatever I want.

09:59AM  11   Q.  Okay.  Did there come a time ultimately, John, when you

09:59AM  12   were not allowed back at Pharaoh's?

09:59AM  13   A.  Yes.

09:59AM  14   Q.  Can you describe for the jury your understanding of why

09:59AM  15   you were not allowed back at Pharaoh's?

09:59AM  16   A.  I went to go in one day.  They said I wasn't allowed in,

09:59AM  17   that Peter reviewed the videotapes, and said that I don't own

09:59AM  18   the place, and I ain't allowed in there.

09:59AM  19   Q.  Okay.  So you were acting like you owned the place?

09:59AM  20   A.  Yeah.

09:59AM  21   Q.  Okay.  At that time when you were a heavy cocaine user,

09:59AM  22   would you, I don't know, would you act inappropriately at the

09:59AM  23   club?

09:59AM  24   A.  Yeah.

09:59AM  25   Q.  Okay.  Is that your understanding of why you weren't

09:59AM    1    allowed back there?

09:59AM    2    A.  Yeah.

09:59AM    3    Q.  Okay.

09:59AM    4          MR. COOPER:  Just a second please, Judge.

09:59AM    5          THE COURT:  Sure.

09:59AM    6          MR. COOPER:  I have no further direct.  Thank you,

10:00AM    7    Judge.

10:00AM    8          THE COURT:  Mr. Soehnlein?

10:00AM    9          MR. SOEHNLEIN:  Thank you, Judge.

10:00AM   10

10:00AM   11              CROSS-EXAMINATION BY MR. SOEHNLEIN:

10:00AM   12    Q.  Good morning, Mr. McDonald, how are you?

10:00AM   13    A.  Good.

10:00AM   14    Q.  We've never met before, correct?

10:00AM   15    A.  Correct.

10:00AM   16    Q.  You've met these folks before, correct?

10:00AM   17    A.  Yes.

10:00AM   18    Q.  Sitting at that back table there, who did you -- strike

10:00AM   19    that -- who do you know the longest?

10:00AM   20    A.  Probably Marilyn.

10:00AM   21    Q.  Ms. Halliday, correct?

10:00AM   22    A.  Yes.

10:00AM   23    Q.  Yeah.  She arrested you on a cruise ship at some point in

10:00AM   24    time, correct?

10:00AM   25    A.  Yes.

Case 1:19-cr-00227-LJV-MJR    Document 1476    Filed 04/03/25    Page 15 of 29
USA v Gerace - McDonald - Soehnlein/Cross - 12/11/24

15

10:00AM 1  Q.  And when she arrested you, she knew your nickname?  Your

10:00AM 2  nickname is Noodle, or something like that?

10:00AM 3  A.  Yep.

10:00AM 4  Q.  All right.  Just give me a minute here just to try to

10:00AM 5  pull this up.

10:00AM 6      So, I just want to dive into your testimony real quick.

10:00AM 7      You testified you go to strip clubs all the time,

10:00AM 8  correct?

10:00AM 9  A.  Yes.

10:01AM 10  Q.  Yeah.  That's more than just Pharaoh's, correct?

10:01AM 11  A.  Not -- now, it is, but back then it was just Pharaoh's,

10:01AM 12  like, until I got kicked out, and then I switched clubs.

10:01AM 13  Q.  Okay.  And -- and the stuff that you did at Pharaoh's,

10:01AM 14  you did at other clubs?

10:01AM 15          **MR. COOPER:**  Objection.

10:01AM 16          **THE COURT:**  Sustained.

10:01AM 17          **BY MR. SOEHNLEIN:**

10:01AM 18  Q.  Pharaoh's is the only club you've ever been kicked out

10:01AM 19  of?

10:01AM 20  A.  No.

10:01AM 21  Q.  Okay.  Now, you -- when you're going in and you're --

10:01AM 22  you're selling cocaine -- or, you're using cocaine or, you

10:01AM 23  know, you're doing what you're doing in that timeframe, which

10:01AM 24  I think you said was like '15 to '19, correct?

