09:30AM

1                    **UNITED STATES DISTRICT COURT**
                     **WESTERN DISTRICT OF NEW YORK**
2

     _____
3    **UNITED STATES OF AMERICA,**
                                        Case No. 1:19-cr-227
4                    Plaintiff,                    1:23-cr-37
     v.                                            (LJV)
5
     **PETER GERACE, JR.,**                December 9, 2024
6
     _____Defendant._____
7
         **TRANSCRIPT EXCERPT - EXAMINATION OF R.A. (PW 6) - DAY 2**
8            **BEFORE THE HONORABLE LAWRENCE J. VILARDO**
                     **UNITED STATES DISTRICT JUDGE**
9
     <u>**APPEARANCES:**</u>      **TRINI E. ROSS, UNITED STATES ATTORNEY**
10                       **BY: JOSEPH M. TRIPI, ESQ.**
                             **NICHOLAS T. COOPER, ESQ.**
11                           **CASEY L. CHALBECK, ESQ.**
                         Assistant United States Attorneys
12                       Federal Centre, 138 Delaware Avenue
                         Buffalo, New York 14202
13                       For the Plaintiff

14                       **THE FOTI LAW FIRM, P.C.**
                         **BY: MARK ANDREW FOTI, ESQ.**
15                       16 West Main Street, Suite 100
                         Rochester, New York 14614
16                          And
                         **SOEHNLEIN LAW**
17                       **BY: ERIC MICHAEL SOEHNLEIN, ESQ.**
                         350 Main Street, Suite 2100
18                       Buffalo, New York 14202
                         For the Defendant
19
     <u>**PRESENT:**</u>        **KAREN A. CHAMPOUX, USA PARALEGAL**
20                       **BRIAN A. BURNS, FBI SPECIAL AGENT**
                         **MARILYN K. HALLIDAY, HSI SPECIAL AGENT**
21                       **OLIVIA A. PROIA, J.D., PARALEGAL**

22   <u>**LAW CLERK:**</u>      **REBECCA FABIAN IZZO, ESQ.**

23   <u>**COURT CLERK:**</u>    **COLLEEN M. DEMMA**

24   <u>**REPORTER:**</u>       **ANN MEISSNER SAWYER, FCRR, RPR, CRR**
                         Robert H. Jackson Courthouse
25                       2 Niagara Square Buffalo, New York 14202
                         Ann_Sawyer@nywd.uscourts.gov

09:57AM

| | | |
|---|---|---|
| 09:57AM | 1 | (Excerpt commenced at 9:57 a.m.) |
| 09:57AM | 2 | (Jury seated at 9:57 a.m.) |
| 09:57AM | 3 | **THE COURT:**  Good morning, everyone. |
| 09:57AM | 4 | **JURORS:**  Good morning. |
| 09:57AM | 5 | **THE COURT:**  Welcome back.  I hope that except for a |
| 09:57AM | 6 | few hours yesterday afternoon, everyone had a great weekend. |
| 09:57AM | 7 | The record will reflect that all our jurors are present. |
| 09:57AM | 8 | I remind the witness that she's still under oath. |
| 09:57AM | 9 | And, Mr. Soehnlein, you may continue. |
| 09:57AM | 10 | **MR. SOEHNLEIN:**  Thank you, Judge. |
| 09:57AM | 11 | |
| 09:57AM | 12 | **R.A. (PW 6),** having been previously duly called and sworn, |
| 09:57AM | 13 | continued to testify as follows: |
| 09:57AM | 14 | |
| 09:57AM | 15 | **(CONT'D) CROSS-EXAMINATION BY MR. SOEHNLEIN:** |
| 09:57AM | 16 | Q.  Good morning, Ms. R.A. |
| 09:57AM | 17 | A.  Good morning. |
| 09:57AM | 18 | Q.  How are you? |
| 09:57AM | 19 | A.  Good. |
| 09:57AM | 20 | Q.  I only have a few more questions. |
| 09:58AM | 21 | On Friday when we were here last, you were asked some |
| 09:58AM | 22 | questions about an individual named Joe Bongiovanni; do you |
| 09:58AM | 23 | recall those questions? |
| 09:58AM | 24 | A.  Yes. |
| 09:58AM | 25 | Q.  Okay.  And in the time that you knew Mr. Bongiovanni, |

| | | |
|---|---|---|
| 09:58AM | 1 | fair to say you knew him through Mr. Gerace, correct? |
| 09:58AM | 2 | A.  Yes. |
| 09:58AM | 3 | Q.  And fair to say your observations were that they had been |
| 09:58AM | 4 | friends? |
| 09:58AM | 5 | A.  Yes. |
| 09:58AM | 6 | Q.  Yeah.  And you never did cocaine with Mr. Bongiovanni, |
| 09:58AM | 7 | correct? |
| 09:58AM | 8 | A.  Never. |
| 09:58AM | 9 | Q.  You never saw Mr. Bongiovanni do cocaine? |
| 09:58AM | 10 | A.  No. |
| 09:58AM | 11 | Q.  You never saw Mr. Gerace do coke in front of |
| 09:58AM | 12 | Mr. Bongiovanni? |
| 09:58AM | 13 | A.  No. |
| 09:58AM | 14 | Q.  And you never heard Mr. Gerace say that he was giving a |
| 09:58AM | 15 | bribe to Mr. Bongiovanni? |
| 09:58AM | 16 | A.  Never. |
| 09:58AM | 17 | Q.  You never heard Mr. Gerace say that Mr. Bongiovanni was |
| 09:58AM | 18 | protecting him? |
| 09:58AM | 19 | A.  Never. |
| 09:58AM | 20 | Q.  He never gave you an envelope of cash to give to |
| 09:58AM | 21 | Mr. Bongiovanni? |
| 09:58AM | 22 | A.  Never. |
| 09:58AM | 23 | Q.  You never witnessed him give any cash to Mr. Bongiovanni? |
| 09:58AM | 24 | A.  Never. |
| 09:58AM | 25 | Q.  Now the -- on the government's questioning on Friday, |

09:59AM    1    there were some questions about whether or not the lead

09:59AM    2    prosecutor had done anything to personally offend you; do you

09:59AM    3    recall that?

09:59AM    4    A.    Yes.

09:59AM    5    Q.    And there were some questions about some of your

09:59AM    6    interactions with law enforcement over time, correct?

09:59AM    7    A.    Yes.

09:59AM    8    Q.    Do you feel that federal law enforcement has treated you

09:59AM    9    fairly?

09:59AM    10           MR. TRIPI:    Objection, relevance.

09:59AM    11           THE COURT:    Overruled.

09:59AM    12           THE WITNESS:    I feel as though that in the beginning

09:59AM    13    of this, in 2019, they came to my work, which was something --

09:59AM    14    I was, like, this is not good, because I work with parolees

09:59AM    15    and probationers, and I had to explain to my supervisor why

09:59AM    16    Homeland Security Investigations and the FBI were at my place

09:59AM    17    of employment.

09:59AM    18           BY MR. SOEHNLEIN:

09:59AM    19    Q.    And that was stressful for you?

09:59AM    20    A.    Absolutely.

09:59AM    21           MR. TRIPI:    Object to the leading.  He's adopted this

09:59AM    22    witness.

09:59AM    23           THE COURT:    No, overruled.

09:59AM    24           BY MR. SOEHNLEIN:

09:59AM    25    Q.    Yeah.  And -- and that impacted the way that you

10:00AM   1   interacted with law enforcement at that time, correct?

10:00AM   2   A.   Yes.

10:00AM   3   Q.   Yeah.   Were you scared?

10:00AM   4   A.   I necessarily wasn't scared.   I was more -- it was more

10:00AM   5   toward my son, because not only that, they would come to the

10:00AM   6   house, my mother's home where my son was residing at the

10:00AM   7   time.   And they would be waiting outside the house for my

10:00AM   8   mother to come home.   And my son would call me saying that

10:00AM   9   they're here.   And he was scared, so it kind of made me a

10:00AM  10   little bit, you know, uneasy.

10:00AM  11            **MR. SOEHNLEIN:**   That's all I have.   Thank you.

10:00AM  12            **MR. TRIPI:**   I have some questions, Your Honor.

10:00AM  13

10:00AM  14            **REDIRECT EXAMINATION BY MR. TRIPI:**

10:00AM  15   Q.   Good morning again, Ms. R.A.

10:00AM  16   A.   Good morning.

10:00AM  17   Q.   I have a little bit of followup based on the questions

10:01AM  18   that Mr. Soehnlein asked you, okay?

10:01AM  19   A.   Um-hum.

10:01AM  20   Q.   As I think we established on Friday, until we had

10:01AM  21   questioned -- I had questioned you in court, you and I have

10:01AM  22   never met each other; fair to say?

10:01AM  23   A.   No, I met you before.

10:01AM  24   Q.   I said hello, but we never engaged in a conversation; is

10:01AM  25   that fair?

10:01AM   1   A.  I don't believe so.  I think that before the grand jury

10:01AM   2   testimony, you were in the room with me.  Across from me.

10:01AM   3   Q.  Okay.  Well, I asked you about Mr. Cullinane and

10:01AM   4   Mr. Burns, and you said you didn't remember names.  Do you

10:01AM   5   remember that testimony from Friday?

10:01AM   6   A.  I don't think you even asked me that.  You never said

10:01AM   7   anything about Cullinane in or Burns directly to me.

