IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                        19-CR-227-LJV

JOSEPH BONGIOVANNI,

           Defendant.

---

### STATEMENT OF THE GOVERNMENT
### WITH RESPECT TO SENTENCING FACTORS

**PLEASE TAKE NOTICE** that the government hereby adopts the findings of the Presentence Report with respect to sentencing factors in this action, with limited exceptions as set forth *infra*.

### Factual Corrections and Clarifications

As to certain facts detailed in the "Offense Conduct' section of the PSR, there are some factual clarifications or additions that should be made notwithstanding the fact that such factual clarifications or additions do not impact the sentencing guideline calculations set forth in the PSR. These factual clarifications[1] and/or additions are as follows:

- **Paragraph 29**: The last sentence should be revised insert the words "for repeated or lengthy information exchanges," such that the entire sentence would read: "The defendant thought it would raise too much suspicion if he met with Masecchia *for repeated or lengthy information exchanges* because too many people knew Masecchia's reputation as a drug dealer and IOC member.[2]

---

[1] If it is necessary for the Court to consider the requested clarifications and additions as "objections" to the PSR in order to consider them, then the government requests they be so construed.

[2] This insertion is necessary because the testimony did establish that the defendant met with Masecchia to receive payments.

- **Paragraph 34**: The paragraph should be clarified because the Confidential Informant ("CI") referenced in this paragraph was Robert Kaiser, who is deceased. Robert Kaiser was the only CI referenced in file C2-12-0026, File Title: Wayne Anderson.

- **Paragraph 38**: The defendant closed DEA file C2-12-0026 on January 28, 2025. This paragraph should be revised to clarify that, when the defendant instructed Scott Deming not to share information with Homeland Security Investigations, it was in July 2015, which was after the defendant closed his DEA file C2-12-0026 on January 28, 2015.

- **Paragraph 39**: The word "weeks" should be replaced by the word "days" in the second sentence of paragraph 39.

- **Paragraph 40**: The paragraph should be revised to clarify that there was no "CI-2" opened in connection with file C2-12-0026. The only CI opened in connection with that file was Robert Kaiser, as described above.

- **Paragraph 41**: This paragraph should be revised to clarify that the referenced witnesses observed the defendant use cocaine at different times between approximately 2014 and 2018. As this paragraph is presently drafted, it inaccurately reads as though all the defendant's reported cocaine usage was in 2014.

- **Paragraph 42**: The word "again" should be deleted from the first sentence of the paragraph.

- **Paragraph 43**: The words "In February 2015" should be deleted and replaced with "While DEA file C2-12-0026 was open." The paragraph should also be revised and clarified to state that "during the course of the charged conspiracy" the defendant disclosed the identities of three DEA Confidential Sources, or CIs, including Robert Kaiser, who was the CI in file C2-12-0026.

- **Paragraph 44**: This paragraph should be revised to delete reference to CI-4 and should clarify that the defendant disclosed the identity of the DEA CI referenced in the paragraph (who was a third CI whose identity was disclosed by the defendant to a coconspirator, not the fourth CI).

- **Paragraph 48**: While this paragraph is not necessarily inaccurate as written, it should be noted that the parties entered stipulations, which were entered as court exhibits, with respect to various controlled substances involved in this case.

- **Paragraph 52**: The words "another proffer" in the last sentence should be deleted and replaced with the words "additional proffers."

- **Between Paragraph 55/56**: The details set forth in paragraph 75 should be inserted here as well because the June 6, 2019, search warrant executed at the defendant's residence, and the defendant's ensuing interview with law enforcement, is relevant to the Count Group 1, Count Group 2, and Count Group 3.

- **Paragraph 68**: In the third sentence, the word "told" should be replaced with "represented and led FBI SA Thomas Herbst to believe. . ."

- **After Paragraph 70**: A paragraph should be inserted to include the details of Katrina Nigro's testimony that she provided envelopes of cash to the defendant at Peter Gerace's direction.

- **Paragraph 73**: The details of this paragraph should also be included as related to Count Group 1.

- **Paragraph 75**: As set forth above, the details of the defendant's June 6, 2019, interview are also relevant to Count Group 1 and are not limited to Count Group 3.