10:01AM 25  A.  Yes.

10:01AM  1   Q.  Now, when you are kicked out of the club, you're told

10:01AM  2   it's because of something that's on the camera system,

10:01AM  3   correct?

10:01AM  4   A.  Yeah.  I was told that Peter reviewed the cameras and

10:01AM  5   didn't like what I was doing, and that I thought I owned the

10:01AM  6   place, and I wasn't allowed in there anymore.

10:01AM  7   Q.  Okay.  So your understanding was, and just "yes" or "no,"

10:01AM  8   Peter reviewed the cameras, correct?

10:01AM  9   A.  Yes.

10:01AM  10  Q.  And Peter was making a decision that you were gonna get

10:01AM  11  kicked out of the club, correct?

10:01AM  12  A.  Yes.

10:01AM  13  Q.  And that was for conduct you had done inside the club,

10:01AM  14  correct?

10:02AM  15  A.  Correct.

10:02AM  16  Q.  Okay.  And inside the club, you were using cocaine,

10:02AM  17  correct?

10:02AM  18  A.  Yes.

10:02AM  19  Q.  Okay.  Now, you have -- I think you -- you pled guilty on

10:02AM  20  February 27th of 2020; do you recall that?

10:02AM  21  A.  Yes.

10:02AM  22  Q.  Correct?  And you had a plea agreement in the case,

10:02AM  23  correct?

10:02AM  24  A.  Correct.

10:02AM  25  Q.  And Mr. Cooper asked you some questions about some of

10:02AM  1    your criminal conduct, correct?

10:02AM  2    A.  Yes.

10:02AM  3    Q.  And that involved distributing cocaine?

10:02AM  4    A.  Yes.

10:02AM  5    Q.  And I think you had a firearm as well?

10:02AM  6    A.  Yes.

10:02AM  7    Q.  And in your plea agreement, the government was seeking an

10:02AM  8    enhancement for obstruction of justice, correct?

10:02AM  9    A.  Yes.

10:02AM  10    Q.  And -- and what did that relate to?

10:02AM  11    A.  Say it again?  I'm sorry?

10:02AM  12    Q.  What -- what was that about?  Why --

10:02AM  13    A.  I cut my ankle monitor off.

10:02AM  14    Q.  Okay.  You cut your ankle monitor off when you were on

10:02AM  15    supervised release?

10:02AM  16    A.  Yeah.

10:02AM  17    Q.  And that was because you wanted to get away?

10:02AM  18    A.  Well, nah, I was -- I was going to jail on Monday, so I

10:02AM  19    cut it off on Friday and enjoyed my weekend.

10:02AM  20    Q.  Okay.  And enjoyed your weekend?  What did you do over

10:03AM  21    the weekend?

10:03AM  22    A.  I just partied, chilled in a motel, had sex, ate food,

10:03AM  23    and went to jail.

10:03AM  24    Q.  Okay.  You -- you used illegal drugs?

10:03AM  25    A.  Yes.