10:01AM   8        **MR. TRIPI:**  All right.  Let's pull up her grand jury

10:01AM   9   transcript, Ms. Champoux.

10:01AM   10        **THE WITNESS:**  You asked me if I was.

10:01AM   11        **MR. TRIPI:**  There's not a question right now.

10:01AM   12        Let's pull up her grand jury.  I'm going to see if we

10:02AM   13   can refresh her recollection as to who dealt with her at the

10:02AM   14   grand jury.

10:02AM   15        All right.  I'm going to ask you to read that first

10:02AM   16   page, this is Government Exhibit 3562A.

10:02AM   17        And, Ms. Champoux, can we highlight the "by" portion

10:02AM   18   of what I've circled there?  Just "by."  That part.

10:02AM   19        **BY MR. TRIPI:**

10:02AM   20   Q.  Okay.  Do you see that there?

10:02AM   21   A.  I do.

10:02AM   22   Q.  Now, isn't it true that you dealt with another prosecutor

10:02AM   23   during your grand jury, Mr. Brendan Cullinane?  Yes or no.

10:02AM   24   A.  Who is this now?

10:02AM   25   Q.  My question to you, ma'am, is:  Does that refresh your

10:02AM    1    recollection that you dealt with --

10:02AM    2    A.  No, it --

10:02AM    3    Q.  -- Brendan Cullinane?

10:02AM    4    A.  -- it -- it really doesn't.

10:02AM    5    Q.  Okay.

10:02AM    6    A.  I don't know who this gentlemen is.  I mean, I thought

10:02AM    7    you were speaking of the defense, or --

10:02AM    8        Well, now that I see it --

10:02AM    9    Q.  So, it's your testimony under oath that I questioned you

10:03AM   10    in grand jury and I dealt you?

10:03AM   11    A.  You didn't question me in grand jury.  You asked if I

10:03AM   12    ever spoke to you before, and I said yes, I have in the

10:03AM   13    office before.

10:03AM   14         MR. TRIPI:  Okay.  We'll take that down,

10:03AM   15    Ms. Champoux.

10:03AM   16         BY MR. TRIPI:

10:03AM   17    Q.  Now, I'm going to move on to another topic for you, okay?

10:03AM   18        So let's go through the timeline of events a little bit,

10:03AM   19    okay?

10:03AM   20    A.  Absolutely.

10:03AM   21    Q.  Your first interview with law enforcement was on

10:03AM   22    June 26th, 2020, when you were interviewed in a car by

10:03AM   23    Geraldo Rondan and Rick Cawthard in Keenan Center Park,

10:03AM   24    correct?

10:03AM   25    A.  Yes.

10:03AM   1    Q.  And where is Keenan Center Park located?

10:03AM   2    A.  In Lockport.

10:03AM   3    Q.  And you live in Lockport, right?

10:03AM   4    A.  Yes, I do.

10:03AM   5    Q.  And you lived in Lockport back on June 26th, 2020,

10:04AM   6    correct?

10:04AM   7    A.  Yes.

10:04AM   8    Q.  And those two agents, they met you in the park, correct?

10:04AM   9    A.  Yes.

10:04AM  10    Q.  That was a location you chose, correct?

10:04AM  11    A.  Yes.

10:04AM  12    Q.  And you sat in the vehicle with them and you talked to

10:04AM  13    them?

10:04AM  14    A.  I didn't sit in a vehicle with them.

10:04AM  15    Q.  Where did you --

10:04AM  16    A.  They sat at a picnic table with me.

10:04AM  17    Q.  Oh, okay, so they sat at a picnic table in the park with

10:04AM  18    you, correct?

10:04AM  19    A.  Yes.

10:04AM  20    Q.  And so you came from work or from your home to the park?

10:04AM  21    A.  I came from my home.

10:04AM  22    Q.  Okay.  So you -- you had arranged the interview over the

10:04AM  23    phone with them, correct?

10:04AM  24         MR. SOEHNLEIN:  Your Honor, I'm just going to object

10:04AM  25    to the leading.  This is redirect, this is not cross.

| | | |
|---|---|---|
| 10:04AM | 1 | **MR. TRIPI:**  No, this is Rule 607 and 611(c). |
| 10:04AM | 2 | **THE COURT:**  Yeah.  Overruled. |
| 10:04AM | 3 | **BY MR. TRIPI:** |
| 10:04AM | 4 | Q.  So -- |
| 10:04AM | 5 | A.  I didn't talk -- |
| 10:04AM | 6 | Q.  Let me re-ask the question, because we had a court |
| 10:04AM | 7 | ruling, okay? |
| 10:04AM | 8 | A.  Okay. |
| 10:04AM | 9 | Q.  So you had to arrange where to meet with them, and you |
| 10:04AM | 10 | did that over the phone? |
| 10:04AM | 11 | A.  No, I didn't do that over the phone. |
| 10:04AM | 12 | Q.  Okay.  So you drove from your house to the park, you sat |
| 10:04AM | 13 | at a picnic bench, and those two individuals met you, |
| 10:04AM | 14 | correct? |
| 10:05AM | 15 | A.  Yes. |
| 10:05AM | 16 | Q.  You voluntarily drove from your house to the park and sat |
| 10:05AM | 17 | and met with them, true? |
| 10:05AM | 18 | A.  Yes. |
| 10:05AM | 19 | Q.  They were polite to you, correct? |
| 10:05AM | 20 | A.  They were polite. |
| 10:05AM | 21 | Q.  They were professional, correct? |
| 10:05AM | 22 | A.  Yes. |
| 10:05AM | 23 | Q.  You sat and talked to them for a little while, correct? |
| 10:05AM | 24 | A.  Yes. |
| 10:05AM | 25 | Q.  They -- they took down some notes, they jotted down some |

Case 1:19-cr-00227-LJV-MJR    Document 1512    Filed 04/27/25    Page 10 of 48
USA v Gerace - R.A. (PW 6) - Tripi/Redirect - 12/9/24

10

10:05AM 1  things, true?

10:05AM 2  A.  True.

10:05AM 3  Q.  And during that interview, they indicated to you they'd

10:05AM 4  keep in touch with you, correct?

10:05AM 5  A.  Yes.

10:05AM 6  Q.  All right.  And that was a location that you had picked

10:05AM 7  to -- where you wanted to meet with them, correct?

10:05AM 8  A.  Yes, because they called me every single day.

10:05AM 9  Q.  Yes or no to my question.

10:05AM 10 A.  Yes.

10:05AM 11 Q.  That was your choice, correct?

10:05AM 12 A.  Yes.

10:05AM 13 Q.  And so they met you on your terms, right?

10:06AM 14 A.  Yes.

10:06AM 15 Q.  And then you went into grand jury not too long after

10:06AM 16 that, correct?

10:06AM 17 A.  Yes.

10:06AM 18        **MR. TRIPI:**  One moment.

10:06AM 19        **BY MR. TRIPI:**

10:06AM 20 Q.  I think we just looked at a moment ago, looking at 3562A,

10:06AM 21 grand jury wasn't too much -- didn't follow that interaction

10:07AM 22 with the agents by too much time, correct?

10:07AM 23 A.  I don't understand the question.

10:07AM 24 Q.  You testified in grand jury a couple months later, about

10:07AM 25 September; does that sound about right?

| | | |
|---|---|---|
| 10:07AM | 1 | A.  Safe to say. |
| 10:07AM | 2 | Q.  Okay.  And you met that day when you came to grand |
| 10:07AM | 3 | jury -- at least you recall meeting Special Agent Burns that |
| 10:07AM | 4 | day? |
| 10:07AM | 5 | A.  At grand jury?  I don't think I met with Special Agent |
| 10:07AM | 6 | Burns.  I don't know really names.  It was kind of a -- |
| 10:07AM | 7 | Q.  Since that -- |
| 10:07AM | 8 | A.  -- overwhelming. |
| 10:07AM | 9 | Q.  -- since that time, you've -- you've communicated with |
| 10:07AM | 10 | Special Agent Burns, correct? |
| 10:07AM | 11 | A.  Yes. |
| 10:07AM | 12 | Q.  And he's kept in touch with you regarding scheduling, |
| 10:07AM | 13 | things like that; fair to say? |
| 10:07AM | 14 | A.  Yes. |
| 10:07AM | 15 | Q.  Okay.  He's been a gentleman to you, correct? |
| 10:07AM | 16 | A.  Yes. |
| 10:07AM | 17 | Q.  He's been professional? |
| 10:07AM | 18 | A.  He has. |
| 10:07AM | 19 | Q.  He's been appropriate? |
| 10:07AM | 20 | A.  Yes. |
| 10:07AM | 21 | Q.  And now, we talked about it, you went into grand jury |
| 10:07AM | 22 | on -- in September and you answered questions under oath, |
| 10:08AM | 23 | right? |
| 10:08AM | 24 | A.  I did. |
| 10:08AM | 25 | Q.  And we went through on Friday some of those questions and |

10:08AM    1    answers that you gave under oath back then, correct?

10:08AM    2    A.  Are you talking, like --

10:08AM    3    Q.  On Friday when I asked you some questions, we covered --

10:08AM    4    A.  I'm sorry, I thought you were recalling about the grand

10:08AM    5    jury on a Friday, and you're recalling on Friday here today?

10:08AM    6    Q.  We talked on Friday --

10:08AM    7    A.  Okay.

10:08AM    8    Q.  -- when I stood here --

10:08AM    9    A.  Yep.