- **Paragraph 78**: A sentence should be added to reference that the forensic accountant testified regarding the difficulty of tracing cash that is not deposited into the banking system.

- **Paragraph 88**: This paragraph should be revised to make clear that Count Group 1 and Count Group 2 merge for purposes of the guideline calculations.

- **Paragraph 113**: "Other Criminal Conduct" should be revised to include: (i) the defendant's conduct towards his ex-girlfriend, Protected Witness 13, which resulted in state charges that were later dismissed (and a corresponding DEA OPR investigation related to same); (ii) the details of a separate incident wherein the defendant attempted to mislead a DEA Task Force Officer, who was also a detective with a local sheriff's office, into providing the defendant with an accident report that contained false information; and, (iii) the details of an incident wherein the defendant stole a vehicle antennae from a DEA colleague, affixed it to his vehicle, and then lied to his DEA colleague about stealing the antennae.[3]

---

[3] To the extent the information underlying these incidents has not been provided to U.S. Probation, the information will be provided forthwith. Because the admissibility of each of these incidents was litigated pre-trial, the defendant is on notice of them.

3

**Aggravating Role**

As to additional guidelines calculations, the government submits that an aggravating role adjustment, pursuant to Guidelines Section 3B1.1(b) should be added to Count Group 1, which would increase the defendant's total offense level to 43. *See* PSR at pages 22-24. Guidelines Section 3B1.1(b) provides: "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved 5 or more participants or was otherwise extensive, increase by 3 levels." Here, the drug organization the defendant was protecting involved both 5 or more participants *and* was otherwise extensive, as described in detail in the government's filing at ECF No. 1488, which is incorporated herein by reference. Pursuant to Application Note 4 to Guidelines Section 3B1.1, factors the court should consider include: "the exercise of decision-making authority, the nature of participation in the commission of the offense . . . [and] the nature and scope of the criminal activity." The facts, as further detailed in ECF No. 1488[4] and as established at trial, demonstrate that the defendant exercised considerable decision-making authority, including the manner in which he handled the nuanced details of the protection he provided, the unwitting participants he involved to carry out his corrupt protection scheme, and the manner in which he provided information to, and received payment from, the criminal drug trafficking organization that he was protecting. Thus, the defendant exercised significant control of the complex criminal scheme in which he was a major participant. Moreover, the defendant's protection scheme covered a lengthy period of time and involved a myriad of individuals. Pursuant to the Background Note to Guidelines Section 3B1.1, "[t]he Comission's intent is that the adjustment should increase with both the size of the organization (which in this case was

---

[4] The government incorporates ECF No. 1488 as though set forth fully herein.

4

extensive) and the degree of the defendant's responsibility (which was integral to the success of the organization for a lengthy period).

The defendant exercised some degree of control over Lou Selva, including the general and specific information the defendant selected for Lou Selva to provide to others in the organization, such as Michael Masecchia and Ron Serio. *See United States v. Birkin,* 366 F.3d 95, 101-02 (2d Cir. 2004) ("Although the Sentencing Guidelines do not define the terms "manager" or "supervisor," this court has held that "[a] defendant may properly be considered a manager or supervisor if he 'exercise[d] some degree of control over others involved in the commission of the offense ... or play[ed] a significant role in the decision to recruit or to supervise lower-level participants.' ") (quoting *United States v. Blount,* 291 F.3d 201, 217 (2d Cir.2002)). Some of examples of the defendant's supervision include: Bongiovanni's repeated directives to Selva reminding Selva that he should pretend that the defendant was recruiting Selva to be an informant in the event law enforcement approached Selva and questioned him about the criminal conspiracy and conduct underlying the defendant's convictions; the defendant's preference to meet with Selva to provide information, and the defendant's control of certain details he provided to Selva to pass along to other co-conspirators. Moreover, the "[t]he Application Note to U.S.S.G. § 3B1.1 explains that, in determining if a criminal activity is "otherwise extensive," all persons involved during the course of the entire offense are to be considered, including outsiders who provided unwitting services and thus do not qualify as "participants." *United States v. Harvey*, 532 F.3d 326, 338 (4th Cir. 2008). Here, the defendant used unwitting DEA and other law enforcement participants to carry out his corrupt criminal protection scheme including:

5

- DEA supervisors, including Dale Kasprzyk and John Flickinger, who unwittingly signed off on false reports in the defendant's DEA file C2-12-0026.