| 10:03AM | 1 | Q.  You engaged in sex? |
| 10:03AM | 2 | A.  Yes. |
| 10:03AM | 3 | Q.  And you did it without your ankle monitor on? |
| 10:03AM | 4 | A.  Yes. |
| 10:03AM | 5 | Q.  You knew you were supposed to have your ankle monitor on, |
| 10:03AM | 6 | correct? |
| 10:03AM | 7 | A.  Yes. |
| 10:03AM | 8 | Q.  That's by order of the Court, correct? |
| 10:03AM | 9 | A.  Yes. |
| 10:03AM | 10 | Q.  And -- and that's obstruction of justice? |
| 10:03AM | 11 | A.  Sure. |
| 10:03AM | 12 | Q.  Yeah.  And that's something that you did, correct? |
| 10:03AM | 13 | A.  Yep. |
| 10:03AM | 14 | Q.  And you did that in what year? |
| 10:03AM | 15 | A.  '19.  2019. |
| 10:03AM | 16 | Q.  Okay.  You did it after all this stuff that you testified |
| 10:03AM | 17 | about at Pharaoh's, correct? |
| 10:03AM | 18 | A.  Yeah. |
| 10:03AM | 19 | Q.  Okay.  Now, I asked you about Ms. Halliday. |
| 10:03AM | 20 | You've met with law enforcement several times.  You met |
| 10:03AM | 21 | with them on September 13th of 2019, correct? |
| 10:03AM | 22 | A.  If you say so. |
| 10:03AM | 23 | Q.  Do you recall that? |
| 10:03AM | 24 | A.  I mean, it's been a bunch of times, I don't know the |
| 10:03AM | 25 | dates. |

| | | |
|---|---|---|
| 10:03AM | 1 | Q. Do you recall how many times? |
| 10:03AM | 2 | A. No, I don't. |
| 10:04AM | 3 | Q. You don't? |
| 10:04AM | 4 | A. No, I don't. |
| 10:04AM | 5 | Q. Okay. Do you recall meeting with them at least twice |
| 10:04AM | 6 | before you pled guilty, right? |
| 10:04AM | 7 | A. Yes. |
| 10:04AM | 8 | Q. And so that would have been sometime in 2019, correct? |
| 10:04AM | 9 | A. Yes. |
| 10:04AM | 10 | Q. Okay. And then you recall testifying in -- at other |
| 10:04AM | 11 | matters, that was at least twice, correct? |
| 10:04AM | 12 | A. Yes. |
| 10:04AM | 13 | Q. And then you recall some other times where you had more |
| 10:04AM | 14 | recent meetings in 2023 and 2024 where you called law |
| 10:04AM | 15 | enforcement, correct? |
| 10:04AM | 16 | A. Where I called law enforcement? |
| 10:04AM | 17 | Q. Yeah. |
| 10:04AM | 18 | A. I don't think so. |
| 10:04AM | 19 | Q. You don't recall that? |
| 10:04AM | 20 | A. No. |
| 10:04AM | 21 | Q. Okay. I'm gonna try and refresh your memory on that real |
| 10:04AM | 22 | quick. |
| 10:04AM | 23 | MR. SOEHNLEIN: Could we show Mr. McDonald 3649K? |
| 10:04AM | 24 | BY MR. SOEHNLEIN: |
| 10:05AM | 25 | Q. And all I want you to do is if go to the second page, |

10:05AM    1    this is for the witness, just read the first paragraph there.

10:05AM    2        Do you see that?

10:05AM    3    A.  Yep.  Yep.

10:05AM    4        **MR. SOEHNLEIN:**  That's fine.  You can take it down.

10:05AM    5        **BY MR. SOEHNLEIN:**

10:05AM    6    Q.  All right.  So that refreshes your recollection that

10:05AM    7    there have been times where you have contacted law

10:05AM    8    enforcement, correct?

10:05AM    9    A.  Yeah.

10:05AM    10   Q.  And you've contacted Ms. Halliday, correct?

10:05AM    11   A.  Yep.

10:05AM    12   Q.  You were provided a cell phone number for Ms. Halliday,

10:05AM    13   correct?

10:05AM    14   A.  Yes.

10:05AM    15   Q.  Okay.  And you would contact her when you had

10:05AM    16   information, correct?

10:05AM    17   A.  Or if I needed something.  Like, this building's fucking

10:05AM    18   you up, man.  You need help sometimes.

10:05AM    19   Q.  Right.  And so if -- if you needed something, you felt it

10:05AM    20   was appropriate to contact Ms. Halliday, correct?

10:05AM    21   A.  I mean, that's who I was comfortable with.

10:05AM    22   Q.  Right.  Even though you had an attorney at the time,

10:05AM    23   correct?