10:08AM    10   Q.  -- and you sat there --

10:08AM    11   A.  Yes.

10:08AM    12   Q.  -- and I asked you questions, and then at times we

10:08AM    13   referred to your grand jury and things you said?

10:08AM    14   A.  Yes.

10:08AM    15   Q.  Okay.  And after that grand jury, things changed for you

10:08AM    16   in terms of how you started to view the government, correct?

10:08AM    17   A.  I don't -- I wouldn't say things changed.

10:08AM    18   Q.  Okay.  Well, this year, in the lead-up to this trial, in

10:08AM    19   October, you started posting things to Facebook complaining

10:09AM    20   about this case; yes or no?

10:09AM    21   A.  No.  I have never posted about this case.

10:09AM    22   Q.  I asked you a "yes" or "no" question.

10:09AM    23   A.  No, I've never posted about this case.

10:09AM    24   Q.  You posted letters that the defendant wrote --

10:09AM    25   A.  No, I have not.

Case 1:19-cr-00227-LJV-MJR    Document 1512    Filed 04/27/25    Page 13 of 48
USA v Gerace - R.A. (PW 6) - Tripi/Redirect - 12/9/24

13

10:09AM    1    Q.  Let me finish the question, ma'am, that's how this goes.

10:09AM    2    A.  Okay.

10:09AM    3    Q.  Okay?  You posted letters to Facebook on your profile

10:09AM    4    Rudy Marie, correct?

10:09AM    5    A.  Yeah.  Go ahead.

10:09AM    6    Q.  You have a Rudy Marie Facebook account?

10:09AM    7    A.  Um-hum.

10:09AM    8    Q.  Rudy Marie --

10:09AM    9    **THE COURT:**  One at a time.  Wait -- wait until the

10:09AM   10    question is finished before you start answering.

10:09AM   11    Mr. Tripi, please wait for the answer to be finished

10:09AM   12    before you start asking another question.

10:09AM   13    **BY MR. TRIPI:**

10:09AM   14    Q.  Rudy Marie is you, correct?

10:09AM   15    A.  Yes.

10:09AM   16    Q.  And you posted letters that Mr. Gerace wrote on

10:09AM   17    October 3rd, 2024 to Facebook?  Yes or no.

10:09AM   18    A.  Yes.

10:09AM   19    Q.  And you posted the letters and you -- you gave an

10:09AM   20    explanation to your Facebook followers that this letter was

10:09AM   21    going to the Boston Globe, senators, congressmen and women,

10:10AM   22    MSNBC, USA Today, New York Times, and many others.  You said

10:10AM   23    that, correct?

10:10AM   24    A.  Yes.

10:10AM   25    Q.  And in the letter, it was defendant's view and his rant

10:10AM    1    about complaints about his case, and specifically the

10:10AM    2    prosecutors, true?

10:10AM    3              MR. SOEHNLEIN:  Objection, Judge.

10:10AM    4              THE COURT:  Sustained to the form of the question.

10:10AM    5              BY MR. TRIPI:

10:10AM    6    Q.  It was the defendant's complaints about prosecutors on

10:10AM    7    his case, correct?

10:10AM    8    A.  The letters?

10:10AM    9    Q.  Yes.

10:10AM   10    A.  Yes.

10:10AM   11    Q.  And you posted that.  You advertised that to the --

10:10AM   12    A.  I did not advertise that --

10:10AM   13    Q.  -- people --

10:10AM   14              THE COURT:  One -- one at a time, please.

10:10AM   15              BY MR. TRIPI:

10:10AM   16    Q.  When I'm speaking, you need to wait.

10:10AM   17    A.  I will.

10:10AM   18    Q.  You posted that to as many people as -- as you could,

10:10AM   19    correct?

10:10AM   20    A.  Not as many people as I could.  I have friends on

10:10AM   21    Facebook.  Only to my friends.  It wasn't a public post.

10:10AM   22    Q.  Well, let's talk about some of your friends on Facebook

10:11AM   23    then.  As of that date --

10:11AM   24              MR. SOEHNLEIN:  Object.

          25

10:11AM   1          **BY MR. TRIPI:**

10:11AM   2    Q.  -- some of your friends on Facebook included Linda

10:11AM   3    Gerace, the defendant's mom, right?

10:11AM   4          **MR. SOEHNLEIN:**  I'm sorry.  Relevance, Judge.

10:11AM   5          **THE COURT:**  Overruled.

10:11AM   6          **BY MR. TRIPI:**

10:11AM   7    Q.  It included the defendant's mom, Linda Gerace, correct?

10:11AM   8    A.  Yes.

10:11AM   9    Q.  It included Peter Gerace, correct?  This defendant?

10:11AM  10    A.  Sure, yes.

10:11AM  11    Q.  It included his brother, David Gerace, correct?

10:11AM  12    A.  Yes.

10:11AM  13    Q.  It included a whole bunch of other people, too, didn't

10:11AM  14    it?

10:11AM  15    A.  Yes.

10:11AM  16    Q.  You have a lot of Facebook friends, right?

10:11AM  17    A.  About a thousand.

10:11AM  18    Q.  And you were hoping those thousand would further

10:11AM  19    circulate his complaints, true?

10:11AM  20    A.  No.

10:11AM  21    Q.  Okay.  So you just posted it willy-nilly?

10:11AM  22    A.  Sure did.

10:11AM  23    Q.  Okay.  When you were waiting to testify, even though the

10:11AM  24    government was going to call you on Friday, in the hallway

10:11AM  25    you sat with the defendant's mom and dad, correct?

10:11AM   1   A.  Are you talking about today or yesterday?

10:11AM   2   Q.  Friday.

10:12AM   3   A.  Oh, yes, I was talking about my son and Christmas.

10:12AM   4   Q.  Okay.  My question -- do you remember what my question

10:12AM   5   was?

10:12AM   6   A.  If I sat with them?

10:12AM   7   Q.  Okay.  What's the answer to that?

10:12AM   8   A.  I sat with them briefly, yes.

10:12AM   9   Q.  You laughed with them in the hallway, correct?

10:12AM   10  A.  Yeah, I smiled because we're talking about my son.

10:12AM   11  Q.  What was my question?

10:12AM   12  A.  Yes, I smiled.

10:12AM   13  Q.  You're still friends on Facebook with the defendant's

10:12AM   14  whole family, correct?

10:12AM   15  A.  Yes, I'm friends with them.  I don't think they're bad

10:12AM   16  people.

10:12AM   17  Q.  That was a "yes" or "no" question.

10:12AM   18  A.  Yes.

10:12AM   19  Q.  Okay.  Now, in terms of your history with the defendant,

10:12AM   20  let's talk a little bit about that.

10:12AM   21      Obviously, you had a son with him in 2006, correct?

10:12AM   22  A.  Yes.

10:12AM   23  Q.  The defendant supports your son financially, true?

10:12AM   24  A.  True.  But he's 18 now, so he no longer does that.

10:12AM   25  Q.  My question is, yes or no --

| 10:12AM | 1 | A.  Yes. |
| 10:12AM | 2 | Q.  -- the defendant supports your son financially? |
| 10:12AM | 3 | A.  Yes. |
| 10:12AM | 4 | Q.  Your son's in college now? |
| 10:12AM | 5 | A.  He is. |
| 10:12AM | 6 | Q.  Where does he go? |
| 10:13AM | 7 | A.  NCCC. |
| 10:13AM | 8 | Q.  Now, obviously, you're a mom, and your son -- your son's |
| 10:13AM | 9 | father's the defendant, right? |
| 10:13AM | 10 | A.  Yes. |
| 10:13AM | 11 | Q.  We've established that by now. |
| 10:13AM | 12 | Yes or no:  Is it fair to say that you don't want your |
| 10:13AM | 13 | son to be mad at you for the rest of his life for testifying |
| 10:13AM | 14 | against his dad? |
| 10:13AM | 15 | A.  No.  That is not fair to say. |
| 10:13AM | 16 | Q.  Okay.  That -- that's not been part of your calculus at |
| 10:13AM | 17 | all? |
| 10:13AM | 18 | A.  No. |
| 10:13AM | 19 | Q.  Okay.  Now, isn't it true, ma'am, that your relationship |
| 10:14AM | 20 | and the history of it with this defendant has you nervous to |
| 10:14AM | 21 | testify publicly? |
| 10:14AM | 22 | A.  No. |
| 10:14AM | 23 | Q.  Isn't it true, ma'am, that you regret telling agents that |
| 10:14AM | 24 | day in the park June 26th, 2020 what you did? |
| 10:14AM | 25 | You -- you -- you regret telling them the things that you |

| | | |
|---|---|---|
| 10:14AM | 1 | told them, don't you? |
| 10:14AM | 2 | A.  No. |
| 10:14AM | 3 | Q.  You regret going in grand jury and telling the grand jury |
| 10:14AM | 4 | the things that you said? |
| 10:14AM | 5 | A.  No. |
| 10:14AM | 6 | Q.  You regret those things because, as you sit here now, |
| 10:14AM | 7 | you're scared and defensive? |
| 10:14AM | 8 | A.  No, I am not scared. |
| 10:14AM | 9 | Q.  Well, you were aware of the defendant's grandfather's |
| 10:14AM | 10 | reputation for being involved in organized crime, correct? |
| 10:14AM | 11 | A.  Was I aware of that? |
| 10:14AM | 12 | Q.  Yes.  You were aware of that as you sat with agents |
| 10:15AM | 13 | June 20th, 2020, correct? |
| 10:15AM | 14 | A.  Yes. |
| 10:15AM | 15 | Q.  You were aware of his family's reputation for connections |
| 10:15AM | 16 | to organized crime when you went in grand jury in 2020, |
| 10:15AM | 17 | correct? |
| 10:15AM | 18 | A.  Yes. |
| 10:15AM | 19 | Q.  You told the agents that day, June 26th, 2020, you're |
| 10:15AM | 20 | still scared as you sat with them in the park, correct? |
| 10:15AM | 21 | A.  I don't think I said that, no. |
| 10:15AM | 22 | Q.  All right.  We're gonna show you 3562B, and I'm going to |
| 10:15AM | 23 | have you read page 1. |
| 10:15AM | 24 |         **MR. TRIPI:**  This is just for the witness. |
| | 25 | |

10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:15AM
10:16AM
10:16AM
10:16AM
10:16AM
10:16AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:18AM
10:18AM
10:18AM

1    **BY MR. TRIPI:**

2    Q.  Let me ask you a few questions before you read, and then

3    I'll have you read it and see if we can refresh your

4    recollection.