- Several DEA intel analysts, who unwittingly initiated and entered administrative subpoenas into DARTS at the defendant's request, which the defendant used to set up the deconflictions that enabled him to verify and ensure that his coconspirators, including members of the Serio/Masecchia DTO (who included the defendant's best friend) were not being intercepted on wiretaps.

- DEA agents, such as Special Agent (SA) David Leary, who the defendant misled into believing he was conducting legitimate surveillance in June 2013, when, in truth and in fact, the defendant used SA Leary to conduct surveillance to give the defendant's investigation an aura of legitimacy.

- DEA Task Force Officer David Turri, who the defendant misled into believing he was conducting legitimate financial investigation into Ron Serio to give the defendant's investigation an aura of legitimacy.

- Amherst Police Department personnel, who provided an informant, Robert Kaiser, to the defendant under false pretenses, to wit: the defendant misled the Amherst Police Department personnel into believing he was intent upon investigating the Ronald Serio when, in truth and in fact, the defendant was protecting the Serio/Masecchia drug organization.

- U.S. Attorney's Office Financial Investigator, Scott Deming, who the defendant misled into believing the defendant was conducting legitimate financial investigation into Ron Serio to give the defendant's investigation an aura of legitimacy and to ensure financial investigative materials would be provided to the defendant, as opposed to other legitimate investigators.

- New York State Police Investigator Michael O'Rourke, who the defendant misled into believing the defendant was conducting legitimate investigation into Wayne Anderson when, in truth and in fact, the defendant wanted to take the Wayne Anderson case from the New York State Police to ensure they did not progress their investigation into the Serio/Masecchia drug organization; to set up the defendant's façade of an investigation; to create a file-based justification for manipulating DEA intel analysts to issue to administrative subpoenas to cell phone providers so that the defendant could establish the deconfliction "trip-wire" portion of his criminal scheme; and, to

ensure that all investigative materials would be provided to the defendant, as opposed to other legitimate investigators.

Based upon the foregoing, and all the information further described in ECF No. 1488, *at least 3 levels* should be added to Count Group 1, which would bring the defendant's total offense level to 43.

### Letters

Should the defendant present any letters of support or sentencing statement to the Court, the United States will move to strike the items from the record if this office is not provided with copies at least three (3) business days prior to sentencing.

### Special Penalty Assessment

The defendant is required by 18 U.S.C. § 3013 to pay the sum of $900 at the time of sentencing. Immediately after sentencing, the defendant must pay the amount due by personal check, cashier's check or certified funds to the United States District Court Clerk.

### Financial Obligations

The defendant has the ability to pay a fine in the Guideline range. The government urges the Court to impose a fine which is due immediately as the defendant has assets which may be used to pay the fine.

It is requested that the Court order that all financial obligations be due immediately. In the event the defendant lacks the ability to immediately pay the financial obligations in

full, it is requested that the Court set a schedule for payment of the obligations.

In the event present counsel for the defendant will continue to represent the defendant after sentencing in regard to the collection of unpaid financial obligation(s), it is requested that a letter so advising be sent to:

> Asset Recovery Division
> U.S. Attorney's Office WDNY
> 138 Delaware Avenue
> Buffalo, New York 14202

If a letter is not received within ten (10) days of sentencing, the defendant will be directly contacted regarding collection of the financial obligation(s).

The government will also submit a sentencing memorandum prior to sentencing when it responds to any objections the defendant submits to the sentencing factors set forth in the PSR.

DATED: Buffalo, New York, June 16, 2025.

                                                MICHAEL DIGIACOMO
                                                United States Attorney

BY:    s/JOSEPH M. TRIPI
         Assistant United States Attorney
         United States Attorney's Office
         Western District of New York
         138 Delaware Avenue
         Buffalo, New York  14202
         716/843-5839
         Joseph.Tripi@usdoj.gov