10:05AM    24   A.  Yeah.  I don't like him.

10:05AM    25   Q.  Okay.  And so instead of contacting your attorney, you

10:06AM    1    would -- on behalf of the defense Bar, I'm not gonna take

10:06AM    2    offense at that -- you -- you felt comfortable contacting

10:06AM    3    Ms. Halliday, correct?

10:06AM    4    A.   Yeah.

10:06AM    5    Q.   You had her cell phone, correct?

10:06AM    6    A.   Um-hum.

10:06AM    7    Q.   You reach out to her via text, correct?

10:06AM    8    A.   Yep.

10:06AM    9    Q.   And she would be responsive to whatever you needed help

10:06AM   10    with, correct?

10:06AM   11    A.   Sure.

10:06AM   12    Q.   There was even a time where you were trying to schedule

10:06AM   13    some sort of a job interview, correct?

10:06AM   14    A.   Yeah.  Yeah, yeah, yeah.  Yeah.  Yep.

10:06AM   15    Q.   And probation was giving you a hard time, right?

10:06AM   16    A.   Yeah, they wouldn't let me go.

10:06AM   17    Q.   Yeah.  So you had already pled guilty, correct?  Right?

10:06AM   18    A.   Yep.

10:06AM   19    Q.   And you had a problem with probation, right?

10:06AM   20    A.   Yep.

10:06AM   21    Q.   So at that point in time, you're a felon, right?

10:06AM   22    A.   Yeah.

10:06AM   23    Q.   And probation was giving you a hard time, correct?

10:06AM   24    A.   Um-hum.

10:06AM   25    Q.   And you reached out to Special Agent Halliday, correct?

| | | |
|---|---|---|
| 10:06AM | 1 | A.  Yes. |
| 10:06AM | 2 | Q.  For help, right? |
| 10:06AM | 3 | A.  Yep. |
| 10:06AM | 4 | Q.  Because in your head, that's who you were comfortable |
| 10:06AM | 5 | with, right? |
| 10:06AM | 6 | A.  Yes. |
| 10:06AM | 7 | Q.  Okay.  And -- and Special Agent Halliday didn't tell you |
| 10:07AM | 8 | not to contact her, right? |
| 10:07AM | 9 | A.  No. |
| 10:07AM | 10 | Q.  No.  She just told you don't text me, right? |
| 10:07AM | 11 | A.  She said shoot me a text and I'll call you. |
| 10:07AM | 12 | Q.  Okay.  Do you specifically recall those text messages? |
| 10:07AM | 13 | A.  No. |
| 10:07AM | 14 | Q.  Okay. |
| 10:07AM | 15 |       MR. SOEHNLEIN:  Hold on.  Can we show the witness |
| 10:07AM | 16 | 3649I.  And I just want to show him -- the WiFi is pretty slow |
| 10:07AM | 17 | here today, but I believe it's just the last page. |
| 10:07AM | 18 |       BY MR. SOEHNLEIN: |
| 10:07AM | 19 | Q.  Okay.  You recall these text messages, correct? |
| 10:07AM | 20 | A.  Yeah. |
| 10:07AM | 21 | Q.  These are text messages that you had with Special Agent |
| 10:07AM | 22 | Halliday, correct? |
| 10:07AM | 23 | A.  Yep. |
| 10:07AM | 24 | Q.  And you had reached out to her for help with probation, |
| 10:07AM | 25 | correct? |