5        Ms. R.A., if you can look at me for just a second, I have

6    one more question and then I'll refresh your memory.

7        Earlier we established the agents sat with you and they

8    were jotting down notes, correct?

9    A.  Yes.

10   Q.  And those notes made their way into a report, correct?

11   A.  Yes.

12   Q.  Okay.  Now take a look, read page 1 to yourself, and then

13   I'm going to ask my question again.

14       **MR. TRIPI:**  And, Ms. Champoux, while she's reading,

15   can you highlight the last sentence of the second-to-last

16   paragraph for her?  The last sentence of that paragraph.

17           Highlight, not zoom.

18       **THE WITNESS:**  Okay.  I see it.

19       **BY MR. TRIPI:**

20   Q.  Keep reading.

21   A.  Okay.

22   Q.  We're going to go to page 2 now and let you read that.

23   A.  I don't believe all of this was verbatim of things that I

24   said.

25   Q.  Just read it to yourself --

10:18AM 1    A.  Okay.

10:18AM 2    Q.  -- and let us know when you're done.

10:18AM 3    A.  I'm done.

10:18AM 4         **MR. TRIPI:**  Okay.  We can take that down.

10:18AM 5         **BY MR. TRIPI:**

10:18AM 6    Q.  Now "yes" or "no" to my question:  Isn't it true that you

10:18AM 7    expressed to agents multiple times on June 26th, 2020, that

10:18AM 8    you were still scared of that defendant as you sat there at

10:18AM 9    the picnic bench in the park?  "Yes" or "no" --

10:18AM 10   A.  I don't --

10:18AM 11   Q.  -- are the only words that should come out of your mouth.

10:18AM 12        **MR. SOEHNLEIN:**  Objection.  Argumentative.

10:18AM 13        **MR. TRIPI:**  No, I'm allowed to control the witness.

10:18AM 14        **THE COURT:**  You are --

10:18AM 15        **THE WITNESS:**  Are you?

10:18AM 16        **THE COURT:**  Stop.  Stop, please.

10:18AM 17        If counsel asks for a "yes" or "no" answer, then your

10:18AM 18   answer has to be either "yes," "no," or "I can't answer yes or

10:18AM 19   no."  Okay?

10:18AM 20        **THE WITNESS:**  I can't answer "yes" or "no",

10:18AM 21   Mr. Tripi.

10:18AM 22        **BY MR. TRIPI:**

10:18AM 23   Q.  And it may be understandable, but you're still scared as

10:19AM 24   you sit here today, aren't you?

10:19AM 25   A.  No.

10:19AM  1   Q.  Well, you know the defendant has connections to the

10:19AM  2   Outlaws, correct?

10:19AM  3       You've talked about him riding with the Outlaws before,

10:19AM  4   correct?

10:19AM  5   A.  Yes.

10:19AM  6   Q.  Okay.  You know his entire family has a reputation for

10:19AM  7   being connected to organized crime, correct?

10:19AM  8           **MR. SOEHNLEIN:**  Objection.  Entire family.

10:19AM  9           **THE COURT:**  Yeah, sustained.

10:19AM  10          **BY MR. TRIPI:**

10:19AM  11  Q.  You know his family and him have connections to organized

10:19AM  12  crime, correct?

10:19AM  13          **MR. SOEHNLEIN:**  Objection.

10:19AM  14          **THE WITNESS:**  I can't answer "yes" or "no" to that.

10:19AM  15          **THE COURT:**  Stop.  Stop.  Stop.

10:19AM  16          Sustained.

10:19AM  17          Please pause before you start answering.  So let him

10:19AM  18  finish and pause so I can rule, okay?

10:19AM  19          That question was improper, so he's got to ask

10:19AM  20  another one.

10:19AM  21          Sustained.

10:19AM  22          The jury will strike any answer that was given.

10:19AM  23          **BY MR. TRIPI:**

10:19AM  24  Q.  On June 26th, 2020, you reported to the agents, quote,

10:19AM  25  Peter always talked about it, it's on the internet, it's well

| 10:19AM | 1 | known who they are, correct? |
| 10:20AM | 2 | **MR. SOEHNLEIN:** Objection. |
| 10:20AM | 3 | **THE COURT:** Sustained. |
| 10:20AM | 4 | **MR. TRIPI:** Your Honor, may I come up on that? |
| 10:20AM | 5 | **THE COURT:** Yeah, come on up. |
| 10:20AM | 6 | (Sidebar discussion held on the record.) |
| 10:20AM | 7 | **MR. TRIPI:** So, Judge, this -- this is, in my view, a |
| 10:20AM | 8 | proper oral impeachment. It's not hearsay, because I'm |
| 10:20AM | 9 | impeaching her with -- with things that's she's denying now |
| 10:20AM | 10 | and things she said orally to agents. |
| 10:20AM | 11 | So if she denies that she said his family or him were |
| 10:20AM | 12 | in organized crime, and she's previously said it, it's not for |
| 10:20AM | 13 | its truth, but it's to impeach her under Rule 607 and all of |
| 10:20AM | 14 | those other rules. |
| 10:20AM | 15 | So I'm not -- a limiting instruction would be |
| 10:20AM | 16 | appropriate, but she has said those things. |
| 10:20AM | 17 | **MR. SOEHNLEIN:** But that's not her statement, and she |
| 10:20AM | 18 | said that it's not accurate, so there's nothing to impeach her |
| 10:20AM | 19 | with. |
| 10:20AM | 20 | **THE COURT:** And you can't quote from the document. |
| 10:20AM | 21 | My problem is if it's a quote. |
| 10:20AM | 22 | **MR. TRIPI:** If there are quotes -- if there are |
| 10:20AM | 23 | quotes from -- from an agent. |
| 10:20AM | 24 | **MR. SOEHNLEIN:** No. |
| 10:20AM | 25 | **THE COURT:** You can't quote from a document. You can |

Case 1:19-cr-00227-LJV-MJR    Document 1512    Filed 04/27/25    Page 23 of 48
USA v Gerace - R.A. (PW 6) - Tripi/Redirect - 12/9/24

23

10:21AM    1    ask her if she said that.

10:21AM    2         **MR. TRIPI:**  Well, I've done that.  Fine, I'll do it

10:21AM    3    that way.

10:21AM    4         **THE COURT:**  Yeah.

10:21AM    5         **MR. SOEHNLEIN:**  Yeah.

10:21AM    6         **THE COURT:**  You can't -- can't quote a document.

10:21AM    7         **MR. SOEHNLEIN:**  And you can't cross-examine her with

10:21AM    8    that, it's not her statement.

10:21AM    9         **MR. TRIPI:**  I can use it to form whatever questions I

10:21AM   10    want, that's how I know what happens at the meeting.

10:21AM   11         **THE COURT:**  As long as you don't read from the

10:21AM   12    document or give the jury the impression that you're reading

10:21AM   13    from a document --

10:21AM   14         **MR. TRIPI:**  Sure, okay.

10:21AM   15         **THE COURT:**  -- because it's not a -- it's not her

10:21AM   16    statement.

10:21AM   17         **MR. TRIPI:**  But --

10:21AM   18         **THE COURT:**  This is usually the argument that you're

10:21AM   19    making to me.

10:21AM   20         **MR. TRIPI:**  Well, that goes to -- that goes to your

10:21AM   21    instruction that questions not evidence, and you instruct the

10:21AM   22    jury on that.

10:21AM   23         My questions not evidence.  It's the question and the

10:21AM   24    answer.

10:21AM   25         **THE COURT:**  You can't --

10:21AM 1    **MR. TRIPI:**  That was the buzzword that -- I'm -- I'm

10:21AM 2    just trying to understand.

10:21AM 3        **THE COURT:**  You can't quote from the document.

10:21AM 4        **MR. TRIPI:**  Okay.

10:21AM 5        (End of sidebar discussion.)

10:21AM 6        **THE COURT:**  The objection is sustained.  Ask the next

10:21AM 7    question, please.

10:21AM 8        **BY MR. TRIPI:**

10:21AM 9    Q.  You told the agents that the defendant's family is

10:21AM 10   involved in organized crime, and he would talk about rats and

10:21AM 11   snitches, correct?

10:21AM 12       **MR. SOEHNLEIN:**  Objection.