| | | |
|---|---|---|
| 10:08AM | 1 | A.   Yeah. |
| 10:08AM | 2 | Q.   Yeah.   And she'd indicated to you that she would call the |
| 10:08AM | 3 | AUSA on your behalf, correct? |
| 10:08AM | 4 | A.   Yeah. |
| 10:08AM | 5 | Q.   Okay. |
| 10:08AM | 6 | A.   I was here, like, the day before, and it just happened |
| 10:08AM | 7 | to, like, work.   It all worked out, because I was here for, I |
| 10:08AM | 8 | think it was a status conference or something, and I seen |
| 10:08AM | 9 | her. |
| 10:08AM | 10 | And then the next day, like, all that shit went crazy |
| 10:08AM | 11 | with my PO, so I sent her a text. |
| 10:08AM | 12 | Q.   Yeah.   And you wanted help with probation, right? |
| 10:08AM | 13 | A.   Yeah. |
| 10:08AM | 14 | Q.   Yeah.   And -- and she didn't tell you not to contact her, |
| 10:08AM | 15 | right? |
| 10:08AM | 16 | A.   No. |
| 10:08AM | 17 | Q.   She told you that she would help you, right? |
| 10:08AM | 18 | A.   She did help. |
| 10:08AM | 19 | Q.   Yeah.   And at the bottom -- at the end, she says, by the |
| 10:08AM | 20 | way, don't text me, let's just talk, right? |
| 10:08AM | 21 | A.   Yeah.   That's what it says. |
| 10:08AM | 22 | **MR. SOEHNLEIN:**   Okay.   That's all I have.   Thank you. |
| 10:08AM | 23 | **MR. COOPER:**   Just a second, Judge. |
| 10:08AM | 24 | |
| | 25 | |

10:08AM
10:08AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM
10:09AM

1   **REDIRECT EXAMINATION BY MR. COOPER:**

2   Q.  John, you have no idea if Marilyn Halliday called Khalid

3   Emerson, your probation officer, correct?

4   A.  No.

5   Q.  You have no idea if that happened.  You have no idea if I

6   told Marilyn, we're not getting involved in that.  You have

7   no clue, right?

8   A.  No.

9   Q.  What you know is that whatever you had going on with

10  probation ultimately worked out, and she texted you back and

11  said great, right?

12  A.  Yes.

13  Q.  Okay.  So when Mr. Soehnlein was asking you questions

14  about Special Agent Halliday intervening on your behalf,

15  you're guessing, because it worked out for you, right?

16  A.  Yes.

17  Q.  You don't know if she reached out to Emerson, right?

18  A.  Correct.

19  Q.  Emerson would know that, right?

20  A.  Correct.

21  Q.  And Halliday would know that, right?

22  A.  Well, Emerson yelled at me the next day for making a

23  phone call.  So I believe, you know -- you know what I mean?

24  Something happened somewhere, and he didn't like it.

25  Q.  You have no idea if anybody asked for a benefit on your

| | | |
|---|---|---|
| 10:09AM | 1 | behalf, do you? |
| 10:09AM | 2 | A.  No. |
| 10:09AM | 3 | Q.  Okay.  You were asked some questions about contacting -- |
| 10:09AM | 4 | reaching out directly to Special Agent Halliday; do you |
| 10:09AM | 5 | remember that? |
| 10:09AM | 6 | A.  Yeah. |
| 10:09AM | 7 | Q.  One of the times that you reached out to Special Agent |
| 10:09AM | 8 | Halliday on the phone, is it because you got threatened or |
| 10:09AM | 9 | assaulted for being a cooperator? |
| 10:09AM | 10 | **MR. SOEHNLEIN:**  Objection. |
| 10:09AM | 11 | **MR. COOPER:**  Judge -- |
| 10:09AM | 12 | **THE COURT:**  Basis? |
| 10:09AM | 13 | **MR. SOEHNLEIN:**  Beyond the scope of direct. |
| 10:10AM | 14 | **MR. COOPER:**  Oh, no. |
| 10:10AM | 15 | **THE COURT:**  No, overruled. |
| 10:10AM | 16 | **BY MR. COOPER:** |
| 10:10AM | 17 | Q.  Did you get threatened or assaulted for cooperating with |
| 10:10AM | 18 | the government? |
| 10:10AM | 19 | A.  Yes, more than once. |
| 10:10AM | 20 | Q.  Okay.  Is that a pleasant experience? |
| 10:10AM | 21 | A.  No, not at all. |
| 10:10AM | 22 | Q.  Do you want to try to be safe? |
| 10:10AM | 23 | A.  Yes. |
| 10:10AM | 24 | Q.  Is calling a federal agent who you know something you do |
| 10:10AM | 25 | to try to keep yourself safe when you get threatened or |

10:10AM     1    assaulted for being a cooperator?