10:21AM 13       **THE COURT:**  Overruled.

10:21AM 14       You said that:  "Yes," "no," or "I can't answer yes

10:22AM 15   or no."

10:22AM 16       **THE WITNESS:**  I can't answer yes or no.

10:22AM 17       **BY MR. TRIPI:**

10:22AM 18   Q.  All right.  Any question where a yes answer would hurt

10:22AM 19   him, are -- you're gonna say you don't remember or you can't

10:22AM 20   answer; isn't that true?

10:22AM 21       **MR. SOEHNLEIN:**  Objection.

10:22AM 22       **THE COURT:**  Sustained.  Sustained.  Sustained.

10:22AM 23       **THE WITNESS:**  No.

10:22AM 24       **BY MR. TRIPI:**

10:22AM 25   Q.  You know and have reported that the defendant gave

| | | |
|---|---|---|
| 10:22AM | 1 | cocaine to dancers to engage in threesomes at Pharaoh's, |
| 10:22AM | 2 | correct? |
| 10:22AM | 3 | A.  I can't answer yes or no to that, sir. |
| 10:22AM | 4 | Q.  Well, you've previously reported that, too, haven't you? |
| 10:22AM | 5 | A.  I reported it?  I never -- I don't even know what |
| 10:22AM | 6 | questions were asked of me in that park. |
| 10:22AM | 7 | Q.  Okay.  So you said that before? |
| 10:22AM | 8 | A.  Excuse me? |
| 10:22AM | 9 | Q.  You've said that before? |
| 10:22AM | 10 | A.  I don't know if I said it before. |
| 10:22AM | 11 | Q.  Now, turning to Mr. Bongiovanni just for a moment, you |
| 10:22AM | 12 | were asked a little bit about him today, correct? |
| 10:22AM | 13 | A.  Yes. |
| 10:22AM | 14 | Q.  Now -- |
| 10:22AM | 15 | A.  Yes. |
| 10:22AM | 16 | Q.  -- you've seen Mr. Bongiovanni several times, correct? |
| 10:23AM | 17 | A.  Several times, when? |
| 10:23AM | 18 | Q.  In your life? |
| 10:23AM | 19 | A.  Yes. |
| 10:23AM | 20 | Q.  You've seen him at SoHo? |
| 10:23AM | 21 | A.  Yes. |
| 10:23AM | 22 | Q.  You've seen him at Pharaoh's? |
| 10:23AM | 23 | A.  I've never seen him at Pharaoh's. |
| 10:23AM | 24 | Q.  Okay.  We'll get back to that in a second. |
| 10:23AM | 25 | A.  Okay. |

| | | |
|---|---|---|
| 10:23AM | 1 | Q. You've been to Ellicottville with him? |
| 10:23AM | 2 | A. Yes. |
| 10:23AM | 3 | Q. You've been out to dinner with him and his girlfriend and |
| 10:23AM | 4 | the defendant? |
| 10:23AM | 5 | A. Yes. |
| 10:23AM | 6 | Q. Now, it's your claim today that you never saw Bongiovanni |
| 10:23AM | 7 | at Pharaoh's? |
| 10:23AM | 8 | A. No. |
| 10:23AM | 9 | Q. On June 26th, 2020, you told the agents that Bongiovanni |
| 10:23AM | 10 | frequented Pharaoh's? |
| 10:23AM | 11 | A. Is this in the park again? |
| 10:23AM | 12 | Q. Yeah, June 26th, 2020 -- |
| 10:24AM | 13 | A. I don't remember what happened in the park, sir. |
| 10:24AM | 14 | Q. Please, can I just finish my question? |
| 10:24AM | 15 | A. Sure. |
| 10:24AM | 16 | Q. On June 26th, 2020, you told the agents that Bongiovanni |
| 10:24AM | 17 | frequented Pharaoh's, correct? |
| 10:24AM | 18 | A. I don't know.  I can't answer yes or no to that. |
| 10:24AM | 19 | I was also asked that in the Bongiovanni trial. |
| 10:24AM | 20 | And the prosecution used that -- well, I wouldn't know |
| 10:24AM | 21 | what was going on. |
| 10:24AM | 22 | **MR. TRIPI:**  Move to strike. |
| 10:24AM | 23 | **THE COURT:**  Stop. |
| 10:24AM | 24 | **MR. TRIPI:**  Move to strike everything in that answer. |
| 10:24AM | 25 | **THE COURT:**  Yeah.  All that -- all that's struck. |

10:24AM  1        Ma'am, just please -- just answer the questions,

10:24AM  2  please.

10:24AM  3        **BY MR. TRIPI:**

10:24AM  4  Q.  So regarding Katrina Nigro, you stopped hanging around

10:24AM  5  her sometime in 2005, correct?

10:24AM  6  A.  Yes.

10:24AM  7  Q.  You didn't really see Katrina Nigro much when Peter dated

10:24AM  8  her, correct?

10:24AM  9  A.  I didn't see her much?  I had to see her usually every

10:24AM  10  time there was a drop-off or at my son's baseball games.  So,

10:24AM  11  yes, I saw her frequently.

10:24AM  12        **MR. TRIPI:**  Ms. Champoux, can we pull up for the

10:24AM  13  witness only Exhibit 3562K, page 71.  We're gonna go lines 12

10:25AM  14  through 21.

10:25AM  15        Actually, no, we don't have to pull it up, I'm just

10:25AM  16  going to use it.

10:25AM  17        Counsel, we'll be at page 71, lines 12 through 21.

10:25AM  18        **MR. SOEHNLEIN:**  I'm sorry, Joe, the exhibit number?

10:25AM  19        **MR. TRIPI:**  I'm sorry, it's 3562K, page 71, lines 12

10:25AM  20  through 21.

10:25AM  21        **BY MR. TRIPI:**

10:25AM  22  Q.  Now, you testified at a proceeding under oath in that

10:25AM  23  same chair back on September 13th, 2024, correct?

10:25AM  24  A.  Yes.

10:25AM  25  Q.  And during that proceeding, Mr. Cooper was asking you

| | | |
|---|---|---|
| 10:25AM | 1 | some questions for the government; do you remember that? |
| 10:25AM | 2 | A.  Yes. |
| 10:25AM | 3 | Q.  And on that day, you were asked these questions and you |
| 10:25AM | 4 | gave these answers under oath: |
| 10:25AM | 5 | "Question:  So when Peter was dating Katrina Nigro, what |
| 10:25AM | 6 | type of interactions did you have with Ms. Nigro during that |
| 10:25AM | 7 | period? |
| 10:25AM | 8 | "Answer:  I didn't have the best interactions with her, |
| 10:26AM | 9 | but I'd have to be civil with her because she was with my son |
| 10:26AM | 10 | and she was with Peter. |
| 10:26AM | 11 | "Question:  And how often would you see Ms. Nigro during |
| 10:26AM | 12 | that period? |
| 10:26AM | 13 | "Answer:  I really didn't see her very often.  It was |
| 10:26AM | 14 | more like phone conversations or through Messenger.  And |
| 10:26AM | 15 | through -- truthfully, I really didn't, I would prefer not to |
| 10:26AM | 16 | talk to her, I would rather talk to Peter." |
| 10:26AM | 17 | Were you asked those questions, did you give those |
| 10:26AM | 18 | answers? |
| 10:26AM | 19 | A.  I was.  And yes, I gave those answers. |
| 10:26AM | 20 | Q.  Okay.  So my question today was:  You really didn't see |
| 10:26AM | 21 | Katrina Nigro much?  The answer to that is yes? |
| 10:26AM | 22 | A.  Excuse me?  Say that again. |
| 10:26AM | 23 | Q.  You didn't really see Katrina Nigro much when they dated? |
| 10:26AM | 24 | And the answer to that, like you said before, is yes? |
| 10:26AM | 25 | A.  Yes. |

| | | |
|---|---|---|
| 10:26AM | 1 | Q.  Okay. |
| 10:26AM | 2 | A.  There were times when I had to see her, sir. |
| 10:26AM | 3 | **MR. TRIPI:**  Stop. |
| 10:26AM | 4 | Move to strike the extraneous comment, Judge. |
| 10:26AM | 5 | **THE COURT:**  It's stricken. |
| 10:26AM | 6 | **BY MR. TRIPI:** |
| 10:26AM | 7 | Q.  You didn't have any interactions with Katrina Nigro |
| 10:27AM | 8 | inside Pharaoh's, correct? |
| 10:27AM | 9 | A.  No. |
| 10:27AM | 10 | Q.  On Friday we established from essentially 2007 on, you |
| 10:27AM | 11 | didn't go to Pharaoh's, correct? |
| 10:27AM | 12 | A.  No. |
| 10:27AM | 13 | Q.  Yes or no, just to clarify it:  You didn't go to |
| 10:27AM | 14 | Pharaoh's from 2007 on, correct? |
| 10:27AM | 15 | A.  No. |
| 10:27AM | 16 | Q.  When did you go to Pharaoh's in there?  Because Friday |
| 10:27AM | 17 | you said from basically 2007 on, you didn't go to Pharaoh's. |
| 10:27AM | 18 | A.  I didn't go to Pharaoh's -- |
| 10:27AM | 19 | Q.  Okay.  We're -- |
| 10:27AM | 20 | A.  -- from 2007 on. |
| 10:27AM | 21 | Q.  -- we're talking past each other. |
| 10:27AM | 22 | A.  Okay. |
| 10:27AM | 23 | Q.  From 2007 on -- |
| 10:27AM | 24 | A.  Yes. |
| 10:27AM | 25 | Q.  -- am I correct in saying you did not go to Pharaoh's? |