10:10AM     2    A.   Yeah.  And it's more of me just saying fuck you, you know

10:10AM     3    what I'm saying?  To them.

10:10AM     4        Like, I'm in trouble because I hung out in a fucking

10:10AM     5    strip club.  You know what I'm saying?

10:10AM     6        So me being here, I could care less about the cooperation

10:10AM     7    points, it's me saying fuck you.

10:10AM     8    Q.   Okay.  You were asked some questions about being arrested

10:10AM     9    on a cruise ship; do you remember that?

10:10AM    10    A.   Um-hum.

10:10AM    11    Q.   Okay.  Before you got arrested on the cruise ship, let's

10:10AM    12    talk about, maybe, the night before.  Were you acting super

10:10AM    13    inappropriately on the cruise ship?

10:10AM    14    A.   Absolutely.

10:10AM    15    Q.   Were you smoking marijuana in the hallways on the cruise

10:10AM    16    ship?

10:10AM    17    A.   Yes.

10:10AM    18    Q.   Were you taking pizza pies and slapping them on the

10:11AM    19    walls?

10:11AM    20    A.   Yes.

10:11AM    21    Q.   Were you acting like a jerk?

10:11AM    22    A.   Yes.

10:11AM    23    Q.   Did you, when you got arrested at that moment, the next

10:11AM    24    morning, that you were being arrested for the way you

10:11AM    25    contacted yourself on the ship?

10:11AM    1    A.    Yes.

10:11AM    2    Q.    Is that similar to the reason why you think you got

10:11AM    3    kicked out of Pharaoh's Gentlemen's Club?

10:11AM    4    A.    Absolutely.

10:11AM    5                MR. COOPER:   Okay.   I'm good, Judge.

10:11AM    6                THE COURT:   Anything more, Mr. Soehnlein?

10:11AM    7

10:11AM    8                RECROSS-EXAMINATION BY MR. SOEHNLEIN:

10:11AM    9    Q.    Ms. Halliday never told you not to contact her, correct?

10:11AM    10   A.    No.

10:11AM    11               MR. SOEHNLEIN:   That's all I have.

10:11AM    12               MR. COOPER:   No, I'm good.   Thank you.

10:11AM    13               THE COURT:   You can step down, sir.   Thank you very

10:11AM    14   much.

10:11AM    15               THE WITNESS:   Thank you.

10:11AM    16               (Witness excused at 10:11 a.m.)

           17               (Excerpt concluded at 10:11 a.m.)

           18                *    *    *    *    *    *    *

           19

           20

           21

           22

           23

           24

           25

1

2                    **CERTIFICATE OF REPORTER**

3

4            In accordance with 28, U.S.C., 753(b), I

5   certify that these original notes are a true and correct

6   record of proceedings in the United States District Court for

7   the Western District of New York on December 11, 2024.

8

9                       s/ Ann M. Sawyer
                        Ann M. Sawyer, FCRR, RPR, CRR
10                      Official Court Reporter
                        U.S.D.C., W.D.N.Y.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**TRANSCRIPT INDEX**

**EXCERPT - EXAMINATION OF JOHN McDONALD**

**DECEMBER 11, 2024**

**W I T N E S S**                                        **P A G E**

**J O H N   M c D O N A L D**                                2

  DIRECT EXAMINATION BY MR. COOPER:                 2

  CROSS-EXAMINATION BY MR. SOEHNLEIN:              14

  REDIRECT EXAMINATION BY MR. COOPER:              24

  RECROSS-EXAMINATION BY MR. SOEHNLEIN:            27