| | | |
|---|---|---|
| 10:27AM | 1 | A.  Yes. |
| 10:27AM | 2 | Q.  Okay. |
| 10:27AM | 3 | A.  You're correct in saying that. |
| 10:27AM | 4 | Q.  All right.  And, so, during the times that you were not |
| 10:28AM | 5 | at the club, you don't know what Katrina Nigro saw or did, |
| 10:28AM | 6 | correct? |
| 10:28AM | 7 | A.  I don't know. |
| 10:28AM | 8 | Q.  Okay.  You don't know what other people saw or did, fair? |
| 10:28AM | 9 | A.  Fair. |
| 10:28AM | 10 | Q.  Your interactions with Katrina Nigro were limited to 2015 |
| 10:28AM | 11 | and 2016, and in that context was mostly talking about your |
| 10:28AM | 12 | son, correct? |
| 10:28AM | 13 | A.  Yes. |
| 10:28AM | 14 | Q.  Your conversations with Katrina Nigro, though, even so, |
| 10:28AM | 15 | were few and far between? |
| 10:28AM | 16 | A.  I don't know what "few and far between" mean. |
| 10:28AM | 17 |     Like, how many interactions are you speaking of? |
| 10:28AM | 18 | Q.  All right. |
| 10:28AM | 19 | A.  Can you be more specific?  Thank you. |
| 10:28AM | 20 | Q.  All right.  You testified on September 13th, 2024 when |
| 10:28AM | 21 | Mr. Cooper asked you these -- this question, you gave this |
| 10:29AM | 22 | answer: |
| 10:29AM | 23 |     "Question:  Would you have conversations with her? |
| 10:29AM | 24 |     "Answer: -- |
| 10:29AM | 25 |         **THE COURT:**  Can we have a line and -- |

10:29AM  1    **MR. TRIPI:**  Oh, I thought I said 3 and 4.  Page 73,

10:29AM  2    lines 3 and 4.

10:29AM  3         **BY MR. TRIPI:**

10:29AM  4    Q.  "Question:  Would you have conversations with her?

10:29AM  5         "Answer:  Yeah, but they were far and few between."

10:29AM  6         Were you asked that question and did you give that answer

10:29AM  7    back in September?

10:29AM  8    A.  If it is on the record, then I would assume that I said

10:29AM  9    that.  And it probably was few and far between.

10:29AM  10        You asked me, I asked you, what -- what would that

10:29AM  11   constitute as?  That was all.

10:29AM  12   Q.  So you were asked that question, and you gave that

10:29AM  13   answer?

10:29AM  14   A.  Yes.

10:29AM  15   Q.  Now, we just talked about from 2007, on.  But from 2009

10:29AM  16   to 2016, when Ms. Nigro was around Pharaoh's, you were not,

10:29AM  17   correct?

10:29AM  18   A.  I wasn't.

10:30AM  19   Q.  You weren't there at all during that timeframe, correct?

10:30AM  20   A.  No.

10:30AM  21   Q.  You were not there speaking with customers, correct?

10:30AM  22   A.  No.

10:30AM  23   Q.  So, correct?

10:30AM  24   A.  Correct.

10:30AM  25   Q.  You were not there speaking with staff, correct?

10:30AM    1    A.   Correct.

10:30AM    2    Q.   You were not there speaking with other dancers, correct?

10:30AM    3    A.   I wasn't there speaking with other dancers.

10:30AM    4    Q.   Correct?

10:30AM    5    A.   Yeah, correct.

10:30AM    6    Q.   You weren't there talking about Katrina Nigro with

10:30AM    7    customers between 2009 and 2016, correct?

10:30AM    8    A.   No.

10:30AM    9    Q.   Correct?

10:30AM   10    A.   Correct.

10:30AM   11    Q.   Okay.  You weren't there speaking with other staff at

10:30AM   12    Pharaoh's between 2009 and 2016, correct?

10:30AM   13    A.   Correct.

10:30AM   14    Q.   You weren't there speaking with other dancers about

10:30AM   15    Katrina Nigro between 2009 and 2016, correct?

10:30AM   16    A.   Correct.

10:30AM   17    Q.   And, I mean, you had moved on with your life.  You

10:31AM   18    started another family, correct?

10:31AM   19    A.   Yes.

10:31AM   20    Q.   You bettered yourself, you got education, you got a good

10:31AM   21    job, correct?

10:31AM   22    A.   Correct.

10:31AM   23    Q.   That process, that time of your life, you're trying to

10:31AM   24    leave Pharaoh's and all of that behind you; is that fair?

10:31AM   25    A.   That's fair.

USA v Gerace - R.A. (PW 6) - Tripi/Redirect - 12/9/24

10:31AM    1    Q.  So you're not spending a lot of time in your life during

10:31AM    2    that window worrying about Katrina Nigro and going around

10:31AM    3    talking about her with other people, correct?

10:31AM    4    A.  Correct.

10:31AM    5    Q.  You certainly didn't go there in Pharaoh's between 2009

10:31AM    6    and 2016 with someone like Ms. Sawyer and have them write

10:31AM    7    down what people would say about Ms. Nigro, correct?

10:31AM    8    A.  Correct.

10:31AM    9    Q.  And you didn't walk through and take notes about what

10:31AM   10    people might have to say about her, correct?

10:31AM   11    A.  Correct.

10:31AM   12    Q.  Okay.  And that didn't happen at any point between 2009

10:31AM   13    and 2018, correct?

10:31AM   14    A.  Correct.

10:31AM   15    Q.  Or ever.  You've never done that.

10:31AM   16    A.  No.

10:31AM   17    Q.  Okay.  I just have a few more questions, okay?

10:32AM   18    A.  Yes.

10:32AM   19    Q.  Just to put a finer point on some things that we've

10:32AM   20    covered.

10:32AM   21        Fair to say you know the defendant and his whole family,

10:32AM   22    you know them well, correct?

10:32AM   23    A.  Yes.

10:32AM   24    Q.  We've talked about it, I'll ask just one more time.

10:32AM   25        You knew the reputation of his grandfather?

| | | |
|---|---|---|
| 10:32AM | 1 | **MR. SOEHNLEIN:**  Object. |
| 10:32AM | 2 | **THE COURT:**  Sustained. |
| 10:32AM | 3 | **MR. TRIPI:**  Asked and answered, Judge? |
| 10:32AM | 4 | **THE COURT:**  Yes. |
| 10:32AM | 5 | **BY MR. TRIPI:** |
| 10:32AM | 6 | Q.  Okay.  You knew he had friends that were in the Outlaws, |
| 10:32AM | 7 | correct? |
| 10:32AM | 8 | **MR. SOEHNLEIN:**  Objection. |
| 10:32AM | 9 | **THE COURT:**  Sustained. |
| 10:32AM | 10 | **BY MR. TRIPI:** |
| 10:32AM | 11 | Q.  You knew he had a friend that was a DEA agent, correct? |
| 10:32AM | 12 | **MR. SOEHNLEIN:**  Objection. |
| 10:32AM | 13 | **THE COURT:**  Sustained. |
| 10:32AM | 14 | **BY MR. TRIPI:** |
| 10:32AM | 15 | Q.  You knew he had a friend that was a New York State |
| 10:32AM | 16 | Supreme Court judge?  This was not asked.  Correct? |
| 10:32AM | 17 | **MR. SOEHNLEIN:**  Objection.  I think it was. |
| 10:32AM | 18 | **THE COURT:**  I'm not sure, so I'll allow it. |
| 10:32AM | 19 | **MR. TRIPI:**  A little leeway here, Judge.  I'm |
| 10:33AM | 20 | wrapping up. |
| 10:33AM | 21 | **THE COURT:**  Yeah. |
| 10:33AM | 22 | **BY MR. TRIPI:** |
| 10:33AM | 23 | Q.  You knew he had a friend who was a New York State Supreme |
| 10:33AM | 24 | Court judge? |
| 10:33AM | 25 | A.  I'm not sure if he was a judge yet.  I think maybe he was |

10:33AM   1   a lawyer.

10:33AM   2   Q.  When he married you, he was a judge, correct?  You were

10:33AM   3   in his chambers for that?

10:33AM   4   A.  Yes.

10:33AM   5   Q.  Okay.  So you knew he had a judge friend, correct?

10:33AM   6   A.  Yes.

10:33AM   7   Q.  You knew he had lawyer friends, correct?

10:33AM   8   A.  Yes.

10:33AM   9   Q.  You knew he had police officer friends, correct?

10:33AM  10   A.  Yes.

10:33AM  11   Q.  You knew that he was good friends with the Buffalo police

10:33AM  12   commissioner, and he was the godfather of the commissioner's

10:33AM  13   daughter, correct?

10:33AM  14   A.  Yes.

10:33AM  15   Q.  You knew he had friends in the New York State Police,

10:33AM  16   correct?

10:33AM  17   A.  I don't think so.

10:33AM  18   Q.  You knew he had friends in the Amherst police, correct?

10:33AM  19   A.  No, I did not know that.

10:33AM  20   Q.  You knew he had a lot of friends, correct?

10:33AM  21   A.  Yes, he had a lot of friends.

10:33AM  22   Q.  You knew he was connected, and you were rightly scared to

10:33AM  23   testify against him?

10:33AM  24   A.  No.

10:33AM  25           **THE COURT:**  Sustained.  Sustained.  Sustained.

Case 1:19-cr-00227-LJV-MJR    Document 1512    Filed 04/27/25    Page 36 of 48
USA v Gerace - R.A. (PW 6) - Soehnlein/Recross - 12/9/24

36

10:33AM  1          **MR. TRIPI:**  One moment, Judge.

10:34AM  2          No further cross, I guess.

10:34AM  3          **THE COURT:**  Mr. Soehnlein?

10:34AM  4          **MR. SOEHNLEIN:**  Very brief.  Two or three questions.

10:34AM  5

10:34AM  6          **RECROSS-EXAMINATION BY MR. SOEHNLEIN:**

10:34AM  7  Q.  Ms. R.A., there was some testimony about the meeting in

10:34AM  8  the park in June of 2020; do you recall that?

10:34AM  9  A.  Yes.

10:34AM  10  Q.  And I think you started to testify, it might have got cut

10:34AM  11  off, about the number of times that law enforcement contacted

10:34AM  12  you before that meeting?

10:34AM  13  A.  Yes.

10:34AM  14  Q.  How many times?

10:34AM  15  A.  Oh, I couldn't count how many times.

10:34AM  16  Q.  Would you be able to estimate for us?

10:34AM  17  A.  Between them coming to my mom's house, and calling my

10:34AM  18  phone, probably at least 10, 12 times.

10:34AM  19  Q.  Okay.

10:34AM  20  A.  Once a day sometimes.

10:34AM  21  Q.  Okay.  And you talked about they came to your mom's

10:34AM  22  house, correct?

10:34AM  23  A.  Um-hum.

10:34AM  24  Q.  And they called your phone?

10:34AM  25  A.  Yes.

| | | |
|---|---|---|
| 10:34AM | 1 | Q.  And they went to your work? |
| 10:34AM | 2 | A.  Yes. |
| 10:34AM | 3 | Q.  And they came to your house? |
| 10:35AM | 4 | A.  Yes. |
| 10:35AM | 5 | Q.  And that all led up to that meeting, correct? |
| 10:35AM | 6 | A.  Yes. |
| 10:35AM | 7 | Q.  And I think that Mr. Tripi showed you some -- some notes |
| 10:35AM | 8 | from that meeting; do you recall that? |
| 10:35AM | 9 | A.  Yes. |
| 10:35AM | 10 | Q.  You didn't prepare those notes, correct? |
| 10:35AM | 11 | A.  I didn't prepare those notes. |
| 10:35AM | 12 | Q.  And you don't know who prepared those notes? |
| 10:35AM | 13 | A.  No. |
| 10:35AM | 14 | Q.  You had never seen those before? |
| 10:35AM | 15 | A.  I have never seen those before. |
| 10:35AM | 16 | Q.  And nobody showed them to you afterwards and said, hey, |
| 10:35AM | 17 | are these accurate? |
| 10:35AM | 18 | A.  No, I've never seen them until today. |
| 10:35AM | 19 | Q.  Okay.  Now, there was some questions about your |
| 10:35AM | 20 | interactions with Ms. Nigro from 2009 to 2018, correct? |
| 10:35AM | 21 | A.  Yes. |
| 10:35AM | 22 | Q.  Do you recall that?  What interactions did you have with |
| 10:35AM | 23 | Ms. Nigro -- |
| 10:35AM | 24 | **MR. TRIPI:**  Objection. |
| 10:35AM | 25 | **MR. SOEHNLEIN:**  -- in that period? |

10:35AM  1      **MR. TRIPI:**  It's beyond the scope of the permissible

10:35AM  2  bounds of the rule.

10:35AM  3      **THE COURT:**  No.  Overruled.

10:35AM  4      **BY MR. SOEHNLEIN:**

10:35AM  5  Q.  What interactions did you have with Ms. Nigro in that

10:35AM  6  time period, 2009 to 2018?

10:35AM  7  A.  Maybe on -- well, mostly on Messenger or on Facebook, or

10:35AM  8  what I've seen on Facebook.

10:35AM  9  Q.  Okay.  And -- and -- and Messenger, you're talking about

10:36AM  10  Facebook Messenger?

10:36AM  11  A.  Yes.

10:36AM  12  Q.  Social media, correct?

10:36AM  13  A.  Yes.

10:36AM  14  Q.  Would she message you in that time?

10:36AM  15  A.  Yes.

10:36AM  16  Q.  Okay.  And you're talking about -- Facebook, you're

10:36AM  17  talking about her Facebook page?

10:36AM  18  A.  Yes.

10:36AM  19  Q.  And things that she would post on Facebook, correct?

10:36AM  20  A.  Yes.

10:36AM  21  Q.  Correct?  And all of that information forms the basis for

10:36AM  22  your opinion of her, correct?

10:36AM  23  A.  Absolutely.

10:36AM  24  Q.  Okay.  And Facebook, that's a -- a public forum, social

10:36AM  25  media, correct?

```
10:36AM    1   A.  Yes.

10:36AM    2   Q.  And I think there was some questions from Mr. Tripi, when

10:36AM    3   you put something on Facebook presumably you want other

10:36AM    4   people to see it, correct?

10:36AM    5   A.  Yes.

10:36AM    6   Q.  So based on that, what you saw that Ms. Nigro was

10:36AM    7   posting, it's your belief that those are things about her

10:36AM    8   that she wanted people to see, correct?

10:36AM    9   A.  Yes.

10:36AM   10          MR. TRIPI:  Objection.

10:36AM   11          THE COURT:  Leading?

10:36AM   12          MR. TRIPI:  That, and speculative.  When I asked the

10:36AM   13   witness about what her intent was, that's one thing.

10:36AM   14          THE COURT:  Yeah.  Sustained.  Sustained.  Sustained.

10:36AM   15          MR. SOEHNLEIN:  That -- that -- if I may just have

10:36AM   16   one more minute?  I may very well be done.

10:37AM   17          One final thing.  Ms. Champoux, can you pull up

10:37AM   18   3562K, please?

10:37AM   19          THE COURT:  Just for the witness?

10:37AM   20          MR. SOEHNLEIN:  Just for the witness at page 72,

10:37AM   21   lines 18 to 23, please.

10:37AM   22          MR. TRIPI:  Probably going to be a hearsay objection

10:37AM   23   here, Your Honor.

10:37AM   24          THE COURT:  I'm sorry?

10:37AM   25          MR. TRIPI:  There's likely going to be a hearsay
```

| | | |
|---|---|---|
| 10:37AM | 1 | objection, Your Honor, just to preview it for you. |
| 10:37AM | 2 | MR. SOEHNLEIN:  Your Honor, this her trial testimony, |
| 10:37AM | 3 | and the prosecution had read lines to her to impeach her.  I |
| 10:37AM | 4 | just want to read the next line.  That's all. |
| 10:37AM | 5 | MR. TRIPI:  I -- I object under hearsay. |
| 10:37AM | 6 | THE COURT:  Hang on.  What lines are you talking |
| 10:37AM | 7 | about? |
| 10:37AM | 8 | MR. SOEHNLEIN:  Page 72, 18 to 23. |
| 10:38AM | 9 | THE COURT:  Can you take that down?  Can you take |
| 10:38AM | 10 | that -- |
| 10:38AM | 11 | What did the government ask? |
| 10:38AM | 12 | MR. SOEHNLEIN:  The paragraph directly above it.  I |
| 10:38AM | 13 | forget the direct lines, the page before. |
| 10:38AM | 14 | MR. TRIPI:  I can give you the page, Judge, if it's |
| 10:38AM | 15 | helpful.  Give me just a second. |
| 10:38AM | 16 | MS. CHAMPOUX:  You didn't do that page. |
| 10:38AM | 17 | MR. TRIPI:  Yeah, I don't think I did that page at |
| 10:38AM | 18 | all.  I did page 71 and 73, Judge. |
| 10:38AM | 19 | MR. SOEHNLEIN:  And this is page 72. |
| 10:38AM | 20 | THE COURT:  Why don't you come up. |
| 10:38AM | 21 | (Sidebar discussion held on the record.) |
| 10:39AM | 22 | MR. TRIPI:  Actually, Judge, I did 72, 1 through 4. |
| 10:39AM | 23 | THE COURT:  Why can't you ask her those questions and |
| 10:39AM | 24 | not ask her whether she said it before or not? |
| 10:39AM | 25 | MR. SOEHNLEIN:  That's fine, I'll do it.  She said |

| | | |
|---|---|---|
| 10:39AM | 1 | it.  The impact, though, is that, you know, the government |
| 10:39AM | 2 | points to a statement before and a statement after, and |
| 10:39AM | 3 | implies that she's being untruthful. |
| 10:39AM | 4 | But the statement in the middle is -- |
| 10:39AM | 5 | **MR. TRIPI:**  I'm not implying. |
| 10:39AM | 6 | **MR. SOEHNLEIN:**  -- is right -- right on point with |
| 10:39AM | 7 | what she's testified to today. |
| 10:39AM | 8 | **MR. TRIPI:**  My question was:  You didn't really see |
| 10:39AM | 9 | Katrina much when Peter dated her. |
| 10:39AM | 10 | She admitted as much on page 71.  And then -- |
| 10:39AM | 11 | **THE COURT:**  I'm going to allow it.  I think that it |
| 10:39AM | 12 | completes the narrative.  I think that it's -- it's fair to |
| 10:39AM | 13 | let it come in, even -- even as -- |
| 10:39AM | 14 | **MR. TRIPI:**  106? |
| 10:39AM | 15 | **THE COURT:**  -- yeah. |
| 10:39AM | 16 | **MR. TRIPI:**  Can I get the lines you're going to allow |
| 10:39AM | 17 | just to -- |
| 10:39AM | 18 | **THE COURT:**  I'm going to allow -- |
| 10:39AM | 19 | **MR. SOEHNLEIN:**  18 to 23, Judge? |
| 10:40AM | 20 | **THE COURT:**  -- yeah, 18 to 23. |
| 10:40AM | 21 | **MR. SOEHNLEIN:**  Thank you. |
| 10:40AM | 22 | (End of sidebar discussion.) |
| 10:40AM | 23 | **THE COURT:**  Okay.  So the objection is overruled. |
| 10:40AM | 24 | **BY MR. SOEHNLEIN:** |
| 10:40AM | 25 | Q.  Ms. Nigro (sic), on September 13th, 2024, you gave |

10:40AM  1  testimony in another proceeding, correct?

10:40AM  2  A.  Yes.

10:40AM  3  Q.  And -- and you were under oath at that time, correct?

10:40AM  4  A.  Yes.

10:40AM  5  Q.  And did -- did you give -- were you asked this question

10:40AM  6  and did you give this answer:

10:40AM  7      "Question:  How often would you see Peter to visit your

10:40AM  8  son?

10:40AM  9      "Answer:  On a weekly basis.

10:40AM  10      "Question:  And during these times that you would

10:40AM  11  interact with Peter, I think you testified that you also

10:40AM  12  interacted with Katrina sometimes?

10:40AM  13      "Answer:  Yes."

10:40AM  14  A.  Yes.

10:40AM  15  Q.  Okay.  Now, is that the same testimony that Mr. Tripi had

10:40AM  16  read to you earlier today?

10:40AM  17  A.  No.

10:40AM  18          **MR. TRIPI:**  Objection.

10:40AM  19          **THE COURT:**  Hang on.

10:40AM  20          **MR. SOEHNLEIN:**  Strike that.

10:40AM  21          **THE COURT:**  Sustained.  Go ahead, ask another

10:40AM  22  question.

10:40AM  23          **BY MR. SOEHNLEIN:**

10:40AM  24  Q.  Is that the same date and same transcript that Mr. Tripi

10:41AM  25  had read to you earlier?

10:41AM  1          **MR. TRIPI:**  Objection.

10:41AM  2          **THE WITNESS:**  Yeah.

10:41AM  3          **THE COURT:**  Overruled.

10:41AM  4          **MR. TRIPI:**  What's the relevance of that?

10:41AM  5          **THE WITNESS:**  Yes.

10:41AM  6          **BY MR. SOEHNLEIN:**

10:41AM  7  Q.  Thank you.

10:41AM  8      Just to close the loop, there was some testimony about

10:41AM  9  your grand jury testimony; do you recall that?

10:41AM  10  A.  Yes.

10:41AM  11  Q.  Now, when you went in grand jury, the defense was not

10:41AM  12  there, correct?

10:41AM  13  A.  No.

10:41AM  14  Q.  And the jury wasn't there, correct?

10:41AM  15  A.  No.

10:41AM  16  Q.  And the -- there wasn't a judge there, correct?

10:41AM  17  A.  No.

10:41AM  18  Q.  It was just you and the prosecution, correct?

10:41AM  19  A.  Yes.

10:41AM  20  Q.  And you didn't have a lawyer when you went into the grand

10:41AM  21  jury.

10:41AM  22          **MR. TRIPI:**  Objection, 403.  The proceedings of a

10:41AM  23  grand jury are irrelevant.

10:41AM  24          **THE COURT:**  Nope.  Overruled.

25

10:41AM  1          **BY MR. SOEHNLEIN:**

10:41AM  2   Q.  Did you have a -- a lawyer?

10:41AM  3   A.  No, I didn't even know I needed one.

10:41AM  4   Q.  Okay.  And so, the back and forth, was it a lot like the

10:41AM  5   back and forth that you had with Mr. Tripi?

10:41AM  6   A.  Similar.

10:41AM  7   Q.  Okay.  Now, the defense didn't subpoena you here today,

10:41AM  8   correct?

10:41AM  9   A.  No.

10:41AM  10  Q.  The government did subpoena you here today, correct?

10:41AM  11  A.  Yes.

10:41AM  12         **MR. SOEHNLEIN:**  That's all I have, thank you.

10:41AM  13         **THE COURT:**  Anything more, Mr. Tripi?

10:41AM  14         **MR. TRIPI:**  Yeah, I have just a couple questions,

10:42AM  15  Judge.

10:42AM  16

10:42AM  17          **RE-REDIRECT EXAMINATION BY MR. TRIPI:**

10:42AM  18  Q.  In terms of communications prior to your testimony,

10:42AM  19  starting back in June 26th, 2020, during that exact meeting

10:42AM  20  with the agents, the defendant was calling you on the phone,

10:42AM  21  correct?  He was blowing up your phone?

10:42AM  22  A.  No.

10:42AM  23         **MR. SOEHNLEIN:**  Objection.

10:42AM  24         **THE COURT:**  Stop.  Stop.  Stop.  Stop.

10:42AM  25         Objection?  What's the objection?

| | | |
|---|---|---|
| 10:42AM | 1 | **MR. SOEHNLEIN:** Well, I'm sorry, that's -- can we |
| 10:42AM | 2 | come up? |
| 10:42AM | 3 | **THE COURT:** Yeah, come on up. |
| 10:42AM | 4 | (Sidebar discussion held on the record.) |
| 10:42AM | 5 | **MR. SOEHNLEIN:** I mean, it may -- it's not reflected |
| 10:42AM | 6 | in the notes at all that the defense was calling her, at least |
| 10:42AM | 7 | not to my knowledge. It wasn't us. To the extent that |
| 10:42AM | 8 | there's some suggestion that it's me or Mark, I -- you know -- |
| 10:42AM | 9 | **MR. TRIPI:** I said the defendant on June 26th. |
| 10:42AM | 10 | **MR. SOEHNLEIN:** It was the defendant? Oh, I thought |
| 10:42AM | 11 | that you said the defense. |
| 10:42AM | 12 | **MR. TRIPI:** No, the defendant. |
| 10:42AM | 13 | **MR. SOEHNLEIN:** I thought you said that it was |
| 10:42AM | 14 | counsel. |
| 10:42AM | 15 | **MR. TRIPI:** No. |
| 10:42AM | 16 | **MR. SOEHNLEIN:** Okay. Then I have less of a problem |
| 10:42AM | 17 | with it. So -- |
| 10:42AM | 18 | **THE COURT:** Withdraw the objection? |
| 10:42AM | 19 | **MR. SOEHNLEIN:** I withdraw the objection. I thought |
| 10:43AM | 20 | he said the defense, like it was me and Foti. |
| 10:43AM | 21 | **THE COURT:** No, he said the defendant. |
| 10:43AM | 22 | (End of sidebar discussion.) |
| 10:43AM | 23 | **THE COURT:** The objection is withdrawn; is that |
| 10:43AM | 24 | correct? |
| 10:43AM | 25 | **MR. SOEHNLEIN:** Yes. |

10:43AM    1          **MR. TRIPI:**  I think the question was answered, too,

10:43AM    2    Judge, so I'll move on.

10:43AM    3          **THE COURT:**  Great.

10:43AM    4          **BY MR. TRIPI:**

10:43AM    5    Q.  And before your testimony, during the course of the

10:43AM    6    lead-up of this trial, you've communicated with the

10:43AM    7    defendant, correct?

10:43AM    8    A.  Yes.

10:43AM    9          **MR. TRIPI:**  Nothing further, Judge.

10:43AM    10          **THE COURT:**  Anything more, Mr. Soehnlein?

10:43AM    11          **MR. SOEHNLEIN:**  Nothing more, Judge.

10:43AM    12          **THE COURT:**  Okay.  You can step down, ma'am.

10:43AM    13          **THE WITNESS:**  Thank you.

10:43AM    14          (Witness excused at 10:43 a.m.)

          15          (Excerpt concluded at 10:43 a.m.)

          16              *    *    *    *    *    *    *

          17

          18              **CERTIFICATE OF REPORTER**

          19

          20              In accordance with 28, U.S.C., 753(b), I

          21    certify that these original notes are a true and correct

          22    record of proceedings in the United States District Court for

          23    the Western District of New York on December 9, 2024.

          24
                                    s/ Ann M. Sawyer
          25                        _____
                                    Ann M. Sawyer, FCRR, RPR, CRR
                                    Official Court Reporter

1                    U.S.D.C., W.D.N.Y.

**TRANSCRIPT INDEX**

**EXCERPT - EXAMINATION OF R.A. (PW 6) - DAY 2**

**DECEMBER 9, 2024**

**W I T N E S S**                                                    **P A G E**

**R. A.  (PW 6)**                                                        2

    (CONT'D) CROSS-EXAMINATION BY MR. SOEHNLEIN:      2

    REDIRECT EXAMINATION BY MR. TRIPI:                        5

    RECROSS-EXAMINATION BY MR. SOEHNLEIN:             36

    RE-REDIRECT EXAMINATION BY MR. TRIPI:                 44